1  JONATHAN M. KAUFMAN, ESQ. (California State Bar No. 104576)
   The Law Offices of Jonathan M. Kaufman
2  220 Montgomery Street, Suite 976
   San Francisco, CA 94104
3  Telephone: (415) 956-4765
   Facsimile: (415) 956-1664
4  E-Mail:    jonathan-kaufman@sbcglobal.net

5  Attorney for Plaintiffs

6

7                    UNITED STATES DISTRICT COURT

8          FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                      SAN FRANCISCO DIVISION

10 JOSE BAUTISTA-PEREZ, OSCAR            Case No. C 07-4192 TEH
   GUARDADO-GONZALEZ, DENIS
11 CABALLERO-ESPINOZA, JOSE             MEMORANDUM   OF  POINTS  AND
   ALVARADO-MENJIVAR, OSCAR RENE        AUTHORITIES IN SUPPORT OF MOTION
12 RAMOS, MARIA SALAZAR, JOSE           FOR TEMPORARY RESTRAINING
   BENJAMIN QUINTEROS, AND MARIA        ORDER
13 JOSEFA CRUZ, Individually and on behalf of
   all others similarly situated,
14
                Plaintiffs,
15
         vs.
16
   ALBERTO R. GONZALES, Attorney General
17 and MICHAEL CHERTOFF, Secretary of
   Homeland Security,
18
                Defendants.
19
   _____/
20

21

22        This class action for declaratory and injunctive relief seeks review of defendants' imposition

23 of a fee for temporary protective status (TPS) registration that exceeds the $50.00 filing fee permitted

24 under 8 U.S.C.§1254a(c)(1)(B). It seeks to invalidate those parts of 8 C.F.R. §244.6 which require

25 plaintiffs and other class members to remit a fee that exceeds the amount permitted under 8 U.S.C.

26 §1254a(c)(1)(B), and to enjoin defendants from charging plaintiffs and other class members more

27

28                                          1

1  than $50.00 permitted under 8 U.S.C. §1254a(c)(1)(B) to register for TPS. A copy of the Complaint
2  is attached, marked as Exhibit A.

3       The Secretary of Homeland Security has published notice in the Federal Register that El
4  Salvador's designation for TPS has been extended for eighteen months, and that nationals of El
5  Salvador previously granted TPS must re-register for TPS and apply for renewals of their TPS work
6  permits to maintain their status. According to the Federal Register notice, nationals of El Salvador
7  have until October 22, 2007 to re-register and remit an $80.00 "biometric service fee". Failure to
8  remit the "biometric service fee" will result in an application being rejected. See, Exhibit B.

9       Plaintiffs Jose Alvarado-Menjivar, Oscar Rene Ramos, Maria Salazar, Jose Benjamin
10 Quinteros, and Maria Josefa Cruz, are nationals of El Salvador who have previously remitted a
11 $50.00 TPS registration fee and been granted TPS. See, Motion for Preliminary Injunction, Exhibit
12 B.  Unless plaintiffs and other class members remit the $80.00 "biometric service fee"required in
13 the Federal Register notice they will be prohibited from re-registering for TPS. Their TPS work
14 permits will expire, and they will lose their authorization to work legally in the United States. They
15 will be subject to apprehension and detention pending their removal from the United States.

16      Plaintiffs have filed a motion for a preliminary injunction which describes the irreparable
17 injury plaintiffs and other class members will suffer if required to remit a $80.00 "biometric service
18 fee"to re-register for TPS. A hearing on the motion is scheduled for October 15, 2007, the earliest
19 date available on the Court's civil law and motion calendar.

20      Plaintiffs' seek a temporary restraining order to require defendants to show cause why a
21 preliminary injunction should not be issued enjoining defendants and their delegates from enforcing
22 those parts of 8 C.F.R. §244.6 which require plaintiffs and other class members to remit payment

23
24
25
26
27
28                                           2

1  for temporary protective status  registration that exceeds the $50.00 permitted under 8 U.S.C.

2  §1254a(c)(1)(B).

3  Dated: September 6, 2007

4                                                                 Respectfully submitted,

5                                                                 _____

6                                                                 JONATHAN M. KAUFMAN
                                                                  Attorney for Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                                    3

# EXHIBIT A

1   JONATHAN M. KAUFMAN, ESQ. (California State Bar No. 104576)
    The Law Offices of Jonathan M. Kaufman
2   220 Montgomery Street, Suite 976
    San Francisco, CA 94104
3   Telephone: (415) 956-4765
    Facsimile: (415) 956-1664
4   E-Mail:    jonathan-kaufman@sbcglobal.net

5   Attorney for Plaintiffs

6

7               UNITED STATES DISTRICT COURT

8         FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                 SAN FRANCISCO DIVISION

10   JOSE BAUTISTA-PEREZ, OSCAR        Case No. C 07-4192 EDL
    GUARDADO-GONZALEZ, DENIS
11   CABALLERO-ESPINOZA, JOSE         FIRST AMENDED COMPLAINT FOR
    ALVARADO-MENJIVAR, OSCAR RENE     DECLARATORY JUDGMENT AND
12   RAMOS, MARIA SALAZAR, JOSE       INJUNCTION
    BENJAMIN QUINTEROS, AND MARIA
13   JOSEFA CRUZ, Individually and on behalf of
    all others similarly situated,          CLASS ACTION
14
           Plaintiffs,
15
        vs.
16
    ALBERTO R. GONZALES, Attorney General
17   and MICHAEL CHERTOFF, Secretary of
    Homeland Security,
18
           Defendants.
19

20   ——————————————————/

21

22                   I. INTRODUCTION

23      1. This class action for declaratory and injunctive relief seeks a judgment declaring that

24   defendants charge a fee for registering for temporary protective status (TPS) that exceeds the amount

25   permitted under 8 U.S.C. §1254a(c)(1)(B).

