SCOTT N. SCHOOLS, SC SBN 9990
United States Attorney
JOANN M. SWANSON, CSBN 88143
Assistant United States Attorney
Chief, Civil Division
ILA C. DEISS, NY SBN 3052909
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-7124
    FAX: (415) 436-7169

LYLE D. JENTZER, NY SBN 1612662
Senior Litigation Counsel
Office of Immigration Litigation
U.S. Department of Justice, Civil Division

  P.O. Box 878, Ben Franklin Station
  Washington, D.C. 20044
  (202) 305-0192
  FAX: (202) 305-7249

J. MAX WEINTRAUB, VSBN 36188
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice, Civil Division

  P.O. Box 878, Ben Franklin Station
  Washington, DC 20044
  (202) 305-7551
  FAX: (202) 305-7249

Attorneys for Respondents

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| JOSE BAUTISTA-PEREZ, *et al.*, | ) | No. C 07-4192 TEH |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|   v. | ) | DECLARATION OF BARBARA VELARDE |

| | |
|---|---|
| PETER D. KEISLER,<br>Acting Attorney General, *et al.*,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) |

I, Barbara Velarde, hereby declare:

I am Chief of Service Center Operations for the United States Citizenship and Immigration Services (USCIS) in the Department of Homeland Security (DHS). I am a supervisor and member of the USCIS executive management team located in Washington, D.C. . Among my many duties, I manage and oversee the Temporary Protected Status (TPS) program. Prior to becoming Chief, I was a Branch Chief for Special Projects which included oversight of the TPS Central American re-registration in 2005. In that capacity and based on reasonable inquiry and my knowledge, information and belief, I state the following:

(1)   In the Immigration Act of 1990, Congress established the criteria for countries to be designated for TPS purposes and for eligible aliens to qualify for TPS protection. TPS enables aliens in the United States who are temporarily unable to return safely to their home country because of ongoing armed conflict, an environmental disaster, or other extraordinary and temporary conditions to obtain temporary legal status in the United States. *See* 8 U.S.C. 1254a. Congress originally placed the authority over the TPS program in the Department of Justice under the Attorney General. After the establishment of DHS in March 2003, the authority to designate a country for TPS, and to extend and terminate TPS country designations, was transferred from the Attorney General to the Secretary of Homeland Security ("the Secretary"). In 2007 alone, seven countries have been under TPS designations for all or part of the year: Honduras, Nicaragua, El Salvador, Somalia, Sudan, Burundi, and Liberia.

(2)   USCIS has primary authority within DHS for administering the TPS program, including the receipt and adjudication of TPS initial registration and annual re-registration applications. TPS is only granted to qualifying nationals of specific countries that have been designated for TPS purposes by the Secretary, or to qualifying persons having no nationality who last resided in a TPS designated country. During the period for which a country has been designated for TPS,

2

beneficiaries of TPS may remain in the United States and may obtain work authorization.

(3) After the Secretary decides to designate a country for TPS, DHS publishes a <u>Federal Register</u> notice that announces the country designation and describes the initial registration procedures that applicants must follow, including the time period during which they must submit their initial applications for TPS. The notice also states the duration of time that the Secretary has determined to designate the country for TPS, which is also the period of TPS status that will be granted to eligible nationals of that country (or persons having no nationality who last resided in the designated country) who apply.

(4) Individuals who wish to obtain TPS must file Form I-821 ("Application for Temporary Protected Status") with USCIS/DHS and submit required supporting documentation, a registration fee, a biometrics services fee if the applicant is age 14 or older, a Form I-765 ("Application for Employment Authorization" (EAD)), and the fee for that Form I-765 *if* the person desires to receive an EAD and is 14 to 65 years old (inclusive). All applicants must comply with the accompanying application form instructions and any additional published instructions that pertain to the applicant's TPS-designated country. Such additional instructions are published in the <u>Federal Register</u> and typically posted on the USCIS website.

(5) TPS applicants submit a one-time only registration fee of $50 with their initial Form I-821. This registration fee is sometimes referred to as the "application fee" or "filing fee." All TPS applicants age 14 and older must also pay the biometric services fee that is required under 8 C.F.R. § 103.7(b). If an applicant is under age 14 and requests an EAD, which contains biometric identifiers, then the biometric fee is required of that applicant, too. The biometrics fee is distinct and separate from the applicant's TPS registration fee.

(6) The biometric fee increased from $70 to $80 on July 30, 2007 when USCIS' latest comprehensive fee regulation became effective. In the *Federal Register* notices that DHS publishes regarding TPS registration periods, the fee tables for applicants separately describe the biometric fee and who must pay it. *See, e.g.,* 72 Fed. Reg. 46649-01 (August 21, 2007). Applicants for any immigration benefit that requires biometrics are required to pay this fee, or, as of July 30, 2007, they may submit a fee waiver request if they do not have the ability

to pay it. If a person wants an EAD, the current fee for the card is $340 since the July 30th fee increases, but was $180 prior to that increase.

