JONATHAN M. KAUFMAN, ESQ. (California State Bar No. 104576)
The Law Offices of Jonathan M. Kaufman
220 Montgomery Street, Suite 976
San Francisco, CA 94104
Telephone: (415) 956-4765
Facsimile:  (415) 956-1664
E-Mail:     jonathan-kaufman@sbcglobal.net

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSE BAUTISTA-PEREZ, OSCAR GUARDADO-GONZALEZ, DENIS CABALLERO-ESPINOZA, JOSE ALVARADO-MENJIVAR, OSCAR RENE RAMOS, MARIA SALAZAR, JOSE BENJAMIN QUINTEROS, AND MARIA JOSEFA CRUZ, Individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    vs.<br><br>PETER D. KEISLER, Acting Attorney General and MICHAEL CHERTOFF, Secretary of Homeland Security,<br><br>    Defendants.<br>_____/ | Case No. C 07-4192 TEH<br><br>PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION<br><br><br>Date: October 15, 2007<br>Time: 10:00 a.m.<br>Place: Courtroom 12 |

**I. INTRODUCTION**

Plaintiffs submit the following reply to defendants' memorandum in opposition to plaintiffs' motion for preliminary injunction.

## II. THERE IS A LIKELIHOOD PLAINTIFFS WILL PREVAIL ON THE MERITS OF THEIR COMPLAINT

Defendants contend that it is unlikely that plaintiffs will prevail on the merits of their Complaint because 8 U.S.C. §1254a(c)(1)(B) permits defendants to impose a separate and additional "biometric service fee" for TPS registration. Defendants contend that the collection of biometric information (fingerprints, photograph, and signature) is a process separate from TPS registration.[1] Defendants' contentions are without merit.

Verifying an alien's identity and conducting a background check are integral parts of TPS registration because they are required by 8 U.S.C. §1254a(c). An alien applying for TPS must establish that he is a national of a designated country. 8 U.S.C. §1254a(c)(1)(A); 8 C.F.R. §244.9(a)(1). He must demonstrate that he has not been convicted of a disqualifying criminal offense. 8 U.S.C. §1254a(c)(1)(A)(iii); 8 C.F.R. §244.4.

To receive TPS an alien must register for TPS "to the extent and in the manner which the Attorney General establishes". 8 U.S.C. §1254a(c)(1)(A)(iv); 8 C.F.R. §§244.6, 244.7. Pursuant to 8 U.S.C. §1254a(c)(1)(B), "[t]he Attorney General may require payment of a reasonable fee as a condition for registering an alien under subparagraph (A)(iv) . . . The amount of any such fee shall not exceed $50.00."

Thus, 8 U.S.C. §1254a(c)(1)(A)(iv) requires the Attorney General to establish a TPS registration procedure that verifies an alien's identity and conducts a background check. Defendants now collect biometrics to perform these functions. [2]As capturing biometrics is an integral part of the procedure established under 8 U.S.C. §1254a(c)(1)(A)(iv) to determine an alien's statutory eligibility for TPS, 8 U.S.C. §1254a(c)(1)(B) limits the fee that can be charged for TPS registration to $50.00. By imposing an additional "biometric service fee" defendants violate the plain language of 8 U.S.C.

---

[1] See, Declaration of Barbara Velarde (Velarde), ¶5, Defendant's Opposition, Pgs. 10-12.

[2] See, Velarde Declaration, ¶7.

§1254a(c)(1)(B).

Defendants argue that the Court must defer to the USCIS' statutory construction because 8 U.S.C. §1254a(c)(1)(B) does not expressly prohibit the USCIS from requiring TPS applicants to remit a separate biometric fee. Defendants contend that the statute is "silent" on the issue.[3]

Defendants' reliance on *Chevron U.S.A., Inc. v Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) is misplaced. *Chevron* supports plaintiffs' position. *Chevron* instructs that the Court should not defer to an agency's construction when Congressional intent is clear from the words of the statute. Section 1254(c)(1)(B) is neither silent nor ambiguous. It expressly caps the fee an alien must pay for TPS registration at $50.00. The agency's construction conflicts with the plain language of 8 U.S.C. §1254a(c)(1)(B).

In addition, defendants do not describe the service they do provide for the $50.00 registration fee. The USCIS does not use the $50.00 TPS registration fee to produce a TPS employment authorization document. It imposes a separate $340.00 fee for a work permit.[4] If the $50.00 TPS registration fee is not used by the agency to recover the expense of conducting a background check, what is the money used for?

Defendants contend that they may impose a separate and additional biometric fee to register for TPS because 8 C.F.R. §103.7(b) requires applicants for any immigration benefit to pay a biometric fee.[5] Defendants' contention is meritless.

