SCOTT N. SCHOOLS, SC SBN 9990
United States Attorney
JOANN M. SWANSON, CSBN 88143
Assistant United States Attorney
Chief, Civil Division
ILA C. DEISS, NY SBN 3052909
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102
   Telephone: (415) 436-7124
   FAX: (415) 436-7169

WILLIAM J. HOWARD DCBN 36439
Assistant Director
Office of Immigration Litigation
U.S. Department of Justice, Civil Division

   P.O. Box 878, Ben Franklin Station
   Washington, D.C. 20044
   (202) 307-4293
   FAX: (202) 307-8781

J. MAX WEINTRAUB, VSBN 36188
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice, Civil Division

   P.O. Box 878, Ben Franklin Station
   Washington, DC 20044
   (202) 305-7551
   FAX: (202) 305-7249

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| JOSE BAUTISTA-PEREZ, *et al.*, | ) | No. C 07-4192 TEH |
| | ) | |
| Plaintiffs, | ) | |
| | ) | DEFENDANTS' MEMORANDUM IN |
| v. | ) | IN SUPPORT OF DEFENDANTS' MOTION |
| | ) | TO DISMISS, OR IN THE ALTERNATIVE, |
| MICHAEL B. MUKASEY,[1] | ) | MOTION TO TRANSFER VENUE |
| ATTORNEY GENERAL, | ) | |
| *et al.*, | ) | |
| | ) | Hearing Date:   January 14, 2008 |
| Defendants. | ) | Time:   10:00 a.m. |

---

[1] In accordance with Fed. R. Civ. P. 25(d), Attorney General Michael B. Mukasey is hereby substituted for Peter D. Keisler as Defendant in this Case.
Defendants' Memorandum In Support Of Motion To Dismiss Or To Transfer Venue
C 07-4192 TEH

# TABLE OF CONTENTS

Procedural Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Applicable Statutes and Regulations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

    I.     Pursuant to Fed. R. Civ. P. 12(b)(1), The Court Must Dismiss
          This Action Because Plaintiffs Have Failed To Demonstrate
          That The Court Has Jurisdiction Over Their Claims. . . . . . . . . . . . . . . . . . . . . . . . .  7

    II.    The Tucker Act Deprives The District Court Of Jurisdiction. . . . . . . . . . . . . . . . .  8

    III.   If This Court Maintains Jurisdiction Over This Action, The
          Little Tucker Act Establishes That This District Is Not The Proper
          Venue For Plaintiffs Who Reside Outside This District. . . . . . . . . . . . . . . . . . . . .  11

    IV.   This Action Must Be Dismissed Because Plaintiffs Have Failed
          To State A Claim Upon Which Relief May Granted. . . . . . . . . . . . . . . . . . . . . . . .  12

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

<strong>TABLE OF AUTHORITIES</strong>

<strong>CASES</strong>

Aerolineas Argentinas v. U.S.,
  77 F.3d 1564 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Bakersfield City School Dist. of Kern County v. Boyer,
  610 F.2d 621 (9th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Bell Atlantic Corp. v. Twombly,
  U.S. -- 127 S.Ct. 1955. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

Berman v. United States,
  264 F.3d 16 (1st Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Brazos Elec. Power Co-op., Inc. v. U.S.,
  144 F.3d 784 (Fed. Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 10, 11

Brooks v. Weinberger,
  637 F.Supp. 22 (D.D.C.1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

Chabal v. Reagan,
  822 F.2d 349 (3d Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,
  467 U.S. 837 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13, 16

Cook Inlet Native Ass'n v. Bowen,
  810 F.2d 1471 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Denton v. Schlesinger,
  605 F.2d 484 (9th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 11

Earth Island Institute v. Ruthenbeck,
  490 F.3d 687 (quoting Chevron, 467 U.S. at 843-44). . . . . . . . . . . . . . . . . .  16

Elias v. Connett,
  908 F.2d 521 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Fostvedt v. United States,
  978 F.2d 1201 (10th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Gilbert v. DaGrossa,
  756 F.2d 1455 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Gonzales v. Oregon,
  546 U.S. 243 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

Hodge v. Dalton,
  107 F.3d 705 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Holden v. Hagopian,
  978 F.2d 1115 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Hoopa Valley Tribes v. United States,
    596 F. 2d 435, 436, 219 Ct. Cl. 492 (1979)...................................... 10

Hou Hawaiians v. Cayetano,
    183 F.3d 945 (9th Cir. 1999). ................................................ 8

INS v. Abudu,
    485 U.S. 94 (1988). ....................................................... 13

KVOS, Inc. v. Assoc. Press,
    299 U.S. 269 (1936). ...................................................... 7

Kaiser v. Blue Cross of California,
    347 F.3d 1107 (9th Cir. 2003). ............................................. 8

Katz v. Cisneros,
    16 F.3d 1204 (Fed.Cir.1994). .............................................. 10

Kester v. Campbell,
    652 F.2d 13 (9th Cir. 1981). ............................................... 7

Lee v. City of Los Angeles,
    250 F.3d 668 (9th Cir. 2001). .............................................. 5

Maier v. Orr,
    754 F.2d 973 (Fed. Cir. 1985). ............................................ 10

McCarthy v. United States,
850 F.2d 558 (9th Cir. 1988). ................................................. 7

McEniry v United States,
    7 Cl. Ct. 622, 625 (1985). ................................................. 10

Miller v. United States,
    784 F.2d 728 (6th Cir. 1986). .............................................. 7

Morales-Izquierdo v. Gonzales,
    486 F.3d 484 (9th Cir. 2007). ............................................. 16

Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.,
    545 U.S. 967 (2005). ..................................................... 16

National Ctr. for Mfg. Sciences v. United States,
    114 F.3d 196 (Fed. Cir.1997)................................................ 10

National Treasury Employees' Union v. Reagan,
    629 F.Supp. 762 (D.D.C.1985), aff'd, 806 F.2d 1034 (Fed. Cir. 1986), cert.
    denied, 481 U.S. 1068 (1987). ............................................. 12

Navarro v. Block,
    250 F.3d 729 (9th Cir. 2001). .............................................. 4

North Side Lumber Co. v. Block,
    753 F.2d 1482 (9th Cir 1985)................................................ 8

