1   JONATHAN M. KAUFMAN, ESQ. (California State Bar No. 104576)
    The Law Offices of Jonathan M. Kaufman
2   220 Montgomery Street, Suite 976
    San Francisco, CA 94104
3   Telephone: (415) 956-4765
    Facsimile: (415) 956-1664
4   E-Mail:     jonathan-kaufman@sbcglobal.net

5   Attorney for Plaintiffs

6                           UNITED STATES DISTRICT COURT

7                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

8                             SAN FRANCISCO DIVISION

9

10  JOSE BAUTISTA-PEREZ, OSCAR               Case No. C 07-4192 TEH
    GUARDADO-GONZALEZ, DENIS
11  CABALLERO-ESPINOZA, JOSE                 PLAINTIFFS' AMENDED MEMORANDUM
    ALVARADO-MENJIVAR, OSCAR RENE            IN   OPPOSITION   TO   DEFENDANTS'
12  RAMOS,  MARIA  SALAZAR,  JOSE            MOTION TO DISMISS, OR IN THE
    BENJAMIN QUINTEROS, AND MARIA            ALTERNATIVE, MOTION TO TRANSFER
13  JOSEFA CRUZ, Individually and on behalf of   VENUE
    all others similarly situated,
14
            Plaintiffs,
15
        vs.                                  Date: January 14, 2008
16                                           Time: 10:00 a.m.
    MICHAEL B. MUKASEY, Attorney             Place: Courtroom 12
17  General  and  MICHAEL  CHERTOFF,
    Secretary of Homeland Security,
18
            Defendants.
19
    _____/
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION                                                                1

II.     28 U.S.C §1331 VESTS THE COURT WITH SUBJECT MATTER
        JURISDICTION BECAUSE PLAINTIFFS' FIRST AMENDED
        COMPLAINT IS NOT AN ACTION FOR MONEY DAMAGES                               1

III.    THE TUCKER ACT DOES NOT DEPRIVE THE
        DISTRICT COURT OF JURISDICTION                                             5

IV.     DEFENDANTS' MOTION TO TRANSFER VENUE SHOULD BE
        DENIED BECAUSE THE NORTHERN DISTRICT OF CALIFORNIA
        IS THE PROPER VENUE FOR ALL MEMBERS OF THE PLAINTIFF
        CLASS                                                                      9

V.      DEFENDANTS' MOTION FOR DISMISSAL UNDER
        FED. R. CIV. P. 12(b)(6) SHOULD BE DENIED                                 11

                1.      8 U.S.C. § 1356(m)                                        14

                2.      Pub.L.No. 105-119                                         17

                3.      31 U.S.C. §9701                                           18

VI.     DEFENDANTS' RULE 12(b)(6) MOTION SHOULD BE DENIED
        BECAUSE PLAINTIFFS' ALLEGATION THAT DEFENDANTS
        IMPOSE A FEE FOR THE COLLECTION OF BIOMETRIC
        INFORMATION WHEN THE COLLECTION OF BIOMETRIC
        INFORMATION IS NOT REQUIRED STATES A CLAIM UPON
        WHICH RELIEF CAN BE GRANTED                                               21

VII.    CONCLUSION                                                                22

i

# TABLE OF AUTHORITIES

## 1. JUDICIAL DECISIONS

*B.K. Instruments, Inc. v United States of America*
715 F.2d 713 (2nd Cir. 1983)                                        1,5

*Bowen v Massachusetts*
487 U.S. 879 (1988)                                                1,2,4

*Brazos Elec. Power Co-op., Inc. v. United States*
144 F.3d 784 (Fed. Cir. 1998)                                       6

*Califano v Sanders*
430 U.S. 99 (1977)                                                  1

*Chevron U.S.A., Inc. v Natural Resources Defense Council, Inc.*
467 U.S. 837 (1984)                                                 14

*Consumer Product Safety Comm'n v GTE Sylvania, Inc.*
447 U.S. 102 (1981)                                                 14

*Commodity Futures Trading Comm'n v Savage*
611 F.2d 270 (9th Cir. 1979)                                       9,10

*Coverdell v Department of Social & Health Services*
834 F.2d 758 (9th Cir. 1987)                                        8

*Denton v. Schlesinger*
605 F.2d 484 (9th Cir. 1979)                                        6

*Fallbrook Public Utility District v Untied States District Court*
202 F.2d 942 (9th Cir. 1953)                                        10

*Goodyear Atomic Corp. v Miller*
486 U.S. 174 (1988)                                                 18

*INS v Cardoza-Fonseca*
480 U.S. 421 (1987)                                               14,19

*INS v Nat'l Center for Immigrants' Rights*
502 U.S. 183 (1991)                                                15

*Kaiser v Blue Cross of California*
347 F.3d 1107 (9th Cir. 2003)                                                    2

*Kester v Campbell*
652 F.2d 13 (9th Cir. 1981)                                                      9

*March v United States*
506 F.2d 1306 (D.C. Cir. 1974)                                                   9

*Maryland Dept. Of Human Resources v. Department of Health and Human Services*
763 F.2d 1441, 1446 (D.C. Cir. 1985)                                             4

*McEniry v. United States*
7 Cl. Ct. 622 (1985)                                                            7

*McGlinchy v Shell Chemical Co.*
845 F.2d 802 (9th Cir. 1988)                                                    21

*National Center For Manufacturing Sciences v U.S.A.*
114 F.3d 196 (D.C. Cir. 1997)                                                    5

*Presbyterian Church U.S.A. v United States*
870 F.2d 518 (9th Cir. 1989)                                                     2

*Richardson v Morris*
409 U.S. 464 (1973)                                                             7

*School Committee of Burlington v. Department of Education of Massachusetts*
471 U.S. 359 (1985)                                                          2,3,4

