SCOTT N. SCHOOLS, SC SBN 9990
United States Attorney
JOANN M. SWANSON, CSBN 88143
Assistant United States Attorney
Chief, Civil Division
ILA C. DEISS, NY SBN 3052909
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
Telephone: (415) 436-7124
FAX: (415) 436-7169

WILLIAM J. HOWARD DCBN 36439
Assistant Director
Office of Immigration Litigation
U.S. Department of Justice, Civil Division

P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(202) 307-4293
FAX: (202) 305-7000

J. MAX WEINTRAUB, VSBN 36188
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice, Civil Division

P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7551
FAX: (202) 305-7000

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSE BAUTISTA-PEREZ, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL B. MUKASEY, Attorney General, *et al.*,<br><br>Defendants. | No. C 07-4192 TEH<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' AMENDED MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**<br><br>**Date: January 28, 2008**<br>**Time: 10:00 a.m.**<br>**Place: Courtroom 12** |

# TABLE OF CONTENTS

I. INTRODUCTION . . . . . 2

II. BECAUSE THIS ACTION SEEKS MONEY DAMAGES, THE TUCKER ACT DEPRIVES THIS COURT OF JURISDICTION . . . . . 2

III. EVEN WITHOUT ADDRESSING THE ISSUE OF "MONEY DAMAGES," THE TUCKER ACT DEPRIVES THIS COURT OF JURISDICTION . . . . . 5

IV. VENUE IS IMPROPER FOR PLAINTIFFS WHO RESIDE OUTSIDE THIS DISTRICT. 7

V. THIS COURT SHOULD GRANT DEFENDANTS' MOTION FOR DISMISSAL UNDER FED. R. CIV. P. 12(b)(6) . . . . . 7

A. Plaintiffs Assertions Regarding Congressional Intent Rely On Speculation . . . . . 8

B. Plaintiffs' Analysis Of Section 1356(m) Would Unduly Limit Its Scope . . . . . 9

C. Contrary to Plaintiffs' Argument, Defendants Do Not Cite 31 U.S.C. § 9701 As The Basis For Authority To Impose Biometric Fees . . . . . 9

VI. CONCLUSION . . . . . 10

## TABLE OF AUTHORITIES

### CASES

Aerolineas Argentinas v. U.S.,
77 F.3d 1564 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Amoco Prod. Co. V. Hodel,
815 F 2d 352, 361 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Blue Dot Energy Co., Inc. v. U.S.,
76 Fed.Cl. 783 (Fed.Cl. Dec 13, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Bowen v. Massachusetts,
487 U.S. 879 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,
467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

DeMore v. Kim,
538 U.S. 510 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Eastport S.S. Corp. v. United States,
178 Ct.Cl. 599, 372 F.2d 1002 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Eversharp, Inc. v. United States,
129 Ct.Cl. 772, 125 F.Supp. 244 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Gonzales v. Oregon,
546 U.S. 243 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Hendricks v. Bank of America, N.A.,
408 F.3d 1127 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

INS v. Abudu,
485 U.S. 94 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

INS v. St. Cyr,
533 U.S. 289 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Mallow v. United States,
161 Ct.Cl. 446, 1963 WL 8503 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Marceau v. Blackfeet Housing Authority,
455 F.3d 974 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, passim

Nashville, C. & St. L. Ry. v. Wallace,
288 U.S. 249 (1933) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

PGBA, LLC v. U.S.,
389 F.3d 1219 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Pennsylvania Dept. of Corrections v. Yeskey,
524 U.S. 206 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

School Committee of Town of Burlington, Mass. v. Department of Educ. of Mass.,
471 U.S. 359 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Schulthess v. U.S.,
694 F.2d 175 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Seatrade Corp. v. United States,
152 Ct.Cl. 356, 285 F.2d 448 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

South Puerto Rico Sugar Co. Trading Corp. v. United States,
167 Ct.Cl. 236, 334 F.2d 622 (1964), cert. denied, 379 U.S. 964, 85 S.Ct. 654, 13 L.Ed.2d 558 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Suburban Mortg. Associates, Inc. v. U.S. Dept. of Housing and Urban Development,
480 F.3d 1116 (Fed. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, passim

Suwannee S.S. Co. v. United States,
150 Ct.Cl. 331, 279 F.2d 874 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Trainmen v. Baltimore & Ohio R. Co.,
331 U.S. 519 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Emery, Bird, Thayer Realty Co.,
237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825 (1915) . . . . . . . . . . . . . . . . . . . . . . . . 4

