JONATHAN M. KAUFMAN, ESQ. (California State Bar No. 104576)
The Law Offices of Jonathan M. Kaufman
220 Montgomery Street, Suite 976
San Francisco, CA 94104
Telephone: (415) 956-4765
Facsimile: (415) 956-1664
E-Mail:    jonathan-kaufman@sbcglobal.net

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSE BAUTISTA-PEREZ, et al., | Case No. C 07-4192 TEH |
| Plaintiffs, | PLAINTIFFS' SURREPLY TO DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE |
| vs. | |
| MICHAEL B. MUKASEY, Attorney General, et al. | |
| Defendants. | Date: January 28, 2008<br>Time: 10:00 a.m.<br>Place: Courtroom 12 |

## I. INTRODUCTION

Plaintiffs submit the following Surreply to Defendants' Reply To Plaintiffs' Amended Memorandum In Opposition To Defendants' Motion To Dismiss Or, In The Alternative, To Transfer Venue.

## II. BECAUSE PLAINTIFFS' DO NOT SEEK "MONEY DAMAGES" THE TUCKER ACT DOES NOT DEPRIVE THIS COURT OF JURISDICTION

Defendants contend that plaintiffs' case is "virtually identical" to *Marceau v Blackfeet*

1

*Housing Authority*, 455 F.3d 974 (9th Cir. 2006).[1] The contention is meritless.[2]

In *Marceau* the Department of Housing and Urban Development (HUD) contracted to fund housing projects for the Blackfeet Indian tribe. The tribe brought an action against HUD under the Administrative Procedures Act (APA) to remedy housing construction defects.

In affirming the district court's dismissal of the tribe's complaint, the court found that although the tribe styled their complaint as an action seeking a declaratory judgment and injunction, the "substance" of their claim was that the tribe was owed money damages from the federal government to repair or rebuild their homes. The court found that because the tribe sought "money damages" from the federal government their claim could not be brought under the APA.

In reaching its conclusion the court relied upon the tribe's admission that they did not seek a declaratory judgment for a reason other than to obtain an award of money damages from the government. The court considered that the equitable relief the tribe sought did not have "significant prospective effect or considerable value apart from determining the monetary liability of the government." The court concluded that because money damages provided the tribe a full remedy they were not entitled to injunctive relief under the APA. *Marceau*, 455 F.3d 974, at 985-986.

Defendants' assertion that plaintiffs' claim is "virtually identical" to the tribe's claim in *Marceau* is disingenuous.

Unlike the tribe's claim against HUD, Plaintiffs' claim against the USCIS is not based upon a contract.

Unlike the tribe's claim against HUD, the equitable relief sought by plaintiffs has "significant prospective effect" and "considerable value" apart from a monetary claim. While a money judgment provided a full remedy to the tribe in *Marceau*, a money judgment alone would not repair the

---

[1] Defendants' Reply, Page 4.

[2] Defendants repeatedly describe *Marceau* as case decided by "this court". Defendants' Reply, Pages 3-4. Defendants' reference is misleading. *Marceau* was not decided by "this court". It was decided by the Court of Appeals for the Ninth Circuit, on appeal from an order dismissing a complaint entered by the United States District Court for the District of Montana.

damage caused by the USCIS's impermissible construction of 8 U.S.C. § 1254a(c)(1)(B).

Monetary relief alone would not prohibit the USCIS from imposing unlawful biometric fees again in the future. A money judgment against the USCIS would leave intact the regulation that requires plaintiffs to remit excessive fees for TPS registration. Moreover, a money judgment would not compel the USCIS to recover its costs of TPS registration from alternative sources of agency funding, such as appropriations or a fee surcharge under 8 U.S.C. § 1356(m).

Contrary to defendants' assertions, 8 U.S.C. § 1254a(c)(1) does entitle plaintiffs "to a specific amount of money." *Marceau*, 455 F.3d at 986.[3]

Section 1254a(c)(1) mandates that the USCIS lawfully fund its TPS registration procedures. It is plaintiffs' statutory right to remit no more than $50.00 to register for TPS. It does not require "a leap of logic" to understand that any registration costs that exceed $50.00 must come from a source other than the alien who registers for TPS, e.g., a fee surcharge under 8 U.S.C. § 1356(m).[4]

In a situation such as this, where Congress has contemplated that an agency should incur the costs of an administrative program, and the beneficiary of that program has incurred those costs instead of the agency, the Supreme Court has held that an order requiring the agency to reimburse the beneficiary does not constitute an award of "money damages". *School Committee of Burlington v Department of Education of Massachusetts*, 471 U.S. 359, 370-371 (1985).

