JOSEPH P. RUSONIELLO, CSBN 44332
United States Attorney
JOANN M. SWANSON, CSBN 88143
Assistant United States Attorney
Chief, Civil Division
ILA C. DEISS, NY SBN 3052909
Assistant United States Attorney
   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102
   Telephone: (415) 436-7124; FAX: (415) 436-7169

LYLE D. JENTZER NYBN 1612662
Senior Litigation Counsel
J. MAX WEINTRAUB, VSBN 36188
Trial Attorney
   Office of Immigration Litigation
   U.S. Department of Justice, Civil Division
   P.O. Box 878, Ben Franklin Station
   Washington, DC 20044
   (202) 305-7551; FAX: (202) 305-7000

JEANNE E. DAVIDSON DCBN 342329
Director
BRIAN A. MIZOGUCHI DCBN 409408
Trial Attorney
   Commercial Litigation Branch
   Civil Division
   Department of Justice
   1100 L Street, N.W.
   Washington, D.C. 20530
   (202) 305-3319; FAX: (202) 514-8624

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSE BAUTISTA-PEREZ, *et al.*, | No. C 07-4192 THE |
| Plaintiffs, | |
| v. | **ANSWER TO FIRST AMENDED COMPLAINT** |
| MICHAEL B. MUKASEY, Attorney General, *et al.*, | |
| Defendants. | |

Answer
C 07-4192 TEH

Defendants[1] (collectively referenced hereinafter as "defendant" or "Government") respectfully submit this answer to plaintiffs' First Amended Complaint for Declaratory Judgment and Injunction as follows:

1. The allegations in paragraph 1[2] are plaintiffs' characterizations of their claims, including the styling of their complaint and relief sought, to which no response is required.

2. The allegation in paragraph 2 is a conclusion of law to which no response is required.

3. The allegation in paragraph 3 is a conclusion of law to which no response is required.

4. The allegations in paragraph 4 are conclusions of law to which no response is required; to the extent that these allegations may be deemed to set forth allegations of fact, the cited laws speak for themselves as to their provisions; admits the allegation in the second sentence of paragraph 4 that "TPS [Temporary Protected Status] is a temporary immigration status granted to eligible nationals of designated countries (or parts thereof);" admits, with respect to the allegations in the fifth sentence in paragraph 4, that, after the termination of the former Immigration and Naturalization Service (INS), the Department of Homeland Security (DHS) assumed those actions that had been previously performed by the INS with regard to administration of the Temporary Protected Status (TPS) program; admits the allegations contained in the sixth sentence of paragraph 4 that a person granted TPS is eligible to remain in the United States, and is eligible to obtain work authorization, while his or her TPS status remains valid, during the period for which a country has been designated for TPS, otherwise denies.

5. The allegation in paragraph 5 is a conclusion of law to which no response is required; to the extent that it may be deemed to set forth an allegation of fact, the cited statute speaks for itself as to its provisions; otherwise denies.

6. Admits.

---

[1] Plaintiffs' First Amended Complaint named as defendants only the Attorney General and the Secretary of Homeland Security. The waiver of sovereign immunity to prosecute a claim for monetary relief in a district court pursuant to the Little Tucker Act is provided only for "claims against the United States," and thus the United States would be the only proper defendant for such a claim. See 28 U.S.C. § 1346(a)(2).

[2] Our answer, when referencing a paragraph number, such as "paragraph 1," refers to a section of plaintiffs' complaint that begins with a numbered paragraph.

7.  Admits.

8.  Admits.

9.  The allegations in paragraph 9 that "[n]otwithstanding the provisions of 8 U.S.C. § 1254a(c)(1)(B), defendants have required plaintiffs and other class members to remit fees in excess of $50 to register for TPS during each of the registration periods [and] [i]n addition . . . imposed a separate, additional service fee to collect biometric information.  8 C.F.R. § 244.6" are plaintiffs' characterization of their case and conclusions of law to which no response is required; to the extent they may be deemed to set forth allegations of fact, they are compound, vague and ambiguous as to "plaintiffs and other class members"' identities and transactions and therefore denied for lack of knowledge or information sufficient to form a belief as to the truth of the matter asserted; admits that named plaintiffs -- Jose Alvarado-Menjivar; Oscar Rene Ramos; Maria Salazar; Jose Benjamin Quinteros; Maria Josefa Cruz; Jose Isidro Bautista Perez; Oscar Guardado Gonzalez; and Denis Caballero Espinoza -- have each paid an initial I-821 TPS application fee of $50, and have been required to pay a separate fee for fingerprinting (now denominated "biometric") related services; otherwise denies for lack of knowledge or information sufficient to form a belief as to the truth of the matter asserted as to fees paid by other "plaintiffs and other class members"; otherwise denies.

