IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOSE BAUTISTA-PEREZ, et al.,

          Plaintiffs,

          v.

ERIC H. HOLDER, Jr., Attorney
General of the United States, and
JANET NAPOLITANO, Secretary of
Homeland Security,

          Defendants.

NO. C 07-4192 TEH

ORDER DENYING
DEFENDANT'S MOTION
TO DISMISS

This matter came before the Court on April 6, 2009 on Defendants' Motion to Dismiss. Having carefully considered the parties' written and oral arguments, Defendants' Motion is DENIED for the reasons set forth below.

**FACTUAL AND PROCEDURAL BACKGROUND**

As this is the second motion to dismiss that this Court has considered, the following factual account is drawn from the Court's order of February 4, 2008.

The Immigration Act of 1990 established a procedure whereby the government could provide temporary protection to aliens in the U.S. who were forced to flee their homelands because of natural disaster, civil strife and armed conflict, or other extraordinary and temporary conditions. The Secretary of Homeland Security may grant "Temporary Protective Status" ("TPS") to nationals of certain countries temporarily designated under the

United States District Court

For the Northern District of California

1  statute,  8 U.S.C. § 1254a(a)(1), 6 U.S.C. § 557, which allows those nationals to stay in the

2  United States and obtain work authorization for the period their home country is so

3  designated. 8 U.S.C. § 1254a(a)(1)(B).

4        Once a country is designated for TPS, nationals of that country can register for

5  benefits during a certain period of time.  To establish eligibility for TPS, an applicant must

6  establish, among other things, that he or she is a national of the country designated for TPS,

7  has been continuously physically present and resided in the United States since the effective

8  date of designation, and is otherwise admissible as an immigrant (although certain grounds of

9  inadmissibility can be waived).  8 U.S.C. § 1254a(c)(2)(A); 8 C.F.R. §§ 244.2, 244.3(a),

10  1244.3(a).  The government can deny an applicant TPS on the basis of the applicant's

11  criminal history.  8 U.S.C. § 1254a(c)(2)(A); (c)(2)(B); 8 C.F.R. §§ 244.3(c), 244.4,

12  1244.3(c), 1244.4.

13        The statute at issue here limits the registration fee for TPS to $50.00.  Title 8 U.S.C.

14  § 1254a(c)(1)(B) provides:

15      Registration fee

16      The Attorney General may require **payment of a reasonable fee as a condition of
registering an alien** under subparagraph (A)(iv) (including providing an alien with an

17  "employment authorized" endorsement or other appropriate work permit under this
section). **The amount of any such fee shall not exceed $50**. In the case of aliens

18  registered pursuant to a designation under this section made after July 17, 1991, **the
Attorney General may impose a separate, additional fee for providing an alien**

19  **with documentation of work authorization**. Notwithstanding section 3302 of Title
31, all fees collected under this subparagraph shall be credited to the appropriation to

20  be used in carrying out this section.

21  (emphasis added).[1]

22        However, regulations governing TPS require applicants to pay more than just a $50.00

23  registration fee and a work authorization fee.  *See* 8 C.F.R. § 244.  Homeland Security

24  requires individuals who wish to obtain TPS to file, in addition to an application form,

25

26      [1]  The Immigration Act of 1990 originally enacted two TPS programs: Section 302
created what is now the TPS program contained in 8 U.S.C. § 1254a, and Section 303 created
a separate TPS program for El Salvador.  Section 303(b)(2) placed no limit on the fees the

27  Attorney General could charge, and permitted a "reasonable fee" as a condition of
registration. Pub. L. 101-649, 104 Stat. 4978, § 303(b)(2).  (The separate program for El

28  Salvador expired, and now the same rules apply to all applicants for TPS).

1  extensive supporting documentation, additional materials, and an $80.00 "biometrics services

2  fee" for applicants over 14.  8 C.F.R. §§ 103.7(b)(1), 244.6; "Adjustment of the Immigration

3  and Naturalization Benefit Application and Petition Fee Schedule," 72 Fed. Reg. 29851,

4  29873 (May 30, 2007).

