1

2

3          IN THE UNITED STATES DISTRICT COURT

4        FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6

7   JUAN BAUTISTA-PEREZ, *et al.*,

8                    Plaintiffs,                    NO. C 07-4192 TEH

9            v.                                     ORDER GRANTING
                                                    PLAINTIFFS' MOTION FOR
10  ERIC HOLDER, *et al.*,                          CLASS CERTIFICATION AND
                                                    BIFURCATION
11                   Defendants.

12

13          This matter came before the Court on June 29, 2009, on Plaintiffs' Motion for Class

14  Certification and Bifurcation in this class action case, which challenges the policy of the

15  Departments of Justice and Homeland Security of charging more than the $50.00 fee

16  allegedly permitted by statute for registration for "Temporary Protected Status."  Plaintiffs

17  are before the Court seeking certification of their class of "[a]ll nationals of El Salvador,

18  Honduras, and Nicaragua who have applied to register or re-register for Temporary Protected

19  Status ("TPS") at any time from August 16, 2001 to the present."  They also ask the Court to

20  bifurcate issues of liability and injunctive and declaratory relief from the issue of the amount

21  of restitution due to the class for TPS registration fees they paid in excess of the $50 limit.

22  Having carefully considered the parties' written and oral arguments, Plaintiffs' Motion is

23  GRANTED for the reasons set forth below.

24

25  **FACTUAL AND STATUTORY BACKGROUND**

26          As this is one of a series of motions this Court has heard in this matter, this account of

27  the facts draws heavily on that the Court presented in the prior motions, supplemented with

28  additional facts provided by the parties pursuant to the present motion.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1       The Immigration Act of 1990 established a procedure whereby the government could

2   provide temporary protection to aliens in the U.S. who were forced to flee their homelands

3   because of natural disaster, civil strife and armed conflict, or other extraordinary and

4   temporary conditions.  The Secretary of Homeland Security may grant "Temporary Protected

5   Status" ("TPS") to nationals of certain countries temporarily designated under the statute 8

6   U.S.C. § 1254a(a)(1), which allows those nationals to stay in the United States and obtain

7   work authorization for the period their home country is so designated. 8 U.S.C. §

8   1254a(a)(1)(B).

9       Once a country is designated for TPS, nationals of that country can register for

10  benefits during a registration.  To establish eligibility for TPS, an applicant must

11  demonstrate, among other things, that he or she is a national of the country designated for

12  TPS, has been continuously physically present and resided in the United States since the

13  effective date of designation, and is otherwise admissible as an immigrant (although certain

14  grounds of inadmissibility can be waived).  8 U.S.C. § 1254a(c)(2)(A); 8 C.F.R. §§ 244.2,

15  244.3(a), 1244.3(a).  The government can deny an applicant TPS on the basis of the

16  applicant's criminal history.  8 U.S.C. § 1254a(c)(2)(A)-(B); 8 C.F.R. §§ 244.3(c), 244.4,

17  1244.3(c), 1244.4.

18      The statute at issue here limits the registration fee for TPS to $50.00.  Title 8 U.S.C.

19  § 1254a(c)(1)(B) provides:

20      Registration fee

21      The Attorney General may require **payment of a reasonable fee as a
        condition of registering an alien** under subparagraph (A)(iv) (including

22      providing an alien with an "employment authorized" endorsement or other
        appropriate work permit under this section). **The amount of any such fee shall
        not exceed $50**. In the case of aliens registered pursuant to a designation under

23      this section made after July 17, 1991, **the Attorney General may impose a
        separate, additional fee for providing an alien with documentation of work

24      authorization**. Notwithstanding section 3302 of Title 31, all fees collected
        under this subparagraph shall be credited to the appropriation to be used in

25      carrying out this section.

26

27  (emphasis added).

28

2

However, regulations governing TPS require applicants to pay more than just a $50.00 registration fee and a work authorization fee.  *See* 8 C.F.R. § 244.6.  The Department of Homeland Security ("DHS" or "Homeland Security") requires individuals who wish to obtain TPS to file:

1)   an application form I-821 and extensive supporting documentation. 8 C.F.R. §§ 244.6, 244.9;

2)   a registration fee for TPS of $50.00.  8 C.F.R. § 103.7(b) (fee for form I-821 not to exceed $50.00); 72 Fed. Reg. 29529-02 (May 29, 2007); 72 Fed. Reg. 29534-01 (May 29, 2007); 72 Fed. Reg. 46649-01 (August 21, 2007) (extensions of designation for Honduras, Nicaragua, and El Salvador, respectively, setting fee at $50.00);

3)   an application for employment authorization, if desired, and a $340.00 fee for documentation of work authorization.  8 C.F.R. §§ 103.7(b), 244.6;  and

4)   a "biometrics services fee" for applicants over 14.  8 C.F.R. §§ 103.7(b)(1), 244.6.   (The biometrics fee, previously set at $25.00, then $70.00, was raised to $80.00 on July 30, 2007.  72 Fed. Reg. 29851-01, 29873 (May 30, 2007)).

