1

2   OF COUNSEL:
    JOSEPH P. RUSSONIELLO
3   United States Attorney
    JOANN M. SWANSON
4   Assistant United States Attorney
    Chief, Civil Division
5   ILA C. DEISS, NY SBN 3052909
    Assistant United States Attorney
6   450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102
7   (415) 436-7124; FAX: (415) 436-7169

8   J. MAX WEINTRAUB
    Senior Litigation Counsel
9   Office of Immigration Litigation
    U.S. Department of Justice, Civil Division
10  Washington, DC 20044
    (202( 305-7551; FAX: (202) 305-7000

TONY WEST
Assistant Attorney General
JEANNE E. DAVIDSON
Director
BRIAN A. MIZOGUCHI
Senior Trial Counsel
ELIZABETH A. SPECK
LAUREN WEEMAN
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530
(202) 305-3319; FAX: (202) 305-7644

11

12                  Attorneys for Defendants

13              UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA

15               SAN FRANCISCO DIVISION

16  _____

17  JOSE BAUTISTA-PEREZ, *et al.*,

18                          Plaintiffs,

19      v.

20  ERIC H. HOLDER, JR., Attorney General of the
       United States, and
21
    JANET NAPOLITANO, Secretary of
22   Homeland Security,
                          Defendants.
23  _____

)   No. C 07-4192 TEH
)
)   **DEFENDANTS' CROSS-MOTION FOR**
)   **SUMMARY JUDGMENT AND**
)   **MEMORANDUM OF POINTS AND**
)   **AUTHORITIES**
)
)
)   Date:   November 23, 2009
)   Time:  9:00 a.m.
)   Courtroom: 12
)
)
)
)

24

25

26

27

28

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -iii-

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

STATEMENT OF ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

I.      Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

II.     Plaintiffs' Claims For Alleged Illegal Exactions Prior To August 16, 2001 Are
        Time-Barred By 18 U.S.C. § 2401, The Six-Year Statute Of Limitations That
        Precludes Jurisdiction To Entertain Their Untimely Claims . . . . . . . . . . . . . . . . -9-

III.    Congress,  Pursuant To Pub. L. No. 105-119, Required That TPS Applicants
        Be Fingerprinted By The Government And Authorized "For Expenses Not
        Otherwise Provided For" The Fingerprinting Services Fee At Issue In This
        Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

IV.     The Agency's Contemporaneous Pre-Dispute Reliance Upon Congress's Pub. L.
        No. 105-119 Authorization Of A Fingerprinting Services Fee For Any Benefit
        Under INA, Including TPS, Is A Permissible Construction Of The Authority
        Conferred By Congress; Has Been Ratified By Pre-Dispute Conduct; And Is
        Due Chevron Deference. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

        A.      In March 1998, The Agency Contemporaneously, Prior To Any Dispute,
                Construed Pub. L. No. 105-119 To Authorize A New Fee For The Expense
                Of Congressionally-Required Government Fingerprinting Services For
                Any Benefit Under The INA, Including TPS Involving Background
                Checks on Applicants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

        B.      The Agency's March 1998 Regulations Were Consistent With Congress's
                Acts  Authorizing A "Fingerprinting Services" Fee "For Expenses Not
                Otherwise Provided For" To Provide Government Fingerprinting
                Services Required For "Any Benefit Under INA" Which Included TPS . . -12-

        C.      After Federal Register Notice Of The March 1998 Regulations Imposing
                The Fingerprinting Services Fee In Addition To The TPS Registration
                Fee, Neither Plaintiffs, Nor AILA, Submitted Comments That The New
                Fingerprinting Fee Was Illegal Because It Is Subject To The
                8 U.S.C. § 1254a "Condition Of Registration" . . . . . . . . . . . . . . . . . . . -14-

        D.      Congress, With Notice Of The Agency's Regulations Charging A
                Separate Fingerprinting Services Fee In Addition To The TPS Filing Fee,
                Has Not Changed Its Legislation Or Revoked Its Continuing
                Appropriation Of The Agency's Fee Collections . . . . . . . . . . . . . . . . . . . -14-

-i-

V.    Congress's 8 U.S.C. § 1356(m) Provision For Fees Ensuring Full Cost Recovery "Notwithstanding Any Other Provisions Of Law" Provides An Independent Authority That Supersedes Any Alleged Limitations Imposed By 1990 IMMACT, As Amended, Because It Does Not Reference, Let Alone Expressly Repeal, 8 U.S.C. § 1356(m), Which Congress Re-Enacted In 2003. . . . . . . . . . .  -16-

VI.   Plaintiffs' Complaint, Relying Upon The 1990 IMMACT's Provisions Regarding Fees That The Attorney General May Require, Fails Because That Act Did Not Limit Congress's 1997 Pub. L. No. 105-119 Requirement Of Government Fingerprinting Services And Authorization Of The Fee At Issue "For Expenses Not Otherwise Provided For" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -17-

      A.    The Plain Language Of The 1990 IMMACT Fee Provisions Apply Only To The Amount Of A "Registration Fee" That "The Attorney General May Require;" The Fee At Issue In This Case Was Imposed Because Congress, Not The Attorney General, In 1997 Required The Government To Provide Fingerprinting Services And Authorized A Fee For "Fingerprinting Services" "For Expenses Not Otherwise Provided For" ..  -18-

      B.    Plaintiffs' Current Reliance Upon The Words "Condition Of Registration" In The 1990 IMMACT Fails Because It Is Contrary To The Statutory Construction Principles That Words Should Be Defined By Their Context And The Company They Keep, Which In 1990 Did Not Include A Requirement Of Government Fingerprinting Services . . . . . . . . . . . . . .  -19-

      C.    Plaintiffs' Contention That 8 U.S.C. § 1254a Limit On The TPS Registration Fee Applies To The Pub. L. No. 105-119 Fingerprinting Services Fee Is Contradicted By Their Pre-Dispute Conduct, And The Pre-Dispute Conduct Of Their Immigration Attorney And Class Co-Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -20-

      D.    Plaintiffs' Contention That It Is Unlawful To Charge Any Fees After The Initial Registration Because 8 U.S.C. §1254a(c)(3)(C) Does Not Contain Language Concerning The Registration Fee, Must Fail Because Congress Authorized The Agency To Provide For Annual Registrations In The Form And Manner Specified By The Attorney General And Did Not Subject Annual Registrations To The 1254a(c)(1)(B) $50 Limit On Registration Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -21-

VII.  Plaintiffs' Claims Are Barred By The Doctrine Of Laches. . . . . . . . . . . . . . . . .  -24-

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -24-

-ii-

# TABLE OF AUTHORITIES

## FEDERAL CASES

Aldridge v. Williams,
    44 U.S. 9 (1845)............................................................................ 20

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)........................................................................ 8

Boone v. Mechanical Spec. Co.,
    609 F.2d 956 (9th Cir. 1979)B......................................................... 24

Bray v. United States,
    785 F.2d 989 (Fed. Cir. 1986)......................................................... 9

Celotex v. Catrett,
    477 U.S. 317 (1986)..................................................................... 7, 8

Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,
    511 U.S. 164 (1994)........................................................................ 22

Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,
    467 U.S. 837 (1984)................................................................. 11, 16

Contract Mgmt., Inc. v. Rumsfeld,
    291 F. Supp. 2d 1166 (D. Haw. 2003). ........................................... 15

D. Ginsberg & Sons , Inc. v. Popkin,
    285 U.S. 204 (1932)........................................................................ 10

United States v. Dang,
    488 F.3d at 1140. ................................................................... 11, 16

FDA v. Brown & Williamson Tobacco Corp.,
    529 U.S. 120 (2000)........................................................................ 20

Fed  Crop Ins. Corp. v. Merrill,
    332 U.S. 380 (1947)......................................................... 10, 12, 14

Freeman v. Arpaio,
    125 F.3d 732 (9th Cir. 1997). ......................................................... 8

INS v. Abudu,
    485 U.S. 94 (1988)......................................................................... 11

J.H. Rutter Rex Manuf. Co., Inc. v. United States,
    706 F.2d 702 (5th Cir.1983). ......................................................... 15

Jarecki v. G.D. Searle & Co.,
    367 U.S. 303 (1961)....................................................................... 19

John R. Sand & Gravel, Inc.v. United States,
    552 U.S. 130 (2008)........................................................................ 9

Kay v. Federal Communications Commission,
    443 F.2d 638 (D.C.Cir.1970). ................................................ 15

Maffei v. Northern Insurance Co. of New York,
    12 F.3d 892 (9th Cir. 1993). ................................................ 8

Red Lion Broadcasting Co. v. Federal Communications Commission,
    395 U.S. 367 (1969). ......................................................... 15

Rodriguez v. Secretary of Health and Human Services,
    856 F.2d 338 (1st Cir. 1988). .............................................. 14

Sisseton-Wahpeton Sioux Tribe of Lake Traverse Indian Reservation v. United States,
    895 F.2d 588 (9th Cir. 1990). ............................................. 9

Solid Waste Agency of N. Cook County v. U.S. Army Corps of Engr's,
    531 U.S. 159 (2001). ......................................................... 22

United States v. Kubrick,
    444 U.S. 111 (1979). ......................................................... 9

United States v. Navarro,
    160 F.3d 1254 (9th Cir.1998). ............................................ 10

United States v. Rutherford,
    442 U.S. 544 (1979). ......................................................... 15