26      It seeks to enjoin defendants from charging a fee for TPS registration, including a fee

27

28                     1

1  imposed for the collection of biometric information, that exceeds the $50.00 permitted under 8

2  U.S.C. §1254a(c)(1)(B), and to enjoin defendants to refund to plaintiffs and other class members fees

3  they previously remitted to register for TPS that exceeded the amount permitted under 8 U.S.C.

4  §1254a(c)(1)(B).

## II. JURISDICTION

6  2. The Court has jurisdiction over this action pursuant to 28 U.S.C. §1331.

7  3. 28 U.S.C. §1361 vests the Court with authority to compel defendant to refund fees

8  plaintiffs and other class members paid for the adjudication of their applications for TPS .

## III. NATURE OF ACTION

10  4. 8 U.S.C. §1254a vests the Attorney General and the Secretary of Homeland Security with

11  discretion to grant aliens TPS.

12  TPS is a temporary immigration status granted to eligible nationals of designated countries

13
14  (or parts thereof). In 1990, as part of the Immigration Act of 1990, P.L. 101-649, Congress

15  established a procedure by which the Attorney General may provide TPS to aliens in the United

16  States who are temporarily unable to safely return to their home country because of ongoing

17  armed conflict, an environmental disaster, or other extraordinary and temporary conditions. On

18
19  March 1, 2003, pursuant to the Homeland Security Act of 2002, Public Law 107-296, the

20  authority to designate a country (or part thereof) for TPS, and to extend and terminate TPS

21  designations, was transferred from the Attorney General to the Secretary of Homeland Security.

22  At the same time, responsibility for administering the TPS program was transferred from the

23  former Immigration and Naturalization Service to U.S. Citizenship and Immigration Services, a

24
25  component of the Department of Homeland Security. During the period for which a country has

26  been designated for TPS, TPS beneficiaries may remain in the United States and may obtain

27  work authorization.

28                                                    2

1   5. Pursuant to 8 U.S.C. §1254a(c)(1)(B) the Attorney General may require a reasonable

2   fee as a condition of registering for TPS, but that fee shall not exceed $50.00.

3

4   6. On January 5, 1999 the Attorney General designated Honduras for TPS. 64 FR 524.

5   Subsequent to that the Attorney General and the Secretary of Homeland Security have extended

6   TPS for Honduras seven times. The most recent extension is due to expire on January 5, 2009.

7

8   7. On January 5, 1999 the Attorney General designated Nicaragua  for TPS. 64 FR 526.

9   Subsequent to that the Attorney General and the Secretary of Homeland Security have extended

10  TPS for Nicaragua seven times. The most recent extension is due to expire on January 5, 2009.

11

12  8. On March 9, 2001 the Attorney General designated El Salvador for TPS. 66 FR

13  14214. Subsequent to that El Salvador's designation for TPS has been extended five times. The

14  most recent designation expires on March 9, 2009.

15  9. Notwithstanding the provisions of 8 U.S.C. §1254a(c)(1)(B), defendants have required

16  plaintiffs and other class members to remit fees in excess of $50.00 to register for TPS during

17  each of the TPS registration periods. In addition to the $50.00 fee defendants required plaintiffs

18  and other class members to remit with their initial TPS applications, defendants have imposed a

19  separate, additional service fee to collect biometric information.  8 C.F.R. §244.6.

20

21  10. Although the service fee defendant charges for the collection of biometric information

22  reflects both the costs of  biometric information collection and the costs associated with the use

23  of the collected biometric information for security and background checks, defendants do not

24  impose a reduced service fee for the collection of  biometric information when previously

25  collected biometric information can be, and are,  used again. Defendants have imposed a service

26

27

28                                              3

1  fee for the collection of biometric information when the collection of biometric information was

2  not required.

3

4    11. Judicial intervention is required to prohibit defendants from requiring the remittance

5  of fees for TPS that exceed the amount permitted under 8 U.S.C. §1254a(c)(1)(B) and to

6  compel defendants to refund the excessive fees plaintiffs and other class members have

7  previously remitted.

8

9                                    IV. PLAINTIFFS

10    12. Plaintiffs are nationals of El Salvador, Honduras, and Nicaragua whose TPS

11  applications established prima facie eligibility for TPS, and who were required by defendants to

12

13  remit fees in excess of $50.00 to register for TPS.

14    Plaintiff Jose Bautista-Perez is a national of Honduras. He registered for TPS on June 27,

15  2003 and was required to remit a filing fee in the amount of $100.00. He registered and applied

16  again on December 17, 2004 and was required to remit a filing fee in the amount of $70.00. He

17

18  registered and applied again on May 14, 2006 and was required to remit a filing fee in the amount

19  of $70.00. He registered and applied again on July 5, 2007 and was required to remit a filing fee

20  in the amount of $70..00. On July 27, 2007 plaintiff was served notice that although his previously

21  captured biometrics could be resused, the fee he paid to capture biometrics would not be

22  refunded.

23

24    Plaintiff Oscar Guardado-Gonzalez is a national of Honduras. He registered for TPS on

25  June 27, 2003 and was required to remit a filing fee in the amount of $100.00. He registered for

26  TPS on December 23, 2004 and was required to remit a filing fee in the amount of $70.00. He

27

28                                          4

registered for TPS on April 30, 2006 and was required to remit a filing fee in the amount of $70.00. He registered and applied again on June 18, 2007 and was required to remit a filing fee in the amount of $70.00. On July 6, 2007 plaintiff was served notice that although his previously captured biometrics could be resused, the fee he paid to capture biometrics would not be refunded.