(7) Biometrics (*e.g.*, fingerprints, photographs, electronic signatures) are required from TPS applicants who are age 14 and older. Biometrics are used for several purposes, including identity verification, Federal Bureau of Investigation (FBI) background and security checks (including criminal history record checks), and production of secure documentation for the individual containing his or her biometric identifiers. In addition, biometrics are used for identity verification and comparison when the person enters the United States at ports of entry or if he or she is encountered during immigration enforcement activities. USCIS, in conjunction with other DHS components, is also in the process of expanding the use of an individual's biometrics for purposes of preventing immigration fraud, verifying the identity of a person when he or she submits additional immigration applications and petitions, and increasing the use of biometric identifiers in immigration documentation.

(8) Aliens who are granted TPS, must re-register with USCIS during each period that the Secretary determines, as long as a country remains under TPS designation, including any extensions of such designation as determined by the Secretary. In accordance with TPS laws and regulations, USCIS publishes a *Federal Register* notice for each designated country, describing the annual re-registration procedures and application filing period, which is usually 60 days. When the notice announces an extension of a country's TPS designation, that notice also usually provides the procedures for individuals who are eligible to file their initial TPS applications late (*i.e.*, "late initial filers") under regulations at 8 C.F.R. § 244.2(f)(2). When filing the Form I-821 for annual re-registration purposes, current TPS beneficiaries are not required to re-pay the $50 registration fee when they re-register; that fee is only required when an individual files his or her initial application requesting TPS.

(9) A person granted TPS continues to maintain his or her TPS status until that status is withdrawn (sometimes termed "revoked") or until his country's designation is terminated by the Secretary. If the beneficiary's TPS annual re-registration application is denied and TPS status is withdrawn, the individual may seek appeal to USCIS' Administrative Appeals Office (AAO) in some cases, as described in 8 C.F.R. §244.10. If the individual has not obtained another form of lawful immigration status and is placed in removal proceedings, he or she may seek *de novo* review by a Department of Justice (DOJ) Immigration Judge of

USCIS' denial of his TPS application and withdrawal of his TPS status. If he or she is unsuccessful at that level, he or she can appeal the decision to the DOJ Board of Immigration Appeals (BIA). Individuals whose initial TPS applications are denied by USCIS have similar administrative appeal rights and may request that an Immigration Judge grant them TPS, with opportunity to appeal a denial to the BIA.

(10)  On January 5, 1999, the Attorney General designated Honduras for TPS.  The TPS designation for Honduras has been extended seven times. The latest annual re-registration period for Honduran TPS recipients ran from May 29, 2007, through July 30, 2007.  On May 29, 2007, DHS published a Federal Register notice containing information on the Secretary's recent determination to extend the TPS country designation of Honduras until January 5, 2009, and the re-registration procedures for individuals holding Honduran TPS status. *See* 72 Fed. Reg. 29529-02 (May 29, 2007).

(11)  On January 5, 1999, the Attorney General designated Nicaragua for TPS.  The TPS designation for Nicaragua has been extended seven times. The most recent TPS extension will expire on January 5, 2009.  The latest annual re-registration period for Nicaraguan TPS recipients ran from May 29, 2007, through July 30, 2007.  On May 29, 2007, DHS published a Federal Register notice containing information on the Secretary's recent determination to extend the TPS country designation of Nicaragua until January 5, 2009, and the re-registration procedures for individuals holding Nicaraguan TPS status. *See* 72 Fed. Reg. 29534-01 (May 29, 2007).

(12)  On March 9, 2001, the Attorney General designated El Salvador for TPS.  The TPS designation for El Salvador has been extended five times.  The most recent TPS extension will expire on March 9, 2009.  On August 21, 2007, DHS published a Federal Register notice containing information on the Secretary's recent determination to extend the TPS country designation of El Salvador until March 9, 2009, and the re-registration procedures for individuals holding Salvadoran TPS status. *See* 72 Fed. Reg. 46649-01  (August 21, 2007).

(13)  For the most recent Honduras and Nicaragua re-registration periods, the biometric services fee was $70 for most of the 60-day re-registration period until that fee increased to $80 on July 30, 2007 when the recent USCIS final fees regulation became effective.  The increase in the biometrics services fee was part of the fee adjustments made to many different immigration benefits and services.

*See* 72 Fed Reg. 29851 (published May 30, 2007). The fee regulation also implemented a provision for individuals to request a waiver of the biometric fee, based on an inability to pay. The new $80 biometric fee or a fee waiver request was required of any TPS beneficiary who re-registered, or who was a late initial filer, on the last day, July 30, 2007, of the recently-closed Honduran or Nicaraguan periods.

(14) Salvadorans filing during their current re-registration period, including any late initial filers, must either pay the $80 biometric fee or submit a fee waiver request.

(15) TPS applications that are otherwise complete will not be rejected if the applicant submits either the biometric fee or the recently available fee waiver request. Those applications will be forwarded for adjudication by the USCIS Vermont Service Center.