A regulation must comply with an authorizing statute. Conspicuously absent from defendants' submission is a citation to <u>any</u> statute that specifically permits defendants to impose a separate fee for the collection of biometrics from plaintiffs that exceeds the $50.00 limit imposed by 8 U.S.C.

---

[3] See, Defendant's Opposition, Pgs. 11-12.

[4] See, Velarde Declaration, ¶6.

[5] See, Velarde Declaration, ¶6.

§1254a(c)(1)(B).[6]

Moreover, that other applicants applying for other immigration benefits must pay a separate biometric service fee is irrelevant. TPS is a unique immigration benefit statute. It is the only immigration benefit statute in the Immigration and Nationality Act that specifically limits the fee an applicant is required to pay.

Defendants' litigation position conflicts with communications the USCIS has had with plaintiffs and the public. Heretofore, the USCIS has represented that biometric collection is a part of TPS registration. The 2007 USCIS Press Release publicizing the re-designation of El Salvador for TPS describes the biometric service fee as a fee imposed to re-register for TPS.[7]  The receipts plaintiffs received when they re-registered for TPS in 2005 and 2006 refer to payments remitted for biometric collection as fees paid to re-register for TPS.[8]

### III. DEFENDANTS' STATUTORY CONSTRUCTION OF  8 U.S.C. §1254a(c)(1)(B) CONFLICTS WITH THE CONGRESSIONAL INTENT MANIFEST IN THE LEGISLATIVE HISTORY OF TPS

Section 302 of the Immigration Act of 1990 (IMMACT 1990) amended the Immigration and Nationality Act to provide for TPS. [9]  As originally enacted, §302( c)(1)(B) of IMMACT 1990, now codified at  8 U.S.C. §1254a(c)(1)(B), did not permit the imposition of a separate, additional fee for

---

[6] Defendants cite 8 U.S.C. §1732(b)(1) as statutory authority for the USCIS to collect a separate biometric fee. Defendants' reliance on the statute is misplaced. The statute does not reference the TPS program or any of the documentation issued to an alien to evidence TPS. The statute refers only to "visas, and other travel and entry documents that use biometric identifiers". A TPS employment authorization document is not a "visa" or a "travel and entry document".

[7] See, Declaration of Jonathan M. Kaufman, Exhibit A.

[8] See, Motion for Preliminary Injunction, Exhibit B.

[9] Pub. L. No. 101-649, 104 Stat. 4978. Originally enacted as §244A of the Immigration and Nationality Act, it was re-designated as INA §244 by §308(b)(7) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009

providing an applicant with an employment authorization document.[10] In 1991 the statute was amended specifically to permit the Attorney General to impose an additional fee for the issuance of a work authorization document.[11]

Had Congress intended to permit defendants to also impose a separate, additional fee for conducting the statutorily mandated identity and background checks it would have amended 8 U.S.C. §1254a(c)(1)(B) to specifically provide for the imposition of an additional fee. In the seventeen years since 8 U.S.C. §1254a(c)(1)(B) was enacted, Congress has not done so. Indeed, defendants do not even acknowledge that prior to 1998 an alien applying for TPS was not required to remit an additional fee for a fingerprint background check.[12]

Defendants' statutory construction conflicts with IMMACT 1990 when it is read as a whole. Section 302 of IMMACT 1990 was one of two TPS programs created in the legislation. Section 303 of IMMACT 1990 designated El Salvador for a special eighteen month period of TPS. In contrast to the $50.00 registration fee permitted under §302, §303(b)(2) placed no express limit on the fees the Attorney General could charge for TPS registration. Section 303(b)(2) permitted the Attorney General to charge a "reasonable fee" as a condition for registration.

By providing different registration fee provisions in two TPS programs, enacted in the same Title of the same Act, Congress demonstrated its intent to differentiate between the two programs, and strictly limit the fees the Attorney General could charge for TPS registration under §302. Defendants' assertion that 8 U.S.C. §1254a(c)(1)(B) does not prohibit the imposition of a separate, additional biometric service fee as a condition for TPS registration ignores the structure of IMMACT 1990. It is inconsistent with the plain language of the statute and violates a fundamental rule of

---

[10] 8 U.S.C. §1254a(a)(1)(B) requires the Attorney General to issue an employment authorization document to an alien granted TPS.

[11] Section 304(b)(2) of the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub. L. No. 102-23, 105 Stat. 1733.

[12] 8 C.F.R. §103.7(a) (1997).

5

statutory construction. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed Congress acts intentionally and purposely in disparate inclusion or exclusion." *INS v Cardoza-Fonseca*, 480 U.S. 421, 432 (1987).