Northwest Ecosystem Alliance v. U.S. Fish and Wildlife Service,
   475 F.3d 1136 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Presbyterian Church (U.S.A.) v. United States,
   870 F.2d 518 (9th Cir.1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Resident Councils of Washington v. Leavitt,
   500 F.3d 1025 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Richardson v. Morris,
   409 U.S. 464 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Rocovich v. United States,
   933 F.2d 991 (Fed. Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Saraco v. United States,
   61 F.3d 863 (Fed. Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Schulthess v. U.S.,
   694 F.2d 175 (9th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

Schwartz v. United States,
   234 F.3d 428 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Seafarers Intern. Union of North America v. U.S. Coast Guard,
   81 F.3d 179 (D.C. Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Slugocki v. United States,
   816 F.2d 1572 (Fed. Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Smiley v. Citibank (S.D.), N.A.,
   517 U.S. 735 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Sopcak v. N. Mountain Helicopter Serv.,
   52 F.3d 817 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Steckman v. Hart Brewing, Inc.,
   143 F.3d 1293 (9th Cir.1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Student Loan Mktg. Ass'n v. Riley,
   104 F.3d 397 (D.C.Cir.1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Taylor v. Appleton,
   30 F.3d 1365 (11th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Thornhill Publishing Co. v. General Telephone & Electronics Corp.,
   594 F.2d 730 (9th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Tovar v. U.S. Postal Serv.,
   3 F.3d 1271 (9th Cir.1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Trentacosta v. Frontier Pacific Aircraft Industries,
   813 F.2d 1553 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Dang,
   488 F.3d 1135 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

United States v. Sherwood,
    312 U.S. 584 (1941). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Washington Legal Found. v. United States Sentencing Commission,
    89 F.3d 897 (D.C.Cir.1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Wilkins v United States,
    279 F.3d 782 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

Wolfe v. Strankman,
    392 F.3d 358 (9th Cir.2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Wright v. Oregon Metallurgical,
    360 F.3d 1090 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## STATUTES

5 U.S.C. § 702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

8 U.S.C. § 1254a(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

8 U.S.C. § 1254a(a)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

8 U.S.C. § 1254a(a)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

8 U.S.C. § 1254a(c)(1)(A)(iv). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

8 U.S.C. § 1254a(c)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, passim

28 U.S.C § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C § 1346. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 1491. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

31 U.S.C. § 9701. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Section 1491(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Section 1491(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## REGULATIONS

8 C.F.R. § 103.2(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

8 C.F.R. § 103.2(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

8 C.F.R. § 103.7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15

8 C.F.R. § 244.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

8 C.F.R. § 244.6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, passim

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 12(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, <u>passim</u>

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, <u>passim</u>

Fed. R. Civ. P. 25(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## <u>MISCELLANEOUS</u>

Department of Justice Appropriations Act 1998,
   Pub. L. No. 105-119, 111 Stat 2440, 248. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6

Homeland Security Act of 2002,
   Pub. L. No. 107-296, 116 Stat. 2135. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

1  Defendants, by J. Max Weintraub, Trial Attorney, U.S. Department of Justice, Office of

2  Immigration Litigation, submit the Defendants' Memorandum in Support of Defendants' Motion

3  to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)6), or, in the alternative To Transfer

4  Venue.

5  **Procedural Background**

6  Plaintiffs' First Amended Complaint, filed August 21, 2007, relates to fees imposed by the

7  United States Department of Homeland Security ("DHS") in connection with Plaintiffs' efforts to

8  register for Temporary Protected Status ("TPS").  Plaintiffs seek at least $100,000,000 in refunds

9  of biometric fees paid by alleged class members who have applied for TPS over the last decade.

10  Plaintiffs assert that injunctive relief is appropriate because Defendants impose fees that are in

11  excess of the $50.00 registration fee described in 8 U.S.C. § 1254a(c)(1)(B).  On October 17,

12  2007, the Court denied Plaintiffs' Motion For Preliminary Injunction.

13  **Applicable Statutes and Regulations**

14  Pursuant to 8 U.S.C. § 1254a(a)(1) ("Section 1254a"), the Secretary of Homeland Security

15  ("the Secretary")[2] may grant temporary protected status to an alien who meets the statutory

16  requirements.  Pursuant to Section 1254a(a)(1)(A), the Secretary shall not remove the alien from

17  the United States during the period in which such status is in effect, and pursuant to Section

18  1254a(a)(1)(B), the Secretary shall authorize the alien to engage in employment in the United

19  States and shall provide the alien with an "employment authorized" endorsement or other

20  appropriate work permit.  In accordance with Section 1254a(c)(1)(A)(iv), an alien meets the

21  requirements for TPS only if the alien registers for such status during a registration period of not

22  less than 180 days.  Additionally, Section 1254a(c)(1)(B) permits the Secretary to require payment

23  of a reasonable fee as a condition of registering an alien under Section 1254a(c)(1)(A)(iv), and

24  states that the registration fee may not exceed $50.00.  Section 1254a(c)(1)(A)(iv) further

25

26  [2] As of March 1, 2003, in accordance with §§ 1517 of Title XV of the Homeland Security
Act of 2002 ("HSA"), Pub. L. No. 107-296, 116 Stat. 2135, any reference to the Attorney
27  General in a provision of the Immigration and Nationality Act describing functions which were
transferred from the Attorney General or other Department of Justice official to the Department
28  of Homeland Security by the HSA "shall be deemed to refer to the Secretary" of Homeland
Security. See 6 U.S.C. §§ 557 (2003) (codifying HSA, Title XV, §§ 1517).

1  establishes that, in the case of aliens registered pursuant to a designation under this section made

2  after July 17, 1991, the Secretary may impose a separate, additional fee for providing an alien with

3  documentation of work authorization.

4      Section 1356(m) of Title 8 provides that, "[n]otwithstanding any other provisions of law," all

5  adjudication fees as are designated by the Secretary in regulations shall be deposited as offsetting

6  receipts into a separate account, and, further, that "fees for providing adjudication and

7  naturalization services may be set at a level that will ensure recovery of the full costs of providing

8  all such services."  The statute also establishes that such fees "may also be set at a level that will

9  recover any additional costs associated with the administration of the fees collected."