*Schulthess v U.S.*
694 F.2d 175 (9th Cir. 1982)                                                     8

*Seafarers Intern. Union of North America v U.S. Coast Guard*
81 F.3d 179 (D.C. Cir. 1996)                                                    20

*Stjerholm v Peterson*
83 F.3d 347 (10th Cir. 1996)                                                    10

*Usher v City of Los Angeles*
828 F.2d 556 (9th Cir. 1987)                                                    21

*Wilkins v. United States*
279 F.3d 782 (9th Cir. 2002) | *7,10*

**2. STATUTES**

**Title 5 of the United States Code**

§702 | 1,2,4,5

**Title 8 of the United States Code**

§1254a(c)(1)(A)(iv) | 11,12,13

§1254a(c)(1)(B) | 1,2,3,4,5,7,8, 11,12,13,14, 15,16,17,18,19, 20,21,22

§1356(m) | 13,14,15,16,17

§1732(b)(1) | 18

**Title 20 of the United States Code**

§1401 | 3

**Title 28 of the United States Code**

§1331 | 1,5

§1346(a)(2) | 9,10

§1402(a) | 9

§1404(a) | 9

§1491 | 5,7,9

**Title 31 of the United States Code**

§9701 | 18,19,20

iv

**Title 46 of the United States Code**

§2110(a)(1)                                                                              20

**Federal Rules of Civil Procedure**

Rule 12(b)(1)                                                                            1,5

Rule 12(b)(6)                                                                            11,17,21

**Other Statutes**

Illegal Immigration Reform and Immigrant Responsibility Act of 1996
Pub. L. No. 104-208, 110 Stat. 309                                                       13

Immigration Act of 1990
Pub. L. No. 101-649, 104 Stat. 4978                                                      13,14

Miscellaneous and Technical Immigration and Naturalization Amendments of 1991
Pub. L. No. 102-23, 105 Stat. 173                                                        13,19

Pub. L. No. 105-119                                                                      17,18

**4. REGULATIONS**

**Title 8 of the Code of Federal Regulations**

§103.7                                                                                   17

§244.6                                                                                   2,19

**5. FEDERAL REGISTER**

63 FR 12979                                                                              20

72 FR 4887                                                                               3,13

72 FR 29851                                                                              20

# I. INTRODUCTION

Plaintiffs submit the following memorandum in opposition to defendants' Motion to Dismiss, Or In The alternative, Motion To Transfer Venue.

## II. 28 U.S.C. §1331 VESTS THE COURT WITH SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFFS' FIRST AMENDED COMPLAINT IS NOT AN ACTION FOR MONEY DAMAGES

28 U.S.C. § 1331 confers the District Court with subject matter jurisdiction to review federal agency action. *Califano v Sanders*, 430 U.S. 99, 105 (1977). 5 U.S.C. § 702 waives sovereign immunity in an action seeking relief other than "money damages" brought by "a person suffering legal wrong because of legal action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." *Bowen v Massachusetts*, 487 U.S. 879, 891-899 (1988).

Defendants move the Court to dismiss plaintiffs' First Amended Complaint under Fed.R.Civ.P. 12(b)(1). Defendants maintain that the District Court lacks subject matter jurisdiction over the action because the federal government has not waived sovereign immunity.[1]

5 U.S.C. § 702 was amended in 1976 to eliminate the defense of sovereign immunity as to any action in a Federal court seeking relief other than "money damages" that states a claim based on the assertion of unlawful action by a federal agency. *B.K. Instruments, Inc. v United States of America*, 715 F.2d 713, 724 (2nd Cir. 1983). To determine its jurisdiction, the Court must therefore examine whether plaintiffs' Complaint is an action for "money damages".

Plaintiffs' First Amended Complaint is not an action at law for "money damages". It is an equitable action for specific relief. It seeks a judgment declaring that 8 U.S.C. § 1254a(c)(1)(B) prohibits the imposition of an additional biometric service fee as a condition to register for TPS. It seeks to enjoin the USCIS from imposing an additional biometric service fee as a condition to register for TPS, and to enjoin the USCIS from imposing a fee for the collection of biometric

---

[1]Defendants' Memorandum, Pgs 6-8.

1

1    information when the collection of biometric information is not required. It seeks to invalidate 8

2    C.F.R. § 244.6. It seeks a refund of fees imposed in violation of 8 U.S.C. § 1254a(c)(1)(B). Such

3    a refund would not constitute "money damages" because, instead of compensating plaintiffs for a

4    loss, it would, as explained below, require the USCIS to pay the money it was required by statute to

5    pay.

6          Defendants' characterization of plaintiffs' Complaint as an action for "money damages"

7    conflicts with the substantial case law interpreting 5 U.S.C. § 702. Defendants reliance on

8    *Presbyterian Church U.S.A. v United States*, 870 F.2d 518 (9th Cir. 1989) and *Kaiser v Blue Cross*

9    *of California*, 347 F.3d 1107 (9th Cir. 2003) is misplaced. In neither case was the existence of

10   "money damages" challenged, or the issue litigated. Inexplicably, defendants fail to acknowledge

11   and address *Bowen v Massachusetts*, 487 U.S. 879 (1988).

12         In *Bowen* the Supreme Court explored the meaning of the term "money damages," as it is

13   used in § 702. The Court distinguished an action for "money damages," which cannot support a

14
     waiver of sovereign immunity under § 702, from "an equitable action for specific relief," which
15

16   may include a request for the repayment of money, but which nonetheless is maintainable under

17   § 702.