Wilkins v United States,
279 F.3d 782 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## STATUTES

8 U.S.C. § 1254a . . . . . . . . . . 8, passim

8 U.S.C. § 1254a(c)(1)(B) . . . . . . . . . . 2, 11

8 U.S.C. § 1356(m) . . . . . . . . . . 8, passim

28 U.S.C. § 1491 . . . . . . . . . . 5

28 U.S.C. § 1631 . . . . . . . . . . 2

31 U.S.C. § 9701 . . . . . . . . . . 10

## MISCELLANEOUS

Department of Justice Appropriations Act 1998,
Pub. L. No. 105-119, 111 Stat 2440, 248 . . . . . . . . . . 10

## I. INTRODUCTION

Defendants, by and through their attorneys of record, hereby submit this reply to Plaintiffs' amended memorandum in opposition to Defendants' Motion to Dismiss or, in the Alternative, to Transfer Venue Pursuant to 28 U.S.C. § 1631 ("Motion to Dismiss").[1]

## II. BECAUSE THIS ACTION SEEKS MONEY DAMAGES, THE TUCKER ACT DEPRIVES THIS COURT OF JURISDICTION

Despite Plaintiffs' assertion that they maintain only an "equitable action for specific relief" (Plaintiffs' Opposition at page 1),[2] this action seeks money damages. See Marceau v. Blackfeet Housing Authority, 455 F.3d 974, 985 (9th Cir. 2006) ("Examination of the relief Plaintiffs sought does not stop at the parties' allegations. Instead, 'the substance of the pleadings must prevail over their form.'") (citing Amoco Prod. Co. v. Hodel, 815 F.2d 352, 361 (5th Cir.1987)); see also Nashville, C. & St. L. Ry. v. Wallace, 288 U.S. 249, 259 (1933) ("In determining whether this litigation presents a case within the appellate jurisdiction of this Court, we are concerned, not with form, but with substance."); Suburban Mortg. Associates, Inc. v. U.S. Dept. of Housing and Urban Development, 480 F.3d 1116, 1124 (Fed. Cir. 2007) ("[O]ur cases have emphasized that in determining whether a plaintiff's suit is to be heard in district court or the Court of Federal Claims, we must look beyond the form of the pleadings to the substance of the claim. We have cautioned litigants that dressing up a claim for money as one for equitable relief will not remove the claim from Tucker Act jurisdiction and make it an APA case."). Although it is true that Plaintiffs seek a declaratory judgment regarding 8 U.S.C. § 1254a(c)(1)(B), ("Section 1254a"), their overarching

---

[1] 28 U.S.C. § 1631, Transfer to Cure Want of Jurisdiction reads as follows:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

[2] Hereinafter "Pl. Opp."

claim is for money damages in the form of refunds of biometric fees that they assert they were wrongfully charged, and that could amount to "more than $100,000,000." See Plaintiffs' Motion for Preliminary Injunction, at 5.

Plaintiffs' reliance on Bowen v. Massachusetts, 487 U.S. 879 (1988) to support their contention that they are not seeking money damages, see Pl. Opp. at 2, is inapt.[3] They cite Bowen for the principle that "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages'." 487 U.S. at 893. The facts faced by the court in Bowen, however, are dramatically different than those here. In Bowen, the Commonwealth of Massachusetts sought to compel the federal government to reimburse certain Medicare expenditures which it contended were required by the governing statute. See Bowen, 487 U.S. at 882. At the heart of the issue was the fact that under the statute the federal government had an affirmative duty to make those reimbursements. The Supreme Court found that Massachusetts was seeking to "enforce the statutory mandate itself, which happens to be one for the payment of money." Bowen, 487 U.S. at 900. The equitable relief sought by the Plaintiffs, therefore, was an order requiring the Secretary of Health and Human Services to comply with the obligations imposed by the statute. The Supreme Court concluded that "[b]ecause the state sought to recover money it thought it was entitled to under the relevant statutes, the state's claim was for 'specific relief' rather than 'money damages'." Id. at 900-01.