Plaintiffs may bring an action under the APA to enforce 8 U.S.C. §1254a(c)(1)(B) and enjoin the USCIS to fund the TPS program lawfully. Enjoining the USCIS to refund biometric service fees plaintiffs were never required by law to remit would not constitute an award of "money damages" to plaintiffs. It would instead, as plaintiffs observed in their opposition, merely require the USCIS to belatedly pay the expenses of TPS registration that it should have paid all along.

---

[3]Defendant's Reply, Page 4.

[4]Defendant's Reply, Page 5.

3

## III. THE TUCKER ACT DOES NOT DEPRIVE THE COURT OF JURISDICTION BECAUSE THE COURT OF FEDERAL CLAIMS CANNOT PROVIDE PLAINTIFFS AN ADEQUATE EQUITABLE REMEDY

Defendants next cite *Suburban Mortg. Associates v. U.S. Dept. Of Housing and Urban Development*, 480 F.3d 116 (Fed. Cir. 2007), and argue that the Court need not decide if plaintiffs' Complaint seeks "money damages" because the Tucker Act deprives the Court of jurisdiction if money is sought from the federal government and the Court of Federal Claims can provide plaintiffs an "adequate remedy".[5] Defendants' reliance on *Suburban Mortgage* is misplaced.

The facts and circumstances presented in *Suburban Mortgage* are vastly different than those presented in plaintiffs' Complaint. In *Suburban Mortgage* HUD contracted with Suburban Mortgage, a mortgage lending company, to accept assignment of a mortgage loan. When HUD refused assignment, Suburban sought a declaratory judgment to compel HUD to accept assignment of the loan and reimburse the loan balance to Suburban. The court found that this was in substance a contract-based action seeking monetary relief from the federal government. *Id*, at 1126. The court concluded that an adequate remedy was available to Suburban Mortgage in the Court of Federal Claims. *Id*, at 1127.

In distinguishing the action from *Bowen v Massachusetts*, 487 U.S. 879 (1988), the court relied on the fact that there was no complex, ongoing relationship between Suburban Mortgage and the HUD which required declaratory or injunctive relief to modify HUD's future statutory obligations. The Court considered that Suburban Mortgage did not seek to change any long-term future conduct by the government. *Id*, at 1126-1128.

Plaintiffs' action is distinguishable from *Suburban Mortgage* for a number of reasons. As was the case in *Marceau*, Suburban Mortgage brought its action to enforce a contract with the federal government. Plaintiffs' Complaint is not based upon a contract.

The court found that Court of Federal Claims could provide Suburban Mortgage with an

---

[5]Defendant's Reply, Pages 5-7.

4

"adequate remedy" because its claim was at base a claim for money. *Id*, at 1127. The court determined that the dispute could be resolved by determining the parties' rights and obligations under a single contract, and if it were determined that HUD was in breach of contract, remedied with the payment of money. *Id*.

It is beyond cavil for defendants to suggest that plaintiffs' relationship with the USCIS is comparable to Suburban Mortgage's relationship with the HUD, a relationship based upon a single contract. Plaintiffs' relationship with the USCIS is far more complex. A single payment of money would not provide plaintiffs with the prospective equitable relief they seek.

Since 1999 Honduras and Nicaragua have been designated for TPS seven times. Since 1990 El Salvador has been designated for TPS six times. The USCIS imposed fingerprint service fees in 1999 and 2001, and imposed biometric service fees in 2005, 2006, and 2007. Defendants do not dispute that these fees, imposed upon the most vulnerable class of people the USCIS services, may, in the aggregate, approach $100,000,000.00. The USCIS imposed fees to collect biometric information when it knew that biometric information had been collected previously.

The current designations of El Salvador, Honduras, and Nicaragua for TPS do not expire until 2009. Given the history of plaintiffs' relationship with the USCIS, defendant's construction of 8 U.S.C. §1254a(c)(1)(B), and defendants' stubborn position that the statutory term, "registration" is ambiguous, it is entirely possible that, if left unchecked, the USCIS could impose yet another, additional biometric service fee as a requirement for plaintiffs to maintain their current TPS registration.