10.  The allegations in paragraph numbered 10 are compound, vague, and ambiguous as to: whether the "costs" that a fee "reflects" are intended to refer to an undefined aggregate measure; the specific plaintiff, instance involving a plaintiff, or period of time being alleged; and the meaning of "associated with the use" and "can be, and are, used again" and therefore are denied for lack of knowledge or information sufficient to form a belief as to the truth of the matter asserted; admits that DHS's regulations speak for themselves as to the fees that DHS requires, exempts, or waives; otherwise denies.

11.  The allegations in paragraph 11 are plaintiffs' characterizations of their claims and conclusions of law, to which no response is required.

12.  The allegations in the first sentence of paragraph 12 that such plaintiffs' "applications established prima facie eligibility for TPS" and "were required by defendants to remit fees in excess of $50.00 to register for TPS" are plaintiffs' characterizations of their claims and conclusions of

law, to which no response is required; to the extent that the allegations in the first sentence of paragraph 12 may be deemed to set forth allegations of fact, the allegations in the first sentence of paragraph 12 that "[p]laintiffs are nationals of El Savador, Honduras and Nicaragua whose TPS applications established prima facie eligibility for TPS" are compound, vague and ambiguous, and are denied for lack of knowledge or information sufficient to form a belief as to the truth of the matter asserted; defendant admits that plaintiffs Jose Bautista-Perez; Oscar Guardado-Gonzalez; Denis Caballero-Espinoza; Jose Alvarado-Menjivar; Oscar Rene Ramos; Maria Salazar; Jose Benjamin Quinteros, and Maria Josefa Cruz have represented themselves to be nationals of El Salvador, Honduras, or Nicaragua, and that they have submitted TPS applications; admits that some of the TPS applications submitted by Jose Alvarado-Menjivar; Oscar Rene Ramos; Maria Salazar; Jose Benjamin Quinteros; Oscar Guardado Gonzalez, and Maria Josefa Cruz appear to have been found by DHS to be sufficient to meet the criteria in 8 C.F.R. § 244.5; denies for lack of knowledge or information sufficient to form a belief at this time as to whether any of the TPS applications of plaintiffs Jose Bautista-Perez and Denis Caballero-Espinoza have been found sufficient to meet the criteria in 8 C.F.R. §244.5; otherwise denies.

The allegations in the remaining paragraphs of paragraph 12 pertaining to identified plaintiffs are answered as follows:

   admits that plaintiff Jose Bautista-Perez has represented himself as a national of Honduras; that on June 27, 2003, DHS received his I-821 application for TPS, his initial $50 I-821 application fee, and his required $50 fingerprinting fee; that on December 17, 2004, DHS received his I-821 application for TPS and his required $70 biometric fee; that on May 14, 2006, DHS received his I-821 application for TPS and his required $70 biometric fee; that on July 5, 2007, DHS received his I-821 application for TPS and his required $70 biometric fee; that on July 27, 2007, USCIS issued him a form I-797 notice stating, among other things, that "USCIS is able to reuse your previously captured fingerprints and other biometrics.  USCIS will run the same security checks and use your biometric data as in the past, however it is not necessary for you to appear at a USCIS Application Support Center (ASC) for a biometrics appointment. The biometrics fee will not be refunded." which notice is the best evidence of its contents; otherwise

C 07-4192 TEH                              4

1  denies;

2  admits that plaintiff Oscar Guardado-Gonzalez has represented himself as a national of
3  Honduras; that on June 27, 2003, DHS received his I-821 application for TPS, his initial $50 I-
4  821 application fee, and his required $50 fingerprinting fee; that on December 23, 2004, DHS
5  received his I-821 application for TPS and his required $70 biometrics fee; that on April 30,
6  2006, DHS received his I-821 application for TPS and his required $70 biometrics fee; that on
7  June 18, 2007, DHS received his I-821 application for TPS and his required $70 biometrics fee;
8  and that on July 6, 2007, USCIS issued him a form I-797 notice stating, among other things, that
9  "USCIS is able to reuse your previously captured fingerprints and other biometrics.  USCIS will
10 run the same security checks and use your biometric data as in the past, however it is not
11 necessary for you to appear at a USCIS Application Support Center (ASC) for a biometrics
12 appointment. The biometrics fee will not be refunded." which notice is the best evidence of its
13 contents; otherwise denies.