5      Homeland Security charges the "biometrics services fee" for processing of

6  fingerprints, photographs, and electronic signatures used for background and security checks

7  and identity verification, and for storage and maintenance of the information so collected.

8  Declaration of Barbara Velarde In Opposition to Plaintiff's Motion for Preliminary

9  Injunction, filed September 25, 2007, ¶¶ 7, 18; *see also* 72 Fed. Reg. 29851, *supra* at 29857

10  (discussing uses of biometric fee).

11      Although aliens are required to re-register for TPS whenever a country is re-

12  designated, Homeland Security collects the $50.00 TPS registration fee only once.  8 C.F.R.

13  § 244.17(a); 72 Fed. Reg. 46649, 46650 (August 21, 2007) (explaining fee structure for El

14  Salvador re-registration);  Velarde Decl. ¶ 13.  However, aliens are required to pay a new

15  biometrics fee (and work authorization document fee) for each re-registration.  72 Fed. Reg.

16  46649, *supra*, at 46650;  Velarde Decl. ¶ 13.   Plaintiffs allege, and DHS admits, that it

17  requires applicants to pay the biometrics fee even if Homeland Security does not need

18  updated biometric information. Velarde Decl. ¶ 19.

19      Plaintiffs, foreign nationals from Honduras, El Salvador, and Nicaragua who currently

20  have TPS status, claim that they have been required to remit fees totaling over $50.00 on

21  multiple occasions as they re-register for TPS, even though their biometric data was being

22  reused.  First Amended Complaint, ¶ 12.  They claim that because 8 U.S.C. § 1254a(c)(1)(B)

23  provides that the fee charged by DHS "as a condition of registering" for TPS is "not to

24  exceed" $50.00, the additional biometric services fee is unlawful.  Their class action

25  Complaint, brought on behalf of all nationals of El Salvador, Honduras, and Nicaragua who

26  submitted applications to register for TPS and were required to pay fees of more than $50.00,

27  *id.* ¶¶ 26-28, seeks an order

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

• declaring that additional fee for collecting biometric information or any combined fee over $50.00 is unlawful under 8 U.S.C. § 1254a(c)(1)(b);

• invalidating those parts of 8 C.F.R. § 244.6 that requires Plaintiffs and other class members to pay biometric service fees;

•  enjoining DHS from imposing fees over $50.00;

•   enjoining DHS from imposing a fee when collection of biometric information is unnecessary; and

• requiring the Defendants to refund all fees over $50.00 paid by class members.

*Id.* Prayer for relief ¶¶ 2-7.

The Court denied this previous motion to dismiss, finding jurisdiction and venue to be proper.  The instant motion was filed while a motion for class certification was pending; the Court continued that motion until the resolution of this one.

**LEGAL STANDARD**

In deciding a motion to dismiss for lack of jurisdiction as a matter of law under Federal Rule of Civil Procedure 12(b)(1), a court must assume the facts alleged in the complaint to be true unless the allegations are controverted by exhibits attached to the complaint, matters subject to judicial notice, or documents necessarily relied on by the complaint and whose authenticity no party questions. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).  Because Defendant does not seek to rely on any external facts, this is a facial rather than factual challenge to the court's jurisdiction. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (distinguishing between facial and factual jurisdictional attacks).  Consequently, this Court applies a similar standard to Defendant's Rule 12(b)(1) motion as to a Rule 12(b)(6) motion:  Dismissal is appropriate only if the complaint's allegations, which are assumed to be true, are insufficient to support a finding of jurisdiction. *Id.*  When subject matter jurisdiction is challenged, Plaintiff "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).  On a motion to dismiss for lack of proper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), pleadings need

4

1   not be accepted as true, outside facts may be admitted, and the "court must draw all

2   reasonable inferences and resolve all factual conflicts in favor of the non-moving party."