Homeland Security charges the "biometrics services fee" for processing of fingerprints, photographs, and electronic signatures used for background and security checks and identity verification, and for storage and maintenance of the information so collected.  Declaration of Barbara Velarde, Chief of Service Center Operations for the United States Citizenship and Immigration Services, Department of Homeland Security ("Velarde Decl.") ¶¶ 7, 18 (filed on September 25, 2007, in support of Opposition to Plaintiffs' Motion for Preliminary Injunction); *see also* 72 Fed. Reg. 29851, 29857 (May 30, 2007) (discussing uses of biometrics fee).  From the beginning of the class period until February 19, 2002, the biometrics services fee was set at $25.00.  63 Fed. Reg. 12979, 12981 (Mar. 17, 1998); 66 Fed. Reg. 65811, 65814 (Dec. 21, 2001).

Although aliens are required to re-register for TPS whenever a country is re-designated, Homeland Security collects the $50.00 TPS registration fee only once.  8 C.F.R. § 244.17(a); 72 Fed. Reg. 46649, 46650 (August 21, 2007) (explaining fee structure for El Salvador re-registration).  However, aliens are required to pay a new biometrics fee, or file a

United States District Court

For the Northern District of California

1   fee waiver, (and work authorization document fee) for each re-registration.  72 Fed. Reg.

2   46649, 46653 (August 21, 2007);  Velarde Decl. ¶ 13.   Plaintiffs allege, and DHS admits,

3   that it requires applicants to pay the biometrics fee even if Homeland Security does not need

4   updated biometric information.  Velarde Decl. ¶ 19.  The parties dispute precisely how and

5   when the biometrics fees are collected, and in which situations the information is resubmitted

6   upon re-registration.  Plaintiffs contend that biometrics information is only collected once,

7   while the Government presents evidence that the information is at times collected repeatedly.

8   Both parties agree that some TPS re-registrants receive "reuse" notices that inform them that

9   their re-registrations can be processed without submission of additional biometric data.

10  Despite this dispute, what is clear is that under the regulations, and the publications of

11  USCIS, the biometrics fee or a fee waiver is required for all applicants over the age of 14,

12  even if the biometrics information is not collected a second time.

13       El Salvador was designated for Temporary Protected Status after the January 2001

14  earthquake.  Since then, the Attorney General and, later, the Secretary of Homeland Security

15  have extended the designation multiple times; the most recent extension will expire on

16  September 9, 2010.  73 Fed. Reg. 76039, 76040 (December 15, 2008).  Honduras and

17  Nicaragua were designated for TPS in 1999.  The most recent extension of their designations

18  will expire on July 5, 2010.  73 Fed. Reg. 57133 (Oct. 1, 2008) and 73 Fed. Reg. 71021

19  (Nov. 24, 2008).

20       This class action for declaratory and injunctive relief challenges the Justice

21  Department and Department of Homeland Security's ("the Government") policy of charging

22  fees totaling more than the $50.00 fee allegedly permitted by statute as a condition of

23  registering for "Temporary Protected Status." Plaintiffs, foreign nationals from Honduras, El

24  Salvador, and Nicaragua who currently have TPS status, claim that they have been required

25  to remit fees totaling over $50.00 on multiple occasions as they re-register for TPS.  First

26  Amended Complaint ¶ 12.  They claim that because 8 U.S.C. § 1254a(c)(1)(B) provides that

27  the fee charged by DHS "as a condition of registering" for TPS is "not to exceed" $50.00, the

28  additional biometric services fee is unlawful.  Their class action Complaint, brought on

4

behalf of all nationals of El Salvador, Honduras, and Nicaragua who submitted applications to register or re-register for TPS and were required to pay fees of more than $50.00, *id.* ¶¶ 26-28, seeks an order

> • declaring that additional fee for collecting biometric information or any combined fee over $50.00 is unlawful under 8 U.S.C. § 1254a(c)(1)(b);

> • invalidating those parts of 8 C.F.R. § 244.6 that requires Plaintiffs and other class members to pay biometric service fees;

> • enjoining DHS from imposing fees over $50.00;

> • enjoining DHS from imposing a fee when collection of biometric information is unnecessary; and

> • requiring the Defendants to refund all fees over $50.00 paid by class members.

*Id.* Prayer for Relief ¶¶ 2-7.

In this motion, Plaintiffs seek to certify a class defined as "[a]ll nationals of El Salvador, Honduras, and Nicaragua who have applied to register or re-register for Temporary Protected Status ("TPS") at any time from August 16, 2001 to the present." Pls.' Mot. at 2. Proposed named Plaintiffs are individuals who are nationals of El Salvador, Honduras, or Nicaragua, who after August 16, 2001 applied to register or re-register for TPS.