United States v. Wilson,
    290 F.3d 347 (D.C. Cir. 2002). .......................................... 19

**FEDERAL RULES & REGULATIONS**

8 C.F.R. § 103 ..................................................................... 11

8 C.F.R. § 103.2(e)........................................................ 5, 11, 23

8 C.F.R. §§ 103.7. ........................................................ 3, 5, 23

8 C.F.R. § 240.6. ............................................................ 2, 12

8 C.F.R. § 244.17. ............................................................... 23

8 C.F.R. § 244.6. ........................................... 2, 6, 7, 11, 20, 23

8 C.F.R. § 299.1 (1997). ...................................................... 12

Fed.R.Civ.P. 56(c). ............................................................. 8

**FEDERAL STATUTES**

8 U.S.C. § 1103................................................................... 6

8 U.S.C. § 1254a................................................................ passim

8 U.S.C. § 1254(c)(1)(A)(iv). ................................................ 4

8 U.S.C. § 1356(m). ................................................................................ 13, 15, 16, 17

28 U.S.C. § 2401(a). ................................................................................. 1, 9

**FEDERAL REGISTER**

56 Fed. Reg. 26163 (June 6, 1991). .......................................................... 4

56 Fed. Reg. 26164 (June 6, 1991). .......................................................... 4

61 Fed. Reg. 280103 (June 4, 1996). ......................................................... 3

61 Fed. Reg. 57583 (Nov. 7, 1996). .......................................................... 3

62 Fed. Reg. 10312, 10367 (Mar. 6, 1997). ............................................... 2

62 Fed. Reg. 45685 (Aug. 28, 1997). ........................................................ 4

62 Fed. Reg. 59735 (Nov. 4, 1997). .......................................................... 4

62 Fed. Reg. 59736 (Nov 4, 1997). ........................................................... 4

62 Fed. Reg., 59737 (Nov. 4, 1997). ......................................................... 4

63 Fed. Reg. 12979, 12980 (Mar. 17, 1998). ...................................... 6, 7, 11, 14

63 Fed. Reg. 12987 (Mar. 17, 1998). .................................................... 7, 12

66 Fed. Reg. 65811,  65816 (Dec. 21, 2001). ............................................ 7

69 Fed. Reg. 20528, 20534 (Apr. 15, 2004). ............................................. 7

72 Fed. Reg. 4888, 4890 (Feb. 1, 2007). ................................................... 15

72 Fed. Reg. 29851, 29873 (May 30, 2007). ............................................. 7

**PUBLIC LAW**

2002, Pub. L. No. 107-296 § 457, 116 Stat. 2135, 2200 (Nov. 25, 2002). ........................... 17

2003, Pub. L. No. 108-7, § 107, 117 Stat. 11, 532 (2003). ................................. 13, 17

Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies
Appropriations Act, 1998, of 1998, Pub. L. No. 105-119, 111 Stat. 2440,
2447-48 (Nov. 26, 1997). ........................................................ passim

Pub. L. No. 101-515, § 210(c)(1) (Nov. 5, 1990). ..................................... 16

Pub. L. No. 101-649, 104 Stat. 4978, 5032-38. ......................................... 2

Pub. L. No. 101-649, 104 Stat. 4978, 5032-5036 (Nov. 29, 1990). ............................ 2, 12, 18, 19

Pub. L. No. 108-7, § 107, 117 Stat. 11, 532 (Feb. 20, 2003)....................................................... 13

**CONGRESSIONAL REPORTS**

H.R. Conf. Rep. 101-955, 101st Cong., 2nd sess. 1990, 1990 U.S.C.C.A.N. 6710, 6784. ........... 2

1

## INTRODUCTION

2          This case concerns a complaint that aliens seeking the immigration benefit of Temporary

3   Protected Status ("TPS"), 8 U.S.C. § 1254a, cannot be required to pay a fee that, in 1997, Congress

4   authorized "[f]or expenses, not otherwise provided for" related to fingerprinting services that it

5   mandated could only be supplied by the Government whenever fingerprints were required to conduct

6   criminal history background checks for benefits under the Immigration and Nationality Act ("INA").

7   Pub. L. No. 105-119.  Although Congress specifically authorized the Government to collect a fee for

8   this service, plaintiffs contend that it was illegal to charge them that fee after they paid $50, the limit

9   Congress separately authorized in the INA for a "registration fee" as a condition of obtaining TPS, a

10  benefit under the INA, as codified at 8 U.S.C. § 1254a(c)(1)(B).  The Government's fingerprinting

11  services fee is legal and does not violate §1254a(c)(1)(B).

12          On July 9, 2009, the Court certified plaintiffs' "injunctive and declaratory relief claims" and

13  bifurcated this case.  (Dkt. No. 113).  On August 17, 2009, plaintiffs moved for partial summary

14  judgment and declaratory relief and noticed a October 26, 2009 hearing date.  ("PMSJ", Dkt. No

15  114).  On September 15, 2009, the parties stipulated to resetting the hearing date on the parties'

16  cross-motions to November 23, 2009, (Dkt. No. 115), which the Court approved (Dkt. No. 118).

17          Defendants hereby respectfully move, pursuant to Rule 56 of the Federal Rules of Civil

18  Procedure, for summary judgment as a matter of law and for an order dismissing plaintiffs' amended

19  complaint.[1]

20

## STATEMENT OF ISSUES

21      1.      Whether class plaintiffs' amended complaint, to the extent it concerns allegedly

22              illegal exactions before August 16, 2001, must be dismissed based upon the six year

23              statute of limitations, 28 U.S.C. §§ 2401(a), 2500.

24

25

---

26      [1]    Defendants oppose plaintiffs' motion for summary judgment in a separate document.
Defendants respectfully maintain, but will not reiterate here, the jurisdictional and other grounds
27  upon which they oppose plaintiffs' class action.

28
-1-

2.      Whether defendants are entitled to summary judgment denying plaintiffs' complaint

in its entirety because:

      a.      the fee at issue was authorized in 1997 by Congress's Pub. L. No. 105-119

           "[f]or expenses not otherwise provided for" related to its requirement that the

           Government perform fingerprinting services for "any benefit under the

           Immigration and Nationality Act," including TPS;

      b.      the Government's regulation implementing Pub. L. No. 105-119 is entitled to

           <u>Chevron</u> deference;

      c.      8 U.S.C. § 1254a does not relate to or limit Congress's authorization of a fee

           for Government-provided fingerprinting services; and

      d.      waiver and laches result from plaintiffs and their immigration counsel's years

           of pre-dispute conduct treating the fingerprinting services fee as legal.

## STATEMENT OF FACTS

1.      In 1997, Department of Justice Immigration and Naturalization Service ("INS")

regulations required aliens applying for the INA benefit of TPS[2] to provide fingerprints and other

biometric data -- photographs and signatures.  <u>See</u> 8 C.F.R. § 244.6.[3]

---

[2]     The TPS "registration fee" statute codified at 8 U.S.C. § 1254a(c)(1)(B), upon which plaintiffs' complaint relies, was enacted on November 29, 1990, as part of the Immigration Act of 1990,("1990 IMMACT"), amending the Immigration and Nationality Act  to include a new section 244a dealing with TPS.  Pub. L. No. 101-649, 104 Stat. 4978, 5032-38; H.R. Conf. Rep. 101-955, 101st Cong., 2nd sess. 1990, 1990 U.S.C.C.A.N. 6710, 6784;1990 WL 201613 (Leg. Hist.) (Pub. L. No. 101-649 based upon S. 358 amending the INA).  Thus, as of the November 1997 enactment of Pub. L 105-119, the TPS program at 8 U.S.C. § 1254a was a benefit "under the [INA]."

[3]     Former 8 C.F.R. § 240.6 (attached hereto as Exh. 1), redesignated 244.6 [<u>see</u> 62 Fed. Reg. 10312, 10367 (Mar. 6, 1997)]: provided that:
        § 240.6  Application.
        * * * * *
        * * * Each application must consist of a completed Application for Temporary Protected Status (Form I-821), Application for Employment Authorization (Form I-765), two completed fingerprint cards (Form FD-258) for every applicant who is fourteen years of age or older, two identification photographs (1 x 1 1/2"), and supporting evidence as provided in §240.9.

-2-

1   2.  Prior to November 26, 1997, aliens applying for INA benefits for which fingerprinting

2 was required for criminal background checks were allowed to procure fingerprinting services from

3 various sources, including the option of paying private businesses to fingerprint them.[4]

4   3.  TPS applicants were also required by regulation to pay a separate TPS "filing" fee

5 that would be determined at the time a foreign state is designated for TPS but would not exceed $50,

6 8 C.F.R. §§ 103.7 and 244.6.[5]  Consistently, and in the months immediately preceding the November

7 26, 1997 enactment of Pub. L. No. 105-119, the TPS filing fee had always been set in Federal

8 Register publications at exactly $50.[6]

9   4.  TPS applicants undergo two different types of registration: initial registration

10 pursuant to 8 U.S.C. § 1254(c)(1)(A)(iv) following the designation of their country for TPS and

11 annual registration (or "re-registration") pursuant to 8 U.S.C. § 1254a(c)(3)(C).  The INA at 8 U.S.C.