Plaintiff Denis Caballero-Espinoza is a national of Nicaragua. He registered for TPS on May 14, 2006 and was required to remit a filing fee in the amount of $120.00.

Plaintiff Jose Alvarado-Menjivar is a national of El Salvador. He registered for TPS on September 5, 2002 and was required to remit a filing fee in the amount of $100.00. He registered for TPS on January 30, 2005 and was required to remit a filing fee in the amount of $70.00. He registered for TPS on July 16, 2006 and was required to remit a filing fee in the amount of $70.00.

Plaintiff Oscar Rene Ramos is a national of El Salvador. He registered for TPSon January 29, 2005 and was required to remit a filing fee in the amount of $70.00. He registered and applied again on July 10, 2006 and was required to remit a filing fee in the amount of $70.00.

Plaintiff Maria Salazar is a national of El Salvador. She registered for TPS on January 14, 2005 and was required to remit a filing fee in the amount of $70.00. She registered for TPS on July 10, 2006 and was required to remit a filing fee in the amount of $70.00.

Plaintiff Jose Benjamin Quinteros is a national of El Salvador. He registered for TPS on February 17, 2005 and was required to remit a filing fee in the amount of $70.00. He registered again on July 20, 2006 and was required to remit filing fees in the amount of $70.00.

Plaintiff Maria Josefa Cruz is a national of El Salvador. She registered for TPS on January

5

20, 2005 and was required to remit a filing fee in the amount of $70.00. She registered on July 20, 2006 and was required to remit a filing fee in the amount of $70.00.

## V. DEFENDANTS

13. Defendant Alberto R. Gonzales is the Attorney General of the United States and defendant Michael Chertoff is the Secretary of the Department of Homeland Security.

## VI. CLASS ACTION ALLEGATIONS

14. Plaintiffs bring this action on behalf of themselves and all other similarly situated.

15. The class consists of all nationals of El Salvador, Honduras, and Nicaragua who have submitted applications to register for TPS and who were required by defendants, as a condition to register for TPS, to remit a fee that exceeded the $50.00 permitted under 8 U.S.C. §1254a(c)(1)(B).

16. The numerosity requirements of F.R. Civ.P. 23(a)(1) are satisfied, in that the members of the class are so numerous as to make joinder impracticable. In designating El Salvador for TPS, the Attorney General estimated that 150,000 nationals of El Salvador residing in the United States would be eligible for benefits under the TPS program. In designating Honduras for TPS, the Attorney General estimated that 100,000 nationals of Honduras residing in the United States would be eligible for benefits under the TPS program. In designating Nicaragua for TPS, the Attorney General estimated that 45,000-70,000 nationals of Nicaragua residing in the United States would be eligible for benefits under the TPS program.

17. The requirements of F.R. Civ.P. 23(a)(2) are met in that defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final

6

injunctive relief, or corresponding declaratory relief with respect to the class as a whole, and because there are questions of law and fact common to the class.

18. Defendants act in a similar manner towards all class members by requiring each, as a condition to register for TPS, to remit a payment that exceeds the amount permitted under 8 U.S.C. §1254a(c)(1)(B), by imposing a separate, additional service fee for the collection of biometric information, and by imposing a service fee for the collection of biometrics when the collection of biometrics is not required. ·

19. Defendants' actions cause irreparable injury to the proposed class because defendants will not file and adjudicate an application for TPS registration unless the required fee is remitted, or an application for a fee waiver approved.

20. The requirements of F.R. Civ.P. 23(a)(3) and (4) are met because the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interests of the class.

21. The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

22. Permitting plaintiffs to maintain this action on behalf of the proposed class will bring the appropriate final injunctive relief or corresponding declaratory relief for the class as a whole.

## VII. FACTUAL ALLEGATIONS

23. Defendants are charged, by statute and regulation, with the duty to file and adjudicate applications for TPS registraton, and to accord TPS benefits to those aliens who establish

7

eligibility.

24. Pursuant to 8 U.S.C. §1254a(c)(1)(B) the Attorney General may require a reasonable fee as a condition of registering for TPS, but that fee shall not exceed $50.00.

25. Notwithstanding the provisions of 8 U.S.C. §1254a(c)(1)(B) defendants require an alien to remit fees in excess of $50.00 to register for TPS. In addition to the $50.00 payment an alien is required to remit with an initial application for TPS, defendants impose a separate, additional service fee to collect biometric information. 8 C.F.R. §244.6.

26. Plaintiffs and other class members are nationals of El Salvador, Honduras, and Nicaragua who submitted applications for TPS registration to defendant, and were required by defendants to remit payments that exceeded the amount permitted under 8 U.S.C. §1254a(c)(1)(B) to register for TPS. Defendants have required plaintiffs and other class members, as a condition to register for TPS, to remit a separate, additional service fee for the collection of biometric information.

27. Although the service fee defendants impose for the collection of biometric information represents both the costs of biometric collection and the costs associated with the use of the collected biometrics for security and background checks, defendants do not impose a reduced service fee for the collection of biometric information when previously collected biometric information can be, and are, used again. Defendants have imposed service fees for the collection of biometric information when the collection of biometric information was not required.

28. Plaintiffs and other class members have been unlawfully required to pay excessive fees for TPS benefits.

8

1  29. Plaintiffs and other class members have suffered irreparable injury because of the

2  unlawful acts of defendants complained of herein.

3

4  30. Plaintiffs and other class members have exhausted all administrative remedies

5  available and have determined that no adequate administrative remedy exists.