(16) When an application for any immigration benefit is filed with USCIS, the agency conducts numerous mandatory criminal and national security background checks. These checks are conducted both to enhance national security and ensure the integrity of the immigration process. These security and background checks serve to screen out aliens who may seek to harm the United States and its citizens or who may be seeking immigration benefits improperly or fraudulently. These security checks have yielded information about applicants involved in violent crimes, sex crimes, crimes against children, drug trafficking and individuals with known links to terrorism. Pursuant to established agency policy, all required background security checks must be completed prior to adjudication of the application. An applicant for TPS is required to undergo the background and security checks to ensure that he or she is not a security risk and is eligible for TPS.

(17) An applicant is not eligible for TPS if he or she has been convicted of any felony or two or more misdemeanors committed in the United States. In addition, an applicant is not eligible for TPS if the applicant is determined to be a persecutor, terrorist, danger to the community or national security, or is otherwise subject to one of the other bars to asylum as described in 8 U.S.C. § 1158(b)(2)(A); or is subject to one of several criminal-related or terrorism-related grounds of inadmissibility for which a waiver is not available. *See* 8 U.S.C. 1254a(c)(2); 8 CFR §§ 244.1.

(18) In addition to the physical collection of biometrics from an individual at a USCIS Application Support Center (ASC) appointment, biometric services fees are used to fund the following operational functions and services: on-going electronic storage of the initial and any subsequent collections of the person's biometrics in DHS systems, maintenance of the technology and systems used at the ASCs, retrieval of previously collected biometrics from systems so that they may be reutilized for background checks (where possible), electronic transmissions and regular re-submissions of fingerprints to the FBI for both initial and updated record checks, the FBI's costs charged to USCIS each time the FBI runs an individual's prints for such criminal history and other record searches, processing and storage of responses received from the FBI, including non-identification responses and Rap sheets. Costs covered by biometric fees also include the maintenance of both mainframe computer systems and on-line information retrieval systems which allow adjudicators to view background check data on-line, as well as photographs and other biometrics related to an applicant.

(19) In many cases, TPS re-registrants will still need to attend an appointment at a USCIS Application Support Center (ASC) to provide updated biometrics. However, in some instances, USCIS has been able to avoid the need for the individual to reappear at such an ASC appointment because his or her previously captured fingerprints are retrievable in USCIS' systems and can be re-sent electronically to the FBI for updated record checks. When this is possible, the affected individual can often avoid burdens such as having to take time off from work, obtaining child care (if needed), transportation costs to the ASCs, and waiting time at the ASCs. As a customer service initiative, USCIS is trying to prevent the need for individuals to repeat trips to the ASCs for biometrics collection when it can. The TPS program is on the forefront of this expanding initiative. The biometric services fee is still required because it covers much more than the mere physical collection of the person's biometrics at an ASC appointment. As mentioned, the biometrics fees collected provide funding for many other functions and services, including the costs associated with the retrieval and electronic re-submission of the person's fingerprints to the FBI, the FBI's charges to USCIS for updating and reporting on the individual's criminal history and other records checks annually, processing of the FBI results, and other on-going ASC services.

(20) For FY 2007 alone and including the remainder of the applications expected before the October 22, 2007 close of the El Salvadoran TPS re-registration period, USCIS estimates that approximately $25 million in biometric

service fees will be received just from Honduran, Nicaraguan and Salvadoran TPS beneficiaries and late initial filers. The total projected amount of biometric fees received in FY 2007 from applicants from all seven countries that had TPS designations during the year is significantly higher. If USCIS were ordered to refund TPS biometric fees collected since 1999 from putative Central American class members, the amount would be exponentially higher than the figure noted above and would run in the many millions of dollars. Loss of that large amount of funding would significantly affect USCIS' capability to conduct the operational functions described above, particularly the ability to conduct and complete background and security check screenings on TPS applicants in a satisfactory and timely manner so that final case decisions can be made and the applicants notified.

(21)   If USCIS is ordered to cease collection of biometric fees from TPS applicants from the three Central American countries, there would be an immediate and detrimental effect on USCIS' ability to conduct biometric-related operations at the ASCs as I have described earlier in this declaration. This would also have an ancillary, negative effect on applicants and petitioners for numerous types of immigration benefits, in addition to TPS, for whom the ASCs conduct biometric services in support of those individuals' requests for benefits. USCIS would likely have to divert substantial amounts of funds from other immigration programs and services in order to cover a loss of the TPS biometrics fees and to keep ASC biometric operations functioning effectively. Such action, in turn, would have continuing detrimental effects on USCIS operations and customer services, such as delaying benefit adjudications not only for TPS applicants, but also for many other members of the public, including citizen petitioners as well as foreign national applicants, who are waiting for USCIS decisions.

I declare under penalty of perjury that based upon reasonable inquiry and my knowledge, information and belief, the foregoing is true and correct.

    Executed on September 24, 2007, in
    Washington, D.C.

    Barbara Velarde
    Chief of Service Center Operations
    U.S. Citizenship and Immigration Services
    U.S. Department of Homeland Security