### IV. THE BALANCE OF HARDSHIPS, THE PUBLIC'S INTERESTS, AND MAINTAINING THE STATUS QUO

Defendants concede that a TPS registrant who has not yet remitted a separate biometric fee "would be harmed if DHS continues to collect the fees that compromise the subject of the preliminary injunction". Defendants assert that none of the named plaintiffs will suffer irreparable harm because each of the named plaintiffs have already re-registered for TPS and remitted the biometric fee. Defendants conclude that granting an injunction will therefore change the status quo because only those individuals not named as plaintiffs would be affected by a grant or denial of the preliminary injunction.[13]

Defendants cite no evidence, other than plaintiffs' Complaint, to support their factual assertion that all of the named plaintiffs have already re-registered for TPS and remitted the biometric fee. Defendants have misapprehended the Complaint. It does not allege that any of the nationals of El Salvador previously granted TPS have re-registered for TPS pursuant to the re-designation announced on August 21, 2007.

Defendants have presumably relied upon the declaration of Barbara Velarde (Velarde), the Chief of Service Center Operations for the USCIS, who manages and oversees plaintiffs' TPS programs. Velarde attests under penalty of perjury that she made a "reasonable inquiry" into plaintiffs' cases before she submitted her affidavit in opposition to plaintiffs' motion.

Defendants' assertion that all of the named plaintiffs have re-registered for TPS and remitted the biometric fee is incorrect. Plaintiffs Jose Alvarado-Menjivar, Oscar Rene Ramos, Maria Salazar, and Jose Benjamin Quinteros, nationals of El Salvador, have not yet re-registered for TPS in 2007 and have not remitted the biometric fee defendants require to re-register for TPS pursuant to the most

---

[13] See, Defendants' Opposition, Pgs 10, 13.

recent re-designation.[14]

Thus, defendants are incorrect when they assert that granting the motion for a preliminary injunction will change rather than preserve the status quo. Granting the motion will accomplish the opposite. It will maintain the status quo. It will permit plaintiffs Jose Alvarado-Menjivar, Oscar Rene Ramos, Maria Salazar, and Jose Benjamin Quinteros, and those unnamed individuals who have not yet re-registered for TPS, to register without remitting a separate biometric fee that exceeds the amount permitted under 8 U.S.C. §1254a(c)(1)(B).

To divert the Court's attention from the paucity of their legal authority, defendants raise the specter of the terrorism attacks of September 11, 2001 and speculate that dire financial consequences and immigration Armageddon will befall the USCIS if the Court grants plaintiffs' motion and prohibits the USCIS from collecting biometric fees from the TPS applicants who have not yet filed their applications.[15]

Defendants' prediction of peril to the government is ludicrous because the evidence establishes that the USCIS collected biometrics from TPS applicants in 2006.[16] As Velarde admits, the USCIS may not need to capture biometrics again in 2007 because the agency preserved the biometric information for retrieval and re-use.[17] Indeed, the evidence demonstrates that when the named plaintiffs from Honduras remitted biometric service fees to re-register for TPS in July, 2007, the USCIS informed them that they did not have to appear for a biometric appointment because their biometric information could be re-used.[18]

Velarde attests that biometric fees must be collected from TPS registrants because the TPS

---

[14] See, Declaration of Jonathan M. Kaufman

[15] See, Defendant's Opposition, Pg. 13-14, Velarde Declaration, ¶20-21.

[16] See, Motion for Preliminary Injunction, Exhibit B.

[17] See, Velarde Declaration, ¶19.

[18] See, Kaufman Declaration, Exhibit B.

program is at the "forefront" of the agency's new biometric initiative. According to Velarde, the USCIS relies upon the biometric fees remitted by TPS registrants to fund technology that is essential to our nation's security. [19]

The TPS registrants from El Salvador, Honduras, and Nicaragua are an economically vulnerable class of aliens who have been given temporary sanctuary in the United States because a series of natural disasters occurring in their countries have separated them from their homelands and families. Velarde and defendants fail to explain why the USCIS should reasonably expect to fund its technologically advanced biometric system, so essential to our national security, on the backs of the most economically disadvantaged class of aliens the USCIS services.

The agency's policy of piling on fees for TPS to fund its biometric system conflicts with the plain language of 8 U.S.C. §1254a(c)(1)(B) and is inconsistent with the humanitarian intent manifest in the TPS program. It is also wholly unnecessary.

Defendants fail to acknowledge the provisions of 8 U.S.C. §1356(m) which authorize the USCIS to assess a surcharge on the fees it charges other aliens applying for other immigration benefits to recover the expenses incurred in adjudicating applications for immigration benefits filed by non-fee paying alien applicants. [20]

---

[19] See, Velarde Declaration, ¶18-20.

[20] On October 30, 1988 Congress amended 8 U.S.C. §1356 to add a subsection (m) which authorized the Immigration and Naturalization Service (INS) to collect fees to recover the costs of providing immigration adjudication and naturalization services . §209(a), Department of Justice Appropriations Act of 1989, Pub. L. No. 100-559, 102 Stat. 2203.