10      Pursuant to 31 U.S.C. § 9701 ("Section 9701"), "each service or thing of value provided by an

11  agency (except a mixed-ownership Government corporation) to a person (except a person on

12  official business of the United States Government) is to be self-sustaining," and the head of each

13  agency "may prescribe regulations establishing the charge for a service or thing of value provided

14  by the agency."

15      Under the Department of Justice Appropriations Act 1998, Pub. L. No. 105-119, 111 Stat

16  2440, 248, agencies are specifically authorized to collect and retain a fee for fingerprinting

17  services (which later became known as "biometric information").[3]

18      In accordance with 8 C.F.R. § 244.6, each application for Temporary Protected Status must be

19

20      [3] Pub. L. 105-119 changed INS (now, DHS), procedures and prohibited the Service from

21  accepting fingerprint cards for the purpose of conducting criminal background checks on
applicants and for petitioners for immigration benefits prepared by any individual or entity other

22  than the Service, a registered state or local law enforcement agency, a U.S. consular office, or a
U.S. military installation abroad.  See 63 FR 12979-01.  The statute authorized the collection and

23  retention of fees for the fingerprint services provided.  To comply with the statute, INS

24  established a new program to fingerprint applicants and petitioners for immigration benefits and
opened new offices, known as Applicant Support Centers (ASC's), and established mobile

25  fingerprinting centers nationwide to fingerprint applicants and petitioners for immigration
services.

26      In compliance with the statute, the Service began collecting an additional $25 fee from

27  TPS applicants for these services.  The fee, which has evolved into the biometrics fee at issue in
this case, has been collected from TPS applicants for nearly a decade without complaint either

28  aliens or from the Congress.  It has a separate genesis, and is distinct, from the registration fee
imposed by Section 1254a(c)(1)(B).

1  filed with the fee, as provided in 8 C.F.R. § 103.7, except that the filing fee for the application for

2  employment authorization will be charged only for those applications of applicants between the

3  ages of 14 and 65 (inclusive) who request employment authorization.  Section 103.7 establishes

4  an $80.00 service fee for any individual who is required to have biometric information captured in

5  connection with an application for certain immigration benefits.[4]

6      Pursuant to  28 U.S.C.  ("Section 1331"), "district courts shall have original jurisdiction of all

7  civil actions arising under the Constitution, laws, or treaties of the United States."  Pursuant to 28

8  U.S.C. § 1361 ("Section 1361"), the district courts "shall have original jurisdiction of any action in

9  the nature of mandamus to compel an officer or employee of the United States or any agency

10 thereof to perform a duty owed to the plaintiff."

11     Pursuant to the Tucker Act, 28 U.S.C. § 1491 ("Section 1491"), the United States Court of

12 Federal Claims shall have "exclusive jurisdiction to render judgment upon any claim against the

13 United States founded either upon the Constitution, or any Act of Congress or any regulation of an

14 executive department. . . ."

15     Pursuant to the Little Tucker Act, 28 U.S.C. § 1346 ("Section 1346"), the district courts shall

16 have concurrent jurisdiction with the United States Court of Federal Claims of "[a]ny other civil

17 action or claim against the United States, not exceeding $10,000 in amount, founded either upon

18 the Constitution, or any Act of Congress, or any regulation of an executive department . . . ."

19                                     **Standard of Review**

20     A motion under Rule 12(b) of the Federal Rules of Civil Procedure provides for dismissal of an

21 action when, taking all allegations in the pleadings as true, the moving party is entitled to

22 judgment as a matter of law.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In reviewing a

23 Rule 12(b) motion, ". . . a court must construe the complaint in the light most favorable to the

24 Plaintiff and must accept all pled factual allegations as true.  The Court need not accept as true,

25

26     [4] The fingerprint/biometrics fee was initially $25.00 in 1998, then rose to $50.00 in 2002,

27 then to $70.00 in 2004, and then most recently to $80.00 in 2007, although at that time a fee
waiver was for the first time made available.  For applicants who filed before July 30, 2007, that

28 fee, therefore, was $70.00.  See 63 FR 12979 (March 17, 1998); 66 FR 65811 (December 1,
2001); 69 FR 20528 (April 5, 2004); 72 FR 29851 (May 30, 2007).

1  however, allegations that contradict facts that may be judicially noticed by the court and may

2  consider documents that are referred to in the complaint whose authenticity no party questions."

3  Schwartz v. United States, 234 F.3d 428, 435 (9th Cir. 2000) (internal citations omitted).  This

4  concession of truth, however, goes only to well-pleaded factual allegations.  Conclusory

5  allegations "which are contradicted by documents referred to in the complaint" are not well-pled

6  and will not withstand a motion to dismiss.  Wright v. Oregon Metallurgical, 360 F.3d 1090, 1096

7  (9th Cir. 2004) (quoting Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir.1998)).

8  Similarly, the assumption of truth does not extend to embrace an overlay of legal conclusions or

9  arguments.

10  Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's

11  allegations fail "to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  In

12  evaluating the sufficiency of a complaint's allegations, a court must assume the facts alleged in the

13  complaint to be true unless the allegations are controverted by exhibits attached to the complaint,

14  matters subject to judicial notice, or documents necessarily relied on by the complaint and whose

15  authenticity no party questions.  Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

16  A court should not grant dismissal unless the plaintiff has failed to plead "enough facts to state a

17  claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, --- U.S. ----, ----, 127

18  S.Ct. 1955, 1974, --- L.Ed.2d ----, ---- (2007).

19  Defendants also move to dismiss this case for lack of jurisdiction under Federal Rule of Civil

20  Procedure 12(b)(1).  Because Defendants do not seek to rely on any external facts, this is a facial

21  rather than factual challenge to the court's jurisdiction.  See Wolfe v. Strankman, 392 F.3d 358,

22  362 (9th Cir. 2004) (distinguishing between facial and factual jurisdictional attacks).

23  Consequently, this Court applies a similar standard to Defendants' Rule 12(b)(1) motion as to its

24  Rule 12(b)(6) motion:  Dismissal is appropriate only if the complaint's allegations, which are

25  assumed to be true, are insufficient to support a finding of jurisdiction.  Id.

26  In short, this Court must carefully examine the complaint, eliminate mere rhetoric, legal

27  conclusions, and unsupported factual conclusions, and determine whether or not well-pleaded

28  factual allegations, when construed in a light most favorable to Plaintiffs, state a factual claim

1  based on some legal theory upon which relief can be granted.  Holden v. Hagopian, 978 F.2d 1115,

2  1121 (9th Cir. 1992).