18               "Our cases have long recognized the distinction between an action at law for
19         damages – which are intended to provide a victim with monetary compensation for an
           injury to his person, property, or reputation – and an equitable action for specific relief –
20         which may include an order providing... for the recovery of... monies.... The fact that a
           judicial remedy may require one party to pay money to another is not a sufficient reason
21         to characterize the relief as 'money damages.'" *Bowen*, 487 U.S. at 893 (internal
           quotations and citations omitted).
22

23         The Court's decision in *Bowen* followed *School Committee of Burlington v. Department*

24   *of Education of Massachusetts*, 471 U.S. 359 (1985), in which the Court "recognized that relief

25   that orders a town to reimburse parents for educational costs that Congress intended the town to
26
     pay is not 'damages.'" *Bowen*, 487 U.S. at 893-894.
27

28                                                    2

At issue in *Burlington* was the Education of the Handicapped Act, 20 U.S.C. § 1401, *et seq.* In *Burlington*, the Court found that although legislation did not expressly require that parents be reimbursed for certain expenses related to the education of their handicapped children, the requirement was implied by Congressional intent. *Burlington,* 71 U.S. at 369-370. The Court found that ordering reimbursement would not constitute an award of money damages. "In this Court, the Town repeatedly characterizes reimbursement as 'damages,' but that simply is not the case. Reimbursement merely requires the Town to belatedly pay expenses that it should have paid all along...." *Id*, at 370-371.

In this respect 8 U.S.C. § 1254a is comparable to the Education of the Handicapped Act. Because 8 U.S.C. § 1254a(c)(1)(B) places a strict cap on the fee that may be imposed for TPS registration, it must be inferred that Congress intended the USCIS to pay the expenses for TPS registration that exceed $50.00. For seventeen years Congress has permitted the registration fee to remain at $50.00, notwithstanding a finding by the USCIS that the $50.00 fee does not recover its full costs of processing a TPS application.[2] This legislative history demonstrates that Congress intended that the USCIS recover its costs through alternative sources of funding, such as appropriated funding or a fee surcharge under 8 U.S.C. § 1356(m). Ordering the USCIS to refund registration fees paid in excess of $50.00 would not constitute an award of "money damages" to plaintiffs because it would merely require the USCIS "to belatedly pay expenses that it should have paid all along." *Id*.

Such an order must not be confused with an award of damages in compensation for money wrongfully exacted by the USCIS. While the remedies of money damages and specific

---

[2] 72 FR 4887, 4897.

3

relief may at times overlap in the sense that both may provide for the repayment of money, they remain distinct remedies. In deciding that the Secretary of Health and Human Services should be required to reimburse the State of Massachusetts for expenditures made under its Medicaid program, the Court in *Bowen* cautioned against confusing the remedies of money damages with specific relief that requires the payment of money:

> "The State is seeking funds to which a statute allegedly entitles it, rather than money in compensation for the losses, whatever they may be, that the State will suffer or has suffered by virtue of the withholding of those funds. If the program in this case involved in-kind benefits this would be altogether evident. The fact that in the present case it is money rather than in-kind benefits that pass from the federal government to the states... cannot transform the nature of the relief sought – specific relief, not relief in the form of damages." *Bowen*, 487 U.S. at 901 (quoting *Maryland Dept. Of Human Resources v. Department of Health and Human Services*, 763 F.2d 1441, 1446 (D.C. Cir. 1985)).

While the parents in *Burlington* and the State of Massachusetts in *Bowen* may have had causes of action at law for money damages in compensation for  the losses they incurred as a result of the misapplication of statutory mandates, neither brought an action at law for money damages; instead, each brought an equitable action for specific relief, which happened to require the repayment of money. Similarly, in the instant case, while the plaintiff class may have a cause of action at law against the USCIS for money damages in compensation for the losses they have incurred as a result of the USCIS's misapplication of § 1254a(c)(1)(B), they have not sued at law for damages. They have chosen to pursue an equitable action for specific relief, which, if successful, will require the USCIS to refund TPS registrations fees plaintiffs were not required to remit. Since the plaintiff class does not seek "money damages," their action may be maintained under § 702.

Plaintiffs agree that the Court must "look to the true nature of the action in determining

4

the existence or not of jurisdiction." *National Center For Manufacturing Sciences v U.S.A.*, 114 F.3d 196, 199 (D.C. Cir. 1997).[3] The principal objective of plaintiffs' Complaint is to end a USCIS policy that violates 8 U.S.C. § 1254a(c)(1)(B). The Court may order defendants to refund fees unlawfully imposed because the Court has jurisdiction under 28 U.S.C. § 1331 "to fashion the equitable relief it deems appropriate." *B.K. Instrument, Inc.*, 715 F.2d at 728.

Defendants' motion to dismiss overlooks critical case law. It mischaracterizes plaintiffs' Complaint as an action for money damages. Defendants motion to dismiss under Fed.R.Civ.P 12(b)(1) should be denied.

### III. THE TUCKER ACT DOES NOT DEPRIVE THE DISTRICT COURT OF JURISDICTION

Defendants move the Court to transfer this action to the Court of Federal Claims because under 28 U.S.C. § 1491 the Court of Claims exercises "exclusive" jurisdiction over claims against the United States which exceed $10,000.00.[4]

Defendants' motion should be denied.

The language of the Tucker Act itself does not grant "exclusive" jurisdiction to the Court of Claims in such cases. *See* 28 U.S.C. § 1491. The jurisdiction of the Court of Claims to decide such claims is only "exclusive" to the extent that Congress has not granted similar authority to any other court. *Bowen*, 487 U.S. at 910 n.48. As discussed above, 5 U.S.C. § 702 authorizes the District Court to order the reimbursement of fees incident to its power to grant specific relief, and "the fact that the purely monetary aspects of the case could [be] decided in the Claims Court

---

[3] Defendants' Memorandum, Pg. 10.