That scenario is not present here. Plaintiffs seek two distinct forms of relief: money damages in the form of a refund of all biometric fees that class members have paid to date in connection with their applications for Temporary Protected Status ("TPS") and equitable relief in the form of a declaratory judgment regarding Section 1254a. Should this Court grant Plaintiffs' request for a declaratory judgment, a separate ruling would be required to force the Secretary of Homeland Security to refund those biometric fees.

This Court addressed a similar situation in Marceau, in which the plaintiffs claimed they were

---

[3] See Suburban Mortg. Associates, 480 F.3d at 1124. ("One consequence of the Bowen case has been to create a sort of cottage industry among lawyers attempting to craft suits, ultimately seeking money from the Government, as suits for declaratory or injunctive relief without mentioning the money.")

harmed because HUD caused their houses to be constructed in a substandard manner. Analyzing Bowen, this Court concluded in Marceau that "a claim under the APA is appropriate where a statute entitles a claimant to a specific amount of money, and an administrative agency wrongfully withholds that money from the claimant." 455 F.3d at 986. The Marceau Court noted that no such statute existed on which the plaintiffs could rely. "Plaintiffs in this case clearly seek compensatory damages, not money as a specific equitable remedy. Plaintiffs want a sum of money that would redress a wrong caused to them – a legal damage, not an equitable one. Accordingly, their claims cannot be brought under the APA." Id. Plaintiffs in the present action present a virtually identical case: they are seeking compensatory damages for fees they assert they were wrongfully charged.

In this regard, as Defendants noted in their Memorandum in Support of Motion, the facts of this case are also analogous to those asserted in claims asserting an "illegal exaction" by the federal government. In such cases, courts have found that the relief is, in fact, money damages, and that the Tucker Act covers such claims. See Aerolineas Argentinas v. U.S., 77 F.3d 1564, 1572 (Fed. Cir. 1996) (finding that "Tucker Act claims may be made for recovery of monies that the government has required to be paid contrary to law"). The court in Aerolineas Argentinas cited several cases supporting that principle.

> The Court of Claims explained that an illegal exaction claim may be maintained when "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum" that "was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." Eastport S.S. Corp. v. United States, 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967). The Tucker Act provides jurisdiction to recover an illegal exaction by government officials when the exaction is based on an asserted statutory power. 178 Ct.Cl. at 605, 372 F.2d at 1007-08. See South Puerto Rico Sugar Co. Trading Corp. v. United States, 167 Ct.Cl. 236, 244, 334 F.2d 622, 626 (1964), cert. denied, 379 U.S. 964, 85 S.Ct. 654, 13 L.Ed.2d 558 (1965) (recovery of "exactions said to have been illegally imposed by federal officials (except where Congress has expressly placed jurisdiction elsewhere)"); United States v. Emery, Bird, Thayer Realty Co., 237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825 (1915) (tax refund suit). In Eversharp, Inc. v. United States, 129 Ct.Cl. 772, 776, 125 F.Supp. 244, 247 (1954) the Court of Claims held that on the allegation that the government had illegally exacted money by enforcement of a regulation that was contrary to statute, the court had jurisdiction under the Tucker Act to render judgment against the United States for recovery of that money. Similarly in Mallow v. United States, 161 Ct.Cl. 446, 450 1963 WL 8503 (1963), the court held that the Tucker Act provided jurisdiction in the Court of Claims for recovery of money that the government illegally collected from the

> plaintiff as fines under void convictions and sentences. See also Suwannee S.S. Co. v. United States, 150 Ct.Cl. 331, 335-36, 279 F.2d 874, 876 (1960) (ship owner may recover payment illegally exacted as a condition of receiving permission to sell ship to a foreign purchaser); Seatrade Corp. v. United States, 152 Ct.Cl. 356, 360, 285 F.2d 448, 450 (1961) (same).

Aerolineas Argentinas, 77 F.3d at 1572-73.

The analogy to exaction cases is clearly more accurate than Plaintiffs' reference to School Committee of Town of Burlington, Mass. v. Department of Educ. of Mass., 471 U.S. 359 (1996). Plaintiffs cite Burlington as holding that "although legislation did not expressly require that parents be reimbursed for certain expenses related to the education of their handicapped children, the requirement was implied by Congressional intent." Pl. Opp. at 3, citing Burlington, 471 U.S. at 370-71. They then "infer" that Congress intended that DHS pay the expenses for TPS registration that exceeded $50.00, based on the language of Section 1254a that TPS registration may not exceed $50.00. Pl. Opp. at 3. Such an inference is unfounded.