A simple money judgment would not prevent the USCIS from imposing future illegal TPS registration fees. Prospective relief, in the form of a declaratory judgment and injunction, is plainly required to accomplish that "overarching"purpose.[6] Plaintiffs can seek that relief from this Court under the APA because the Court of Federal Claims has no jurisdiction to grant the necessary equitable relief. Defendants' motion to dismiss for lack of jurisdiction should be denied.

---

[6]Defendants' Reply, Pages 2-3.

5

## IV. DEFENDANT'S MOTION TO DISMISS UNDER
## FED. R. CIV. P. 12 (b)(6) SHOULD BE DENIED

### A. 8 U.S.C. §1356(m)

The Court need not defer to defendants' construction of Section 1356(m) because their analysis remains incomplete.

Defendants have not yet acknowledged, or accounted for, the final critical provision in the operable sentence of Section 1356(m) which permits the USCIS to recover the full costs of TPS registration by assessing a surcharge on the fees it charges for other immigration benefits. Defendants are apparently determined to ignore the provision. Plaintiffs submit that unless and until defendants address Section 1356(m) in its entirety, and address the surcharge, their construction of Section 1356(m) is not entitled to any deference.[7]

### B. 31 U.S.C. §9701

In Defendants' Memorandum in support of their motion to dismiss, defendants asserted that the Court "must . . . examine Section 1254a in conjunction with Section 9701". (emphasis added). Defendants asserted that "[i]n enacting 8 C.F.R. §244.6, which established that TPS applicants would be required to pay a biometric services fee, DHS was following the mandate contained in Section 9701".[8] These assertions are susceptible to only one reasonable interpretation; Defendants were representing to the Court that Section 9701 was the statutory authority the DHS relied upon when it imposed a biometric service fee as a condition to register for TPS.

---

[7] Defendants have repeated the mistake they made in their Surreply to Plaintiff's Reply To Defendant's Opposition To Plaintiffs' Motion For A Preliminary Injunction. Defendants have misquoted Section 1356(m). Defendant's Reply asserts that the final provision of Section 1356(m) reads, ". .. That fees for providing adjudication and naturalization services may be set at a level that will ensure recovery of the full costs of providing all such services." (Emphasis added). Defendants' Reply, Pg. 9. In fact, the provision quoted by defendants does not end in a period, it concludes in a comma, and the statutory language that follows is the provision defendants have persistently ignored; "including the costs of similar services provided without charge to asylum applicants and other immigrants."

[8] Defendants' Memorandum In Support Of Defendants' Motion To Dismiss Or, In The Alternative, To Transfer Venue, Pages. 14-15.

6

Defendants' position is abandoned in their Reply.[9] Defendants now concede that Section 9701 is not "controlling statutory authority". Defendants now assert that they invoked Section 9701 "merely as an example of the general statutory authority to charge fees, whether or not the Secretary relied specifically on such authority when promulgating a regulation."[10]

Plaintiffs do not suggest that defendants have acted intentionally to mislead this Court. Plaintiffs believe that defendants' persistent misquoting of Section 1356(m), and their inaccurate assertion that Section 9701 was the statutory authority relied upon when 8 C.F.R. 244.6 was promulgated, are the result scrivener's error.

That being said, defendants have shifted their position in their Reply, and it is not the first time defendants have changed their position after receiving a submission from plaintiffs. Plaintiffs submit that defendants' pattern of errors and shifting positions undercut their argument that the Court must defer to their interpretations of Section 1254a(c)(1)(B) and Section 1356(m).

## V. CONCLUSION

Based upon the foregoing it is submitted that defendants' motion should be dismissed.

Dated: January 2, 2008

Respectfully submitted,

JONATHAN M. KAUFMAN
Attorney for Plaintiffs

---

[9] Defendants changed their position after plaintiffs filed their Opposition to defendants' Motion To Dismiss, and confronted defendants with evidence from the Federal Register which disclosed that Section 9701 was not the statutory authority the DHS relied upon to set filing fees. Plaintiffs' Opposition, Page 20.

[10] Defendants' Reply, Page 10.

7