14  admits that plaintiff Denis Caballero-Espinoza has represented himself as a national of
15 Nicaragua; that on May 14, 2006, DHS received his I-821 application for TPS, his initial $50 I-
16 821 application fee and his $70 biometrics fee; otherwise denies;

17  admits that plaintiff Jose Alvarado-Menjivar has represented himself to be a national of El
18 Salvador; that on September 5, 2002, the Immigration and Naturalization Service (INS) received
19 his I-821 application for TPS,  his initial I-821 application fee of $50, and his fingerprinting fee
20 of $50; admits that on January 30, 2005, DHS received his I-821 TPS application and his $70
21 biometrics fee;  admits that on July 16, 2006, DHS received his I-821 TPS application and his
22 $70 biometrics fee; otherwise denies;

23  admits that plaintiff Oscar Rene Ramos has represented himself as a national of El Salvador;
24 that on January 9, 2005, DHS received his I-821 application for TPS and his $70 biometrics fee;
25 denies that Mr. Ramos "registered for TPS on January 29, 2005;" admits that on July 10, 2006,
26 DHS received his I-821 TPS application and his $70 biometrics fee; otherwise denies;

27
28  admits that plaintiff Maria Salazar has represented herself as a national of El Salvador; that

on January 14, 2005, DHS received her I-821 application for TPS and her $70 biometrics fee; admits that on July 10, 2006, DHS received her I-821 application for TPS and her $70 biometrics; otherwise denies;

admits that plaintiff Jose Benjamin Quinteros has represented himself as a national of El Salvador; and that on February 17, 2005, DHS received his I-821 application for TPS and his $70 biometrics fee; admits that on July 20, 2006, DHS received his I-821 TPS application and his $70 biometrics fee; otherwise denies;

admits that plaintiff Maria Josefa Cruz has represented herself as a national of El Salvador; and that on January 20, 2005, DHS received her I-821 TPS application and her $70 biometrics fee; admits that on July 20, 2006, DHS received her I-821 TPS application and her $70 biometrics fee; otherwise denies.

13.     Admits the allegation in paragraph 13 that Michael Chertoff is the Secretary of the Department of Homeland Security; admits that Alberto R. Gonzales was, but not longer is, the Attorney General of the United States, otherwise denies.

14.     The allegations in paragraph 14 are plaintiffs' characterizations of their complaint, to which no response is required.

15.     The allegations in paragraph 15 are plaintiffs' characterizations of their complaint and conclusions of law, to which no response is required.

16.     The allegations in the first sentence of paragraph 16 are conclusions of law, to which no response is required; to the extent they may be deemed to set forth allegations of fact [other than plaintiffs' legal conclusion that "the numerosity requirements of F.R. Civ. P. 23(a)(1) are satsified"], denies for lack of information or knowledge sufficient to form a belief as to the truth of the matter asserted; admits that as and to the extent expressed in Federal Register notices published for El Salvador (66 Fed. Reg. 14214, Mar. 9, 2001), Honduras (64 Fed. Reg. 524, Jan. 5, 1999), and Nicaragua (64 Fed. Reg. 526, Jan. 5, 1999), Attorney General John Ashcroft estimated that no more than 150,000 nationals of El Salvador and aliens having no nationality who last habitually resided in El Salvador would be eligible for TPS; that Attorney General Janet Reno estimated that no more than 100,000 nationals of Honduras and aliens having no nationality who last habitually resided in

1  Honduras would be eligible for TPS; and that Attorney General Reno estimated that no more than
2  45,000 to 70,000 nationals of Nicaragua and aliens having no nationality who last habitually resided
3  in Nicaragua would be eligible for TPS; otherwise denies.

4      17.    The allegations in paragraph 17 are conclusions of law, to which no response is required;
5  to the extent they may be deemed to set forth allegations of fact, the cited rule speaks for itself as to
6  its provisions; otherwise denies.

7      18.    The allegations in paragraph 18 are conclusions of law, to which no response is required;
8  to the extent they may be deemed to set forth allegations of fact, the cited statute speaks for itself as
9  to its provisions; otherwise denies.

10     19.    The allegations in paragraph 19 are conclusions of law, to which no response is required;
11 to the extent they may be deemed to set forth allegations of fact, they are vague and ambiguous as to
12 the "required fee" upon which the allegation is premised and therefore denied for lack of knowledge
13 or information sufficient to form a belief as to the truth of the matter asserted;  otherwise denies.

14     20.    The allegations in paragraph 20 are conclusions of law, to which no response is required;
15 to the extent they may be deemed to set forth allegations of fact, denied for lack of knowledge or
16 information sufficient to form a belief as to the truth of the matters asserted; otherwise denies.