3   *Am. Home Assurance Co. v. TGL Container Lines, Ltd.*, 347 F. Supp. 2d 749, 755 (N.D. Cal.

4   2004).

5

6   **ANALYSIS**

7   **I.      Jurisdictional Challenge**

8          Defendants' challenge to this Court's jurisdiction has three main prongs.  First, they

9   argue that the Court lacks jurisdiction because there has been no proper waiver of sovereign

10  immunity, as the Plaintiffs have failed to plead the Little Tucker Act in their amended

11  complaint.   Second, they argue that without properly pleading the United States as

12  defendant, there is no valid claim under the Little Tucker Act.  Third, they argue that

13  subsequent events have mooted Plaintiffs' claim for prospective injunctive relief.  The Court

14  will address each of these arguments in turn.

15         Defendants first claim that without a proper waiver of sovereign immunity, the United

16  States is not subject to suit.  Although the Little Tucker Act contains a waiver of sovereign

17  immunity, as Plaintiffs only plead jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1361

18  (federal question and "action in the nature of mandamus to compel an officer of the United

19  States to perform his duty"), Defendants argue that the complaint does not assert a claim

20  under the Little Tucker Act.  They assert that sovereign immunity waivers must be narrowly

21  construed, and that since the Plaintiffs failed to assert a claim under a statute that waives

22  sovereign immunity, there is no jurisdiction with this Court for suit against the government.

23  In their reply, Defendants also argue that because Plaintiffs' opposition to the first motion to

24  dismiss contained the assertion that they did not bring a claim under the Little Tucker Act,

25  Defendants lack notice of the kind of claim that Plaintiffs now bring.  Plaintiffs do not

26  contend that they have pleaded the Little Tucker Act, but instead argue that under liberal

27  pleading standards, as the Defendants are on notice of the claims, there is adequate basis to

28  exercise jurisdiction.

**United States District Court**
For the Northern District of California

1    The Little Tucker Act provides that "[t]he district courts shall have original
2    jurisdiction, concurrent with the United States Court of Federal Claims, of . . . [a]ny other
3    civil action or claim against the United States, not exceeding $10,000 in amount."  28 U.S.C.
4    § 1346(a)(2).  As the Court determined in its order on the prior motion to dismiss in this case,
5    this is an adequate basis for jurisdiction over these claims.

6    The question remains whether such jurisdiction has been properly asserted.  In
7    general, the Federal Rules of Civil Procedure require only notice pleading, and the Ninth
8    Circuit has held in the context of a suit against a private defendant that failure to specify the
9    existence of jurisdiction amounts in some cases "to no more than inartful pleading, an error
10   that does not in itself constitute an actual defect of federal jurisdiction."  *Nationwide Mut.*
11   *Ins. Co. v. Liberatore*, 408 F.3d 1158, 1162 (9th Cir. 2005) (internal quotation marks and
12   citation omitted).  The Ninth Circuit has made clear that "[a]lthough it is preferable that a
13   district court require formal amendment of a defective complaint, formal amendment is not
14   required when the reviewing court can readily recognize the existence of jurisdiction."  *Id.* at
15   1162 n.2.  However, rules for the waiver of sovereign immunity are strictly interpreted:

16       The United States is immune from suit unless it consents to waive its sovereign
         immunity.  The terms of the United States' consent to be sued in any court
17       define that court's jurisdiction to entertain the suit.  The doctrine of sovereign
         immunity applies to federal agencies and to federal employees acting within
18       their official capacities.  Any waiver of immunity must be "unequivocally
         expressed," and any limitations and conditions upon the waiver "must be
19       strictly observed and exceptions thereto are not to be implied."

20   *Hodge v. Dalton*, 107 F.3d 705, 707 (9th Cir. 1997).