Plaintiffs filed suit in this case on August 16, 2007.  In the intervening time, the Court has considered and denied Plaintiffs' motions for preliminary injunction and temporary restraining order, and Defendants' motions to dismiss.  The instant motion was filed on December 8, 2008, and stayed during the pendency of Defendants' second motion to dismiss. Having denied that motion, the motion for class certification is now properly before the Court.

**LEGAL STANDARD**

A party seeking to certify a class must demonstrate that it has met all four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Rule 23(a) allows a class to be certified

United States District Court
For the Northern District of California

1

2

3

> only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Zinser*, 253 F.3d at 1186.  That is, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy.  Rule 23(b) provides for the maintenance of several different types of class actions.  Fed. R. Civ. P. 23(b).  Plaintiffs seek to certify the class under Rule 23(b)(2), which allows a class to be certified if the court finds that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

The party seeking certification must provide facts to satisfy these requirements; simply repeating the language of the rules in its moving papers is insufficient.  *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977).  A district court must conduct a "rigorous analysis" of the moving party's claims to examine whether the requirements of Rule 23 are met.  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).  However, although the court is "at liberty" to consider evidence that relates to the merits if such evidence also goes to the requirements of Rule 23, *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992), the court may not consider whether the party seeking class certification has stated a cause of action or is likely to prevail on the merits.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).  If a district court concludes that the moving party has met its burden of proof, then the court has broad discretion to certify the class.  *Zinser*, 253 F.3d at 1186.

**DISCUSSION**

**I.  Analysis of Plaintiffs' Claims: Defendants' Non-Rule 23 Arguments**

Prior to analyzing the motion under Rule 23, the Court must consider a series of additional arguments that the Government offers in contesting the class certification motion.

United States **District** Court

For the Northern District of California

1    The Government contends that Plaintiffs seek to certify a class that lacks standing and

2    ripeness.  In so claiming, the Defendants argue that "a named plaintiff must have personally

3    sustained or be in immediate danger of sustaining 'some direct injury as a result of the

4    challenged statute or official conduct.'  *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir.

5    2001), quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).  The harm suffered by a

6    plaintiff must constitute 'actual injury.'  *Armstrong* at 860."  Defs.' Opp. at 7.  Although

7    Plaintiffs' class definition does not specify the concrete injury, it is clear from Plaintiffs'

8    motion for certification what injury they assert: they were subjected to a regulation that they

9    allege contravenes existing federal law and were required to either pay a fee or submit a fee

10   waiver. The Government offers no authority for the proposition that the proposed class

11   definition must articulate the precise injury alleged.  As such, the Court finds that the

12   proposed class definition satisfies the cases on which Defendants rely.  The named Plaintiffs

13   have alleged that they have personally sustained direct injury as a result of the regulation

14   they challenge.  This is adequate for standing to exist.

15          As to the ripeness claim, ripeness is a doctrine that permits a party to challenge the

16   justiciability of a claim for being brought prematurely, generally because the injury is

17   speculative and may never occur.  *See Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)

18   (The "basic rationale [of the ripeness doctrine] is to prevent the courts, through avoidance of

19   premature adjudication, from entangling themselves in abstract disagreements over

20   administrative policies, and also to protect the agencies from judicial interference until an

21   administrative decision has been formalized and its effects felt in a concrete way by the

22   challenging parties."), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99

23   (1977).  Defendants argue that the claim is not ripe because there is no concrete case or

24   controversy, since the Plaintiffs have already applied and paid fees for the last registration

25   period, and no other period is pending; the Government thus claims that the Plaintiffs cannot

26   establish a claim for relief since repetition is speculative.  This argument is not persuasive,

27   however, as Plaintiffs allege past injury through the application of the allegedly invalid

28

regulation, which exacted an improper fee from Plaintiffs. This surely qualifies as a concrete injury.

To the extent that the Government challenges Plaintiffs' claim for prospective injunctive relief, the Court has previously addressed this issue. Defendants' Opposition, having been filed on January 12, 2009, prior to the Court's Order Denying Defendant's Motion to Dismiss of May 1, 2009, raises legal arguments that this Court resolved in its May 1 Order. To the extent that the Government's arguments against prospective injunctive relief are framed as mootness claims, given their reliance on the doctrine of "capable of repetition yet evading review," the Court carefully considered this issue in its Order of May 1, held that the claims are not moot, and that these claims are precisely the kind that are likely to repeat yet consistently evade review. *See id.* at 8-10.