12 § 1254a(c)(1)(B) references only the former provision in providing that "[t]he Attorney General may

13 require payment of a reasonable fee as a condition of registering an alien under subparagraph

14 (A)(iv)."  "Subparagraph (A)(iv)," in turn, in a provision captioned "Aliens eligible for temporary

15 protected status," provides that "subject to paragraph (3), an alien . . . meets the requirements of this

16 paragraph only if – . . . to the extent and in a manner which the Attorney General establishes, the

17 alien registers for the temporary protected status under this section during a registration period of not

18

19   [4] Although applicants for benefits requiring fingerprinting had always been allowed to use private sources, agency regulations had since 1996 sought to require that fingerprinting service

20 providers be certified and not charge more than a "reasonable" fee.  E.g., 61 Fed. Reg. 280103 (June 4, 1996) ([Designated Fingerprinting Services ("DFS") entities may] charge only reasonable fees for

21 fingerprinting services, and the current fee status is to be made known to the [INS]).  The DFS program officially began in March 1997. See 61 Fed. Reg. 57583 (Nov. 7, 1996).

22   [5] Copies of the relevant regulations from the years prior to the enactment of Pub. L. No. 105-119 are attached hereto as Exh. 2.  These copies were obtained from the Westlaw database

23 containing the Code of Federal Regulations for the relevant year, e.g., "CFR92."

24   [6] The $50 TPS filing fees of which Congress would have had notice, immediately before enacting Pub. L. No. 105-119, were contained in the published notices of the following TPS country

25 designations:  Montserrat 62 Fed. Reg. 45685 (Aug. 28, 1997); Burundi 62 Fed. Reg. 59735 (Nov. 4, 1997); Sudan 62 Fed. Reg, 59737 (Nov. 4, 1997); Sierra Leone 62 Fed. Reg. 59736 (Nov 4, 1997).

26 The INS had been setting the TPS filing fee at not less than $50 since the earliest country designations for TPS.  E.g., Liberia, 56 Fed. Reg. 26164 (June 6, 1991); Kuwait, 56 Fed. Reg. 26163

27 (June 6, 1991).

28             -3-

1   less than 180 days."  8 U.S.C. § 1254a(c)(1)(A)(iv).   "[P]aragraph (3)," captioned "Withdrawal of

2   temporary protected status," provides in part that "[t]he Attorney General shall withdraw temporary

3   protected status granted to an alien under this section if . . . – (C) the alien fails, without good cause,

4   to register with the Attorney General annually, at the end of each 12-month period after the granting

5   of such status, in a form and manner specified by the Attorney General."

6          5.     In 1997, Congress, while investigating the potential for criminals to pass background

7   checks and obtain INA benefits, examined whether the INS should continue to allow aliens to supply

8   fingerprints that they had taken from private sources.[7]

9          6.     On November 26, 1997, in Pub. L. No. 105-119, Congress, within a single sentence,

10  prohibited INS from accepting fingerprints not prepared by the INS or certain other government

11  agencies for purposes of criminal background checks in connection with applications for "any benefit

12  under the [INA]," which included TPS,[8] and correspondingly provided, "[f]or expenses, not

13  otherwise provided for, necessary for the administration and enforcement of the laws relating to

14  immigration, naturalization, and alien registration . . . That agencies may collect and retain a fee for

15  fingerprinting services . . . ."  Departments of Commerce, Justice, and State, the Judiciary, and

16

17        [7]     See Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies
     Appropriations for 1998: Hearing on H.R. 2267 Before the H. Subcomm. of the Comm. on
18   Appropriations, Part Six [hereinafter H.R. 2267 Hearings], at 495-97, 105th Cong. 200 (1997)
     (attached hereto as Exh. 3).  The H.R. 2267 Hearings included the statement of Michael R.
19   Bromwich, Inspector General of the Department of Justice, referring to an February 1994 Office of
     the Inspector General report concerning "Alien Fingerprint Requirements in the Immigration and
20   Naturalization Service."  H.R. 2267 Hearings at 495-97.  That report, no. I-93-13 ("OIG Report"),
     which was discussed during the hearings though not specifically read into the record, references the
21   fact that Title 8 requires submission of fingerprints for TPS, when discussing the shortcomings of the
     agency's  fingerprinting process.  See OIG Report at 4 (attached hereto as Exh. 4); also available at:
22   http://www.usdoj.gov/oig/reports/INS/e9313.htm.  Members of Congress expressed concerns about
     the use of private fingerprinting.  E.g. 143 Cong. Rec. H7770, 7786, (Debates on H.R. 2267, Sep. 24,
23   1997; statement of Rep. Smith) (attached hereto as Exh. 5); Id. at H7803 (statement of Rep. Watt)
     ("What we need to put in context, however, is that Pookies' Parcel Post and Lulu's and Anita's are
24   all private enterprises in this country. This is one of those times when this notion that we should
     privatize everything that the Federal Government is doing basically went awry. . . .  And now what
25   we have found is that there are certain things that private enterprise cannot do as well as the Federal
     Government. . . . This is too serious a proposition to give out to just anybody.").
26
27        [8]     TPS was and is a "benefit under the INA" and thus is subject to Congress's Pub. L. No. 105-
     119.  See note 2, supra.

28                                         -4-

1    Related Agencies Appropriations Act, 1998,  of 1998, Pub. L. No. 105-119, 111 Stat 2440, 2447-48

2    (Nov. 26, 1997).  There is no language exempting TPS applicants from the fingerprinting fee

3    provided in Pub. L. No. 105-119.

4            7.       Following Pub. L. No. 105-119, the INS developed regulations implementing the new

5    fingerprinting services requirement, and, following standard procedures, transmitted copies of the

6    regulations it had drafted to Congress, prior to their March 29, 1998 effective date.  Exh. 6 (Decl. of

7    Stephen R. Tarragon at ¶¶ 1-12).

8            8.       On March 17, 1998, the INS published in the Federal Register regulations that

9    expressly cited Pub. L. No. 105-119 as the "Legislative Authority" for the termination of the INS's

10   acceptance of fingerprints from "Designated Fingerprinting Services" (generally private sector and

11   other non-government sources) and required a fee for Government fingerprinting services.  63 Fed

12   Reg 12979, 12980 (Mar. 17, 1998).  The INS explained:

13              5. Why is the Service Charging a Fee for Fingerprinting Services?

14              In Pub. L. No. 105-119, 111 Stat. 2440, Congress authorized the
                Service to charge a fee for fingerprinting in connection with the new
15              fingerprinting program. Accordingly, the Service will charge the fee
                necessary to recover the administrative and support costs of the new
16              fingerprinting program, and for the collection, safeguarding, and
                accounting of the fees.
17
     Id. at 12981.  The agency amended its regulations at 8 C.F.R. § 103.2(e) to require the use of
18
     Government fingerprinting services, and amended 8 C.F.R. § 103.7(b)(1) to include a new $25 fee
19
     for fingerprinting services.  Id. at 12984-86.
20
             9.       In the same March 17, 1998 Federal Register publication, the agency amended its
21
     TPS regulation at 8 C.F.R. § 244.6, which "continues" to cite 8 U.S.C. § 1254a as authority, to refer
22
     to the requirement to pay "fingerprinting fees as provided in §103.7 of this chapter" in addition to the
23
     separate TPS "filing" fee that the 244.6 regulation continued to require.  Id. at 12987.[9]
24

25   _____

26      [9]    The agency's amendment to its TPS regulation read as follows:

27              PART 244--TEMPORARY PROTECTED STATUS FOR NATIONAL OF
                DESIGNATED STATES
28
                                              -5-

1       10.    The March 1998 regulations were published as an interim rule on March 17, 1998,

2   with an effective date of March 29, 1998, and requested comments by May 18, 1998.  63 Fed. Reg.

3   12979.  The agency received 10 submissions of comments, including comments by the American

4   Immigration Lawyers Association ("AILA"), a large organization of thousands of attorneys

5   practicing and teaching immigration law,[10] and other immigration advocacy groups.[11]  Although the

6   agency had always set the § 1254a(c)(1)(B) filing fee at $50,[12] and in its new regulation did not lower

7

8

9   15.  The authority citation for part 244: continues to read as follows:

Authority: 8 U.S.C. 1103, 1254, 1254a note, 8 C.F.R. part 2.
10   8 C.F.R. § 244.6

11   16. Section 244.6 is revised to read as follows:

12   8 C.F.R. § 244.6

13   §244.6 Application.

14   An application for Temporary Protected Status shall be made in
accordance with §103.2 of this chapter except as provided herein. Each
15   application must be filed with the filing and fingerprinting fees, as
provided in §103.7 of this chapter, by each individual seeking
16   temporary protected status, except that the filing fee for the Form I-765
will be charged only for those aliens who are nationals of El Salvador,
17   and are between the ages of 14 and 65 (inclusive), and are requesting
work authorization. Each application must consist of a completed
18   Form I-821, Application for temporary protected status, Form I-765,
Application for Employment Authorization, two identification
19   photographs (1 ½ " x 1 ½ "), and supporting evidence as provided in
§240.9 of this chapter. Every applicant who is 14 years of age or older
20   shall be fingerprinted on Form FD-258, Applicant Card, as prescribed
in §103.2(e) of this chapter.

21

22   63 Fed. Reg. 12987.  A complete copy of the regulations issued immediately following the
enactment of Pub. L. No. 105-119 is attached hereto as Exh. 7.

23   [10]    AILA represents that it "is the national association of over 11,000 attorneys and law
professors who practice and teach immigration law. * * *  Founded in 1946, AILA is a nonpartisan,
24   not-for-profit organization that provides continuing legal education, information, professional
services, and expertise through its 36 chapters and over 50 national committees.  See "About AILA,"
25   available at: http://www.aila.org/content/default.aspx?docid=1021.