6  ## VIII. PRAYER FOR RELIEF

7

8  WHEREFORE, plaintiffs pray judgment.

9  1) Entering an order pursuant F.R.Civ. P. 23 that this action be maintained as a class

10  action;

11

12  2). Declaring that 8 U.S.C. §1254a(c)(1)(B) prohibits defendants from imposing, as a

13  condition to register for TPS, a separate, additional service fee for the collection of biometric

14  information if the total fee charged to register for TPS would then exceed $50.00.

15

16  3) Declaring invalid those parts of 8 C.F.R. §244.6 that require plaintiffs and other class

17  members to remit a separate, additional service fee for the collection of biometric information if

18  the total fee charged to register for TPS would then exceed the $50.00 permitted under 8 U.S.C.

19  §1254a(c)(1)(B).

20

21  4) Enjoining defendants from imposing, as a condition to register for TPS, a separate,

22  additional service fee for the collection of biometric information if the total fee charged to register

23  for TPS would then exceed the $50.00 permitted under 8 U.S.C. §1254a(c)(1)(B).

24

25  5) Enjoining defendants from imposing, as a condition to register for TPS, a fee for the

26  collection of biometric information when the collection of biometric information is not required.

27

28  9

6) Enjoining defendants to refund all fees paid by plaintiffs and other class members to register for TPS and to collect biometric information that have exceeded the $50.00 permitted under 8 U.S.C. §1254a(c)(1)(B).

7) Enjoining defendants to refund all service fees paid by plaintiffs and other class members for the collection of biometric information when the collection of biometric information was not required.

8) Awarding plaintiffs and other class members their costs and reasonable attorney's fees incurred in this action.

9) Granting such other and further relief as may be appropriate.

Dated: August 21, 2007

Respectfully submitted,

JONATHAN M. KAUFMAN
Attorney for Plaintiffs

10

# EXHIBIT B

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, 6701 Rockledge Drive, Bethesda, MD 20892 (Telephone Conference Call).

*Contact Person:* Biao Tian, PhD, Scientific Review Administrator, Center for Scientific Review, National Institutes of Health, 6701 Rockledge Drive, Room 3166, MSC 7848, Bethesda, MD 20892, 301–402–4411, *tianbi@csr.nih.gov.*

(Catalogue of Federal Domestic Assistance Program Nos. 93.306, Comparative Medicine; 93.333, Clinical Research; 93.306, 93.333, 93.337, 93.393–93.396, 93.837–93.844, 93.846–93.878, 93.892, 93.893, National Institutes of Health, HHS).

Dated: August 13, 2007.

**Jennifer Spaeth,**

*Director, Office of Federal Advisory Committee Policy.*

[FR Doc. 07–4072 Filed 8–20–07; 8:45 am]

**BILLING CODE 4140–01–M**

---

## DEPARTMENT OF HOMELAND SECURITY

### U.S. Citizenship and Immigration Services

**[CIS No. 2411–07; DHS Docket No. USCIS–2007–0028]**

**RIN 1615–ZA50**

### Extension of the Designation of El Salvador for Temporary Protected Status; Automatic Extension of Employment Authorization Documentation for Salvadoran TPS Beneficiaries

**AGENCY:** U.S. Citizenship and Immigration Services, DHS.

**ACTION:** Notice of extension of temporary protected status designation of El Salvador.

**SUMMARY:** This Notice announces that the designation of El Salvador for Temporary Protected Status (TPS) has been extended for 18 months to March 9, 2009, from its current expiration date of September 9, 2007. This Notice also sets forth procedures necessary for nationals of El Salvador (or aliens having no nationality who last habitually resided in El Salvador) with TPS to re-register and to apply for an extension of their Employment Authorization Documents (EADs) for the additional 18-month period. Re-registration is limited to persons who have previously registered for TPS under the designation of El Salvador and whose application has been granted or remains pending. Certain nationals of El Salvador (or aliens having no nationality who last habitually resided in El Salvador) who have not previously

applied for TPS may be eligible to apply under the late initial registration provisions.

Given the timeframes involved with processing TPS re-registrants, the Department of Homeland Security (DHS) recognizes that re-registrants may not receive a new EAD until after their current EAD expires on September 9, 2007. Accordingly, this Notice automatically extends the validity of EADs issued under the TPS designation of El Salvador for 6 months, through March 9, 2008, and explains how TPS beneficiaries and their employers may determine which EADs are automatically extended. New EADs with the March 9, 2009 expiration date will be issued to eligible TPS beneficiaries who timely re-register and apply for an EAD.

**DATES:** The extension of the TPS designation of El Salvador is effective September 10, 2007, and will remain in effect until 11:59 p.m. on March 9, 2009. The 60-day re-registration period begins August 21, 2007, and will remain in effect until October 22, 2007. To facilitate processing of applications, applicants are strongly encouraged to file as soon as possible after the start of the 60-day re-registration period beginning on August 21, 2007.

**FOR FURTHER INFORMATION CONTACT:** Shelly Hock, Status and Family Branch, Office of Service Center Operations, U.S. Citizenship and Immigration Services, Department of Homeland Security, 20 Massachusetts Avenue, NW., 2nd Floor, Washington, DC 20529, telephone (202) 272–1533. This is not a toll-free call. Further information will also be available at local USCIS offices upon publication of this Notice and on the USCIS Web site at *http:// www.uscis.gov.* Note: the phone number provided here is solely for questions regarding this notice and the information contained herein. It is not for individual case status inquiries. Applicants seeking information about the status of their individual case can look up their case in Case Status Online available at the USCIS Web site listed above, or applicants may call the USCIS National Customer Service Center at 1–800–375–5283 (TTY 1–800–767–1833).