On November 5, 1990 Congress amended 8 U.S.C. §1356(m) to authorize the INS to set fees at a level to fund the cost of asylum processing and other services provided to immigrants at no charge. As a result, INS added a surcharge to the immigration application fees to recover these additional costs. §210(d), Department of Justice Appropriations Act of 1991, Pub. L. No. 101-515, 104 Stat. 2121.

On November 25, 2002 Congress repealed the authority to include the cost of asylum processing and other services provided to immigrants at no charge, referred to as the surcharge. §457, Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2201. As a result, on

As the USCIS acknowledged in its May 30, 2007 Federal Register notice increasing immigration fees, "8 U.S.C. §1356(m) provides that the United States may collect fees at a level that will ensure recovery of the full costs of providing adjudication and naturalization services, including the costs of providing similar services without charge to asylum applicants and certain other immigrants."[21]

Congress amended 8 U.S.C. §1356(m) to permit defendants to assess a surcharge to immigration fees in 1990, just three weeks before Congress enacted IMMACT 1990 and created the TPS program. Presumably, Congress considered 8 U.S.C. §1356(m) when it enacted 8 U.S.C. §1254a(c)(1)(B) and limited the fee an alien could be charged to register for TPS. If, in fact, the $50.00 TPS registration fee is insufficient to fund the TPS program and threatens national security, why have defendants not availed themselves of the remedy Congress made available and added a surcharge to other immigration fees? If, in fact, the costs of conducting TPS background checks exceeds the $50.00 fee generated by the TPS registration fee, why have defendants not returned to Congress and asked that 8 U.S.C. §1254a(c)(1)(B) amended?

Finally, defendants contend that plaintiffs have not demonstrated irreparable injury because they can apply for a fee waiver pursuant to 8 C.F.R. §244.20.[22]

Courts have observed that, "the immigration laws have been termed second only to the Internal Revenue Code in complexity. A lawyer is often the only person who can thread the labyrinth." *Baltazar-Alcazar v INS*, 386 F.3d 940, 948 (9th Cir. 2004) (internal quotation and citation omitted). The Court need look no further than the rules regulating an application for a TPS fee waiver to

---

January 24, 2003, the INS reduced immigration benefit application fees by 25%. 68 FR 3798.

On February 20, 2003 Congress re-authorized the collection of the repealed fees and the surcharge was restored. §107, Div. L, The Homeland Security Act Amendments of 2003, Pub. L. No. 108-7, 117 Stat. 532.

[21] 72 Fed Reg. 29866

[22] See, Defendant's Opposition, Pg. 10.

9

appreciate the accuracy of the observation.

To obtain a biometric fee waiver an alien must submit a fee waiver application that includes documentation and personal financial information that rivals an application for a home mortgage. An alien may also be required to submit personal and sensitive medical information. An alien may be required to disclose the names and location of all family members residing in the United States, whether legally or illegally, and the identities of all persons and family members with whom the TPS applicant, often times an illegal alien himself, resides.[23]

As defendants are well aware, the requirements for obtaining a TPS fee waiver are so daunting and extraordinary that, historically, few TPS applicants have applied. [24]

Even assuming an alien does comply, and provides the immigration authorities with all of the required financial and medical information, and discloses the names and locations of all family members living legally and illegally in the United States, the decision to waive a fee is still left to the discretion of the reviewing immigration officer.

At bottom, the availability of an application to waive the payment of the biometric fee is irrelevant to this action. Defendants fail to explain why, as a prerequisite to obtaining a preliminary injunction, plaintiffs should be required to submit an application to waive a fee they are not required by statute to remit.

## V. CONCLUSION

Plaintiffs respectfully submit that their motion for a preliminary injunction should be granted. The unambiguous language of 8 U.S.C. §1254a(c)(1)(B), the legislative history of TPS, and the provisions of 8 U.S.C. §1356(m) make it clear that Congress intended to limit the fee the Attorney

---

[23] An illegal alien applying for TPS may be reticent to disclose the name of a person with whom he resides because providing the information could expose that person to criminal prosecution under 8 U.S.C. §1324(a)(1)(A)(iii).

[24] In its May 30, 2007 Federal Register notice the USCIS informed the public that it would permit aliens to apply for a biometric fee waiver because the total number of TPS fee waiver applications filed in 2006 was so de minimus that the costs of granting a biometric fee waiver was insignificant. 72 FR 29865-29866.

General could charge for TPS. Congress did not enact 8 U.S.C. §1254a(c)(1)(B) with the expectation that its specific fee limit could be circumvented by imposing an additional "service fee" for conducting statutorily required identity and background checks. Congress directed the Attorney General to establish a TPS registration procedure which included identity and a background checks, and it limited the fee the Attorney General could charge for this registration to $50.00.

Dated: October 1, 2007

                                                                                                               _____
JONATHAN M. KAUFMAN
Attorney for Plaintiffs