3                              **Summary of Argument**

4      This action must be dismissed because Plaintiffs have failed to demonstrate that this Court has

5  subject matter jurisdiction over this action, in that they have not shown that the United States has

6  waived sovereign immunity and consented to be sued.

7      Additionally, because Plaintiffs are seeking monetary damages in excess of $10,000, the

8  Tucker Act, Section 1491, vests exclusive jurisdiction over the action in the United States Court of

9  Federal Claims.  In fact, Plaintiffs seek at least $100 million.  Only if this Court finds that the

10  Little Tucker Act, Section 1346, applies, because each individual Plaintiff seeks monetary

11  damages of less than $10,000, could jurisdiction be appropriate in a district court, and in that case,

12  this Court is the appropriate venue only for those class members who reside in the Northern

13  District of California.  For that reason, and in the interest of judicial economy, if this Court does

14  not grant this motion to dismiss, this action should be transferred to the Court of Federal Claims,

15  which would be the appropriate venue for a nationwide class.

16      Finally, Plaintiffs have failed to state a claim upon which relief can be granted, because DHS's

17  imposition of a biometric fee is reasonable under the statutory framework as a whole.  Section

18  1254a is ambiguous in that it does not define "registration" and does not explicitly prohibit the

19  agency from charging a biometric services fee, separate and distinct from a registration fee;

20  Section 1356(m) authorizes DHS to recoup the "full costs" of adjudicating applications

21  "notwithstanding any other provisions of law," which must be read to include Section 1254a; and

22  the Department of Justice Appropriations Act 1998, Pub. L. No. 105-119, 111 Stat 2440, 248,

23  specifically authorizes agencies to collect and retain a fee for fingerprinting services (which later

24  became known as "biometric information").  Especially considering that the agency's

25  interpretation of an otherwise ambiguous statutory scheme is afforded deference, Plaintiffs have

26  failed to meet the requirements of Fed. R. Civ. P. 12(b)(6).

27

28

**Argument**

**I. Pursuant to Fed. R. Civ. P. 12(b)(1), The Court Must Dismiss This Action Because Plaintiffs Have Failed To Demonstrate That The Court Has Jurisdiction Over Their Claims**

A motion pursuant to Rule 12(b)(1) may attack either the sufficiency of a pleading's allegations supporting subject matter jurisdiction, or the existence of subject matter jurisdiction in fact, apart from the pleadings.  Thornhill Publishing Co. v. General Telephone & Electronics Corp., 594 F.2d 730, 733 (9th Cir. 1979).  Furthermore, Plaintiffs assume the burden of proof and must present evidence establishing subject matter jurisdiction.  Thornhill, 594 F.2d at 733; McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988); Trentacosta v. Frontier Pacific Aircraft Industries, 813 F.2d 1553, 1558 (9th Cir. 1987).

The United States is "immune from suit save as it consents to be sued."  United States v. Sherwood, 312 U.S. 584, 586 (1941).  "Any waiver of immunity must be unequivocally expressed, and any limitations and conditions upon the waiver must be strictly observed and exceptions thereto are not to be implied."  Hodge v. Dalton, 107 F.3d 705, 707 (9th Cir. 1997) (internal quotation marks and citation omitted).  Where the United States has not consented to suit, dismissal of the action for lack of subject matter jurisdiction is required.  Elias v. Connett, 908 F.2d 521, 527 (9th Cir. 1990); Gilbert v. DaGrossa, 756 F.2d 1455, 1458 (9th Cir. 1985).  Furthermore, it is well-settled that parties bringing a suit bear the burden of establishing the predicate jurisdiction.  KVOS, Inc. v. Assoc. Press, 299 U.S. 269, 278 (1936); Sopcak v. N. Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir. 1995); Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994); Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991); Fostvedt v. United States, 978 F.2d 1201, 1203 (10th Cir. 1992); Miller v. United States, 784 F.2d 728, 729 (6th Cir. 1986).

In their amended complaint, Plaintiffs have asserted that the District Court has jurisdiction over their claims pursuant to Section 1331.  This assertion is simply incorrect.  Section 1331 merely provides district courts with original jurisdiction over federal questions; it does not provide the waiver of sovereign immunity necessary for a suit against the federal government.  See Kester v. Campbell, 652 F.2d 13, 15 (9th Cir. 1981) (finding that Section 1331 "neither waives the federal

1  government's sovereign immunity to suit nor indicates the appropriate forum for adjudication of

2  the controversy"); see also North Side Lumber Co. v. Block, 753 F.2d 1482, 1484 (9th Cir 1985)

3  (claims brought under Section 1331 are barred unless the government has consented elsewhere to

4  suit).

5      Plaintiffs also assert that Section 1361 vests this court with authority to compel the

6  government to refund fees to the named plaintiffs and to the plaintiff class.  Again, this statement

7  is inaccurate.  As noted supra, the sovereign immunity of the United States is a bar to suit except

8  where it has been expressly waived.  Section 1361 does not waive sovereign immunity.  See Hou

9  Hawaiians v. Cayetano, 183 F.3d 945, 947 (9th Cir. 1999) (citing Washington Legal Found. v.

10  United States Sentencing Commission, 89 F.3d 897, 901 (D.C.Cir.1996)).  Furthermore, this Court

11  may not impute a waiver of sovereign immunity under 5 U.S.C. § 702, because Plaintiffs are

12  seeking refunds of the biometric fees they have paid in the past.  See Presbyterian Church (U.S.A.)

13  v. United States, 870 F.2d 518, 524 (9th Cir.1989) (noting that 5 U.S.C. § 702 only waives

14  sovereign immunity for non-monetary claims); see also Kaiser v. Blue Cross of California, 347

15  F.3d 1107, 1117 (9th Cir. 2003) (same).

16      Because Plaintiffs have failed to meet their burden to show that the government has consented

17  to a suit such as theirs, this Court must dismiss this action for lack of jurisdiction.