[4] Defendants' Memorandum, Pgs. 8-11.

is not a sufficient reason to bar that aspect of the relief available in a district court." *Id.*

Defendants' maintain that the Court of Claims exercises jurisdiction over this action because plaintiffs' Complaint includes an action at law for money damages.[5] Defendants misapprehend the nature of this action. As discussed above, plaintiffs' Complaint is not an action at law. It is an equitable action. An order enjoining defendants to refund fees would constitute specific relief rather than an award of money damages.

Defendants suggest that the plaintiff class has styled its action as one for equitable relief, when "it is clear that the impetus for their suit is the refund."[6] The response to this is that the injunctive and declaratory relief sought by the plaintiff class is far more significant than defendants suggest.

The instant case is a far cry from *Denton v. Schlesinger*, 605 F.2d 484, 485 (9th Cir. 1979), a military discharge case in which all of the injunctive, declaratory and mandamus relief sought by the plaintiffs was found to be "susceptible of monetary calculation." The instant case is also distinguishable from *Brazos Elec. Power Co-op., Inc. v. United States*, 144 F.3d 784, 788 (Fed. Cir. 1998), a case involving a contractual dispute in which the court found that "a single, uncomplicated payment of money would provide Brazos with an entirely adequate remedy," since "[n]o prospective relief would be required and there would be no ongoing relationship to monitor and referee."

The crux of the plaintiffs' Complaint is a request for prospective relief. No amount of money paid to the plaintiff class would prevent the USCIS from charging illegal biometric

---

[5] Defendants' Memorandum, Pg. 9.

[6] Defendants' Memorandum, Pg. 10.

6

1  service fees again in the future.

2  The equitable relief sought in plaintiffs' Complaint is more akin to the relief sought in
3
4  *Wilkins v. United States*, 279 F.3d 782, 786-787 (9th Cir. 2002), in which an allegedly
5  improperly discharged military chaplain sought damages and reinstatement, but also sought
6  "[b]road-based declaratory and injunctive relief regarding Navy policies affecting the structure of
7  the military chaplaincy" which could "hardly be characterized as 'collateral to' reinstatement or a
8  money judgment for Wilkins."
9
10  Plaintiffs' Complaint is an effort to end a USCIS policy that imposes TPS registration
11  fees in violation of 8 U.S.C. § 1254a(c)(1)(B). This objective cannot credibly be characterized as
12  collateral to plaintiffs' request for monetary relief.

13  Defendants' assertion that the Court of Claims could enjoin the USCIS from imposing
14  excessive TPS registration fees in the future is meritless. [7]  The equitable jurisdiction of the
15
16  Court of Claims under 28 U.S.C. § 1491(a)(2) is not nearly as expansive as defendants would
17  have the Court believe.

18  The Tucker Act authorizes "only actions for money judgments and not suits for equitable
19  relief against the United States." *Richardson v Morris*, 409 U.S. 464, 465 (1973). The
20  jurisdiction of the Court of Claims to grant non-monetary relief is limited to granting relief
21
22  "associated with and subordinate to a monetary claim, but it has no jurisdiction over claims
23  where the monetary claim is incidental to a claim for affirmative non-monetary relief."
24  *Wilkins*, 279 F.3d at 786 (citing *McEniry v. United States*, 7 Cl. Ct. 622, 625 (1985)). Resolution
25  of the instant case will require a judgment declaring that the USCIS has misapplied 8 U.S.C.§
26

27  [7] Defendants' Memorandum, Pg. 11.

28  7

1254a(c)(1)(B), an injunction prohibiting the USCIS from imposing prohibited fees in the future, and an order enjoining the USCIS to refund fees previously remitted. Although the monetary aspect of this relief may prove significant in amount, any payment made to the plaintiff class will unquestionably be incidental and subordinate to the Court's granting of other equitable relief.

For this reason defendants' reliance on *Schulthess v U.S.*, 694 F.2d 175 (9th Cir. 1982) is misplaced.[8] *Schulthess* concerned a former federal employee's claim for a back pay award and a corresponding equitable claim for an adjustment of his civil service annuity. The Court found that the District Court lacked jurisdiction to hear the equitable claim because it was "completely dependant upon the prior resolution of his principal claim for back pay and does not ripen until after an initial determination that he is entitled to a back pay award." *Id.*, at 178.

Plaintiffs' equitable claim is not dependant on their monetary claim. The reverse is true. In order for plaintiffs to receive monetary relief, the Court must first grant plaintiffs' other claims for equitable relief.

Moreover, defendants have failed to offer any evidence that any member of the class has an individual claim that exceeds $10,000.00. Plaintiffs' First Amended Complaint does not allege any claim amount. While plaintiffs speculated in their motion for a preliminary injunction that defendants could be required to refund the plaintiff class $100,000,000.00, a factual assertion made in a motion does not constitute evidence. *Coverdell v Department of Social & Health Services*, 834 F.2d 758, 762 (9th Cir. 1987).

As defendants should realize, in a class action the jurisdiction of the Court of Claims is not determined by aggregating the claims of the class members, but by calculating the claim of

---

[8] Defendants' Memorandum, Pgs. 9-10.

each individual member of class. In order for the Court of Claims to exercise jurisdiction over a class action, § 1491 requires that the individual claim of each class member must exceed $10,000.00. "In a class action . . . jurisdiction turns, not upon the aggregate amount of the claims of the members of the class, but upon the amounts claimed individually by those members." *March v United States*, 506 F.2d 1306, 1309 fn 1 (D.C. Cir. 1974); *Kester v Campbell*, 652 F.2d 13, 15 (9th Cir. 1981). [9]

For all of these reasons it is submitted that defendants' motion to transfer this action to the Court of Federal Claims should be denied.