Plaintiffs fallaciously state that an order requiring DHS to refund the biometric fees paid by TPS applicants would not constitute an award of money damages because it would "merely require [DHS] 'to belatedly pay expenses that it should have paid all along'." Pl. Opp. at 3, citing 471 U.S. at 370-71. This conclusion requires a leap of logic. Congress has simply given no such mandate, and the statute does not provide that Plaintiffs are entitled to a refund. In accordance with Marceau and Aerolineas Argentinas, among others, a more apt finding regarding Plaintiffs' claim for more than $100 million would be that they are seeking compensatory damages or a refund of allegedly unlawfully collected payments, which should obviously be considered "money damages."

Accordingly, this Court lacks jurisdiction of the Complaint because the United States Court of Federal Claims can grant Plaintiffs the relief they seek.

## III. EVEN WITHOUT ADDRESSING THE ISSUE OF "MONEY DAMAGES," THE TUCKER ACT DEPRIVES THIS COURT OF JURISDICTION

Since this action, at least in part, requests money damages in excess of $10,000, the Tucker Act, 28 U.S.C. § 1491 ("Section 1491"), grants "exclusive jurisdiction" in the United States Court of Federal Claims. The Court of Appeals for the Federal Circuit has recently held, however, that the question of whether an action seeks "money damages" need not, necessarily, be addressed in

determining Tucker Act jurisdiction. That court held

> In sum, when the plaintiff's claims, regardless of the form in which the complaint is drafted, are understood to be seeking a monetary reward from the Government, then . . . a straightforward analysis calls for determining whether the case falls within the jurisdiction of the Court of Federal Claims. If that court can provide an adequate remedy – if a money judgment will give the plaintiff essentially the remedy he seeks – then the proper forum for resolution of the dispute is not a district court under the APA but the Court of Federal Claims under the Tucker Act. There is no need at that point to even address the other APA limitations, the "money damages" and the "expressly or impliedly forbids" provisions. The three limitations function in the disjunctive; the application of any one is enough to deny a district court jurisdiction under the APA.

Suburban Mortg. Associates, 480 F.3d at 1126. In the present action, the Court of Federal Claims can render judgment on Plaintiffs' request for a refund of biometric fees already paid, and it can issue the injunctive relief Plaintiffs seek. See, e.g., PGBA, LLC v. U.S., 389 F.3d 1219, 1223 (Fed. Cir. 2004) ("We give deference to the Court of Federal Claims' decision to grant or deny injunctive relief, only disturbing the court's decision if it abused its discretion."); see also Blue Dot Energy Co., Inc. v. U.S., 76 Fed.Cl. 783 (Fed.Cl. Dec 13, 2004) (rev'd on other grounds, 179 Fed. Appx. 40 (Fed. Cir. 2006) (injunction issued by Court of Federal Claims barred the Air Force from awarding a sole-source contract and ordered Air Force to issue a new solicitation to procure solid waste collection and disposal services for Fairchild AFB).

Plaintiffs argue that any monetary award would be "incidental" to the granting of other equitable relief. Pl. Opp. at 8, citing Wilkins v United States, 279 F.3d 782, 786 (9th Cir. 2002) (holding that the Court of Federal Claims may grant injunctive relief, but has no jurisdiction over claims where the monetary claim is incidental to a claim for affirmative non-monetary relief). The monetary claim in this action, however, is not merely incidental to the equitable claim; it is arguably, Plaintiffs' primary claim. Moreover, in any event, it is a significant, but distinct, claim that is inseparable from the non-monetary claim in that Plaintiffs cannot obtain a monetary award unless they first succeed on their claim to invalidate the regulation assessing a biometric services fee for TPS applicants.

Schulthess v. U.S., 694 F.2d 175, 178-79 & n.4 (9th Cir. 1982), holds that if a claim for monetary damages is "inseparable" from a claim founded in equity, then the Court of Federal

Claims is the proper forum. As Defendants explained in the Memorandum in Support of the Motion, Plaintiffs in the present action cannot possibly demonstrate that they are entitled to refunds unless the regulation at issue is first found to be invalid. Clearly, then, the claims are "inseparable," and the Court of Federal Claims can render the injunctive relief requested. Id. See also PGBA, 389 F.3d at 1226 ("This construction is consistent with the language of 28 U.S.C. § 1491(b)(2), which, through use of the permissive 'may,' provides the Court of Federal Claims with discretion in fashioning relief.")