17     21.    The allegations in paragraph 21 are conclusions of law, to which no response is required;
18 to the extent they may be deemed to set forth allegations of fact, denies for lack of knowledge or
19 information sufficient to form a belief as to the truth of the matters asserted; otherwise denies.

20     22.    The allegations in paragraph 22 are plaintiffs' characterizations of their complaint and
21 conclusions of law, to which no response is required; to the extent they may be deemed to set forth
22 allegations of fact, denies for lack of knowledge or information sufficient to form a belief as to the
23 truth of the matters asserted; otherwise denies.

24     23.    The allegations in paragraph 23 are conclusions of law, to which no response is required;
25 to the extent they may be deemed to set forth allegations of fact, they are vague and ambiguous as to
26 the "statute and regulation" intended to be alleged, and such statute or regulation speaks for itself as
27 to its provisions; admits that defendant adjudicates applications for TPS and affords TPS benefits to
28 eligible aliens; otherwise denies.

24. The allegations in paragraph 24 are conclusions of law, to which no response is required; to the extent they may be deemed to set forth allegations of fact, the cited statute speaks for itself as to its provisions; otherwise denies.

25. The allegations in paragraph 25 that "[n]othwithstanding the provisions of 8 U.S.C. § 1254a(c)(1)(B), defendants require an alien to remit fees in excess of $50 to register for TPS during each of the registration periods [and] [i]n addition . . . impose a separate, additional service fee to collect biometric information. 8 C.F.R. § 244.6" are plaintiffs' characterization of their case and conclusions of law to which no response is required; to the extent they may be deemed to set forth allegations of fact, they are compound, vague and ambiguous as to "an alien" and any transactions that plaintiffs may have intended to allege and therefore denied for lack of knowledge or information sufficient to form a belief as to the truth of the matter asserted; the cited statute and regulation speak for themselves as to what they provide, otherwise denies.

26. The allegations in paragraph 26 are plaintiffs characterization of their case and conclusions of law, to which no response is required; to the extent that they may be deemed to set forth allegations of fact, defendant incorporates by reference its response to paragraphs 9 and 12 in response to plaintiffs' reiteration in paragraph 26 of allegations asserted in paragraphs 9 and 12; otherwise denies.

27. Defendant incorporates by reference its response to paragraph 10 in response to plaintiffs' reiteration in paragraph 27 of the allegations in paragraph 10.

28. The allegations in paragraph 28 are conclusions of law, to which no response is required; to the extent they may be deemed to set forth allegations of fact, denies.

29. The allegations in paragraph 29 are conclusions of law, to which no response is required; to the extent they may be deemed to set forth allegations of fact, denies.

30. The allegations in paragraph 30 are conclusions of law, to which no response is required; to the extent they may be deemed to set forth allegations of fact, denies.

31. Defendant denies any allegation not expressly admitted herein;

32. Defendant denies that plaintiffs are entitled to a judgment for any of the relief requested in their "PRAYER FOR RELIEF."

## DEFENSES AND AFFIRMATIVE DEFENSES

33. The Court lacks subject matter jurisdiction to entertain plaintiffs' complaint.

34. Venue is not proper to entertain a complaint by persons not residing within the Court's district.

35. Laches, and in certain cases, the statute of limitations, 28 U.S.C. § 2401, bar untimely claims by plaintiffs and the putative class.

36. Plaintiffs' complaint fails to state a claim upon which relief may be granted.

37. Defendant relies upon all other matters that may constitute an avoidance or affirmative defense.

WHEREFORE, defendant respectfully requests that the plaintiffs' amended complaint be dismissed and further relief as the Court may deem just and proper.

Dated: April 18, 2008

Respectfully submitted,

JOSEPH P. RUSONIELLO,
United States Attorney

ILA C. DEISS
Assistant United States Attorney

LYLE D. JENTZER
Senior Litigation Counsel

/s/J. Max Weintraub
J. MAX WEINTRAUB
Trial Attorney
Office Of Immigration Litigation

JEANNE E. DAVIDSON
Director

/s/Brian A. Mizoguchi
BRIAN A. MIZOGUCHI
Trial Attorney
Commercial Litigation Branch

Civil Division
Department of Justice
Washington, D.C.

Attorneys for Defendants

Answer
C 07-4192 TEH                                                        9

# **CERTIFICATE OF SERVICE**

Case No. 07-cv-04192

I I hereby certify that on April 18, 2008, a copy of the foregoing "ANSWER TO FIRST AMENDED COMPLAINT" was filed electronically using the Cour's electronic filing system.  I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

  /s/ J. Max Weintraub
J. MAX WEINTRAUB
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
Post Office Box 878
Ben Franklin Station
Washington, D.C. 20044
Email: jacob.weintraub@usdoj.gov