21   Given Plaintiffs' clear submission to jurisdiction under the Little Tucker Act at the
22   hearing on this motion, and the unequivocal waiver of sovereign immunity contained in the
23   Little Tucker Act, this Court finds no reason to mechanistically require amendment of the
24   First Amended Complaint to reflect this basis of jurisdiction.  The Court finds jurisdiction
25   under the Little Tucker Act, and considers its omission from the complaint to be "no more
26   than inartful pleading."  *Nationwide*, 408 F.3d at 1162.

27
28

**United States District Court**
For the Northern District of California

Defendants' second argument against jurisdiction is that the Little Tucker Act requires that a case be brought "against the United States."[2]  The government cites an early Supreme Court case under the Little Tucker Act, in which the Court clarified that the Court of Claims only has jurisdiction in suits against the United States, thus stating clearly that the Little Tucker Act only provides jurisdiction against the United States as well, since that Court was provided jurisdiction in the Act.  *United States v. Sherwood*, 312 U.S. 584, 588 (1941).  The Southern District of California has held that "[s]uits under the Tucker Act are permitted only against the United States, not its agencies."  *Saints v. Winter*, 2007 WL 2481514, at *4 (S.D. Cal. 2007).

However, Plaintiffs again assert that the Defendants are being excessively legalistic, and that the government knows it is being sued.  The Ninth Circuit has held that failure to expressly name the United States as a defendant does not necessarily bar jurisdiction under other statutes that permit suits against "the United States", and that bringing suit against an official of the government is a suit against the United States.  *Wright v. Gregg*, 685 F.2d 340, 341-42 (9th Cir. 1982).  The Supreme Court has reached a similar conclusion concluding that a "suit against the petitioning local officials of the Reclamation Bureau is in fact against the United States."  *Dugan v. Rank*, 372 U.S. 609, 611 (1963).  In so holding, the Supreme Court relied on the general rule "that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act."  *Id.* at 620.  The Third and Fourth Circuits have extended this rule to actions under the Little Tucker Act.  *Chabal v. Reagan*, 822 F.2d 349, 355-56 (3d Cir. 1987) ("For purposes of the Tucker Act, we treat Chabal's claims against individual federal defendants in their official capacities as alleging claims against the United States."); *Portsmouth Redevelopment & Hous. Auth. v. Pierce*, 706 F.2d 471, 473 (3d Cir. 1983) ("It is not necessary that the United States be denominated as a party [in a Little Tucker Act case].  An

---

[2]  The Little Tucker Act reads: "The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of . . . [a]ny other civil action or claim against the United States, not exceeding $10,000 in amount."  28 U.S.C. § 1346(a)(2).

action against a federal agency or official will be treated as an action against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or compel it to act.'" (quoting *Dugan*, 372 U.S. at 620)).

In the absence of controlling precedent regarding the Little Tucker Act, the Court concludes that the instant action against federal officials will be treated as an action against the United States because "the judgment sought would expend itself on the public treasury [and] the effect of the judgment would be to restrain the Government from acting, or compel it to act." *Dugan*, 372 U.S. at 620. Thus, it is not necessary that the complaint be amended to reflect the United States as a party, The Court finds the rationale of the Third and Fourth Circuits to be persuasive; to require amendment would again demonstrate an unnecessarily mechanistic devotion to precision in pleading. Although the Defendants suggested in their moving papers and reply brief that the Plaintiffs are trying to avoid the consequences of the complete application of the Little Tucker Act, the Plaintiffs conceded at oral argument that once the case is brought under the Act's ambit, they will submit to all of the attendant effects of the Act. In case there is any remaining doubt, the Court concludes that there is jurisdiction in this matter under the Little Tucker Act, that the Court will treat this as an action against the United States, and that all consequences of Little Tucker Act jurisdiction will apply.