Defendants also argue that this Court lacks jurisdiction because Plaintiffs failed to properly bring their case under the jurisdiction of the Little Tucker Act, having not pleaded this basis of jurisdiction and having pleaded the case against the Attorney General and Secretary of Homeland Security, instead of against the United States. Again, the Court's previous ruling that it has jurisdiction over this matter under the Little Tucker Act, and will not be mechanistic in requiring Plaintiffs to plead their case as against the United States to assert that this Court has such jurisdiction, resolves this issue. *See id.* at 5-8. That Plaintiffs have fully submitted to all aspects of the application of the Little Tucker Act lends further support to this conclusion of the Court.

Finally, Defendants' Opposition also asserts that the certification motion is contrary to the Little Tucker Act because some class members are not residents of this judicial district. Again, Defendants raised this argument in their second motion to dismiss, and the Court resolved this legal issue in its May 1, 2009 Order, holding that pursuant to Judge Alsup's ruling in *Briggs v. United States*, 2009 WL 113387, 5-7 (N.D. Cal. Jan. 16, 2009), a Little Tucker Act class action may be brought for a nationwide class where the named Plaintiffs are resident of the judicial district, and further, that the alien Plaintiffs are resident for purposes

1   of the challenged statute and regulations.  Order Denying Defendant's Motion to Dismiss,

2   May 1, 2009, at 12-14.

3   **II. Rule 23**

4   **A.  Rule 23(a) Requirements**

5   **1.  Numerosity**

6          Numerosity does not require that joinder of all members be impossible, but only that

7   joinder be impracticable.  *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448

8   (N.D. Cal. 1994); Fed. R. Civ. P. 23(a)(1).  Plaintiffs do not need to state the exact number of

9   potential class members, and numerosity does not require a specific number of class

10  members.  *Arnold*, 158 F.R.D. at 448. The determination of whether joinder is impracticable

11  depends on the facts and circumstances of each case.  *Id.*

12         The Government does not contest numerosity in this case, and acknowledges that the

13  putative class consists of potentially hundreds of thousands of persons.  Def.'s Opp. at 9.

14  This number is more than sufficient to satisfy the numerosity requirement of Rule 23(a)(1).

15  **2.  Commonality**

16         Rule 23(a)(2) requires that common questions of law or fact exist among class

17  members.  Fed. R. Civ. P. 23(a)(2).  The Ninth Circuit construes the commonality

18  requirement under this rule "permissively," having noted that the requirement under Rule

19  23(a)(2) is less rigorous than that under Rule 23(b)(3).  *Hanlon v. Chrysler Corp.*, 150 F.3d

20  1011, 1019 (9th Cir. 1998); *compare* Fed. R. Civ. P. 23(b)(3) (requiring that common

21  questions of law or fact "predominate" in class actions maintained under this subsection)

22  *with* Fed. R. Civ. P. 23(a)(2) (not including "predominate" or similar language in describing

23  the general commonality requirement).  It is sufficient for class members to have shared legal

24  issues but divergent facts or, similarly, to share a common core of facts but base their claims

25  for relief on different legal theories.  *Hanlon*, 150 F.3d at 1019.  Indeed, the Ninth Circuit

26  considers the requirements for finding commonality under Rule 23(a)(2) to be "minimal."

27  *Id.* at 1020.

28

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    The Government offers several arguments for why commonality is absent such that

2    certification should be denied.  First, the Government contends that because the class is not

3    defined by a requirement of having paid fees in excess of the statutory limit, the class is

4    merely hypothetical, lacking both standing and commonality.  Second, had the Plaintiffs

5    moved to certify a class that was defined by payment, commonality would be lacking for

6    persons who had not paid in excess of $50.  Those persons would include those under 14

7    years of age, or those who had not reapplied after the $50 biometric fee was imposed.  Third,

8    the Government argues that two of the proposed named plaintiffs, Oscar Rene Ramos and

9    Maria Salazar, initially registered prior to the beginning of the class definition on August 16,

10   2001.  The Defendants further claim that these Plaintiffs' claims are time barred under the

11   applicable statute of limitations of 28 U.S.C. § 2401.  Fourth, Defendants contend that

12   because all but one of the named Plaintiffs received a "reuse notice" in which their re-

13   registrations were processed without requiring new fingerprinting, their claims differ from

14   those who did not receive reuse notices.  As there is no Salvadoran or Honduran named

15   Plaintiff who did not receive a reuse notice, they argue that there is inadequate commonality.

16   The Government argues that the "reuse" theory Plaintiffs will be prosecuting a different

17   claim from those who did not receive the "reuse notice."

18       Given that the Ninth Circuit has highlighted the minimal nature of the requirements to

19   establish commonality, none of these arguments is sufficient to defeat commonality.