26   [11]    See Exh. 6, (Tarragon Decl. at ¶¶ 13-14, and attached comment numbered "7").

27   [12]    See Statement of Fact ("SoF") ¶ 3, above.

28                                           -6-

1    the filing fee below $50 or provide that the two separate fees would not together exceed $50, none of

2    the comments – including those filed by the AILA – objected that the new fingerprinting fee was

3    unlawful because it was subject to § 1254a(c)(1)(B).

4         11.    Periodically, the agency published in the Federal Register, regulations amending the

5    fingerprinting services fee to increase it to $50 effective February 19, 2002, 66 Fed. Reg. 65811,

6    65816 (Dec. 21, 2001); amending the fee to provide for a "service fee" of $70 "For capturing

7    biometric information," effective April 30, 2004, 69 Fed. Reg. 20528, 20534 (Apr. 15, 2004), and,

8    lastly, increasing the biometric services fee to $80, effective July 30, 2007, 72 Fed. Reg. 29851,

9    29873 (May 30, 2007).

10        12.    For nearly a decade after the March 1998 publication of regulations imposing the Pub.

11   L. No. 105-119 fingerprinting services fee, and amending 8 C.F.R. § 244.6 to reflect that the

12   fingerprinting fee is required in addition to the TPS filing fee, there does not appear to have been

13   filed by plaintiffs or any other TPS applicants a suit complaining that the fingerprinting services fee

14   was illegal because of §1254(a).

15        13.    As is reflected by their filings with the Court, the plaintiffs' class representatives have

16   all been represented in their TPS applications by Jonathan M. Kaufman, their class co-counsel in this

17   case.  Plaintiffs' first motion for class certification dated October 23, 2007 (Dkt. No. 41 at 9), attests

18   that Mr. Kaufman "has been an attorney practicing in the field of immigration law for 25 years . . .

19   [and] has represented the named plaintiffs throughout their TPS proceedings."

20        14.    On August 16, 2007, plaintiffs filed their complaint in this matter.  (Dkt. No. 1).

21        15.    For over six years plaintiffs represented by their immigration and co-class counsel,

22   have paid the fee for Government fingerprinting services (later denominated "biometric services")

23   without complaining that 8 U.S.C. § 1254a(c)(1)(B) "unambiguously" or otherwise provided that a

24   fee for the Government providing them with fingerprinting services was illegal.  See Plaintiffs'

25   Responses to Defendants' First Set Of Class Discovery Requests ("Pl. Int. Resp."), attached hereto as

26   Exh. 8, Nos. 3 and 4, at 5-10 (responses identifying payments for "TPS" in excess of $50 dating back

27

28                                    -7-

1    as far as April 2, 2001 (plaintiff Oscar Rene Ramos alleges payment of $100) and May 24, 2001

2    (Maria Salazar alleges payment of $100)).

3                                                **ARGUMENT**

4    **I.        Standard of Review**

5            A principal purpose of the summary judgment procedure is to identify and dispose of

6    unsupported claims.  Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).  Summary judgment is proper

7    when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with

8    the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

9    party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  An issue is "genuine" only if

10   there is sufficient evidence for a reasonable fact finder to find for the non-moving party.  Anderson v.

11   Liberty Lobby, Inc., 477 U.S. 242, 248-249 (1986).  An issue is "material" if the fact may affect the

12   outcome of the case.  Id. at 249.  "In considering a motion for summary judgment, the court may not

13   weigh the evidence or make credibility determinations, and is required to draw all inferences in a

14   light most favorable to the non-moving party."  Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir.

15   1997). The party moving for summary judgment has no burden to produce any evidence on elements

16   of a claim on which the non-moving party will bear the burden of trial, but can merely point out an

17   absence of evidence to support any such element.  Celotex, 477 U.S. at 322-23; Maffei v. Northern

18   Ins. Co. of New York, 12 F.3d 892, 899 (9th Cir. 1993).  Once the moving party points out the

19   absence of evidence, then the nonmoving party must come forward with specific evidence to show

20   there is a genuine issue for trial.  Celotex, 477 U.S. at 322-23; Maffei, 12 F.3d at 899.  The moving

21   party is entitled to judgment as a matter of law if the non-moving party fails to make this showing.

22   Celotex, 477 U.S. at 323.

23           Summary judgment is not only proper if plaintiffs fail to produce *any* evidence on an element

24   of their case, but summary judgment is also proper if plaintiffs fail to produce *sufficient* evidence on

25   an element of their case.  The Supreme Court has specifically held that summary judgment is proper

26   against a party who "fails to make a showing sufficient to establish the existence of an element

27   essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex,

28                                                    -8-

1   477 U.S. at 322.  The mere existence of a "scintilla" of evidence in support of the non-moving

2   party's position is not sufficient.  The non-moving party has the burden of establishing sufficient

3   evidence on each element of his case so that the finder of fact could return a verdict for her.

4   Anderson, 477 U.S. at 249.

5   **II.     Plaintiffs' Claims For Alleged Illegal Exactions Prior To August 16, 2001 Are Time-
            Barred By 18 U.S.C. § 2401, The Six-Year Statute Of Limitations That Precludes
6           Jurisdiction To Entertain Their Untimely Claims**

7         There should be no dispute, as plaintiffs' class is structure, (Dkt. 5), that any allegedly

8   illegal fee that was paid more than six years before their August 16, 2007 complaint, is barred by the

9   six-year statute of limitations on suits against the United States.  Accordingly, the Court lacks

10  jurisdiction to consider such untimely claims.  See 28 U.S.C. §§ 2401(a), 2501.[13]

11        As is set forth above, at least two of the class representatives failed to file a timely complaint

12  about the purportedly unambiguous application of the $50 limit on fees set forth in 8 U.S.C.

13  § 1254a(c)(1)(B) to preclude charging of any fee of any kind in addition to their payment of the $50

14  TPS filing fee.  SoF ¶15.  Accordingly, the Court should dismiss plaintiffs' complaint as to any

15  payments made prior to August 16, 2001, by these class representatives or by any other class

16  member.

17  **III.    Congress,  Pursuant To Pub. L. No. 105-119, Required That TPS Applicants Be
            Fingerprinted By The Government And Authorized "For Expenses Not Otherwise
18           Provided For" The Fingerprinting Services Fee At Issue In This Case**

19        Plaintiffs have no complaint about the $50 TPS filing fee that they assert they paid when they

20  first applied for TPS registration.  Rather, they complain about the separate fee that they are charged

21  for fingerprinting services they receive from the Government.  That fee was plainly and specifically

22  authorized by Congress pursuant to Pub. L. No. 105-119, which required for the first time that the

23

24  [13]   See  John R. Sand & Gravel, Inc.v. United States, 552 U.S. 130 (citing United States v.
    Kubrick, 444 U.S. 111, 117 (1979) (explaining that six-year statute of limitations applies to claims
25  brought pursuant to the Tucker Act); Bray v. United States, 785 F.2d 989 (Fed. Cir. 1986) (affirming
    district court dismissal of Little Tucker Act case as barred by the statute of limitations); Sisseton-
26  Wahpeton Sioux Tribe of Lake Traverse Indian Reservation v. United States, 895 F. 2d 588, 592 (9th
    Cir. 1990) (noting that the six-year statute of limitations period is applicable to claims for money
27  damages against the United States as well as equitable claims).

28                                          -9-

1  Government provide applicants for TPS with fingerprinting services and "[f]or expenses not

2  otherwise provided for" authorized the Government to charge a fee for providing that service.

3  See Pub. L. No. 105-119, 111 Stat 2447-48; SoF ¶¶ 1-7.[14]  When Congress enacted Pub. L. No. 105-

4  119, it was on notice[15] that TPS is a benefit "under the [INA]" and that TPS applicants were required

5  to provide fingerprints and pay $50 for the TPS registration fee.  Id.

6       Congress imposed Pub. L. No. 105-119 upon all benefits under INA, did not exclude TPS,

7  and did not mandate or even suggest that aliens applying for TPS are entitled to free Government

8  fingerprinting services.  Even assuming for argument purposes only that § 1254a(c)(1)(B) did not

9  allow for the expense of the Government providing plaintiffs with fingerprinting services, that would

10  only corroborate that the legality of a fee for that service is controlled by Congress's later, and

11  specific provision in Pub. L. No. 105-119 of authority to charge the fingerprinting services fee "[f]or

12  expenses, not otherwise provided for."

13       Because the separate fee about which plaintiffs complain was specifically authorized by

14  Congress "for expenses, not otherwise provided for" when it required Government fingerprinting

15  services for TPS, plaintiffs' complaint should be denied.

16  **IV.    The Agency's Contemporaneous Pre-Dispute Reliance Upon Congress's Pub. L. No.
         105-119 Authorization Of A Fingerprinting Services Fee For Any Benefit Under INA,**

17  **Including TPS, Is A Permissible Construction Of The Authority Conferred By
         Congress; Has Been Ratified By Pre-Dispute Conduct; And Is Due _Chevron_ Deference**

18       Plaintiffs' complaint relies upon § 1254a(c)(1)(B), captioned "Registration fee."  The plain

19  language of this provision of the INA authorizes the Attorney General to charge a fee as a "condition

20  of registration" and provides that "the amount of any such fee" shall not exceed $50.  8 U.S.C.