**SUPPLEMENTARY INFORMATION:**

## Abbreviations and Terms Used in This Document

Act—Immigration and Nationality Act.
ASC—USCIS Application Support Center.
DHS—Department of Homeland Security.
DOS—Department of State.
EAD—Employment Authorization Document.

Secretary—Secretary of Homeland Security.
TPS—Temporary Protected Status.
USCIS—U.S. Citizenship and Immigration Services.

## What authority does the Secretary of Homeland Security have to extend the designation of El Salvador for TPS?

Section 244(b)(1) of the Immigration and Nationality Act (Act), 8 U.S.C. 1254a(b)(1), authorizes the Secretary of Homeland Security (Secretary), after consultation with appropriate agencies of the Government, to designate a foreign state (or part thereof) for TPS. The Secretary may then grant TPS to eligible nationals of that foreign state (or aliens having no nationality who last habitually resided in that state). 8 U.S.C. 1254a(a)(1)(A).

At least 60 days before the expiration of the TPS designation, or any extension thereof, the Secretary, after consultations with appropriate agencies of the Government, must review the conditions in a foreign state designated for TPS to determine whether the conditions for the TPS designation continue to be met and, if so, the length of an extension. 8 U.S.C. 1254a(b)(3)(A), (C). If the Secretary determines that the foreign state no longer meets the conditions for the TPS designation, he must terminate the designation. 8 U.S.C. 1254a(b)(3)(B).

## Why did the Secretary decide to extend the TPS designation of El Salvador?

On March 19, 2001, the Attorney General published a Notice in the **Federal Register**, at 66 FR 14214, designating El Salvador for TPS due to the devastation caused by a series of severe earthquakes. Subsequent to that date, the Attorney General and the Secretary have extended TPS for El Salvador four times, determining in each instance that the conditions warranting the designation continued to be met. 67 FR 46000 (July 1, 2002); 68 FR 42071 (July 16, 2003); 70 FR 1450 (Jan. 7, 2005); 71 FR 34637 (June 15, 2006). The most recent extension became effective on September 9, 2006, and is due to expire on September 9, 2007.

On February 1, 2007, the Government of El Salvador requested an extension of the TPS designation of El Salvador. Over the past year, DHS and the Department of State (DOS) have continued to review conditions in El Salvador. Based on this review, the Secretary has concluded that an 18-month extension is warranted because there continues to be a substantial, but temporary, disruption in living conditions in El Salvador resulting from

the earthquakes that struck the country in 2001, and El Salvador remains unable, temporarily, to adequately handle the return of its nationals, as is required for TPS designations based on environmental disasters. 8 U.S.C. 1254a(b)(1)(B).

There has been a great deal of reconstruction, and significant recovery has been realized in repairing the more than 2,300 kilometers of major roads and highways that were severely damaged by the earthquakes. By the end of July 2004, it was reported that all major roads appeared to have been reconstructed and were functioning. However, despite this progress, current conditions in El Salvador still reflect much of the destruction caused by the earthquakes, and other critical infrastructure remains damaged or destroyed, particularly in the area of health care.

In 2006, the Salvadoran government released its final assessment that 276,594 houses were affected by the 2001 earthquakes (166,529 destroyed and 110,065 damaged). At the end of 2004, USAID completed its earthquake reconstruction program, including the construction of 26,872 houses, and in February 2005, it was reported that in San Vicente and Cuscatlán, two of the most affected departments, 80 percent and 85 percent, respectively, of the damaged housing had been reconstructed. As of February 2007, the Salvadoran government stated that nearly 50 percent of the total number of houses destroyed or damaged by the earthquakes (136,988 houses), had been reconstructed or repaired. A housing program funded by the European Union, which was started in 2004 (5,500 houses), was almost complete, and a housing program funded by the Inter-American Development Bank (3,500 houses) was still underway, with a target date for completion set later in 2007.

Eight hospitals and 113 of the 361 health facilities, representing 55 percent of the country's capacity to deliver health services, were severely damaged by the earthquakes. Although the Ministry of Health reported that 95 percent of community health centers damaged or destroyed by the earthquakes had been rebuilt,

reconstruction of damaged hospitals has faced repeated delays. As of February 2007, reconstruction of two of the country's seven main hospitals had begun, with reconstruction of the other five still in either the design or bidding stages. Completion of the reconstruction of these seven facilities is targeted for 2009.

Based upon this review, the Secretary finds, after consultation with the appropriate Government agencies, that the conditions that prompted the designation of El Salvador for TPS continue to be met. See 8 U.S.C. 1254a(b)(3)(A). There continues to be a substantial, but temporary, disruption in living conditions in El Salvador as the result of an environmental disaster, and El Salvador continues to be unable, temporarily, to handle adequately the return of its nationals. See 8 U.S.C. 1254a(b)(1)(B). The Secretary also finds that it is not contrary to the national interest of the United States to permit aliens who meet the eligibility requirements of TPS to remain in the United States temporarily. See 8 U.S.C. 1254a(b)(1)(C). On the basis of these findings, the Secretary concludes that the designation of El Salvador for TPS should be extended for an additional 18-month period. See 8 U.S.C. 1254a(b)(3)(C).

**Notice of Extension of the TPS Designation of El Salvador**

By the authority vested in me as Secretary of Homeland Security under section 244 of the Act, 8 U.S.C. 1254a, I have determined, after consultation with the appropriate Government agencies, that the conditions that prompted designation of El Salvador for TPS in March 2001 continue to be met. See 8 U.S.C 1254a(b)(3)(A). There are approximately 234,000 nationals of El Salvador (or aliens having no nationality who last habitually resided in El Salvador) who have been granted TPS and who may be eligible for re-registration. Accordingly, I am extending the TPS designation of El Salvador for 18 months from September 10, 2007 to March 9, 2009. For instructions on this extension, please refer to the following attachments, which include filing and eligibility requirements for Temporary Protected

Status and Employment Authorization Documents.