18  **II.  The Tucker Act Deprives The District Court Of Jurisdiction**

19      In the event the Court determines that the federal government has waived sovereign immunity,

20  jurisdiction over this action lies exclusively with the United States Court of Federal Claims.  The

21  Tucker Act, Section 1491, grants jurisdiction to the Court of Federal Claims to hear actions

22  against the United States, and the Act's conferral of jurisdiction on the Court of Federal Claims is

23  exclusive of district court jurisdiction when the damages sought totals more than $10,000.  Id. at

24  Section 1491(a)(1); see Bakersfield City School Dist. of Kern County v. Boyer, 610 F.2d 621, 628

25  (9th Cir. 1979) ("Jurisdiction of such a claim does not lie in the district court; it lies exclusively in

26  the court of claims under the Tucker Act because the claim exceeds $10,000.").

27      Plaintiffs' action consists of two related claims: a request for a declaratory judgment

28  invalidating 8 C.F.R. § 244.6, and a demand for a refund of all biometric fees paid by TPS re-

1   registrants from Nicaragua, El Salvador, and Honduras.  Because Plaintiffs seek a refund of all

2   previously paid biometric fees, that aspect of their claim is one for monetary damages.  See Brazos

3   Elec. Power Co-op., Inc. v. U.S., 144 F.3d 784, 787 (Fed. Cir. 1998) (finding Court of Federal

4   Claims jurisdiction was not avoided where the only significant consequence of obtaining the

5   "equitable relief" requested would be that plaintiff would obtain monetary damages from the

6   federal government).

7       Plaintiffs allege that the refunds could amount to "more than $100,000,000."  See Plaintiffs'

8   Motion for Preliminary Injunction, at 5.  Because this figure clearly exceeds the Tucker Act's

9   $10,000 threshold, the District Court lacks jurisdiction under Section 1491(a) with regard to the

10  refund claim.  See Wilkins v United States, 279 F.3d 782, 785 (9th Cir. 2002) (finding that claims

11  for non-tort damages against the United States in excess of $10,000 are subject to the exclusive

12  jurisdiction of the Court of Federal Claims).  Moreover, while the Tucker Act does not ordinarily

13  bar a district court's jurisdiction over a declaratory judgment claim since Section 1491(a) relates

14  specifically to claims for monetary damages, see Section 1491(a)(2), it does confer  jurisdiction in

15  the Court of Federal Claims to grant non-monetary relief "as an incident of and collateral to any . .

16  . judgment").  Wilkins, 279 F.3d at 786.

17      This situation, featuring a single action with claims lying both at law and in equity, is not

18  unique.  In a case involving both types of claims, however, it is the Court of Federal Claims, not

19  the district court, where such an action ought properly be maintained.  See Denton v. Schlesinger,

20  605 F.2d 484 (9th Cir. 1979) (holding that the Court of Federal Claims is the proper forum in

21  which to bring this type of action); see also Schulthess v. U.S., 694 F.2d 175, 178-79 & n.4 (9th

22  Cir. 1982) (finding that if a claim for monetary damages is "inseparable" from a claim founded in

23  equity, then the Court of Federal Claims is the proper forum).  Here, Plaintiffs cannot possibly

24  demonstrate that they are entitled to refunds unless the regulation at issue is first found to be

25  invalid.  Clearly, then, the claims are "inseparable," and the Court of Federal Claims, not this

26  Court, is the proper forum for resolving them.  Schulthess, 694 F.2d at 178-79 & n.4; see also

27  Wilkins, 279 F.3d at 786 (holding that the Court of Federal Claims may grant injunctive relief

28  when it is "associated with and subordinate to a monetary claim," but it has no jurisdiction over

1   claims where the monetary claim is incidental to a claim for affirmative non-monetary relief)

2   (citing McEniry v. United States, 7 Cl. Ct. 622, 625 (1985).

3       Although Plaintiffs style their action as seeking solely equitable relief, the refund portion of

4   their claim is actually a suit for monetary damages.  To determine whether an action seeks

5   monetary damages, which would give rise to Tucker Act jurisdiction in the Court of Federal

6   Claims, this Court must "look to the true nature of the action in determining the existence or not of

7   jurisdiction." National Ctr. for Mfg. Sciences v. United States, 114 F.3d 196, 199 (Fed. Cir.1997);

8   see also Katz v. Cisneros, 16 F.3d 1204, 1207 (Fed.Cir.1994).

9       Plaintiffs in the present action seek mandamus under Section 1361, but it is clear that the

10  impetus for their suit is the refund of what they claim is at least $100 million in biometric fees

11  already paid.  Calling their action one for mandamus cannot change the substance of their claim.

12  See Maier v. Orr, 754 F.2d 973, 982 (Fed. Cir. 1985) ("A civil action for recovery of money from

13  the United States cannot be disguised by couching it in mandamus terms.").  As the Maier court

14  further explained, "[I]t is by now firmly established that, where the prime effect of the

15  complaining party is to obtain money from the Federal Government, this court's exclusive

16  jurisdiction over nontortious claims (above $10,000) cannot be evaded or avoided by framing a

17  District Court complaint to appear to seek only injunctive, mandatory, or declaratory relief against

18  Government officials or the Federal Government." Id.  (Quoting Hoopa Valley Tribes v. United

19  States, 596 F.2d 435, 436, 219 Ct.Cl. 492 (1979) (citations omitted).

20      The substance of Plaintiffs' refund claim is money damages from the federal government – in

21  essence, an illegal exaction – and the Tucker Act covers such claims.  See Aerolineas Argentinas

22  v. U.S., 77 F.3d 1564, 1572 (1996) (finding that "Tucker Act claims may be made for recovery of

23  monies that the government has required to be paid contrary to law).  Should they succeed,

24  Plaintiffs "would be receiving monetary damages from the public fisc of the United States which is

25  the touchstone of Tucker Act jurisdiction." Brazos Elec. Power Co-op., Inc. v. U.S., 144 F.3d at

26  787 (determining that the Tucker Act afforded jurisdiction to the Court of Federal Claims where

27  plaintiff sought "a refund of money that it claims was wrongfully paid to the federal government").

28  The Court in Brazos held that a single, uncomplicated payment of money would provide Brazos

1   with an entirely adequate remedy (144 F.3d at 788), which is precisely the case here as it relates to

2   Plaintiffs' refund claim.  With regard to Plaintiffs' claim for prospective relief in the form of an

3   injunction that would bar DHS from collecting biometric fees in the future, the Court of Federal

4   Claims may grant such relief, should Plaintiffs ultimately succeed on the merits.  See Schulthess,

5   694 F.2d at 178-79 & n.4; see also Wilkins, 279 F.3d at 786.