## IV. DEFENDANTS' MOTION TO TRANSFER VENUE SHOULD BE DENIED BECAUSE THE NORTHERN DISTRICT OF CALIFORNIA IS THE PROPER VENUE FOR ALL MEMBERS OF THE PLAINTIFF CLASS

Defendants contend that if the Court possesses jurisdiction over plaintiffs' action it could only be based upon the Little Tucker Act's provision that the District Courts have "concurrent" jurisdiction with the Claims Court over claims of less than $10,000.00. 28 U.S.C. § 1346(a)(2). Defendants, relying upon the provisions of 28 U.S.C. § 1402(a), assert that members of the plaintiff class who reside outside of the Northern District of California may therefore not be joined in this action. Defendants conclude that the action should therefore be transferred to the Court of Claims where venue would be proper for a nationwide class. [10]

28 U.S.C. § 1404(a) requires that a party seeking a transfer of venue establish that the action could have originally been brought in the court to which transfer is sought. *Commodity*

---

[9]Defendants concede that "each plaintiff likely seeks unspecified damages that would fall well below . . . $10,000.00." Defendants' Memorandum, Pg. 11.

[10] Defendants' Memorandum, Pg. 11-12.

9

*Futures Trading Comm'n v Savage*, 611 F.2d 270, 279 (9th Cir. 1979). Defendants' motion for a transfer of venue should be denied because the Court of Federal Claims cannot exercise jurisdiction over plaintiffs' Complaint. As discussed above, plaintiffs' Complaint is an action for equitable relief, not an action at law for money damages of less than $10,000.00. Venue cannot be transferred to the Court of Claims because the waiver of sovereign immunity under 28 U.S.C. § 1346(a)(2) is inapplicable to the action, and, as discussed above, the Court of Claims lacks jurisdiction to grant the equitable relief sought in plaintiffs' Complaint. *Wilkens*, 279 F.3d at 786-787.

Defendants' motion for a change of venue should be denied because defendants have already waived an objection to venue in the Northern District of California.

Objections to venue may be waived if not timely filed. *Stjerholm v Peterson*, 83 F.3d 347, 359 (10th Cir. 1996); 28 U.S.C. §1406(b). "A 'timely' objection is one interposed no later than the first pleading or motion of a party." *Fallbrook Public Utility District v Untied States District Court*, 202 F.2d 942, 944 (9th Cir. 1953). A party who files briefs and participates in hearings before the court waives an objection to venue. *Id.*

Defendants appeared in this action, and filed significant pleadings addressing plaintiffs' claim on its merits, without objecting to venue in the Northern District of California. Defendants filed opposition to plaintiffs' Motion For A Preliminary Injunction. A USCIS official appeared in the action by filing an eight page declaration in opposition to plaintiffs' Motion and Complaint. Defendants did not object to venue in the Northern District of California.

Defendants filed a Motion For Administrative Relief Under L.R. 7-11 To File Surreply and, when their motion was granted, filed a Surreply in opposition to plaintiffs' Motion. No

10

objection to venue was made. Defendants appeared before the Court at a hearing on plaintiffs'

injunction motion. Defendants did not object to venue in the Northern District of California at

the hearing.

Only after the Court issued its October 17, 2007 Order, and informed defendants that it

found that plaintiffs had shown a high likelihood of success on the merits of their Complaint, did

defendants object to venue in the Northern District of California.

It is doubtful that defendants would be objecting had the Court found it unlikely that

plaintiffs would prevail on the merits of their Complaint. Defendants' motion to transfer venue

smacks of forum shopping and it should be denied.

## V. DEFENDANTS' MOTION FOR DISMISSAL UNDER FED. R. CIV. P. 12(b)(6) SHOULD BE DENIED

Defendants contend that the Court should dismiss plaintiffs' Complaint under

Fed.R.Civ.P.12(b)(6) for failure to state a claim. As they did in their opposition to plaintiffs'

injunction motion, defendants argue that 8 U.S.C. § 1254a(c)(1)(B) does not prohibit the USCIS

from imposing a separate, additional biometric service fee. Defendants contend, as they did

before, that the Court must defer to the USCIS's construction of 8 U.S.C. § 1254a.(c)(1)(B)

because the statute is "ambiguous" as to the definition of the statutory term, "registering", and

because it does not expressly prohibit the imposition of a separate "biometric service fee". [11]

There is nothing ambiguous about the term, "registering" as it is used in

§ 1254a(c)(1)(B). To receive TPS, 8 U.S.C. § 1254a(c)(1)(A)(iv) requires that an alien

"registers" during a designated "registration period" "to the extent and in the manner which the

---

[11] Defendants' Memorandum, Pgs. 12-17.

11

Attorney General establishes".

An alien must establish that he is a national of a designated country. 8 U.S.C. §1254a(c)(1)(A). He must demonstrate that he has not been convicted of a disqualifying criminal offense. 8 U.S.C. § 1254a(c)(1)(A)(iii). To successfully register for TPS an alien may be required to remit a registration fee. Pursuant to 8 U.S.C. § 1254a(c)(1)(B), "[t]he Attorney General may require payment of a reasonable fee as a condition for registering an alien under subparagraph (A)(iv) . . . The amount of any such fee shall not exceed $50."

Thus, 8 U.S.C. § 1254a(c)(1)(A)(iv) requires the Attorney General to establish a TPS registration procedure that verifies an alien's identity and conducts a background check. Defendants now collect biometrics to perform these functions. [12]As capturing biometrics is an integral part of the registration procedure established under 8 U.S.C. § 1254a(c)(1)(A)(iv), and as 8 U.S.C. § 1254a(c)(1)(B) prohibits the imposition of a TPS registration fee that exceeds $50.00, the USCIS's imposition of an additional "biometric service fee", as a condition to register for TPS, violates the plain language of 8 U.S.C. § 1254a(c)(1)(B).