The Tucker Act thus mandates that the Court of Federal Claims is the proper forum for this action, because it "can provide an adequate remedy" for the Plaintiffs should they succeed. Suburban Mortg. Associates, 480 F.3d at 1126. For that reason, this Court lacks jurisdiction over this action.

## IV. VENUE IS IMPROPER FOR PLAINTIFFS WHO RESIDE OUTSIDE THIS DISTRICT

For the reasons previously asserted in Defendant's Motion to Dismiss, if this Court maintains jurisdiction over this action, the Little Tucker Act establishes that this district is not the proper venue for Plaintiffs who reside outside this district. Plaintiffs, however, assert that Defendants have waived any objection to venue. Their assertion is without merit. Under Fed. R. Civ. P. 12(h), such an objection is waived only by omitting it from a motion in the circumstances described in Rule 12(g)(2) or by "failing to either (i) make it by motion under this rule; or (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course." See also Hendricks v. Bank of America, N.A., 408 F.3d 1127, 1135 (9th Cir. 2005) ("Mutual did not waive its venue and personal jurisdiction defenses because it raised them in a timely manner in its first responsive pleading after securing several reasonable extensions of the filing deadline . . . ."). Defendants in the present action similarly raised their venue objections in a responsive pleading, in the form of a motion to dismiss or transfer.

Defendants have therefore not waived their venue objection.

## V. THIS COURT SHOULD GRANT DEFENDANTS' MOTION FOR DISMISSAL UNDER FED. R. CIV. P. 12(b)(6)

### A. Plaintiffs Assertions Regarding Congressional Intent Rely On Speculation

Plaintiffs state that the term "registering," as used in 8 U.S.C. § 1254a ("Section 1254a") is not ambiguous. Pl. Opp. at 11. In reaching this conclusion, Plaintiffs speculate that Congress would have amended Section 1254a if Congress had intended to permit the government to impose a separate, additional biometrics fee. Pl. Opp. at 13. Such a bald assertion is pure speculation and ignores the fact that Congress was not required to so amend the section, because 8 U.S.C. § 1356(m) ("Section 1356(m)") already provides the government with all the authority it requires to impose such a fee. The legislative history of Section 1254a is bereft of evidence that would support the conclusion that Congress even considered an outright ban on the imposition of a biometrics fee – much less that it concluded that such a ban was proper.

In light of the lack of such intent, the term "registering" is vague and ambiguous as used in Section 1254a as it relates to the question of a separate biometrics fee. For that reason, as Defendants stated in the Motion to Dismiss, the Secretary's interpretation of the statute is reasonable and must be given deference. Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842 (1984) (holding that "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute"). See also INS v. Abudu, 485 U.S. 94, 110 (1988) (finding that judicial deference to the Executive Branch is especially appropriate in the immigration context); Gonzales v. Oregon, 546 U.S. 243, 244 (2006) (holding that an agency's interpretation of a statute is entitled to deference, if the interpretation is promulgated in the exercise of the authority delegated to the agency).

Similarly, Plaintiffs' analysis of Sections 302 and 303 of the Immigration Act of 1990 ("IMMACT 90") fails to provide this Court with the evidence of legislative intent such that the agency's construction of Section 1254a is not "permissible" and, therefore, not worthy of deference. Chevron, 467 U.S. at 842. As Plaintiffs admit, Section 303 designated El Salvador for a "special" eighteen month period of TPS. The fact that Congress did not include a $50.00 cap on registration fees in Section 303 is further evidence of the ambiguity of the term, in the absence of a definition described by Congress. Based on that ambiguity, this Court should defer to the Agency's reasonable interpretation of Section 1254a. Id.