Defendants' third argument regarding jurisdiction is that events since the Court's prior ruling have mooted the named plaintiffs' claims for prospective relief. The government thus argues that because named Plaintiffs have fully paid pursuant to the only existing TPS designation, and the next one has not yet been enacted, there are no fees to be enjoined. They additionally argue that since TPS is by definition a temporary designation, prospective relief is inappropriate. They therefore seek to limit the case to retrospective monetary damages. They further claim that this is not an exceptional case requiring application of the "capable of repetition yet evading review" doctrine, as to anticipate repetition is too speculative to be legally justified.

United States District Court

For the Northern District of California

1    Plaintiffs argue that Defendants have not met their burden to show mootness, and that

2    as a result, the claims must stand.  As part of this argument, Plaintiffs point out that the

3    regulations in question have not been withdrawn, and that the government still maintains,

4    when asked about TPS, that an $80 biometrics fee may be required.  As an initial matter, the

5    Court has already found that it has jurisdiction over these prospective claims, either under the

6    Little Tucker Act or the APA.  *See* Order Den. Defs.' Mot. to Dismiss at 8:11-17.

7    The legal standard for mootness presents a high bar for the party asserting the

8    mootness to achieve.  The "heavy burden of persua[ding] the court that the challenged

9    conduct cannot reasonably be expected to start up again lies with the party asserting

10   mootness." *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) (internal citation

11   and quotation marks omitted, alteration in the original).  Plaintiffs rightly assert that the

12   government has presented absolutely no evidence to indicate that it intends to permit the TPS

13   designations for Honduras, Nicaragua, and El Salvador to expire this year.  On the contrary,

14   past government behavior demonstrates that this is the pattern for TPS: the TPS registration

15   period expires late in the year, and then is renewed the following year at some point.

16   Without showing more, the government cannot prevail on its mootness claim because it has

17   not met its burden under *Adarand.*

18   Even if the Court were to declare this matter technically moot, two clearly established

19   exceptions to the application of the mootness doctrine are relevant to this matter.  First, *Roe*

20   *v. Wade*, 410 U.S. 113, 125 (1974), discussed what has come to be known as the capable of

21   repetition yet evading review doctrine, under which recurrent injuries may be heard by the

22   courts even if they are moot, because otherwise they would always escape review.  For this

23   doctrine to apply, two criteria must be met.  First, there must be a "reasonable expectation

24   that the same complaining party would be subjected to the same action again." *Weinstein v.*

25   *Bradford*, 423 U.S. 147, 149 (1975).  Second, the injury must be one of limited duration that

26   is likely to again become moot before the completion of litigation.  *See Carroll v. President*

27   *& Commrs. Of Princess Anne*, 393 U.S. 175 (1968).  Here, both requirements are met.  If

28   TPS status is renewed, the named Plaintiffs are likely to be subject to the same fee again.

9

1  Because of the way that TPS functions, with annual renewal, the same argument of mootness

2  could be asserted each year against complaining Plaintiffs.  Thus, even if the Court were to

3  find this case moot, this exception applies and prevents dismissal for mootness.

4       The second exception to the mootness doctrine that is applicable here is that the

5  Supreme Court has repeatedly held that a case is not to be dismissed as moot if the defendant

6  voluntarily ceases the challenged action but is free to recommence it at any time; dismissal

7  for mootness is only appropriate if there is no reasonable chance of resumption of the

8  conduct.  *Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. 167, 173-74, 189 (2000).  Although

9  the government urges the Court to acknowledge that TPS is by its nature temporary, it argues

10 too much by highlighting all of the prior versions of TPS that have been repealed.  In

11 contrast, it has failed to show that the instant version has been repealed, thus demonstrating

12 that the voluntary cessation exception applies.  Unless and until the government repeals the

13 applicable regulations, which would demonstrate that there is no reasonable chance of

14 resumption, the government's argument is simply nonpersuasive.  As a result of this law, the

15 Court finds that this case is not moot.

16      As each of Defendants' arguments for dismissal is unavailing, the Court DENIES

17 Defendants' Motion to Dismiss.

18

19 **II.   Venue Objection**

20      As on their prior motion to dismiss, Defendants argue that even if the Court finds

21 jurisdiction and a waiver of sovereign immunity, this Court is a proper venue only for

22 plaintiffs residing in this district, not for a nationwide class.  The applicable venue provision

23 for claims arising under the Little Tucker Act states that:

24     "[a]ny civil action in a district court against the United States under subsection
       (a) of section 1346 of this title may be prosecuted only . . . in the judicial
25     district where the plaintiff resides . . . ."