20   Defendants have offered no authority requiring that the class definition itself must

21   demonstrate the commonality of their injury in the mere text of their class definition.  Rather,

22   the Ninth Circuit has held that the party seeking certification must provide facts to satisfy the

23   requirements of Rule 23; it must logically follow that the class definition alone does not

24   defeat certification, but that inquiry into the surrounding facts is permitted.  *Doninger.* 564

25   F.2d at 1309.  Second, commonality does not require Plaintiffs to demonstrate identical

26   injury to obtain certification.  *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The

27   amount of damages is invariably an individual question and does not defeat class action

28   treatment.").  Plaintiffs here expressly seek an array of injunctive and declaratory relief in

10

1    addition to relief from the financial injury that Defendants assert is lacking from the class

2    definition, so it is not merely money that unifies the class, but also the common subjection to

3    the same challenged regulatory scheme.  Third, to the extent that the class definition specifies

4    that the class is comprised of persons who registered or re-registered during the class period,

5    the claims of Ramos and Salazar are not automatically excluded from class treatment.  The

6    Court is not to consider likelihood of success on the merits, but only the cohesiveness of the

7    class, on a motion for certification.  Thus, whether Ramos, Salazar, and similarly situated

8    class members who seek remedy based on re-registration, as opposed to initial registration,

9    can prevail on the merits or are time-barred from asserting a claim is a question for a later

10   stage of litigation.  *Eisen*, 417 U.S. at 178.  Their claims do not lack commonality simply

11   because a legal question regarding the statute of limitations remains for resolution at the

12   merits stage of litigation.

13        Fourth, class certification does not require each class member to prosecute an identical

14   legal theory.  Instead, it is sufficient to demonstrate a common set of operative facts.

15   Plaintiffs have successfully met this burden.  They have identified the relevant federal statute

16   and the regulations that they believe to violate the statute, and offer as a common legal

17   question the propriety of a regulation requiring payment of fees beyond an initial $50

18   registration fee.  To inquire further into the merits of this claim is improper at the stage of

19   class certification.  While any monetary portion of relief will be determined after a decision

20   on the merits, in light of any fees that are proven to have been illegally charged, the Ninth

21   Circuit has made clear that differing amounts of damages do not defeat class certification.

22   *Blackie*, 524 F.2d at 905 ("The amount of damages is invariably an individual question and

23   does not defeat class action treatment.").  That various class members differ in the final

24   amount of monetary restitution they might seek does not defeat commonality.  Plaintiffs

25   clearly meet the minimal commonality requirement of Rule 23(a)(2), as the common question

26   of law of whether the TPS applicants are subject to fees that contravene the regulations

27   unifies the class.

28   //

**United States District Court**

For the Northern District of California

### 3.  Typicality

Rule 23(a)(3) requires typicality, which the Ninth Circuit also interprets permissively. *Hanlon*, 150 F.3d at 1020.  Typicality requires that the named plaintiffs be members of the class they represent and "possess the same interest and suffer the same injury" as class members.  *Falcon*, 457 U.S. at 156 (citation omitted).  The named plaintiffs' claims need not be identical to the claims of the class to satisfy typicality; rather, the claims are typical if they are "reasonably co-extensive with those of absent class members."  *Hanlon*, 150 F.3d at 1020.  It is sufficient for named plaintiffs' claims to "arise from the same remedial and legal theories" as the class claims.  *Arnold*, 158 F.R.D. at 449.

The Government likewise disputes typicality, but offers little in the way of authority to justify its argument beyond the arguments presented against commonality, and none of those claims militates against a finding of typicality.  The Government's best argument is that the Salvadoran and Honduran named Plaintiffs differ from the rest of the class because they all received reuse notices; to the extent that the group of named Plaintiffs lacks a Salvadoran or Honduran who did not receive a reuse notice, the Government asserts that the representatives are not typical.  However, the Government offers no reason to distinguish between the nationalities of the named Plaintiffs and the members of the class in determining the typicality of their claims.  Nationals of all three countries represented in this suit were subject to operatively identical statutes, regulations, and policies, and paid fees accordingly.  Defendants have provided no authority for such a distinction.  Rather, Plaintiffs have demonstrated that the named Plaintiffs' claims are reasonably co-extensive with those of the absent class members.  All claims arise from the same remedial theory of the inconsistency between the fee structure permitted in the applicable statute and that required by the related regulation.  As a result, the legal theories at the core of this case arise from a legal challenge to the same set of regulations controlling the TPS registrations and re-registrations of all putative class members during the class period.  The Court therefore finds that Plaintiffs have met their burden under Rule 23(a)(3).

//

**United States District Court**
For the Northern District of California

**4. Adequacy**

The fourth and final Rule 23(a) requirement – adequacy – requires (1) that the proposed representatives do not have conflicts of interest with the proposed class and (2) that the representatives are represented by qualified counsel.  *Hanlon*, 150 F.3d at 1020; *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998).