21

22  ───────────────

23  [14]  See D. Ginsberg & Sons , Inc. v. Popkin, 285 U.S. 204, 208 (1932) ("Specific terms prevail
     over general in the same or another statute which otherwise might be controlling.") (citations
     omitted);United States v. Navarro, 160 F.3d 1254, 1256-57 (9th Cir.1998) (noting "general and

24  specific provisions, in apparent contradiction, whether in the same or different statutes, and without
     regard to priority of enactment, may subsist together, the specific qualifying and supplying

25  exceptions to the general.") (internal quotation marks omitted).

26  [15]    Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384-85 (1947) ("Just as everyone is charged
     with knowledge of the United States Statutes at Large, Congress has provided that the appearance of

27  rules and regulations in the Federal Register gives legal notice of their contents." (citation omitted)).

28                                          -10-

1   § 1254a(c)(1)(B).  Nothing within Congress's § 1254a(c)(1)(B) refers to fingerprinting, let alone

2   Congress's separately authorized fee for "fingerprinting services" that it later required in

3   Pub. L. No. 105-119.  For this reason alone, plaintiffs' complaint should be denied.

4       Assuming, for the sake of argument only, that the 1990 "Registration fee" authority could be

5   relevant to the 1997 "fingerprinting services" fee Congress authorized in Pub. L. No. 105-119, that

6   could be the case only if there is a gap or ambiguity in the latter authority, because Congress nowhere

7   addressed Government-provided fingerprinting in the former.  Assuming an ambiguity, <u>Chevron</u>

8   deference[16] is due the agency's regulation, requiring denial of plaintiffs' complaint, because the

9   agency's assessment of a separate fee for Government fingerprinting services is a permissible plain

10  language construction of the authority conferred by Congress.

11       **A.    In March 1998, The Agency Contemporaneously, Prior To Any Dispute,**
12          **Construed Pub. L. No. 105-119 To Authorize A New Fee For The Expense Of**
            **Congressionally-Required Government Fingerprinting Services For Any Benefit**
            **Under The INA, Including TPS Involving Background Checks on Applicants**

13       Immediately after the enactment of Pub. L 105-119, the agency published regulations that

14  treated Congress's government fingerprinting requirement (<u>see</u> 8 C.F.R. § 103.2(e)) and

15  corresponding fee (<u>see</u> 8 C.F.R. § 103.(7)(b)(1)) as a requirement separate from, and not limited by,

16  § 1254a(c)(1)(B), explicitly noting that the fingerprinting services fee would be required in addition

17  to the TPS filing fee.  <u>See</u> 63 Fed Reg 12979, 12981-87; SoF ¶¶ 7-9.  The agency's March 1998

18  regulation plainly cited Pub. L. No. 105-119 as its authority for the fingerprinting services fee.  <u>Id.</u>

19  In the same Federal Register publication, the agency amended its TPS regulations located in 8 C.F.R.

20  § 244.6 to note the addition of the fingerprinting fee requirement to the continuing TPS "filing" fee,

21

22
_____
23   [16]   <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 842 (1984)
      (holding that "if the statute is silent or ambiguous with respect to the specific issue, the question for
24    the court is whether the agency's answer is based on a permissible construction of the statute"); <u>see</u>
      <u>also</u> <u>INS v. Abudu</u>, 485 U.S. 94, 110 (1988) (finding that judicial deference to the Executive Branch
25    is especially appropriate in the immigration context).  In <u>United States v. Dang</u>, the Ninth Circuit
      held that, under <u>Chevron</u>, a court must "not only look at the precise statutory section in question, but
26    we also analyze the provision in the context of the governing statue as a whole, presuming
      congressional intent to create a 'symmetrical and coherent regulatory scheme.'" 488 F.3d 1135, 1140
27    (9th Cir. 2007).

28                                              -11-

1  and specified that the authority for section 244.6  "continues" to include 8 U.S.C. 1254a.  63 Fed.

2  Reg. 12987;  SoF ¶ 9.

3      **B.      The Agency's March 1998 Regulations Were Consistent With Congress's Acts
          Authorizing A "Fingerprinting Services" Fee "For Expenses Not Otherwise
4         Provided For" To Provide Government Fingerprinting Services Required For
          "Any Benefit Under INA" Which Included TPS**

5

6      In March 1998, when the agency amended its regulations to implement Pub. L. No. 105-119,

7  the agency would have had notice of the same information Congress was charged with notice of

8  when it enacted that legislation.  When Congress enacted Pub. L. No. 105-119 in November 1997, it

9  did so charged, as a matter of law, <u>Fed. Crop Ins. Corp. v. Merrill</u>, 332 U.S. at 384-85, with notice

10  that included the facts that:

11      1.      TPS, as a "benefit under the [INA]," SoF ¶ 1, n.2, is subject to Congress's 1997 Pub.

12  L. No. 105-119 requirement for Government fingerprinting services and corresponding fee authority,

13  SoF ¶ 5, n.7;

14      2.      Eligibility for TPS depends upon the absence of certain criminality, 8 U.S.C.

15  § 1254a(c)(2)(B), and aliens seeking to register for TPS were obligated to provide at their own

16  expense fingerprints, photographs and signatures (<u>i.e.</u>, the same data presently denominated

17  "biometric" data); SoF ¶¶ 1-2; [17]

18      3.      The 1990 IMMACT, Pub. L. No. 101-649, as amended in 1991 and codified at

19  8 U.S.C. § 1254a(c)(1)(B), did not address the subject of fingerprinting, or Congressionally required

20  Government fingerprinting services;

21      4.      Agency regulations required TPS applicants to pay a TPS "filing" fee not to exceed

22  $50, 8 C.F.R. §§ 103.7 and 244.6.  <u>See</u> Exh. 7.  The agency has never promulgated less than a $50

23

24      [17]   Regulations in place at the time Pub. L. No. 105-119 was enacted required that TPS
applicants provide two photographs with their application.  <u>See</u> 8 C.F.R. § 240.6 (1997) (attached
25  hereto as Exh. 9).  Also, the I-821 Form instructions, incorporated into the regulations by way of
103.2(a)(1), required the submission of FD-258 cards and two photographs.  In 1997, the May 22,
26  1991 edition of Form I-821 was in effect and required that an applicant sign the application.  <u>See</u> 8
C.F.R. § 299.1 (1997) (attached hereto as Exh. 10); <u>see also</u> note 4 <u>supra</u> (regulations permitted DFS
27  entities to charge a reasonable fee for fingerprinting).

28                                          -12-

1   TPS filing fee and in the months immediately preceding the enactment of Pub. L. No. 105-119,

2   published in the Federal Register four designations of states for TPS with a $50 filing fee.[18]

3      5.      Congress did not exclude, and has never excluded, TPS from the INA benefits for

4   which Pub. L. No. 105-119 required Government fingerprinting services and correspondingly

5   authorized that a fee be collected and retained "[f]or expenses, not otherwise provided for;"

6      6.      Congress had provided, in 8 U.S.C. § 1356(m), that "notwithstanding any other law,"

7   the INS could recover the full costs of its services, and did not require or even suggest that the

8   agency should subsidize TPS by providing the required Government fingerprinting services for free

9   or by limiting the amount of the fee that Congress authorized for those services,[19]

10     7.      Congress did not provide, in 8 U.S.C. § 1254a, that 8 U.S.C. § 1356(m)'s

11  "notwithstanding any other law" authority to recover the full costs of services was repealed as to

12  TPS;[20] and

13     8.      Congress's new Pub. L. No. 105-119 fee authority would not necessarily present any

14  new additional cost to aliens seeking to register for TPS because they already were responsible for

15  providing, at their own expense, biometric identification data; Congress had only changed the

16  permissible source of such services necessary for registration, while authorizing the fee at issue in

17  this case, "for expenses not otherwise provided for."

18       Thus, contemporaneously, prior to any dispute, and reasonably, the agency construed

19  Congress's statutes to permit it to charge a separate "fingerprinting services" fee authorized by

20

21

---

22     [18]   SoF ¶ 3.

23     [19]   Congress continually has refrained from specifying that TPS, like asylum, be subsidized.  In
    2003 -- after the agency imposed a separate fingerprinting fees on TPS applicants in addition to the
24  $50 filing fee -- Congress re-enacted the 8 U.S.C. §1356(m) clause allowing subsidization of asylum
    and other immigration benefits, but did not specify that TPS should be subsidized.  See Pub. L. No.
25  108-7, § 107, 117 Stat. 11, 532 (Feb. 20, 2003)

26     [20]   As is discussed below, Congress in 2003 reenacted the clause of 8 U.S.C. § 1356(m) in 2003,
    Pub. L. No. 108-7, § 107, 117 Stat. 11, 532 (2003), authorizing the agency to subsidize aslyum,
27  without likewise mentioning TPS, after the 1990 IMMACT, as amended.

28                                      -13-

1   Congress pursuant to Pub. L. No. 105-119 "[f]or expenses otherwise not provided for" for "any

2   benefit under [INA]" including TPS.