**Michael Chertoff,**
*Secretary.*

**Temporary Protected Status Filing Guidelines**

*Do I need to re-register for TPS if I currently have benefits through the designation of El Salvador for TPS, and would like to maintain them?*

Yes. If you already have received TPS benefits through the TPS designation of El Salvador, your benefits will expire at 11:59 p.m. on September 9, 2007. All TPS beneficiaries must comply with the re-registration requirements described in this Notice in order to maintain TPS benefits through March 9, 2009. TPS benefits include temporary protection against removal from the United States and employment authorization during the TPS designation period. 8 U.S.C. 1254a(a)(1). Failure to re-register without good cause will result in the withdrawal of your temporary protected status and possibly your removal from the United States. 8 U.S.C. 1254a(c)(3)(C).

*If I am currently registered for TPS or have a pending application for TPS, how do I re-register to renew my benefits for the duration of the extension period?*

Please submit the proper forms and fees according to Table 1 below. All applicants are strongly encouraged to pay close and careful attention when filling out the required forms to help ensure that their dates of birth, alien registration numbers, spelling of their names, and other required information is correctly entered to the forms. Aliens who have previously registered for TPS, but whose applications remain pending, should follow these instructions if they wish to renew their TPS benefits. All TPS re-registration applications submitted without the required fees will be returned to the applicant. All fee waiver requests should be filed in accordance with 8 CFR 244.20. If you received an EAD during the most recent registration period, please submit a photocopy of the front and back of your EAD.

TABLE 1.—APPLICATION FORMS AND APPLICATION FEES

| If | And | Then |
|---|---|---|
| You are re-registering for TPS | You are applying for an extension of your EAD valid through March 9, 2009. | You must complete and file the Form I–765, Application for Employment Authorization, with the fee of $340 or a fee waiver request. You must also submit Form I–821, Application for Temporary Protected Status, with no fee. |

TABLE 1.—APPLICATION FORMS AND APPLICATION FEES—Continued

| If | And | Then |
|---|---|---|
| You are re-registering for TPS ........................... | You are NOT applying for renewal of your EAD. | You must complete and file the Form I–765 with no fee and Form I–821 with no fee. Note: DO NOT check any box for the question "I am applying for" listed on Form I–765, as you are NOT requesting an EAD benefit. |
| You are applying for TPS as a late initial registrant and you are between the ages of 14 and 65 (inclusive). | You are applying for a TPS-related EAD ........ | You must complete and file Form I–821 with the $50 fee or fee waiver request and Form I–765 with the fee of $340 or a fee waiver request. |
| You are applying for TPS as a late initial registrant and are under age 14 or over age 65. | You are applying for a TPS-related EAD ........ | You must complete and file Form I–821 with the $50 fee or fee waiver request. You must also submit Form I–765 with no fee. |
| You are applying for TPS as a late initial registrant, regardless of age. | You are NOT applying for an EAD ................... | You must complete and file Form I–821 with the $50 fee or fee waiver request and Form I–765 with no fee. |
| Your previous TPS application is still pending ... | You are applying to renew your temporary treatment benefits (i.e., an EAD with category "c-19" on its face). | You must complete and file the Form I–765 with the fee of $340 or a fee waiver request. You must also submit Form I–821, Application for Temporary Protected Status, with no fee. |

Certain applicants must also submit a Biometric Service Fee (See Table 2).

TABLE 2.—BIOMETRIC SERVICE FEES

| If | And | Then |
|---|---|---|
| You are 14 years of age or older ........................ | 1. You are re-registering for TPS, or .............. 2. You are applying for TPS under the late initial registration provisions, or 3. Your TPS application is still pending and you are applying to renew temporary treatment benefits (i.e., EAD with category "C–19" on its face) | You must submit a Biometric Service fee of $80 as defined in 8 CFR 103.7 or a fee waiver request. |
| You are younger than 14 years of age .............. | You are applying for an EAD. .......................... | You must submit a Biometric Service fee of $80 as defined in 8 CFR 103.7 or a fee waiver request. |
| You are younger than 14 years of age .............. | You are NOT applying for an EAD .................. | You do NOT need to submit a Biometric Service fee. |

*What edition of the form I–821 should I submit?*

Only the edition of Form I–821 dated November 5, 2004, or later will be accepted. The revision date can be found in the bottom right corner of the form. The proper form can be found on the Internet at *http://www.uscis.gov* or by calling the USCIS forms hotline at 1–800–870–3676.

*Where should I submit my application for TPS?*

Please reference Table 3 below to see where to mail your specific application.

TABLE 3.—APPLICATION MAILING DIRECTIONS

| If | Then mail to | Or, for non-United States Postal Service (USPS) deliveries, mail to |
|---|---|---|
| You are applying for re-registration or applying to renew your temporary treatment benefits. | U.S. Citizenship and Immigration Services, Attn: TPS El Salvador, P.O. Box 8635, Chicago, IL 60680–8635. | U.S. Citizenship and Immigration Services, Attn: TPS El Salvador, 427 S. LaSalle—3rd Floor, Chicago, IL 60605–1029. |
| You are applying for TPS for the first time, as a late initial registrant, or you were granted TPS by an Immigration Judge or the Board of Immigration Appeals. | U.S. Citizenship and Immigration Services, Attn: TPS El Salvador, P.O. Box 8670, Chicago, IL 60680–8670. | U.S. Citizenship and Immigration Services, Attn: TPS El Salvador, [EOIR/Additional Documents] or [Late Initial Registrant], 427 S. LaSalle—3rd Floor, Chicago, IL 60605–1029. |

*How will I know if I need to submit supporting documentation with my application package?*

See Table 4 below to determine if you need to submit supporting documentation.