6       Because the District Court lacks jurisdiction over the monetary damages Plaintiffs seek, and

7   because the Court of Federal Claims is able to grant injunctive relief such as this action requests,

8   this Court, in the interest of judicial economy, must transfer this action to the Court of Federal

9   Claims.  See Denton, 605 F.2d 484; Schulthess, 694 F.2d at 178-79 & n.4.

10   **III.   If This Court Maintains Jurisdiction Over This Action, The Little Tucker Act**
     **Establishes That This District Is Not The Proper Venue For Plaintiffs Who Reside**

11   **Outside This District**

12       Initially, it should be noted that Section 1346(a)(2), known as the Little Tucker Act, has not

13   been construed to waive sovereign immunity for equitable claims.  Berman v. United States, 264

14   F.3d 16, 20-21 (1st Cir. 2001); Student Loan Mktg. Ass'n v. Riley, 104 F.3d 397, 401

15   (D.C.Cir.1997); Chabal v. Reagan, 822 F.2d 349, 353-54 (3d Cir. 1987); see also Richardson v.

16   Morris, 409 U.S. 464, 465 (1973) (relating to the Tucker Act, Section 1491, but finding that the

17   Act's giving district courts jurisdiction over claims against the United States for money judgments

18   over $10,000 "has long been construed as authorizing only actions for money judgments and not

19   suits for equitable relief against the United States").  Thus, sovereign immunity applies to bar the

20   United States from suit because there has been no waiver of immunity.

21       Nonetheless, if this Court possesses jurisdiction over this action, it could only be based on the

22   Little Tucker Act's provision that the district courts have "concurrent" jurisdiction with the Court

23   of Federal Claims over claims of less than $10,000.  Section 1346(a)(2); see also Slugocki v.

24   United States, 816 F.2d 1572 & n.1 (Fed. Cir. 1987) (finding jurisdiction under the Little Tucker

25   Act on the basis that the amount claimed by any individual plaintiff did not exceed $10,000).

26   Although this action seeks refunds totaling at least $100 million, each Plaintiff likely seeks

27   unspecified damages that would fall below the Little Tucker Act's $10,000 threshold.

28       The venue provision applicable to claims governed by the Little Tucker Act states in relevant

1  part that "[a]ny civil action in a district court against the United States under subsection (a) of

2  section 1346 of this title may be prosecuted only: . . . (2) in the judicial district where the plaintiff

3  resides...." Section 1402(a). Under the Little Tucker Act, therefore, venue must be satisfied for

4  each plaintiff. See Saraco v. United States, 61 F.3d 863, 864 (Fed. Cir. 1995) (affirming district

5  court decision to transfer nationwide class action to Court of Federal Claims because venue in

6  district court was improper as to those plaintiffs – a majority of the total – who resided outside of

7  the district); see also Brooks v. Weinberger, 637 F.Supp. 22, 24 (D.D.C.1986) (venue in the

8  district court under the Little Tucker Act was only proper with respect to individuals who reside in

9  that district); National Treasury Employees' Union v. Reagan, 629 F.Supp. 762, 765 (D.D.C.1985)

10  (claims of non-residents dismissed under Section 1402(a) for improper venue), aff'd, 806 F.2d

11  1034 (Fed. Cir. 1986), cert. denied, 481 U.S. 1068 (1987). Plaintiffs who reside outside the

12  Northern District of California may not be joined in this action, if it proceeds in this Court,

13  because venue is clearly not satisfied in this Court for those plaintiffs. For that reason, this action

14  should be transferred to the Court of Federal Claims, in which venue is proper for a nationwide

15  class. See Saraco, 61 F.3d at 864.

16  **IV.    This Action Must Be Dismissed Because Plaintiffs Have Failed To State A Claim Upon Which Relief May Granted**

17

18      Even if this Court were to find that the government has waived sovereign immunity and that

19  this Court is the proper venue for this action to proceed, it should dismiss this case for failure to

20  state a claim. Fed. R. Civ. P. 12(b)(6). Construing the statutory framework as a whole, DHS's

21  imposition of a biometric fee is entirely reasonable. For Section 1254a(c)(1)(B) is ambiguous as

22  to the definition of "registration;" second, that Section does not include an express prohibition

23  against the imposition of a biometric services fee, especially in light of later-enacted statutory

24  authority; and third, even if this Court finds that the Section is plain on its face, the language of

25  Section 1356(m), authorizing DHS to recoup the "full costs" of adjudicating applications

26  "notwithstanding any other provisions of law," supersedes Section 1254a's $50.00 cap.

27      This Court's effort to reconcile the $50.00 limitation with the authority to implement

28  regulations that impose additional fees granted to the agency by Section 1356(m), Section 9701,

and Pub. L. No. 105-119 should begin with the language of Section 1254a(c)(1)(B). The statute

1  expressly limits to $50.00 the fee DHS may charge "as a condition of registering" for TPS, but it

2  does not provide a definition for the relevant terms.  DHS has filled that gap by defining "register"

3  as "to properly file, with the director, a completed application, with proper fee, for Temporary

4  Protected Status during the registration period designated under section 244.6 of the Act."  8

5  C.F.R. § 244.1.  Because Section 1254a(c)(1)(B) does not define that phrase, rendering ambiguous

6  the definition of "registering," this Court must defer to DHS's interpretation of the statute as long

7  as that interpretation is reasonable.  Chevron U.S.A., Inc. v. Natural Resources Defense Council,

8  Inc., 467 U.S. 837, 842 (1984) (holding that "if the statute is silent or ambiguous with respect to

9  the specific issue, the question for the court is whether the agency's answer is based on a

10  permissible construction of the statute").  See also INS v. Abudu, 485 U.S. 94, 110 (1988) (finding

11  that judicial deference to the Executive Branch is especially appropriate in the immigration

12  context); Gonzales v. Oregon, 546 U.S. 243, 244 (2006) (holding that an agency's interpretation of

13  a statute is entitled to deference, if the interpretation is promulgated in the exercise of the authority

14  delegated to the agency).