The USCIS's construction § 1254a(c)(1)(B) fails because it does not account for the unique nature of TPS.  TPS is unlike other immigration benefit statutes. It is the only immigration benefit statute in the Immigration and Nationality Act which specifically limits the fee an applicant is required to pay. Moreover, the final sentence of § 1254a(c)(1)(B) requires that "all fees collected under this subsection shall be credited to the appropriation to be used in carrying out this section". The USCIS disregards this requirement. It diverts fees remitted for

---

[12] Defendants' Memorandum, Pg. 6.

12

1   TPS registration for general agency funding purposes.[13]

2   The USCIS's construction of § 1254a(c)(1)(A)(iv) fails because it does not account for

3
4   the legislative history of TPS. Section 302 of the Immigration Act of 1990 (IMMACT 1990)

5   amended the Immigration and Nationality Act to provide for TPS. [14]   As originally enacted,

6   §302( c)(1)(B) of IMMACT 1990, now codified at  8 U.S.C. §1254a(c)(1)(B), did not permit the

7   imposition of a separate, additional fee for providing an applicant with an employment

8   authorization document.[15] In 1991 the statute was amended specifically to permit the Attorney
9
10  General to impose an additional fee for the issuance of a work authorization document.[16]

11  Had Congress intended to permit the USCIS to also impose a separate, additional fee for

12  conducting the statutorily mandated identity and background checks it would have amended 8

13  U.S.C. §1254a(c)(1)(B) to specifically provide for the imposition of an additional fee. In the

14  seventeen years since 8 U.S.C. §1254a(c)(1)(B) was enacted, Congress has not done so.
15
16  The USCIS's  statutory construction conflicts with IMMACT 1990 when it is read as a

17  whole. Section 302 of IMMACT 1990 was one of two TPS programs created in the legislation.

18  Section 303 of IMMACT 1990 designated El Salvador for a special eighteen month period of

19

20
21     [13] *See* 72 FR 4887, 4891-4892. *See also* Declaration of Barbara Velarde, ¶19, admitting
       that the USCIS uses biometric fees remitted for TPS to fund "other ongoing ASC services".

22     [14] Pub. L. No. 101-649, 104 Stat. 4978. Originally enacted as §244A of the Immigration
23     and Nationality Act, it was re-designated as INA §244 by §308(b)(7) of the Illegal Immigration
       Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009
24
25     [15] 8 U.S.C. §1254a(a)(1)(B) requires the Attorney General to issue an employment
       authorization document to an alien granted TPS.

26     [16] Section 304(b)(2) of the Miscellaneous and Technical Immigration and Naturalization
27     Amendments of 1991, Pub. L. No. 102-23, 105 Stat. 1733.

28                                          13

TPS. In contrast to the $50.00 registration fee permitted under §302, §303(b)(2) placed no express limit on the fees the Attorney General could charge for TPS registration. Section 303(b)(2) permitted the Attorney General to charge a "reasonable fee" as a condition for registration.

By providing different registration fee provisions in two TPS programs, enacted in the same Title of the same Act, Congress demonstrated its intent to differentiate between the two programs, and strictly limit the fees the Attorney General could charge for TPS registration under §302. Defendants' assertion that 8 U.S.C. §1254a(c)(1)(B) does not prohibit the imposition of a separate, additional biometric service fee as a condition for TPS registration ignores the structure of IMMACT 1990. It is inconsistent with the plain language of the statute and violates a fundamental rule of statutory construction. *See INS v Cardoza-Fonseca*, 480 U.S. 421, 432 (1987) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed Congress acts intentionally and purposely in disparate inclusion or exclusion."

Because Congressional intent is clear from the words of the statute, defendants' reliance on *Chevron U.S.A., Inc. v Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) is misplaced. The USCIS's construction of 8 U.S.C. §1254a(c)(1)(B) conflicts with the plain statutory language. *See Consumer Product Safety Comm'n v GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1981)( "Absent a clearly expressed legislative intention to the contrary, [statutory] language must ordinarily be regarded as conclusive.")

**1. 8 U.S.C. § 1356(m)**

Defendants argue that the provision "notwithstanding any other provisions of law" in 8

14

U.S.C. § 1356(m) "must govern" its final provision which authorizes the USCIS to set fees. Defendants contend that §1356(m) therefore evidences a Congressional intent to permit the USCIS to impose, by regulation, an additional biometric fee for TPS registration.[17]

In 1988 Congress amended §1356 to authorize the INS to collect fees to recover the costs of providing immigration adjudication and naturalization services and authorized and established in the United States Treasury the "Immigration Examinations Fee Account" (IEFA).

The provision, "notwithstanding any other provisions of law", is concerned solely with that part of §1356(m) which established the IEFA as the account where immigration fees were to be deposited. This is demonstrated by the subsection's title, "Immigration Examinations Fee Account". See *INS v Nat'l Center for Immigrants' Rights*, 502 U.S. 183, 1989 (1991) (stating that "the title of a statute or section can aid in resolving an ambiguity in the legislation's text"). The title clearly reflects that Congress's primary purpose in enacting § 1356(m) was to create a special fund for adjudication immigration fees, and that "notwithstanding any other provisions of law" the INS would no longer be permitted to deposit adjudication fees into the general Treasury of the United States.

Defendants' simply misapprehend the intent and scope of the fee setting authority delegated the USCIS under §1356(m). Defendants cite no legislative history to support their contention that Congress enacted §1356(m) to permit the USCIS to circumvent an express act of Congress by promulgating a regulation. Section 1356(m) does not give the USCIS a free pass to impose a fee for TPS registration that exceeds § 1254a(c)(1)(B)'s fee cap. It was unreasonable for the USCIS to make such an assumption.

---

[17]Defendants' Memorandum, Pg. 14.