B. Plaintiffs' Analysis Of Section 1356(m) Would Unduly Limit Its Scope

Plaintiffs' assertion that Defendants "misapprehend the intent and scope of the fee setting authority" of Section 1356(m) is without merit. As support for their proposition, Plaintiffs cite the subsection's title, as though the title warrants more weight than the actual words Congress included in the statute: "Notwithstanding any other provisions of law . . . ." However, as the Supreme Court stated in INS v. St. Cyr, 533 U.S. 289 (2001), "a title alone is not controlling," Id., at 308, because the title of a statute has no power to give what the text of the statute takes away. Where as here the statutory text is clear, "'the title of a statute ... cannot limit the plain meaning of the text.'" DeMore v. Kim, 538 U.S. 510, 534 (2003) (quoting Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 212 (1998) (in turn quoting Trainmen v. Baltimore & Ohio R. Co., 331 U.S. 519, 528-529 (1947)). Although Plaintiffs would have this Court believe otherwise, the section includes no language limiting those words only to its title. As explained in the Motion to Dismiss, the only relevant sentence in Section 1356(m) begins with "[n]otwithstanding any other provisions of law" and continues to state that "fees for providing adjudication and naturalization services may be set at a level that will ensure recovery of the full costs of providing all such services." There is no restriction in the Section that indicates that it refers only to the subject of the title. In opening Section 1356(m) with "notwithstanding any other provisions of law," Congress was clearly acknowledging that a conflict might exist and that, when those conflicts arise, Section 1356(m) is operative and controlling.

Furthermore, Plaintiffs arguments relating to Section 1356(m) are inconsistent with its discussion of Section 1254a. Plaintiffs would have this Court strictly interpret the undefined "registration" in Section 1254a, but they ask that the clearly unlimited phrase "[n]otwithstanding any other provisions of law" be rendered devoid of its meaning. Defendants, on the other hand, argue that an undefined term is ambiguous and vague, such that the agency's reasonable interpretation warrants deference, and that terms with precise and unquestioned meanings should be read in a way that those meanings are given weight.

C. Contrary to Plaintiffs' Argument, Defendants Do Not Cite 31 U.S.C. § 9701 As The Basis For Authority To Impose Biometric Fees

Plaintiffs have misrepresented Defendants' position regarding 31 U.S.C. § 9701, asserting that

"Defendants now contend that [Section 9701] constitutes statutory authority for the USCIS to impose an additional biometric fee as a condition to register for TPS." Pl. Opp. at 18-19. Defendants do no such thing. Defendants cite Section 9701 as mandating that "each service or thing of value provided by an agency (except a mixed-ownership Government corporation) to a person (except a person on official business of the United States Government) is to be self-sustaining," and that the head of each agency "may prescribe regulations establishing the charge for a service or thing of value provided by the agency." In addition, Defendants assert that Section 9701 supports the reasonableness of the Secretary's interpretation of Section 1254a by providing an example of Congress's intent regarding fees for services. Defendants do not, however, argue that Section 9701 is controlling statutory authority. Rather, they invoke Section 9701 merely as an example of the general statutory authority to charge fees, whether or not the Secretary relied specifically on such authority when promulgating a regulation. In this case, because Section 1356(m) expressly grants the Secretary with such authority, Section 9701 did not provide the basis for the regulation at issue. See 72 FR 29851, 29866 (May 30, 2007) ("The statutory provisions in section 286(m) of the INA are broader than [under Section 9701], authorizing USCIS to recover the full cost of providing benefits and ensuring sufficient revenues to invest in improved service and technology.").

When Section 1356(m) is coupled with Congress' express statutory authorization in Department of Justice Appropriations Act 1998, Pub. L. No. 105-119, 111 Stat 2440, 248, the appropriations law for a separate fingerprinting (now termed "biometrics") fee to be charged for applications and petitions requiring fingerprinting, without making any exemption for TPS applicants, USCIS clearly has sufficient authority to require the biometrics fee from plaintiffs.

## VI. CONCLUSION

This action must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because the federal government has not waived sovereign immunity. Should this Court find a waiver of sovereign immunity, the Tucker Act deprives this Court of jurisdiction and the Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. If this Court determines that the Little Tucker Act confers jurisdiction, then this action should be

transferred to the United States Court of Federal Claims.

Finally, even if the Court finds that the Government has waived immunity and that this Court is the proper venue for this action, it should dismiss this case for failure to state a claim because DHS's interpretation of 8 U.S.C. § 1254a, in light of the provisions of 8 U.S.C. § 1356(m), 31 U.S.C. § 9701, and Pub. L. 105-119, is reasonable and entitled to deference.

Respectfully submitted,

SCOTT N. SCHOOLS,
United States Attorney

ILA C. DEISS
Assistant United States Attorney

WILLIAM J. HOWARD
Assistant Director

LYLE D. JENTZER
Senior Litigation Counsel

/s/ J. Max Weintraub

J. MAX WEINTRAUB
Trial Attorney

Attorneys for Defendants