26 28 U.S.C. § 1402(a).

27      As on the prior motion, and consistent with this Court's holding on that motion,

28 Plaintiffs counter that Defendants waived their venue objection by failing to raise it in

**United States District Court**
For the Northern District of California

1    opposition to Plaintiffs' motion for preliminary injunction.  Fed. R. Civ. Pro. 12(h) provides

2    that a party waives a venue defense by failing "to include it in a responsive pleading."  Rule

3    12(h)(1)(B)(ii); Rule 12(b)(3) (motions to dismiss for improper venue).  As the analysis the

4    Court offered on that motion is equally applicable here, it warrants quotation at length:

> A "responsive pleading" for these purposes is not solely a motion to dismiss or
> an answer.  The Court can find waiver of a venue defense "by submission
> through conduct" --*Neirbo Co. v Bethlehem Shipbuilding Corp*, 308 U.S. 165,
> 167-68 (1939), or "by implication from acts acknowledging the court's power
> to adjudicate."  Schwarzer et al, *Federal Civil Procedure Before Trial*, § 9:33
> at 9-8 (2007); *see, e.g., Manchester Knitted Fashions, Inc. v. Amalgamated
> Cotton Garment and Allied Industries Fund,* 967 F.2d 688, 692 (1st Cir. 1992)
> (finding waiver where defendant filed a motion requesting a hearing on
> plaintiff's motion for TRO, a motion to allow its counsel to appear appear *pro
> hac vice*, and a stipulation agreeing to expedited discovery and a hearing on a
> preliminary injunction motion).  A party must raise objection to venue in its
> "first significant defensive move." *Transaero, Inc. v. La Fuerza Aerea
> Boliviana,* 162 F.3d 724, 730 (2nd Cir. 1998), *quoting* 5A Charles Alan Wright
> & Arthur R. Miller, *Federal Practice and Procedure* § 1391.
>
> *Hendricks v. Bank of America, N.A.,* 408 F.3d 1127, 1135 (9th Cir. 2005) is
> precisely on point, and shows that opposition to a motion for preliminary
> injunction can be such a "first responsive pleading" or defensive move.  There,
> the district court issued a temporary restraining order against the defendant,
> together with an order to show cause why a preliminary injunction should
> not be entered.  *Id.* at 1132.  The defendant sought several extensions of time, and
> then opposed the request for a preliminary injunction. *Id.* at 1132, 1135.  On
> interlocutory appeal, the Ninth Circuit found that the defendant had not waived
> its venue and personal jurisdictional defenses because it had raised them "in its
> first responsive pleading" *id.* at 1135 – that is, in response opposition to
> plaintiff's preliminary injunction motion.
>
> Here, in contrast, the Defendants chose to argue the merits of the case in
> opposition to Plaintiffs' motion for preliminary injunction *without* raising a
> venue objection.  *See* Defendant's Opposition to Plaintiffs' Motion for
> Preliminary Injunction, filed September 25, 2007; Defendants' Surreply in
> Opposition to Plaintiffs' Motion for Preliminary Injunction, filed October 4,
> 2007.  An officer of the USCIS even submitted an eight-page declaration on
> the merits of the case.  Declaration of Barbara Velarde, Chief of Service Center
> Operations for the United States Citizenship and Immigration Services,
> Department of Homeland Security, filed September 25, 2007.
>
> Defendants argue that *Hendricks* is distinguishable because here, venue has to
> be viewed "in light of jurisdiction" granted by the Little Tucker Act, and the
> two are inextricably intertwined.  This argument is hollow; there is nothing
> specific about either the Little Tucker Act or the related grant of venue in 28
> U.S.C. § 1402(a)(1) that makes jurisdiction and venue inseparable.  On the
> contrary, 28 U.S.C. § 1406(b) provides that nothing in the chapter of Title 28
> on venue – which includes the Little Tucker Act venue provision – "shall
> impair the jurisdiction of a district court over any matter involving a party who
> does not interpose a timely and sufficient objection to the venue."