In this case, the Government disputes the adequacy of the proposed class representatives, arguing that the proposed named plaintiffs have a conflict of interest with the class because some have a possible statute of limitations bar, and because some may pursue a more complex legal theory based on a "reuse" notice.  The Government offers no rationale for why these differences constitute a conflict of interest.  That different class members present different legal theories to justify the remedy they seek does not automatically mount a conflict, and is in fact an acknowledged aspect of class action litigation in some cases. *Hanlon*, 150 F.3d at 1019.  Plaintiffs have shown that each named Plaintiff participated in the TPS program by registering and re-registering at various points during the class period.  To the extent that trivial differences exist among the claims of the named Plaintiffs, such differences are demonstrative of the different legal theories that are available to the class, and are not evidence of a conflict of interest.  The Court thus finds the named Plaintiffs to be adequate representatives of the class.

The Court also finds that Plaintiffs' counsel are experienced class action litigators, a fact that Defendants do not dispute.  *See* Dardarian Decl. in Support of Mot. for Class Cert. ¶¶ 4-8.  Pursuant to Federal Rule of Civil Procedure 23(g)(1)(A), the Court finds that: (1) Plaintiffs' counsel have diligently identified and investigated potential claims in this litigation; (2) counsel have sufficient experience in pursuing class cases; (3) counsel have demonstrated an adequate understanding of the applicable law; and (4) counsel have the necessary resources to fully represent the class throughout this litigation and are committed to dedicating those resources to this case.  Based on Plaintiffs' counsel's representation in this case thus far and the material contained in the Dardarian Declaration, counsel appears to

1    be adequate.  Accordingly, the Court finds that Plaintiffs have satisfied the adequacy

2    requirements of Rule 23(a)(4).

3    **B. 23(b)(2) Requirements**

4         Having found that the proposed class satisfies the requirements of Rule 23(a), the

5    Court must consider whether the class also meets the requirements of Rule 23(b).  Plaintiffs

6    seek to certify the class under Rule 23(b)(2), which allows a class to be certified if the court

7    finds that "the party opposing the class has acted or refused to act on grounds that apply

8    generally to the class, so that final injunctive relief or corresponding declaratory relief is

9    appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

10        "Class actions certified under Rule 23(b)(2) are not limited to actions requesting only

11   injunctive or declaratory relief, but may include cases that also seek monetary damages."

12   *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986).  The issue, under

13   precedent cases in the Ninth Circuit, is whether the primary relief sought is declaratory or

14   injunctive.  *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001).

15   The Ninth Circuit has adopted a fact-specific test to distinguish between incidental and

16   nonincidental damages for the purposes of determining the predominant form of relief,

17   focusing "on the language of Rule 23(b)(2) and the intent of the plaintiffs in bringing the

18   suit," and leaving the ultimate determination in the discretion of the district court.  *Molski v.*

19   *Gleich*, 318 F.3d 937, 950 (9th Cir. 2003).

20        In *Molski*, the Ninth Circuit cited with approval a Second Circuit case that held that

21        before allowing (b)(2) certification a district court should, at a minimum,
          satisfy itself of the following: (1) even in the absence of a possible monetary
22        recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or
          declaratory relief sought; and (2) the injunctive or declaratory relief sought
23        would be both reasonably necessary and appropriate were the plaintiffs to
          succeed on the merits.

24

25   *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 164 (2nd Cir. 2001) (internal

26   quotation marks omitted), quoted with approval in *Molski*, 318 F.3d at 950 n. 15.  That

27   Second Circuit case further stated that "incidental damages must be susceptible to

28   computation by means of objective standards and not dependent in any significant way on

**United States District Court**
For the Northern District of California

14

the [class members'] intangible, subjective differences, which compensatory damages clearly are." *Robinson*, 267 F.3d at 164 (internal quotation marks omitted).

Given that certification is broadly within the discretion of this Court, the Court finds that Plaintiffs' claim ultimately meets the standard for 23(b)(2) certification.  *See Armstrong*, 275 F.3d at 872 n.28 ("Federal Rule of Civil Procedure 23 provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court.").  While the Government asserts a laundry list of arguments, none defeats the fundamental requirements of Rule 23(b)(2). Defendants first argue that this case is based solely upon jurisdiction under the Little Tucker Act which permits only monetary, as opposed to injunctive and declaratory, relief.  Since certification under Rule 23(b)(2) requires injunctive and declaratory relief, Defendants claim that certification is impossible under the jurisdiction of the Little Tucker Act.  Such argument fundamentally misapprehends the prior rulings of this Court in this case.  In this Court's Order Denying Defendants' Motion to Dismiss, or, in the Alternative, to Transfer Venue of February 4, 2008, this Court clearly held:

> This Court also has the power to grant whatever equitable relief might be necessary, whether it is considered "associated with and subordinated to" the Tucker Act monetary claim, *Wilkins v. United States*  279 F.3d 782, 786 (9th Cir. 2002) (citation omitted), or separate equitable relief which the Court can grant under § 702 of the APA.