3       **C.    After Federal Register Notice Of The March 1998 Regulations Imposing The**
        **Fingerprinting Services Fee In Addition To The TPS Registration Fee, Neither**
4       **Plaintiffs, Nor AILA, Submitted Comments That The New Fingerprinting Fee**
        **Was Illegal Because It Is Subject To The 8 U.S.C. § 1254a "Condition Of**
5       **Registration"**

6           The March 1998 regulations were published as an interim rule on March 17, 1998, with an

7   effective date of March 29, 1998, and a request for comments by May 18, 1998.  63 Fed. Reg. 12979;

8   SoF ¶ 10.  In response, the agency received ten submissions of comments, including comments by

9   AILA, a large organization including members practicing and teaching immigration law, and other

10  immigration advocacy groups.  Id.  Despite the facts that the agency had always set the

11  § 1254a(c)(1)(B) filing fee at $50, SoF ¶ 3, and that it did not lower the TPS filing fee below $50 or

12  provide that the two separate fees would not together exceed $50, none of the comments – including,

13  notably, those filed by the AILA – objected that the new fingerprinting services fee was unlawful

14  because it was subject to § 1254a(c)(1)(B)'s limit on TPS "registration fee."  SoF ¶ 10.

15      **D.    Congress, With Notice Of The Agency's Regulations Charging A Separate**
        **Fingerprinting Services Fee In Addition To The TPS Filing Fee, Has Not**
16      **Changed Its Legislation Or Revoked Its Continuing Appropriation Of The**
        **Agency's Fee Collections**

17

18          Congress is charged with notice of its own acts and published regulations.  Fed. Crop Ins.

19  Corp. v. Merrill, 332 U.S. at 384-85; see also Rodriguez v. Secretary of Health and Human Services,

20  856 F.2d 338 (1st Cir. 1988) (noting that Congress must be aware of preexisting regulations when it

21  enacts a new law).  Following Pub. L. No. 105-119, the INS developed regulations that implemented

22  the new fingerprinting services requirement and specifically amended at the same time the agency's

23  TPS regulations to note that a separate fingerprinting services fee would be required in addition to

24  the TPS filing fee.  SoF ¶¶ 7-9.  Following standard procedures, the INS transmitted a copy of the

25  regulations it had drafted to Congress, prior to their March 29, 1998 effective date.  Id.

26          Since March 29, 1998, the Government fingerprinting requirement and fee authority enacted

27  in Pub. L. No. 105-119, and the registration fee authority in 8 U.S.C. § 1254a(c)(1)(B), have not

28                                          -14-

1   been amended, and the agency's regulations continues to specify a Government fingerprinting

2   services fee separate from and in addition to the TPS registration fee.

3         For over a decade following the agency's publication of its March 1998 regulations, Congress

4   has had notice of the agency's regulations construing Pub. L. No. 105-119 to permit charging a

5   separate fee for fingerprinting services in addition to the filing fee that the agency continues to

6   charge for TPS.  SoF¶¶ 10-11.[21]  More recently, since 2004, the agency has published regulations

7   setting the fingerprinting services fee at $70, a figure that by itself exceeds $50.  SoF ¶ 11.

8         Clearly, the agency has publicly and explicitly put all concerned, Congress included, on

9   notice of its administrative interpretation through publication of its fee regulations since March 1998.

10   The fact that Congress has not acted to change the agency's interpretation is "almost conclusive

11   evidence that the interpretation has congressional approval":

12              "[A] consistent administrative interpretation of a statute, shown clearly
               to have been brought to the attention of Congress and not changed by
13              it, is almost conclusive evidence that the interpretation has
               congressional approval." J.H. Rutter Rex Manuf. Co., Inc. v. United
14              States, 706 F.2d 702, 711 (5th Cir.1983) (quoting Kay v. Federal
               Communications Commission, 443 F.2d 638, 646-47 (D.C.Cir.1970));
15              see also United States v. Rutherford, 442 U.S. 544, 553-554 (1979);
               Red Lion Broadcasting Co. v. Federal Communications Commission,
16              395 U.S. 367, 381 (1969).

17   Contract Mgmt., Inc. v. Rumsfeld, 291 F. Supp. 2d 1166, 1177 (D. Haw. 2003).

18         Further, pursuant to INA §§ 286(m), (n) [codified at 18 U.S.C. §§ 1356(m), (n)], Congress

19   has provided a continuing authorization and appropriation of the agency's expenditure of its fee

20   collections.  The Pub. L. No. 105-119 fingerprinting services fee is deposited into this account.

21   See 72 Fed. Reg. 4888, 4890 (Feb. 1, 2007) (general background of Immigration Examination Fee

22   Account, 8 U.S.C. § 1356(m), (n)).  As is evident in, for example, the very same act that authorized

23   the fingerprinting services fee at issue, Pub. L. No. 105-119, Congress also utilizes its appropriations

24

25       [21]   See e.g. Hearing on Past Designation of Temporary Protected Status And Fraud in Prior
     Amnesty Programs Before H. Immigration And Claims Subcomm. H. Judiciary Comm., 106th Cong.
26   1, 3 (testimony of Paul Virtue, General Counsel, INS) ("A complete application requires . . . fees or
     fee waivers and their appearance for fingerprints.") (attached hereto as Exh. 11).

27

28                                          -15-

1  legislation to provide specific mandates imposing requirements and limitations upon the agency's

2  use of the funds that are appropriated or otherwise made available to it.  Id., 111 Stat. 2447-48.

3  Because Congress has not revoked its continuing authorization and appropriation of the agency's fee

4  collections or otherwise acted to invalidate the agency's charging of the 1997 Pub. L. No. 105-119

5  authorized fee in addition to the TPS filing fee, that is further and conclusive evidence that Congress

6  has approved of the agency fees at issue in this case.

7        For these reasons,  the agency's contemporaneous pre-dispute reliance upon Congress's Pub.

8  L. No. 105-119 authorization of the fingerprinting services fee is a permissible construction of the

9  authority conferred by Congress and has, prior to any dispute, been construed similarly by all

10 concerned, including AILA and the Congress.  Accordingly, even if it assumed, for purposes of

11 argument only, that 1997 Pub. L. No. 105-119 did not plainly and unambiguously authorize the

12 charging of a separate fee for fingerprinting services due to some gap or ambiguity in the statutory

13 scheme, then because the agency's regulation is based upon a permissible construction, it is due

14 Chevron deference, and, thus, plaintiffs' complaint must be denied.  See Chevron, 467 U.S. at 842;

15 Dang, 488 F.3d at 1140.

16 **V.    Congress's 8 U.S.C. § 1356(m) Provision For Fees Ensuring Full Cost Recovery**
   **"Notwithstanding Any Other Provisions Of Law" Provides An Independent Authority**
17 **That Supersedes Any Alleged Limitations Imposed By 1990 IMMACT, As Amended,**
   **Because It Does Not Reference, Let Alone Expressly Repeal, 8 U.S.C. § 1356(m), Which**
18 **Congress Re-Enacted In 2003**

19       Plaintiffs' complaint should be denied for the additional and alternative reason that the 1990

20 IMMACT nowhere references, let alone expressly repeal, 8 U.S.C. § 1356(m), authorizing the

21 agency to recover the full costs of providing adjudication services  "notwithstanding any other

22 provisions of law."  At the time Congress was enacting Pub. L. No. 101-515, § 210(c)(1) (Nov. 5,

23 1990), adding the cost recovery clauses to 8 U.S.C. § 1356(m)'s authorization "[n]otwithstanding

24 any other provisions of law," Congress would have been aware of its pending TPS legislation,

25 enacted on November 29, 1990, adding 8 U.S.C. 1254a.  Congress did not, however, specify that

26 TPS applicants were to be reimbursed or subsidized for any expense they incurred in procuring

27 fingerprinting services.  Further, in 2003 – after 8 U.S.C. § 1254a – and after repealing the asylum

28                                                -16-

1  subsidy provision in 2002, Pub. L. No. 107-296 § 457, 116 Stat. 2135, 2200 (Nov. 25, 2002),

2  Congress in Pub. L. No. 108-7, § 107, 117 Stat. at 532, re-enacted that subsidy authority again,

3  specifying asylum but not TPS.  See 8 U.S.C. § 1356(m) (Historical and Statutory Notes,

4  Amendments).  Thus, Congress's last act, after declining to direct or even suggest that TPS

5  applicants be exempted from paying for the cost of services provided to them, confirms that the

6  agency's fingerprinting services fee is authorized independently not only by Pub. L. No. 105-119

7  "[f]or expenses not otherwise provided for," but also by 8 U.S.C. § 1356(m) "[n]otwithstanding any

8  other provision of law."  For this additional and alternative reason, plaintiffs' complaint should be

9  denied.

10  **VI.  Plaintiffs' Complaint, Relying Upon The 1990 IMMACT's Provisions Regarding Fees
11     That The Attorney General May Require, Fails Because That Act Did Not Limit
       Congress's 1997 Pub. L. No. 105-119 Requirement Of Government Fingerprinting
       Services And Authorization Of The Fee At Issue "For Expenses Not Otherwise
12     Provided For"**

13         Plaintiffs' have filed a motion for partial summary judgment that almost completely refrains

14  from discussing the Pub. L. No. 105-119 act of Congress that is the legislative authority cited in the

15  agency's regulation prescribing the fingerprinting services fee about which they complain.[22]

16  Plaintiffs instead focus almost exclusively upon the 1990 IMMACT's provisions which pertain to a

17  separate authority for a "Registration fee."  As we demonstrate in greater detail below, plaintiffs'

18  complaint, relying upon this inapposite fee authority, must be denied.  The 1990 IMMACT's

19  registration fee authorization did not limit Congress's 1997 Pub. L. No. 105-119 mandate that

20  Government fingerprinting services be used for criminal background checks for TPS and

21  corresponding authorization of the fee at issue "for expenses not otherwise provided for."