TABLE 4.—WHO SHOULD SUBMIT SUPPORTING DOCUMENTATION?

| If | Then |
|---|---|
| One or more of the questions listed in Part 4, Question 2 of Form I–821 applies to you. | You must submit an explanation, on a separate sheet(s) of paper, and/or additional documentation must be provided. You may NOT file electronically. |
| You were granted TPS by an Immigration Judge or the Board of Immigration Appeals. | You must include evidence of the grant of TPS (such as an order from the Immigration Judge) with your application package. You may NOT file electronically. |

*Can I file my application electronically?*

If you are filing for re-registration and *do not* need to submit supporting documentation with your application, you may file your application electronically. To file your application electronically, follow directions on the USCIS Web site at: *http://www.uscis.gov.*

*What is late initial registration?*

Some persons may be eligible for late initial registration under 8 CFR 244.2. In order to be eligible for late initial registration, an applicant must:

(1) Be a national of El Salvador (or an alien who has no nationality and who last habitually resided in El Salvador);

(2) Have continuously resided in the United States since February 13, 2001;

(3) Have been continuously physically present in the United States since March 9, 2001; and

(4) Be both admissible as an immigrant, except as provided under section 244(c)(2)(A) of the Immigration and Nationality Act (Act), and not ineligible under section 244(c)(2)(B) of the Act.

Additionally, the applicant must be able to demonstrate that, during the initial registration period (from March 9, 2001 to September 9, 2002), he or she:

(1) Was a nonimmigrant or had been granted voluntary departure status or any relief from removal;

(2) Had an application for change of status, adjustment of status, asylum, voluntary departure, or any relief from removal or change of status pending or subject to further review or appeal;

(3) Was a parolee or had a pending request for reparole; or

(4) Is the spouse or child of an alien currently eligible to be a TPS registrant.

An applicant for late initial registration must file an application for late registration no later than 60 days after the expiration or termination of the conditions described above. 8 CFR 244.2(g). All late initial registration applications for TPS, pursuant to the

designation of El Salvador, should be submitted to the appropriate address in Chicago, Illinois as defined in Table 3.

*Are certain aliens ineligible for TPS?*

Yes. There are certain criminal and terrorism-related inadmissibility grounds that render an alien ineligible for TPS. *See* 8 U.S.C. 1254a(c)(2)(A)(iii). Further, aliens who have been convicted of any felony or two or more misdemeanors committed in the United States are ineligible for TPS under section 244(c)(2)(B)(i) of the Act, 8 U.S.C. 1254a(c)(2)(B)(i), as are aliens described in the bars to asylum in section 208(b)(2)(A) of the Act, 8 U.S.C. 1158(b)(2)(A). *See* 8 U.S.C. 1254a(c)(2)(B)(ii).

*If I currently have TPS, can I lose my TPS benefits?*

An individual granted TPS will have his or her TPS withdrawn if the alien is not in fact eligible for TPS, if the alien fails to timely re-register for TPS without good cause, or if the alien fails to maintain continuous physical presence in the United States. *See* 8 U.S.C. 1254a(c)(3)(A)–(C).

*Does TPS lead to lawful permanent residence?*

No. TPS is a temporary benefit that does not lead to lawful permanent residence or confer any other immigration status. 8 U.S.C. 1254a, (f)(1), and (h). When a country's TPS designation is terminated, TPS beneficiaries will maintain the same immigration status that they held prior to TPS (unless that status has since expired or been terminated), or any other status they may have acquired while registered for TPS. Accordingly, if an alien held no lawful immigration status prior to being granted TPS and did not obtain any other status during the TPS period, he or she will revert to unlawful status upon the termination of the TPS designation. Once the Secretary determines that a TPS designation

should be terminated, aliens who had TPS under that designation are expected to plan for their departure from the United States.

*May I apply for another immigration benefit while registered for TPS?*

Yes. Registration for TPS does not prevent you from applying for non-immigrant status, filing for adjustment of status based on an immigrant petition, or applying for any other immigration benefit or protection. 8 U.S.C. 1254a(a)(5). For the purposes of change of status and adjustment of status, an alien is considered as being in, and maintaining, lawful status as a nonimmigrant during the period in which the alien is granted TPS. *See* 8 U.S.C. 1254a(f)(4).

*How does an application for TPS affect my application for asylum or other immigration benefits?*

An application for TPS does not affect an application for asylum or any other immigration benefit. Denial of an application for asylum or any other immigration benefit does not affect an applicant's TPS eligibility, although the grounds for denying one form of relief may also be grounds for denying TPS. For example, a person who has been convicted of a particularly serious crime is not eligible for asylum or TPS. *See* 8 U.S.C. 1158(b)(2)(A)(ii) and 8 U.S.C. 1254a(c)(2)(B)(ii).

*Does this extension allow nationals of El Salvador (or aliens having no nationality who last habitually resided in El Salvador) who entered the United States after February 13, 2001, to file for TPS?*

No. An extension of a TPS designation does not change the required dates of continuous residence and continuous physical presence in the United States. This extension does not expand TPS eligibility to those that are not eligible currently. To be eligible for benefits under this extension, nationals

of El Salvador (or aliens having no nationality who last habitually resided in El Salvador) must have continuously resided in the United States since February 13, 2001 and been continuously physically present in the United States since March 9, 2001, the date of the current designation of El Salvador for TPS.