15  Similarly, the agency's interpretation warrants deference because Section 1254a(c)(1)(B) lacks

16  an express prohibition against the imposition of a biometric services fee, especially in light

17  Section 1356(m), Section 9701, and Pub. L. No. 105-119, each of which grants DHS the authority

18  to charge such fees.  As the Ninth Circuit recently said in United States v. Dang, 488 F.3d 1135,

19  1140 (9th Cir. 2007):

20  In deciding whether an administrative agency's regulation is a permissive
    construction of the governing statute, we employ the analysis set forth by the
21  Supreme Court in Chevron U.S.A. Inc. v. Natural Resources Defense Council,
    Inc., as further explained in Food & Drug Admin. v. Brown & Williamson
22  Tobacco Corp.  Under Chevron, we must consider first whether Congress has
    directly spoken to the precise question at issue.  If Congress has done so, the
23  inquiry is at an end; [we] must give effect to the unambiguously expressed
    intent of Congress.  In making that assessment, we not only look at the precise
24  statutory section in question, but we also analyze the provision in the context
    of the governing statute as a whole, presuming congressional intent to create a
25  symmetrical and coherent regulatory scheme.  Finally, "we must be guided to a
    degree by common sense as to the manner in which Congress is likely to
26  delegate [such an important] policy decision.  If, after conducting such an
    analysis, we conclude that Congress has not addressed the issue, we must
27  respect the agency's construction of the statute so long as it is permissible.

28  (internal citations and quotations omitted).  Under generally accepted tools of construction, this

Defendants' Memorandum In Support Of Motion To Dismiss Or To Transfer Venue
C 07-4192 TEH                              13

1   Court must engage in a textual analysis of the relevant statutory provisions.  In this case, that

2   analysis is not limited strictly to Section 1254a, but also includes Section 1356(m), Section 9701,

3   and Pub. L. No. 105-119.  The Court must read statutes in their context and with a view to their

4   place in the overall statutory scheme.  <u>Resident Councils of Washington v. Leavitt</u>, 500 F.3d 1025,

5   1031 (9th Cir. 2007).

6       Section 1356(m) contains only two sentences – the first of which is relevant in this case.  That

7   sentence begins with "[n]otwithstanding any other provisions of law" and continues to state that

8   "fees for providing adjudication and naturalization services may be set at a level that will ensure

9   recovery of the full costs of providing all such services."  In opening Section 1356(m) with

10  "notwithstanding any other provisions of law," Congress was clearly acknowledging that a conflict

11  might exist and that, when those conflicts arise, Section 1356 is operative.  Notably, the provision

12  of 1356(m) that "fees for providing adjudication and naturalization services may be set at a level

13  that will ensure recovery of the full costs of providing all such services" does <u>not</u> relate to where

14  funds should be deposited.  It specifically grants authority to charge and set fees, "notwithstanding

15  any other provisions of law," which must logically include notwithstanding Section 1254a.  The

16  language "notwithstanding any other provisions of law," must govern the language authorizing the

17  setting of fees, coming later in the same sentence, for the sentence to make sense when read as a

18  whole.  Any other reading, including one that would permit the limitation of Section 1254a to

19  trump the later grant of authority in Section 1356(m) "notwithstanding any other provisions of

20  law," would read that language out of the statute.

21      This Court must also examine Section 1254a in conjunction with Section 9701.  Pursuant to

22  section 9701, Congress has mandated that the services provided by an agency, including, in this

23  case, DHS's use of biometric information to qualify individuals for TPS, ought to be "self-

24  sustaining to the extent possible."  The statute provides further that the head of each agency "may

25  prescribe regulations establishing the charge for a service or thing of value provided by the

26  agency."  Furthermore, in applying Section 9701, the D.C. Circuit  has held that an agency may

27  charge fees to cover the cost of an FBI investigation to determine whether applicants have a

28  disqualifying criminal record.  <u>Seafarers Intern. Union of North America v. U.S. Coast Guard</u>, 81

1   F.3d 179, 181 (D.C. Cir. 1996).  In enacting 8 C.F.R. § 244.6, which established that TPS

2   applicants would be required to pay a biometric services fee, DHS was following the mandate

3   contained in Section 9701 and was following Congress's guidance to prescribe such regulations.

4       Finally, this Court must reconcile Section 1254a with the Department of Justice Appropriations

5   Act 1998, Pub. L. No. 105-119, 111 Stat 2440, 248, which dramatically changed the way in which

6   then-INS was directed to deal with fingerprint services, which are now called biometric services.

7   In Pub. L. No. 105-119, Congress expressed that "agencies may collect and retain a fee for

8   fingerprinting services."  There is no qualifying language in Pub. L. No. 105-119's grant of

9   authority for agencies to so charge, and charging such a fee is a long-term agency regulation and

10  practice that has not previously been objected to.  This constitutes strong evidence that the

11  immigration authorities acted within the scope of authority granted by Congress.

12      The Agency does not interpret Section 1254a as prohibiting a separate fee schedule.  Rather,

13  DHS reasonably concluded that it may impose this additional fee, which is separate and distinct

14  from the statutory registration fee, and the separate additional fee for providing documentation of

15  work authorization.  In this regard, it must also be noted that section 1254a(c)(1)(B) was written

16  before important developments in the need and capability of DHS to capture and use biometrics in

17  administering its programs, including that for TPS.  The Agency needs this information to properly

18  perform its functions, and it has determined that it has the need to use a separate fee schedule to

19  offset the costs of doing so.  See 8 C.F.R. § 103.2(a) (providing for filing fees); 8 C.F.R. §103.7(b)

20  (setting fee schedules); 8 C.F.R. § 244.6 (requiring fingerprints and photographs); see also

21  Instructions accompanying Form I-821 (requiring biometrics in conjunction with TPS application);

22  8 C.F.R. § 103.2(a)(1) (incorporating immigration form instructions into the regulations).

23  Congress recognized this need, and in 1999, well after the establishment of Section 1254a, enacted

24  Pub. L. No. 105-119, which authorizes agencies to collect and retain a fee for fingerprinting

25  services, which later became known as "biometric information."