15

1    Defendants contend that a construction of 8 U.S.C. § 1254a(c)(1)(B) that prohibits the

2   USCIS from imposing an additional biometric fee would "emasculate" § 1356(m).[18]  This

3   contention is meritless.  Plaintiffs' construction of §1254a(c)(1)(B) neither reads the provision

4
    "notwithstanding any other provisions of law" out of §1356(m), nor renders §1356(m) illogical
5
6   when read as a whole. Plaintiffs' construction  leaves intact the mandate of §1356(m) which

7   directs that, "notwithstanding any other provisions of law", immigration fees are to be deposited

8   in the IEFA.

9
    Plaintiffs' construction of §1254a(c)(1)(B) is consistent with that part of  §1356(m) which
10
11  permits the USCIS to "set fees at a level that ensures recovery of the full costs" of TPS

12  registration. It allows the USCIS to recover the costs of TPS registration by assessing a surcharge

13  on the fees it imposes on aliens applying for benefits other than asylum and TPS.[19] Defendants

14  construction of §1356(m) is unreasonable because it fails to account for this critical part of the
15
16  statute.

17    Finally, plaintiffs' construction gives full meaning to § 1254a(c)(1)(B)'s mandate that the

18  fee for TPS registration shall not exceed $50.00.

19    8 U.S.C. § 1254a(c)(1)(B) was enacted just three weeks after Congress amended
20
    § 1356(m) to permit assessment of the surcharge.  In capping the fee for TPS registration at
21
22  $50.00, and then leaving the cap intact for seventeen years, Congress has demonstrated that it

23

24    [18]Defendants' Memorandum, Pg. 17.

25    [19] The final proviso of 8 U.S.C. § 1356(m) provides, "That fees providing adjudication
26  and naturalization services may be set at a level that will ensure recovery of the full costs of
    providing all such services, including the costs of similar services provided without charge to
27  asylum applications or other immigrants."

28    16

expects the USCIS to avail itself of another source of revenue to recover the full costs of TPS registration. As the Court found in its October 17, 2007 order, presumably Congress limited the fee for TPS registration with the expectation that the agency would avail itself of the remedy made available by § 1356(m) if additional funding for TPS was required. [20] Defendants' Rule 12(b)(6) motion offers nothing to rebut this presumption. Defendants' analysis is incomplete and is not entitled to any deference because it does not account for § 1356(m)'s allowance for a fee surcharge.

The plain meaning of § 1254a(c)(1)(B) is clear. Section 1356(m) does not render ambiguous the mandate that TPS registration fees shall not exceed $50.00. Defendants' contention that plaintiffs' construction of § 1254a(c)(1)(B) cannot be harmonized with § 1356(m) is, itself, unreasonable.[21]

**2. Pub.L.No. 105-119**

At the hearing on plaintiffs' injunction motion defendants' counsel argued that Pub.L.No. 105-119 authorized the USCIS to impose an additional fee for biometric collection. The contention is reiterated in Defendants' Rule 12(b)(6) motion. [22]

Plaintiffs do not challenge the validity of 8 C.F.R. § 103.7. The issue here is not whether the USCIS may impose a fee for biometric collection, but whether 8 U.S.C. § 1254a(c)(1)(B) prohibits the USCIS from imposing that fee as a condition to register for TPS.

In its October 17, 2007 Order the Court addressed Pub.L.No. 105-119 as part of its

---

[20]Order Denying Motion For Preliminary Injunction, Pgs. 9-10.

[21] Defendants' Memorandum, Pg. 17.

[22] Defendants' Memorandum, Pg. 15.

17

review of "[t]he history of the biometric fee". The Court found then, as it should now, that

Pub.L.No. 105-119 does not evidence a Congressional intent to permit the USCIS to charge fees

for TPS registration that exceed the $50.00 permitted under 8 U.S.C. § 1254a(c)(1)(B).[23]

Pub.L.No. 105-119 was enacted eight years _after_ Congress enacted

8 U.S.C. § 1254a(c)(1)(B)  to prohibit the INS from expending appropriated funds to conduct a

criminal background check unless it or certain other designated agencies prepared the fingerprint

chart used to conduct a background check. It permitted the agency that prepared the fingerprint

chart to charge a fee for fingerprint services. It does not reference 8 U.S.C. §1254a(c)(1)(B).

Defendants' Rule 12(b)(6) motion does not reference any legislative history, or other evidence to

demonstrate that Congress intended the general authority to set a fee for fingerprint services to

supercede the specific requirement that TPS registration fees shall not exceed $50.00. _See_

_Goodyear Atomic Corp. v Miller_, 486 U.S. 174, 184-185 (1988), ("We generally presume that

Congress is knowledgeable about existing law pertinent to the legislation it enacts." )

**3. 31 U.S.C. §9701**

In opposition to plaintiffs' injunction motion defendants cited 8 U.S.C. § 1732(b)(1) as

statutory authority for the USCIS  to collect a separate biometric fee.[24] Defendants' Rule 12(b)(6)

abandons that position. Defendants now contend that the Independent Offices Appropriations Act

(IOAA), 31 U.S.C. § 9701, constitutes statutory authority for the USCIS to impose an additional

---

[23] Order Denying Motion For Preliminary Injunction, Pg. 8.

[24] Defendants' Memorandum In Opposition To Plaintiffs' Motion For Preliminary
Injunction, Pg. 12.

18

biometric fee as a condition to register for TPS. [25] Defendants' deference argument is undercut by its shifting legal explanations. *See Cardoza-Fonseca*, 480 U.S. at 448 ("An agency interpretation that conflicts with the agency's earlier interpretation is entitled to considerably less deference than a consistently held view".)