> Allowing Defendants to raise a venue objection only after this Court found a likelihood of success on the merits would permit the forum-shopping and waste of judicial resources  Rule 12(h) is designed to avoid.  Rule 12(h) contemplates an implied waiver of a venue defense "by defendants who appear before a court to deny the allegations of a complaint, but who fail to make [venue] objections at the time of their appearance." *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir.2002) (citation omitted).  That is what Defendants have done here. Accordingly, they have waived any objection to venue in this Court.

Order Den. Defs.' Mot. to Dismiss at 9-10.

The Court could simply set aside Defendants' venue objection on this basis. However, Defendants point to a Ninth Circuit case in which the court permitted a plaintiff class to amend, and then observed that "[a]fter such further amendment, the District Court will have to determine whether venue in the . . . District . . . is proper." *Immigrant Assistance Project of Los Angeles County Fed'n of Labor (AFL-CIO) v. I.N.S.*, 306 F.3d 842, 848 (9th Cir. 2002).  Because of the previously discussed dispute over the propriety of the pleadings in establishing jurisdiction, the Court will address the merits of the venue motion as well to create a complete record.

Defendants' venue objection focuses on the interpretation of the Little Tucker Act's venue provision, which provides that "[a]ny civil action in a district court against the United States under subsection (a) of section 1346 of this title may be prosecuted only . . . in the judicial district where the plaintiff resides . . . ."  28 U.S.C. § 1402(a).  As the Court has brought this case within the ambit of the Little Tucker Act, venue objections pursuant to that Act are properly brought to the Court's attention.  Defendants specifically assert that venue is improper for non-resident class members in this case under this venue statute.

Both parties acknowledge that there is no controlling Ninth Circuit authority on this matter.  Defendants offer cases from outside the jurisdiction in which the Court held that all plaintiffs in such a class must satisfy the venue requirement of the Little Tucker Act. *Favereau v. United States*, 44 F. Supp. 2d 68, 69-71 (D. Me. 1999).  However, Plaintiffs urge the Court to adopt Judge Alsup's recent consideration of this issue as to a class of non-alien plaintiffs:

> No appellate decisions have addressed this issue, and the few district courts which have done so have reached differing results. At least one court has expressly ruled that, for Rule 23 cases under the Little Tucker Act, venue is

12

United States District Court

For the Northern District of California

1    proper in a district court only if all class members reside in the pertinent
2    judicial district. *Favereau v. United States*, 44 F. Supp. 2d 68 (D. Me.1999).[3]
     Other district courts, however, have followed the traditional class-action rule
3    and permitted Little Tucker Act claims to proceed where unnamed class
     members resided outside of the district. *Whittington v. United States*, 240
4    F.R.D. 344, 348-49 (S.D. Tex. 2006); *Bywaters v. United States*, 196 F.R.D.
     458 (E.D. Tex. 2000).

5    After reviewing the history and purpose of the Little Tucker Act and its venue
6    provision, *Favereau* concluded that the Act's venue provision "was
     deliberately drafted to carve out a narrow exception to the jurisdiction of the
7    Court of [Federal] Claims to give persons with relatively small claims the
     option of bringing suit in the district where they and their witnesses reside."
8    *Favereau*, 44 F. Supp. 2d at 70. *See also Lake Mohave Boat Owners Ass'n v.
     National Park Service*, 78 F.3d 1360, 1365 n. 4 (9th Cir.1995) (identifying
9    substantially the same purpose for the Little Tucker Act's jurisdictional
     provision). The government's argument is the same-that the Little Tucker Act
10   and its venue provision were intended as a limited exception to exclusive Court
     of Claims jurisdiction simply to allow plaintiffs with small claims to bring their
11   cases in the local judicial districts.