Simply stated, although this Court has dedicated significant attention to Plaintiffs' Little Tucker Act claims, this has been largely dictated by the fact that such claims were the basis of Defendants' motions to dismiss.  The Court has never stated that the Little Tucker Act is the sole basis of jurisdiction in this case, that Little Tucker Act claims are the sole basis of this case, or even that such claims are predominant.  Rather, the Court has been clear that it has jurisdiction over Plaintiffs' monetary claims, if construed as a legal remedy, under the Little Tucker Act, and further has jurisdiction over Plaintiffs' equitable claims either as a matter "associated with and subordinated to" the Little Tucker Act claims or separately under the APA.  That Plaintiffs bring claims under both the Little Tucker Act and the APA does not defeat certification.

15

Second, the Government argues that certification pursuant to Rule 23(b)(2) is inappropriate because Plaintiffs have not satisfied the Rule 23(b)(2) standard of showing that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." As explained above, in the analysis of Rule 23(a)(2)-(4), Plaintiffs have shown that the Government's promulgation and application of the challenged regulations have applied generally to the class. If the Court were to grant the relief that Plaintiffs seek,[1] such relief would apply generally to all class members. Although the actual monetary sums extracted from individual class members varies according to the number of times the individual registered or re-registered, such relief does not defeat certification; monetary relief may accompany injunctive and declaratory relief. Even this monetary relief would be generally applicable, as it would be determined based on the sum paid in excess of the statutory limit, and not individual, personal factors.

Third, the Government argues that certification under Rule 23(b)(2) is inappropriate because Plaintiffs seek primarily monetary damages. The Defendants argue that equitable restitution is not available to Plaintiffs under the Little Tucker Act, and further, that the "kind of restitution that the plaintiffs seek is not equitable." Defendants thus assert that the Plaintiffs' claim is primarily for money damages, which prohibits them from seeking certification under Rule 23(b)(2).

The Court need not resolve whether this monetary claim is at law or equity, because in either situation, certification is appropriate. In its Order of February 4, 2008, the Court declined to rule on whether Plaintiffs' monetary claims were for damages or equitable relief, holding that if equitable, then the Court had jurisdiction under the APA, and if monetary, the

---

[1] • declaring that additional fee for collecting biometric information or any combined fee over $50.00 is unlawful under 8 U.S.C. § 1254a(c)(1)(b);
   • invalidating those parts of 8 C.F.R. § 244.6 that requires Plaintiffs and other class members to pay biometric service fees;
   • enjoining DHS from imposing fees over $50.00;
   • enjoining DHS from imposing a fee when collection of biometric information is unnecessary; and
   • requiring the Defendants to refund all fees over $50.00 paid by class members.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   Court had jurisdiction under the Little Tucker Act, and in any event, jurisdiction was proper.

2   Either conclusion would likewise permit this Court to certify the class.  If the monetary

3   claims are framed as relief for specific restitution, then certification is proper under Rule

4   23(b)(2), which permits certification of classes that seek injunctive relief.

5           However, if the claims are framed as damages, then Plaintiffs must satisfy the legal

6   standards recited at the beginning of this section in order to prevail on a motion for class

7   certification under Rule 23(b)(2).  Defendants argue that Plaintiffs have failed to meet their

8   burden to establish that injunctive remedy is their primary concern.  On the contrary, at every

9   opportunity the Plaintiffs have consistently asserted that injunctive relief is what they seek.

10  They present a prayer for relief that articulates five remedies, four of which are obviously

11  injunctive, one of which is monetary and of a disputed nature.  Given the repetitive nature of

12  the TPS re-registration process, seeking declaratory and injunctive relief from future

13  application of fees is a reasonable form of remedy, even in the absence of monetary recovery.

14  Injunctive relief would be appropriate if Plaintiffs were to succeed on the merits, as it would

15  prevent the Government from collecting excess fees in the next iteration of the TPS program.

16  Finally, according to the standard recited in *Robinson*, which the Ninth Circuit cited

17  favorably, the monetary relief sought here is purely objective, based solely on funds already

18  paid to the Government, without regard for the personal differences between class members.

19  267 F.3d at 164.  All of these factors militate toward a finding that the monetary relief

20  sought, if considered a legal remedy, is merely incidental to the injunctive and declaratory

21  remedies sought.  For this reason as well, certification under Rule 23(b)(2) is appropriate.

22          Fourth, the Government raises Due Process concerns regarding Plaintiffs' attempt to

23  certify the class under Rule 23(b)(2), which does not permit opt-out procedures, instead

24  resolving the legal rights of consenting and nonconsenting class members alike.  *See Ortiz v.*

25  *Fibreboard Corp.*, 527 U.S. 815, 846-47 (1999).  However valid the concerns raised by the

26  Court in that case, they are not directly applicable here, as certification there was sought

27  under Rule 23(b)(1)(B), not 23(b)(2) which is invoked in the instant matter.  Defendants

28  additionally cite *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 121 (1994) (per curiam)

1  (dismissing certiorari), in which the Supreme Court mentions "a substantial possibility" that

2  class actions seeking money damages can only be certified under Rule 23(b)(3).  In the

3  absence of a clear holding to that effect, this does not bind the Court in the instant matter.