22

23

24

25
      _____

26     [22]    The table of authorities contained in Plaintiffs' Partial Motion for Summary Judgment refers
       to one citation of Pub. L. No. 105-119.  PMSJ at 15.  On that page, there is a single sentence that is a
       citation of Pub. L. No. 105-119, that follows a single sentence that states "Defendant began
27     collecting fingerprinting fees in 1998."

28
                                                    -17-

**A.    The Plain Language Of The 1990 IMMACT Fee Provisions Apply Only To The Amount Of A "Registration Fee" That "The Attorney General May Require;" The Fee At Issue In This Case Was Imposed Because Congress, Not The Attorney General, In 1997 Required The Government To Provide Fingerprinting Services And Authorized A Fee For "Fingerprinting Services" "For Expenses Not Otherwise Provided For"**

Plaintiffs' rely upon language enacted in section 302 of the 1990 IMMACT which in pertinent part amended the INA to include a new section 244a (codified as 8 U.S.C. § 1254a) providing as follows:

> (B) REGISTRATION FEE.--The Attorney General may require payment of a reasonable fee as a condition of registering an alien under subparagraph (A)(iv) (including providing an alien with an 'employment authorized' endorsement or other appropriate work permit under this section). The amount of any such fee shall not exceed $50.

Pub. L. No. 101-649, 104 Stat. 4978, 5032-5036 (Nov. 29, 1990). In 1991 "Miscellaneous and Technical Amendments" amending section 244A of the INA (codified as 8 U.S.C. §1254a), Pub. L. No. 102-232, 105 Stat. 1733, 1749 (Jan. 3, 1991), Congress added a provision that for designations after July 17, 1991, "the Attorney General may impose a separate, additional fee for providing an alien with documentation of work authorization." This "Registration Fee" statute does not apply to limit Congress's separate Pub. L. No. 105-119 authorization of "fingerprinting services" fees when in 1997 it required Government provided services be utilized when fingerprinting for "any benefit under the [INA]."

The plain language of the 1990 IMMACT, as amended, provides for a "Registration fee" that "[t]he Attorney General may require" as a "condition of registration." 8 U.S.C. § 1254a(c)(1)(B). The statutory text upon which plaintiffs rely plainly contains no reference to "fingerprinting services" or any fee for such services. Nor would Congress have even contemplated that a fee for the mandatory use of Government-provided fingerprinting services was or could be a "condition of registration" as specified in the 1990 IMMACT, as amended, because no such condition existed at that time.

Although the 1990 IMMACT, as amended, limited the registration fee that the Attorney General might elect to require, in 1997 Congress – not the Attorney General – in a separate law, Pub.

-18-

1    L. No. 105-119, mandated the Government-provided fingerprinting service and authorized the

2    corresponding fee for the expense of this service that is at issue in this case.

3           Even assuming, for the sake of argument, that 8 U.S.C. § 1254a(c)(1)(B) did not allow for

4    any fee in excess of $50 to be required for TPS, all that would prove is that the fee at issue

5    specifically was provided for when Congress's 1997 Pub. L. No. 105-119 authorized that fee for

6    "expenses not otherwise provided for" when providing the Government fingerprinting services that

7    Congress required for any benefit under INA, which included TPS.  111 Stat 2447-48.  In short,

8    plaintiffs' theory of their case – that the fingerprinting services fee had not been provided for by

9    Congress in the 1990 IMMACT – effectively concedes that the separate fee specific to the subject of

10   Congress's new Government fingerprinting services requirement was for "expenses not otherwise

11   provided for" and thus authorized specifically by Congress in Pub. L. No. 105-119.

12          **B.     Plaintiffs' Current Reliance Upon The Words "Condition Of Registration" In
             The 1990 IMMACT Fails Because It Is Contrary To The Statutory Construction
13           Principles That Words Should Be Defined By Their Context And The Company
             They Keep, Which In 1990 Did Not Include A Requirement Of Government
14           Fingerprinting Services**

15          The "Registration fee" statute upon which plaintiffs rely, did not define the words "condition

16   of registration."  See Pub. L 101-649, section 302, 104 Stat. 4978, 5032-28; 8 U.S.C. §

17   1254a(c)(1)(B).  The words "fingerprinting services" do not appear within the "Registration fee"

18   statute.  Id.  Nor could these words "condition of registration" reasonably be construed to include a

19   fee for mandatory use of Government fingerprinting services, because no such condition existed at

20   that time.  Congress's 1990 use of the words "condition of registration" must not be expanded to give

21   them breadth beyond what those words would have meant given the company they kept.  See Jarecki

22   v. G.D. Searle & Co., 367 U.S. 303, 307 (1961) (stating that the maxim *noscitur a sociis* is often

23   wisely applied where a word is capable of many meanings in order to avoid the giving of unintended

24   breadth to the Acts of Congress); United States v. Wilson, 290 F.3d 347, 354 (D.C. Cir. 2002) ("In

25   resolving the ambiguity, we consider the broader context of [the section] and the structure of the

26   [statute] as a whole, as well as the contextual background against which Congress was legislating,

27   including relevant practices of the Executive Branch which presumably informed Congress's

28                                                    -19-

1    decision, prior legislative acts, and historical events.")[23]  To now give the words in the 1990

2    IMMACT the breadth plaintiffs' claim requires, would be contrary to the words used, and conditions

3    that existed, at the time of the 1990 IMMACT.

4         Instead, Pub. L. No. 105-119 and 8 U.S.C. § 1254a can be construed in accordance with

5    statutory construction principles that words be construed by the context and company they kept; that

6    statutes be construed harmoniously and according each meaning, if section 1254a is construed to

7    continue to apply only to the $50 registration fee that the Attorney General required for filing a TPS

8    application, while construing the fingerprinting services fee separately charged as what it is:

9    provided for by Congress's later and separate requirement, in Pub. L. No. 105-119, that the agency

10   provide plaintiffs with Government fingerprinting services and authorization that it collect and retain

11   a fee for that service, "for expenses not otherwise provided for."

12          **C.    Plaintiffs' Contention That 8 U.S.C. § 1254a Limit On The TPS Registration Fee
                    Applies To The Pub. L. No. 105-119 Fingerprinting Services Fee Is Contradicted
13                  By Their Pre-Dispute Conduct, And The Pre-Dispute Conduct Of Their
                    Immigration Attorney And Class Co-Counsel**

14        Plaintiffs assert that they should prevail because of the "plain" language of 8 U.S.C.

15   § 1254a(c)(1)(B) and contend that the agency's regulation is not entitled to <u>Chevron</u> deference

16   because Congress "unambiguously" expressed its intent.  <u>See</u> PMSJ at 12, n.18.  Plaintiffs' claim is

17   contradicted by their pre-dispute conduct and that of their immigration counsel who also serves as

18   class co-counsel, in paying repeatedly, year after year, without complaint, the fee for the

19   fingerprinting services the Government provided to them.  In some cases, plaintiffs allowed the six

20   year statute of limitations to elapse upon what they allege to be an unambiguous illegality.

21        For nearly a decade after the March 1998 publication of regulations imposing the Pub. L. No.

22   105-119 fingerprinting services fee, and amending 8 C.F.R. § 244.6 to reflect that the fingerprinting

23   fee is required in addition to the TPS filing fee, there appears no suit of which we are aware, filed by

24

25

26   [23]   See also <u>FDA v. Brown & Williamson Tobacco Corp.</u>, 529 U.S. 120, 132-33 (2000) ("The
         meaning – or ambiguity – of certain words or phrases may only become evident when placed in
27       context."); <u>Aldridge v. Williams</u>, 44 U.S. (3 How.) 9, 24 (1845) (stating that courts interpreting
         legislation should look, "if necessary, to the public history of the times in which it was passed").

28                                              -20-

1  plaintiffs or any other TPS applicants alleging that the fingerprinting services fee was illegal because

2  it is subject to 8 U.S.C. § 1254a.

3       Plaintiffs' class representatives have all been represented in their TPS applications by their

4  class co-counsel in this case, an attorney with over 25 years of experience "practicing in the field of

5  immigration law."  SoF ¶ 13.  For over six years, representatives of plaintiffs' class, while

6  represented by their immigration and co-class counsel, have paid the fee for Government

7  fingerprinting services (since 2004 denominated "biometric services"), resulting in a total payment

8  of more than $50.  SoF ¶ 15. Plaintiffs repeatedly paid such amounts, without filing suit complaining

9  that § 1254a(c)(1)(B) "unambiguously" or otherwise provided that paying a fee for the Government

10  providing them with fingerprinting services was illegal because the total of the TPS filing fee and the

11  separate fingerprinting services fee exceeded $50.  Plaintiffs' immigration and class co-counsel

12  allowed the six year statute of limitations to elapse upon what they now allege is such a "plain" and

13  "unambiguous" that their complaint cannot be denied based upon Chevron.  Id.

14       The pre-dispute conduct of plaintiffs and their immigration counsel confirms that the

15  § 1254a(c)(1)(B) cannot reasonably be construed to apply to the separate fingerprinting services fee

16  that Congress authorized in Pub. L. No. 105-119.  Alternatively, and at the least, plaintiffs' and their

17  counsel's lengthy pre-dispute conduct contradicts their current claim that § 1254a(c)(1)(B)

18  unambiguously applies and renders illegal the separate fingerprinting services fee that they

19  repeatedly paid without complaint.  Because the agency's construction of the authorities conferred by

20  Congress is a permissible one, it must be accorded Chevron deference, and plaintiffs' complaint

21  must be dismissed.