**Employment Authorization Document Automatic Extension Guidelines**

*Who is eligible to receive an automatic extension of his or her EAD from September 9, 2007 to March 9, 2008?*

To receive an automatic extension of an EAD, an individual must be a national of El Salvador (or an alien having no nationality who last habitually resided in El Salvador) who has applied for and received an EAD under the designation of El Salvador for TPS and who has not had TPS withdrawn or denied. This automatic extension is limited to: (1) EADs issued on Form I–766, Employment Authorization Document, bearing an expiration date of either July 5, 2006, or September 9, 2006, on the face AND that have a September 2007 DHS-issued extension sticker on the back of the card; and (2) EADs issued on Form I–766, Employment Authorization Document, bearing an expiration date of September 30, 2007. These EADs must also bear the notation "A–12" or "C–19" on the face card under "Category."

*If I am currently registered under the designation of El Salvador for TPS and am re-registering for TPS, how do I receive an extension of my ead after the automatic six-month extension?*

TPS re-registrants will receive a notice in the mail with instructions as to whether or not they will be required to appear at a USCIS Application Support Center (ASC) for biometrics collection. To increase efficiency and improve customer service, whenever possible USCIS will reuse previously-captured biometrics and conduct the security checks using those biometrics, such that you may not be required to appear at an ASC.

Regardless of whether you are required to appear at an ASC, you are required to pay the biometrics fee during this re-registration. The fee will cover the USCIS costs associated with the use of the collected biometrics for FBI and other background checks. USCIS fees fund the cost of processing applications and petitions for immigration benefits and services, and USCIS' associated operating costs. A detailed description of how USCIS developed its current fee schedule is

contained in the proposed rule Adjustment of the Immigration and Naturalization Benefit Application and Petition Fee Schedule, at 72 FR 4888 (Feb. 1, 2007). The fee schedule was established in a final rule on May 30, 2007. 72 FR 29851.

If you are required to report to an ASC, you must bring the following documents: (1) Your receipt notice for your re-registration application; (2) your ASC appointment notice; and (3) your current EAD. If no further action is required for your case, you will receive a new EAD by mail valid through March 9, 2009. If your case requires further resolution, USCIS will contact you in writing to explain what additional information, if any, is necessary to resolve your case. Once your case is resolved and if your application is approved, you will receive a new EAD in the mail with an expiration date of March 9, 2009.

*May I request an interim EAD at my local district office?*

No. USCIS will not be issuing interim EADs to TPS applicants and re-registrants at District Offices.

*How may employers determine whether an EAD has been automatically extended for six months through March 9, 2008, and is therefore acceptable for completion of the Form I–9?*

An EAD that has been automatically extended for six months by this Notice through March 9, 2008, will be a Form I–766 bearing the notation "A–12" or "C–19" on the face of the card under "Category," and either: (1) Have an expiration date of July 5, 2006, or September 9, 2006 on the face of the card, and a September 2007 DHS-issued extension sticker on the back; or (2) have an expiration date of September 30, 2007 on the face of the card. New EADs or extension stickers showing the March 9, 2008, expiration date of the six-month automatic extension will not be issued. Employers should not request proof of Salvadoran citizenship.

Employers should accept an EAD as a valid "List A" document and not ask for additional Form I–9, Employment Eligibility Verification documentation if presented with an EAD that has been extended pursuant to this **Federal Register** Notice, and the EAD reasonably appears on its face to be genuine and to relate to the employee. This does not affect the right of an applicant for employment or an employee to present any legally acceptable document as proof of identity and eligibility for employment.

**Note to Employers:** Employers are reminded that the laws requiring

employment eligibility verification and prohibiting unfair immigration-related employment practices remain in full force. This Notice does not supersede or in any way limit applicable employment verification rules and policy guidance, including those setting forth re-verification requirements. *See* 8 CFR 274a.2(b)(1)(vii). For questions, employers may call the USCIS Office of Business Liaison Employer Hotline at 1–800–357–2099. Also, employers may call the U.S. Department of Justice Office of Special Counsel for Immigration Related Unfair Employment Practices (OSC) Employer Hotline at 1–800–255–8155 or 1–800–362–2735 (TDD). Employees or applicants may call the OSC Employee Hotline at 1–800–255–7688 or 1–800–237–2515 (TDD) for information regarding the automatic extension. Additional information is available on the OSC Web site at *http://www.usdoj.gov/crt/osc/index.html.*

*How may employers determine an employee's eligibility for employment once the automatic six-month extension expires on March 9, 2008?*

Eligible TPS aliens will possess an EAD with an expiration date of March 9, 2009. The EAD will be a Form I–766 bearing the notation "A–12" or "C–19" on the face of the card under "Category," and should be accepted for the purposes of verifying identity and employment authorization.

*What documents may a qualified individual show to his or her employer as proof of employment authorization and identity when completing Form I–9, employment eligibility verification?*

During the first six months of this extension, qualified individuals who have received a six-month automatic extension of their EADs by virtue of this **Federal Register** Notice may present their TPS-based EAD to their employer, as described above, as proof of identity and employment authorization through March 9, 2008. To minimize confusion over this extension at the time of hire or re-verification, qualified individuals may also present a copy of this **Federal Register** Notice regarding the automatic extension of employment authorization documentation through March 9, 2008.

After the first six months of this extension, and continuing until the end of the extension period, March 9, 2009, a qualified individual may present a new EAD valid through March 9, 2009.

In the alternative, any legally acceptable document or combination of documents listed in List A, List B, or List C of the Form I–9 may be presented as proof of identity and employment eligibility.

[FR Doc. E7–16092 Filed 8–20–07; 8:45 am]
**BILLING CODE 4410–10–P**