26      DHS's determination constitutes a permissive construction of the governing statute and should

27  not be disturbed.  It is consistent with "the context of the governing statute as a whole, presuming

28  congressional intent to create a symmetrical and coherent regulatory scheme," and is "guided to a

1  degree by common sense as to the manner in which Congress is likely to delegate [such an

2  important] policy decision." Dang, 488 F.3d at 1140.  Furthermore in examining DHS's

3  determination, this Court need not conclude that the Agency construction was the only one it

4  permissibly could have adopted, or even the reading the Court would have reached if the question

5  initially had arisen in a judicial proceeding. Morales-Izquierdo v. Gonzales, 486 F.3d 484, 492

6  (9th Cir. 2007) (citing Chevron, 467 U.S. at 843 n. 11).  Rather, "Congress, when it left ambiguity

7  in a statute meant for implementation by an agency, understood that the ambiguity would be

8  resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to

9  possess whatever degree of discretion the ambiguity allows." Morales-Izquierdo, 486 F.3d at 492

10  (quoting Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967 (2005)

11  (quoting Smiley v. Citibank (S.D.), N.A., 517 U.S. 735, 740-41 (1996) (internal quotation marks

12  omitted)).

13      In addition, the legislative history and the purpose of the statute are relevant to the decision

14  whether DHS's interpretation of the statute merits Chevron deference.  Chevron's classic

15  formulation states that if Congress has explicitly left a gap for an agency to fill, there is an express

16  delegation of authority to the agency to elucidate a specific provision of the statute by regulation,

17  and such legislative regulations are given controlling weight unless they are arbitrary, capricious,

18  or manifestly contrary to the statute.  Northwest Ecosystem Alliance v. U.S. Fish and Wildlife

19  Service, 475 F.3d 1136, 1141 (9th Cir. 2007) (quoting Chevron, 467 U.S. at 843).  In determining

20  whether DHS's construction is permissible, the Court must consider whether Congress has

21  explicitly instructed the agency to flesh out specific provisions of the general legislation, or has

22  impliedly left to the agency the task of developing standards to carry out the general policy of the

23  statute.  Tovar v. U.S. Postal Serv., 3 F.3d 1271, 1276 (9th Cir.1993).  When relevant statutes are

24  silent on the salient question, the Court must assume that Congress has implicitly left a void for an

25  agency to fill and must therefore defer to the agency's construction of its governing statutes,

26  "unless that construction is unreasonable." Earth Island Institute v. Ruthenbeck, 490 F.3d 687,

27  696-98 (quoting Chevron, 467 U.S. at 843-44).

28      Accordingly, "reasonableness" is the standard where courts review regulations under Chevron.

1  Nothing in the statute, the regulation, or the legislative history mentions a prohibition on the

2  charging of fees in addition to the $50.00 registration fee.  In fact, Plaintiffs acknowledge that the

3  additional fee charged for the collection of biometric information reflects both the costs of

4  biometric information collection and the costs associated with the use of the collected biometric

5  information for security and background checks, which would suggest that the biometric fees are

6  reasonable.

7      In addition, a statute, or in this case, the INA, must be read to harmonize all its provisions.

8  Clearly, the fee limitation provision of Section 1254a(c)(1)(B) must be read in conjunction with

9  Section 1356(m), which expressly states it operates "[n]otwithstanding any other provisions of

10 law."  An interpretation of Section 1254a(c)(1)(B) that would prohibit the Secretary from

11 promulgating regulations that establish fees for providing adjudication of TPS applications,

12 including the collection, use, and maintenance of biometric information, would improperly

13 emasculate Section 1356(m) in contradiction of Congressional intent.  See Cook Inlet Native Ass'n

14 v. Bowen, 810 F.2d 1471, 1474 (9th Cir. 1987) (finding that "the statute should not be interpreted

15 to render one part inoperative") (citing Mountain States Tel. and Tel. Co. v. Pueblo of Santa Ana,

16 472 U.S. 237, 249 (1985); United States v. Handy, 761 F.2d 1279, 1280 (9th Cir.1985).)  As the

17 Ninth Circuit held in Cook Inlet, "The words of a statute should be harmonized internally and with

18 each other to the extent possible."   810 F.2d at 1474 (citing Weinberger v. Hynson, Westcott &

19 Dunning, Inc., 412 U.S. 609, 631-33 (1973)).  A reading of Section 1254a(c)(1)(B) that renders

20 Section 1356(m) inoperable, even in part, creates discord in the statute – not harmony.

21     Because Congress has established in Section 1356(m) that DHS may collect and assess fees for

22 providing adjudication, notwithstanding any other provisions of law, Plaintiffs have failed to

23 establish that Defendants have violated any statutory duty and have failed to demonstrate that they

24 are entitled to a declaratory judgment rendering 8 C.F.R. § 244.6 invalid.

25                                    **Conclusion**

26     Because the federal government has not waived sovereign immunity, this action must be

27 dismissed pursuant to Fed. R. Civ. P. 12(b)(1).  Additionally, even if this Court imputes a waiver

28 of sovereign immunity and finds that Plaintiffs have stated a claim under Rule 12(b)(6), this Court

1  does not possess jurisdiction to hear this action under the Tucker Act, Section 1491(a)(1), which

2  confers jurisdiction exclusively to the United States Court of Federal Claims for actions seeking

3  judgment against the federal government founded on any regulation of an executive department, so

4  long as the damages requested exceeds $10,000.  Furthermore, if this Court determines that the

5  Little Tucker Act, Section 1346(a)(2), confers jurisdiction upon this Court, because each putative

6  class member seeks less than $10,000, then this action should be transferred to the Court of

7  Federal Claims, which would be an appropriate venue for a nationwide class, as opposed to the

8  Northern District of California, which would be the proper venue only as to claims of plaintiffs

9  who reside in this district.

10      Finally, Plaintiffs fail to state a claim because DHS's interpretation of Section 1254a, Section

11  1356(m), Section 9107, and Pub. L. 105-119 is reasonable and entitled to deference.  The Court

12  should therefore dismiss this case for failure to state a claim.

13      Dated this 15th day of November, 2007.

14                                              Respectfully submitted,

15

16                                              SCOTT N. SCHOOLS,
                                                United States Attorney
17
                                                ILA C. DEISS
18                                              Assistant United States Attorney

19                                              WILLIAM J. HOWARD
                                                Assistant Director
20
                                                LYLE D. JENTZER
21                                              Senior Litigation Counsel

22
                                                /s/ J. Max Weintraub
23                                              _____

24                                              J. MAX WEINTRAUB
                                                Trial Attorney

25                                              Attorneys for Defendants

26

27

28