Defendants contend that in enacting 8 C.F.R. § 244.6 the "DHS was following the mandate contained in Section 9701".[26] Defendants' contention is untenable. Section 9701(b) vests the head of a federal agency with the authority "to prescribe regulations establishing the charge for a service . . . provided by the agency." This rule making authority is not without limits. Section 9701(c) directs that the section does not "affect a law of the United States – prohibiting the determination and collection of charges . . .".

As the Court observed in its October 17, 2007 Order, a "regulation must comply with the authorization statute".[27] Congress most certainly did not enact 8 U.S.C. § 1254a(c)(1)(B) with the expectation that the USCIS could circumvent its strict fee limit by promulgating a regulation that labels a fee remitted to register for TPS a "biometric service fee".

As the Court observed in its October 17, 2007 Order, 8 U.S.C. § 1254a(c)(1)(B) was amended in 1991 specifically to permit the Attorney General to impose an additional fee for the issuance of a work authorization document.[28] "Congress's listing of one permissible additional

---

[25]Defendants' Memorandum, Pg. 14.

[26]Defendants' Memorandum, Pg. 15.

[27] Order Denying Motion For Preliminary Injunction, Pg. 9.

[28] Section 304(b)(2) of the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub. L. No. 102-23, 105 Stat. 1733.

19

fee indicates it intended to exclude other fees."[29]

Defendants assert that "legislative history" supports their interpretation.[30]   In fact, the opposite is true. On March 17, 1998,  when the rule was promulgated that imposed a fee for fingerprinting services, the INS  did not cite 31 U.S.C. §9701(b) as its statutory authority for charging a fee.[31] Later, on May 30, 2007, when the DHS published its Federal Register notice increasing immigration fees, the DHS explained that 31 U.S.C. §9701(b) was not the  statutory authority it relied upon to set filing fees. The DHS represented that "the requirements of the IOAA do not apply in developing these fees".[32]

A review of the legislative history reveals no evidence that the USCIS even considered 8 U.S.C. § 1254a(c)(1)(B) before it imposed an additional biometric fee.  It was unreasonable of the USCIS to assess a biometric service fee without accounting for § 1254a(c)(1)(B) and the strict cap it placed on the fee that could be charged for TPS registration.

Finally, defendants' reliance on *Seafarers Intern. Union of North America v U.S. Coast Guard*, 81 F.3d 179 (D.C. Cir. 1996) is misplaced.[33] In that case, the court expressly found that the fee setting  regulation at issue was "authorized by statute". *Id*, at 181. The statute permitting the agency to establish a fee, 46 U.S.C. § 2110(a)(1), expressly directed that the fee be established in accordance with § 9701.

---

[29] Order Denying Motion For Preliminary Injunction, Pgs. 7-8.

[30] Defendants' Memorandum, Pgs. 16-17.

[31] 63 FR 12979.

[32] 72 FR 29851, 29866-29867.

[33] Defendants' Memorandum, Pgs. 14-15.

20

1

2

For all of these reasons it is submitted that defendants' Rule 12(b)(6) motion should be

denied.

3

## VI. DEFENDANTS' RULE 12(b)(6) MOTION SHOULD BE DENIED BECAUSE PLAINTIFFS' ALLEGATION THAT DEFENDANTS IMPOSE A FEE FOR THE COLLECTION OF BIOMETRIC INFORMATION WHEN THE COLLECTION OF BIOMETRIC INFORMATION IS NOT REQUIRED STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED

4

5

6

7

A complaint may not be dismissed under Rule 12(b)(6) for failure to state a claim "unless

8

it appears beyond doubt that the plaintiff can prove no set of facts in support of [the] claim which

9

would entitle [the plaintiff] to relief." *Usher v City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.

10

1987) (internal citation and quotation omitted). Moreover, the Court is required to accept all

11

material facts pled in a complaint as true. *McGlinchy v Shell Chemical Co.*, 845 F.2d 802, 810

12

(9th Cir. 1988).

13

14

Paragraph 27 of plaintiffs' First Amended Complaint alleges that defendants impose a fee

15

for the collection of biometric information when the collection of biometrics is not required.

16

Prayer 5 of the Complaint seeks a judgment enjoining defendants from imposing, as a condition

17

to register for TPS, a fee for the collection of biometric information when the collection of

18

biometric information is not required.

19

20

Defendants' Rule 12(b)(6) motion does not address the factual allegation made in

21

plaintiff's Complaint, or contest the Court's jurisdiction to grant the requested equitable relief.

22

Defendants' motion should be denied because plaintiffs' allegation states an independent

23

claim upon which relief can be granted. 8 U.S.C. § 1254a(c)(1)(B) authorizes the USCIS to

24

"require payment of a reasonable fee" to register for TPS, and permits it to "impose a separate,

25

additional fee for providing an alien with documentation of work authorization." (emphasis

26

27

28

21

added).  These statutory provisions do not authorize the USCIS to  double dip for biometric fees and charge plaintiffs for the collection of biometric information that has already been paid for and collected.

## VII. CONCLUSION

Plaintiffs respectfully submit that defendants' motion to dismiss or to transfer venue should be denied. The Court has jurisdiction over the action. The federal government has waived sovereign immunity. Venue over the action is proper in the Northern District of California.

The unambiguous language of 8 U.S.C. § 1254a(c)(1)(B) makes it clear that Congress intended to limit the fee the USCIS may charge for TPS registration, and that the imposition of an additional "biometric service fee" violates the statute. Congress directed the Attorney General to establish a TPS registration procedure which included identity and background checks, and it limited the fee the Attorney General could charge for this registration to $50.00. The USCIS's construction of 8 U.S.C. § 1254a(c)(1)(B) is unreasonable and is therefore not entitled to deference.

Dated: December 11, 2007

Respectfully submitted,

JONATHAN M. KAUFMAN
Attorney for Plaintiffs

22