12   This order, however, respectfully disagrees. Courts must look first and
     foremost not to the purpose of a statute but to its text, and this order is simply
13   unable to derive the venue limitation urged by the government from the text of
     the venue provision.

14   *Briggs v. United States*, 2009 WL 113387, 5-7  (N.D. Cal. Jan. 16, 2009).

15        The rest of his discussion observes that as in normal class actions, unnamed class

16   members are irrelevant to venue determinations, and as the Little Tucker Act itself does not

17   bar class actions, there is no reason to deviate from the standard venue rules of class actions.

18   *Id.*  As this reasoning is eminently logical, and, in the absence of controlling Ninth Circuit

19   authority, offers persuasive reasoning, the Court shall adopt Judge Alsup's rationale.

20        Defendants offer one additional argument against venue: they assert that TPS

21   applicants, as aliens, cannot be "resident" within a Court's district.  First, the Court notes that

22   the Government waived this venue objection by failing to raise it in opposition to Plaintiffs'

23   motion for preliminary injunction.  Fed. R. Civ. Pro. 12(h).  This alone is reason to deny this

24   venue objection.  Second, although the Defendants point to a number of cases in which

25   _____

26        [3]The government also cites *Saraco v. Hallett*, 831 F. Supp. 1154 (E.D. Pa.1993), and
     *Davila v. Weinberger*, 600 F.Supp. 599 (D. D.C. 1985). Those cases are distinguishable,
27   however, because they were not Rule 23 class actions but rather actions under a collective
     right of action in the Fair Labor Standards Act.  29 U.S.C. 216(b). Unlike class actions, such
28   cases are "opt-in" cases in which only plaintiffs who sign consent forms expressly opting
     into the case become party plaintiffs, arguably rendering all plaintiffs "named" plaintiffs.
     *Davila*, 600 F. Supp. at 603.

**United States District Court**
For the Northern District of California

1   permanent residents have been found to lack residency for venue purposes, none of those

2   cases involve individuals residing lawfully in the United States under TPS.  *See Zhang v.*

3   *Chertoff*, 2008 WL 5271995 (N.D. Cal. Dec. 15 2008); *Li v. Chertoff*, 2008 WL 4962992

4   (N.D. Cal. Nov. 19, 2008); *Ou v. Chertoff*, 2008 WL 686869 (N.D. Cal. March 12, 2008).

5   Defendants offer no controlling Ninth Circuit case that clearly demonstrates to this Court the

6   impropriety of venue in this matter.  Furthermore, Plaintiffs persuasively argue that given

7   that the TPS statute refers to aliens who have "continuously resided in the United States," 8

8   U.S.C. § 1254a(c)(1)(A)(ii), it would be absurd to deny aliens venue on the basis of residence

9   in a case interpreting a statute that requires their continuous residence; Defendants make no

10  effort to counter this argument in their reply.  Accordingly, for the foregoing reasons, the

11  Court declines to find venue improper.

12

13  **CONCLUSION**

14          For the foregoing reasons, Defendants' Motion to Dismiss is DENIED in its entirety.

15  The Court finds that it has jurisdiction pursuant to the Little Tucker Act, and that venue is

16  proper in this matter.  The Court holds that the Little Tucker Act, and all attendant

17  consequences, shall apply in this matter.

18

19  **IT IS SO ORDERED.**

20

21  Dated: May 1, 2009

22                                              THELTON E. HENDERSON, JUDGE
                                                UNITED STATES DISTRICT COURT

23

24

25

26

27

28

14