4      Defendants urge the Court to adopt the legal safeguards of Rule 23(b)(3), asserting

5  that as this case has primarily to do with recovery of money, 23(b)(2) certification is

6  inappropriate.  The Court will decline to do so at this time.  As just discussed above, the

7  Court has concluded that Plaintiffs have demonstrated adequate facts to find the monetary

8  claims to be incidental to the equitable and declaratory ones.  The Due Process specter that

9  Defendants raise is largely illusory; they rely on no directly controlling cases to make this

10  argument.  As a result, their claims are specious at best.

11  **III.  Motion to Bifurcate**

12      Plaintiffs also ask the Court to bifurcate issues of liability and injunctive/declaratory

13  relief from issues of class member restitution.  They assert that separating questions of

14  liability and injunctive relief from the issue of restitution will be a more efficient and

15  effective manner to manage this case, and will best protect the interests of all parties.

16  Defendants have not opposed the motion to bifurcate except to note the Government's

17  general opposition to certification under Rule 23(b)(2), and otherwise appears to concede the

18  point of law.

19      Under Federal Rule of Civil Procedure 42(b), "[f]or convenience, to avoid prejudice,

20  or to expedite and economize, the court may order a separate trial of one or more separate

21  issues, claims, crossclaims, counterclaims, or third-party claims.  When ordering a separate

22  trial, the court must preserve any federal right to a jury trial."  When deciding whether to

23  bifurcate a trial, courts consider "(1) the complexity of the issues; (2) whether there would be

24  a risk of jury misunderstanding in a non-bifurcated trial; (3) whether bifurcation would

25  facilitate disposition of the issues; and (4) whether bifurcation would prejudice either of the

26  parties." *Arnold*, 158 F.R.D. at 459.  As the right to a jury trial has been waived here, only

27  the first, third, and fourth factors are relevant.  The legal issues in this matter are quite

28  complex, requiring a first impression construction of the relevant statute and regulations.  It

1  appears that bifurcation will facilitate disposition in an efficient manner, as if no liability is

2  found, preparation of a second stage of monetary relief will be unnecessary.  Further, neither

3  party suggests that bifurcation will create prejudice.  Rather, bifurcation appears an

4  instrument of economic efficiency in this matter, as it will limit the expenditure of attorney

5  time until liability is settled.  Bifurcation of liability and injunctive relief from issues of

6  monetary relief is thus appropriate under Rule 42(b).

7        Additionally, in an abundance of caution, the Court will certify the class under Rule

8  23(b)(2) as to questions of non-monetary injunctive and declaratory relief, and will defer the

9  issue of certification as to monetary relief until after the liability determination.  While the

10  Court has concluded that certification of the entire case is not unwarranted, as demonstrated

11  above, in light of the fierce opposition registered by the Government to any certification in

12  this case, the Court believes that exercising its broad authority in a class action case to divide

13  certification may facilitate prompt resolution of this case.  *See Conant v. McCaffrey*, 172

14  F.R.D. 681, 694 (N.D. Cal. 1997).  Such a choice in managing this case is consistent with the

15  management that this Court has exercised in similar circumstances in the past.  *See Barefield*

16  *v. Chevron, U.S.A., Inc.*, C-86-2427, 1988 WL 188433 (N.D. Cal. Dec. 6, 1988).  In any

17  event, resolving issues of liability prior to reaching either certification of or entitlement to

18  monetary relief claims will enable the Court to more effectively manage this matter.

19

20  **CONCLUSION**

21        For the foregoing reasons, Plaintiffs' Motion for Class Certification is GRANTED.

22  The class of "[a]ll nationals of El Salvador, Honduras, and Nicaragua who have applied to

23  register or re-register for Temporary Protected Status ("TPS") at any time from August 16,

24  2001 to the present" is certified as to all injunctive and declaratory relief claims.  The Court

25  will defer ruling on whether to certify the class as to monetary relief until after the resolution

26  of the liability stage of the case.  Plaintiffs' Motion to Bifurcate is likewise GRANTED; the

27  case will continue with a trial of liability and injunctive/declaratory relief.  The precise

28

*United States District Court*
For the Northern District of California

1   procedures to be followed in the second phase of the case, if any, will be determined at a

2   later date.

3

4   **IT IS SO ORDERED.**

5

6   Dated:    July 9, 2009

    THELTON E. HENDERSON, JUDGE
7   UNITED STATES DISTRICT COURT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28