22       **D.    Plaintiffs' Contention That It Is Unlawful To Charge Any Fees After The Initial
            Registration Because 8 U.S.C. §1254a(c)(3)(C) Does Not Contain Language
23          Concerning The Registration Fee, Must Fail Because Congress Authorized The
            Agency To Provide For Annual Registrations In The Form And Manner
24          Specified By The Attorney General And Did Not Subject Annual Registrations
            To The 1254a(c)(1)(B) $50 Limit On Registration Fees**

25       Another claim of plaintiffs at odds with their own pre-dispute conduct is their contention to

26  the effect that, after they pay an initial TPS filing fee of $50, they are entitled to receive for free the

27

28                                          -21-

Pub. L. No. 105-119 required Government fingerprinting services every time they apply for the

annual registration (or "re-registration") required to maintain TPS.  See PMSJ at 18-22.  In support

of their current claim, plaintiffs' note that 8 U.S.C. §1254a(c)(3)(C) requires TPS registration

annually but does not specify in that section anything about a fee for those registrations.  Id.

However, the plain text of 8 U.S.C. §1254a(c)(3)(C) serves to disprove plaintiffs' claim.

Congress requires that aliens re-register for TPS periodically as follows:

> Withdrawal of temporary protected status

> The Attorney General shall withdraw temporary protected status
> granted to an alien under this section if --

> * * *
> (C)  the alien fails, without good cause, to register with the Attorney
> General annually, at the end of each 12-month period after the granting
> of such status, in a form and manner specified by the Attorney General.

Congress delegated to the agency the authority to provide for registrations after the initial registration

in "a form and manner specified by the Attorney General."  Congress did not reference the

§ 1254a(c)(3)(C) annual registrations in the §1254a(c)(1)(B) $50 limitation on fees.[24]  The only type

of registration cross-referenced in the §1254a(c)(1)(B) $50 limitation on fees is the subparagraph

(a)(IV) registration.

---

[24]    PMSJ at 21 quotes as "legislative history" the statement of a Congressman in 1989, regarding H. 45, anticipating that for a form of temporary status a "one-time" fee of $50 would be required, and annual re-registration would be required.  Plaintiffs are mistaken in several respects.  First, H. 45 was not enacted.  See SoF ¶ 1, n.2.  Failed legislation is not persuasive.  Solid Waste Agency of N. Cook County v. U.S. Army Corps of Engr's, 531 U.S. 159, 160 (2001(warning that "failed legislative proposals are a particularly dangerous ground on which to rest an interpretation of a prior statute") (quoting Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 187 (1994)) (in turn quoting PBGC v. LTV Corp., 496 U.S. 633, 650 (1990)) (internal citations omitted).  In any event, Congress subsequently did not specify that the registration fee authorized in 1254a(c)(1)(B) is a "one-time" fee and that all annual re-registrations are to be free of charge.  It also makes logical and practical economic sense that Congress only capped the TPS registration fee for the initial TPS registration, before a beneficiary would have been able to secure Employment Authorization Documentation ("EAD") associated with such status.  After EAD is issued, a TPS holder is able legally to work and earn money to pay the fees required annually to continue TPS registration.  Further, the 1990 IMMACT nowhere addresses the subject of fingerprinting services, and, thus, has no bearing upon the Pub. L. No. 105-119 fee at issue.

1    As is authorized by 8 U.S.C. § 1254a(c)(3)(C), the Attorney General specified that for annual

2    registrations[25] after the initial registration, TPS applicants could file the TPS application "without

3    fee."[26]  The Attorney General did not exempt TPS applicants from the separate fingerprinting

4    services required and fee authorized by Pub. L. No. 105-119.[27]

5    In the alternative, assuming, for the sake of argument, that when Congress required in

6    § 1254a(c)(3)(C) annual registrations "in a form and manner specified by the Attorney General," it

7    silently intended to subject those annual registrations to § 1254a(c)(1)(B)'s provision that the

8    Attorney General may charge a fee as a condition of registration, not to exceed $50 -- an assumption

9    that is not supported by the plain language of these statutes – that would only establish that the

10   Attorney General was authorized to charge up to $50 for each annual registration.  Consequently,

11   even assuming that the fingerprinting services fee that Congress authorized is not completely

12   separate from, and unlimited by, § 1254a(c)(1)(B), that would at most establish that any fee for

13   fingerprinting or biometric services charged by the Attorney General was legal to the extent that it

14   did not exceed $50, reducing any liability by the $50 amount so authorized for TPS registration.

15

16   _____

17   [25]   Plaintiffs also contend that no fee is authorized for annual registrations because such
registrations are not taking place as Congress required in 8 U.S.C. § 1254a(c)(3)(C), i.e., at the end
18   of each 12 month period as Congress required met in order to maintain TPS eligibility.  PMSJ at
18-22.  Regardless of whether the agency allowed plaintiffs more than 12 months to register,
19   plaintiffs' contention does not establish that they are thus entitled to free Government fingerprinting
services, or that annual registrations are subject to 8 U.S.C. § 1254a(c)(1)(B).

20   [26]   8 C.F.R. § 244.17. The only fee in existence at the time 8 C.F.R. § 244.17 was issued was the
$50 TPS filing fee, thus the "without fee" language, which has not changed since 1991, can only
21   refer to the $50 filing fee and not the biometrics fee.  The agency's charge of a $50 filing fee for the
initial TPS registration is not being challenged by plaintiffs' complaint.  Because the agency has
22   elected to refrain from requiring that the TPS "filing" fee prescribed at 8 C.F.R. § 244.6 of $50 be
submitted with applications for TPS registration after the first registration, whether 8 U.S.C.
23   § 1254a(c)(1)(B) permits charging a TPS filing fee of up to $50 for each subsequent registration is a
question not before the Court and, to the extent that plaintiffs have raised this issue, they lack
24   standing – because the agency has not required them to pay any TPS filing fee after the initial
registration – and, accordingly, the Court lacks jurisdiction to entertain a question about TPS filing
25   fees after the first registration.

26   [27]   The agency's "form and manner" annual registration procedures are contained in 8 C.F.R.
§ 244.17; I-821A instructions which are incorporated by reference into the agency's regulations (see
27   8 C.F.R. § 103.2(a)(1)), and published Federal Register notices of TPS extensions.

28
                                        -23-

**VII.    Plaintiffs' Claims Are Barred By The Doctrine Of Laches**

Laches is an equitable time limitation on a party's right to bring suit. The doctrine bars an action where a party's "unexcused or unreasonable delay" has prejudiced his adversary.  Boone v. Mechanical Spec. Co., 609 F.2d 956, 958 (9th Cir. 1979) (upholding summary judgment in favor of the defendant on summary judgment based upon the plaintiff's "unexcused and unreasonable" delay) (quoting International T. & T. Corp. v. General T. & E. Corp., 518 F.2d 913, 926 (9th Cir. 1975); Danjaq, L.L.C. v. Sony Corp., 263 F.3d 942, 955 (9th Cir. 2001) (holding case was barred based upon finding of laches); see also Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308 (Fed. Cir. 2007) (recognizing that plaintiff unreasonably delayed bringing a claim regarding flaws in a government solicitation when it could have filed an administrative objection much earlier).

By failing to bring suit in a timely manner when they were first charged the allegedly unlawful fingerprinting fee over six years ago, plaintiffs have permitted the amount of their potential claims to grow to what they presumably will assert is several millions of dollars.  If they are successful in obtaining such a remedy of this financial magnitude, many applicants for immigration benefits, citizen and non-citizen alike, including TPS applicants, will suffer from the significant cutbacks in services and other actions that the Government would likely need to take in order to pay the judgment.  See Declaration of Barbra Velarde in Supp. Of Defs.' Opp. To Pls. Mot. For Prelim. Inj. (Dkt. 25) at ¶¶ 21-22 (Sep. 24, 2007).  As USCIS activities are (with minor exception) funded by fee-paying customers, a judgment payable by USCIS would require USCIS to use future fee revenues to pay refunds to past TPS applicants, rather than to provide immigration services to its customers. Id.  Had plaintiffs brought suit sooner and received a judgment in their favor, the negative effect on these other immigration applicants would have been significantly reduced.  Plaintiffs, by delaying their lawsuit, should not be permitted to cause such increased harms to other applicants.

**CONCLUSION**

For these reasons, we respectfully request that the Court grant summary judgment in defendants favor and dismiss plaintiffs' complaint.

-24-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

OF COUNSEL:
JOSEPH P. RUSSONIELLO
United States Attorney
JOANN M. SWANSON
Assistant United States Attorney
Chief, Civil Division
ILA C. DEISS
Assistant United States Attorney
San Francisco, CA

J. MAX WEINTRAUB
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division
Department of Justice

TONY WEST
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Brian A. Mizoguchi
BRIAN A. MIZOGUCHI
Senior Trial Counsel

ELIZABETH A. SPECK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
   Attn.: Classification Unit 8th Flr.
1100 L Street, N.W.
Washington, D.C.  20530

Tel: (202) 305-3319

Date: October 2, 2009

Attorneys for Defendants

-25-