1   JONATHAN M. KAUFMAN, CA Bar No. 104576
    jonathan-kaufman@sbcglobal.net
2   The Law Offices of Jonathan M. Kaufman
    220 Montgomery Street, Suite 976
3   San Francisco, CA  94104
    (415) 956-4765
4   (415) 956-1664 (Fax)

5   LINDA M. DARDARIAN, CA Bar No. 131001
    ldardarian@gdblegal.com
6   RACHEL E. BRILL, CA Bar No. 233294
    rbrill@gdblegal.com
7   LIN YEE CHAN, CA Bar No. 255027
    lchan@gdblegal.com
8   GOLDSTEIN, DEMCHAK, BALLER, BORGEN & DARDARIAN
    300 Lakeside Drive, Suite 1000
9   Oakland, CA  94612
    (510) 763-9800
10  (510) 835-1417 (Fax)

11  ATTORNEYS FOR PLAINTIFFS

12                          UNITED STATES DISTRICT COURT

13                        NORTHERN DISTRICT OF CALIFORNIA

14

15  JOSE BAUTISTA-PEREZ, OSCAR              Case No.:  3:07-cv-4192 TEH
    GUARDADO-GONZALEZ, DENIS
16  CABALLERO-ESPINOZA, JOSE               **PLAINTIFFS' COMBINED OPPOSITION TO**
    ALVARADO-MENJIVAR, OSCAR RENE           **DEFENDANT'S CROSS-MOTION FOR**
17  RAMOS, MARIA SALAZAR, JOSE              **SUMMARY JUDGMENT AND REPLY TO**
    BENJAMIN QUINTEROS, AND MARIA           **DEFENDANT'S OPPOSITION TO**
18  JOSEFA CRUZ, Individually and on behalf of all   **PLAINTIFFS' MOTION FOR PARTIAL**
    others similarly situated,              **JUDGMENT**
19
                 Plaintiffs,               Date:    November 23, 2009
20                                         Time:    10:00 a.m.
    vs.                                    Dept:    Courtroom 12
21                                         Judge:   Hon. Thelton E. Henderson
    ERIC H. HOLDER, JR., Attorney General and
22  JANET NAPOLITANO, Secretary of Homeland
    Security,
23
                 Defendants.
24

25

26

27

28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

I.    INTRODUCTION ................................................................................................................ 1

II.   SUMMARY JUDGMENT IS APPROPRIATE BECAUSE 8 U.S.C. § 1254a(c)(1)(B)
      CLEARLY CAPS TPS REGISTRATION FEES AT $50. ................................................. 2

      A.   8 U.S.C. § 1254a(c)(1)(B) Mandates That Defendant Charge No More Than $50
           As a Condition of Registering for TPS ..................................................................... 3

           1.   The Plain Meaning of 8 U.S.C. § 1254a(c)(1)(B) Is Unambiguous ...................... 3

           2.   8 U.S.C. § 1254a(c)(3)(C)'s Annual Registration Provision Does Not
                Authorize Defendant to Charge More Than $50 for TPS Registration ................. 6

           3.   The Legislative History of 8 U.S.C. § 1254a(c)(1)(B) Demonstrates
                Congress' Intent to Limit TPS Registration Fees to the $50 Fee Cap ................... 8

      B.   Public Law No. 105-119 Does Not Authorize Defendant to Charge More Than
           $50 in Fees As a Condition of Registering for TPS. ...................................... 11

           1.   Public Law No. 105-119 Does Not Alter 8 U.S.C. § 1254a(c)(1)(B)'s
                $50 Cap on TPS Registration Fees, Including Biometric Services Fees ............. 12

           2.   The Language "For Expenses, Not Otherwise Provided for" in Public
                Law No. 105-119 Does Not Relate to Defendant's Fee Authority. ................... 15

           3.   Despite Public Law No. 105-119, Biometric Services Fees Are Required
                by the "Attorney General" and Violate 8 U.S.C. § 1254a(c)(1)(B). ................. 16

           4.   Changed Circumstances Do Not Nullify 8 U.S.C. § 1254a(c)(1)(B)'s $50
                Cap on Fees Charged As a Condition of TPS Registration ................................. 17

           5.   *Chevron* Deference for Defendant's Claim That Public Law No. 105-119
                Authorizes it to Charge More Than $50 for TPS Registration Is
                Unwarranted. .............................................................................................. 18

      C.   8 U.S.C. § 1356(m) Does Not Authorize Defendant to Charge More Than $50 in
           the Form of Biometric Services Fees As a Condition of Registering for TPS ............. 19

      D.   Defendant's Arguments Regarding Waiver, Laches, and Damages Are Highly
           Unusual, Unsubstantiated, and Irrelevant ........................................................ 21

III.  CONCLUSION ................................................................................................................ 23

PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO
DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT - CASE NO.:  3:07-CV-4192 TEH

98024-31

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

*Auto-Ordnance Corp. v. United States*,
    822 F.2d 1566 (Fed. Cir. 1987) ................................................................. 5

*Blue & Gold Fleet, L.P. v. United States*,
    492 F.3d 1308 (Fed. Cir. 2007) .............................................................. 22

*Boone v. Mech. Specialties Co.*,
    609 F.2d 956 (9th Cir. 1979) ................................................................. 22

*Boys Market, Inc. v. Retail Clerks Union, Local 770*,
    398 U.S. 235 (1970) ............................................................................... 8

*Brown v. Gardner*,
    513 U.S. 115 (1994) ............................................................................... 9

*Butterbaugh v. Dep't of Justice*,
    336 F.3d 1332 (Fed. Cir. 2003) ....................................................... 10, 17

*California v. American Stores Co.*,
    495 U.S. 271 (1990) ............................................................................. 22

*CHW W. Bay v. Thompson*,
    246 F.3d 1218 (9th Cir. 2001) ......................................................... 8, 10

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council Inc.*,
    467 U.S. 837 (1984) ................................................... 8, 11, 18, 19

*Contract Management, Inc. v. Rumsfeld*,
    291 F. Supp. 2d 1166 (D. Haw. 2003) .................................................. 9

*Danjaq, L.L.C. v. Sony Corp.*,
    263 F.3d 942 (9th Cir. 2001) ............................................................... 22

*Delalat v. Dep't of Air Force*,
    557 F.3d 1342  (Fed. Cir. 2009) ...................................................... 6, 20

*Delverde, SRL v. United States*,
    202 F.3d 1360 (Fed. Cir. 2000) ............................................................ 3

*Fed. Crop Ins. Corp. v. Merrill*,
    332 U.S. 380 (1947) ............................................................................. 10

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000) ............................................................................. 14

*Forest Conservation Council v. Rosboro Lumber Co.*,
    50 F.3d 781 (9th Cir. 1995) ................................................................... 2

*Freeman v. Gonzales*,
    444 F.3d 1031 (9th Cir. 2006) ............................................................. 14

ii

PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO
DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT - CASE NO.:  3:07-CV-4192 TEH

98024-31

*Fugere v. Derwinski,*
    972 F.2d 331 (Fed. Cir. 1992) ............................................................ 14

*Gardner v. Brown,*
    5 F.3d 1456 (Fed. Cir. 1993) ............................................................ 10

*Girouard v. United States,*
    328 U.S. 61 (1946) ............................................................................ 8

*Glaxo Operations UK Ltd. v. Quigg,*
    894 F.2d 392 (Fed. Cir. 1990) ............................................................ 2

*Gose v. U.S. Postal Serv.,*
    451 F.3d 831 (Fed. Cir. 2006) .................................................. 8, 15, 19

*Hanlin v. United States,*
    214 F.3d 1319 (Fed. Cir. 2000) ........................................................ 14

*Hoechst Aktiengesellschaft v. Quigg,*
    917 F.2d 522 (Fed. Cir. 1990) ............................................................ 8

*INS v. Cardoza-Fonseca,*
    480 U.S. 421 (1987) .............................................................. 8, 15, 19

*Int'l Tele. & Tele. Corp. v. Gen. Tele. & Elecs. Corp.,*
    518 F.2d 913 (9th Cir. 1975) ............................................................ 22

*J.H. Rutter Rex Manufacturing Co. v. United States,*
    706 F.2d 702 (5th Cir. 1983) ............................................................ 9

*Kay v. F.C.C.,*
    443 F.2d 638 (D.C. Cir. 1970) ........................................................ 8, 9

*Kenai Peninsula Borough v. State of Alaska,*
    612 F.2d 1210 (9th Cir. 1980) .......................................................... 14

*Markham v. Cabell,*
    326 U.S. 404 (1945) ........................................................................ 14

*Microsoft Corp. v. C.I.R.,*
    311 F.3d 1178 (9th Cir. 2002) ............................................................ 5

*Mobil Oil Corp. v. Higginbotham,*
    436 U.S. 618 (1978) ........................................................................ 10

*Morton v. Mancari,*
    417 U.S. 535 (1974) ........................................................................ 12

*N.L.R.B. v. A-Plus Roofing, Inc.,*
    39 F.3d 1410 (9th Cir. 1994) ............................................................ 12

*NTP, Inc. v. Research In Motion, Ltd.,*
    418 F.3d 1282 (Fed. Cir. 2005) .......................................................... 4

*Natural Resources Defense Council v. U.S. Envtl. Prot. Agency,*
    526 F.3d 591 (9th Cir. 2008) .......................................................................... 8, 19

*Neptune Mut. Ass'n., Ltd. of Bermuda v. United States,*
    862 F.2d 1546 (Fed. Cir. 1988) ................................................................ 12, 16, 21

*Northwest Envtl. Advocates v. U.S. Envtl. Prot. Agency,*
    537 F.3d 1006, 1022 (9th Cir. 2008) ........................................................... 10

*Or. Natural Res. Council v. Thomas,*
    92 F.3d 792 (9th Cir. 1996) ........................................................................... 20

*Ordlock v. C.I.R.,*
    533 F.3d 1136 (9th Cir. 2008) ....................................................................... 20

*Patagonia Corp. v. Bd. of Governors of Fed. Reserve Sys.,*
    517 F.2d 803 (9th Cir. 1975) ...................................................................... 7, 13

*Red Lion Broad. Co. v. F.C.C.,*
    395 U.S. 467 (1969) ......................................................................................... 9

*Rodriguez v. Secretary of Health & Human Services,*
    856 F.2d 338 (1st Cir. 1988) ........................................................................... 9

*Rodriguez v. United States,*
    480 U.S. 522 (1987) ....................................................................................... 14

*Rosado v. Wyman,*
    397 U.S. 397 (1970) ....................................................................................... 19

*Royal Foods Co., v. RJR Holdings, Inc.,*
    252 F.3d 1102 (9th Cir. 2001) ......................................................................... 3

*Schism v. United States,*
    316 F.3d 1259 (Fed. Cir. 2002) ................................................................... 8, 11

*Schneider v. Chertoff,*
    450 F.3d 944 (9th Cir. 2006) ................................................................. *passim*

*Scotts Co. v. United Indus. Corp.,*
    315 F.3d 264 (4th Cir. 2002) ......................................................................... 22

*State of Ariz. v. Atchison,*
    656 F.2d 398 (9th Cir. 1981) ........................................................................... 7

*State of Idaho v. Hodel,*
    814 F.2d 1288 (9th Cir. 1987) ....................................................................... 17

*Townsend v. Quasim,*
    328 F.3d 511 (9th Cir. 2003) ......................................................................... 21

*United States v. Corey,*
    232 F.3d 1166 (9th Cir. 2000) ....................................................................... 17

iv

PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO
DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT - CASE NO.: 3:07-CV-4192 TEH

98024-31

*United States v. Hansen*,
    264 F.2d 540 (9th Cir. 1958) ............................................................ 14

*United States v. Navarro*,
    160 F.3d 1254 (9th Cir. 1998) .......................................................... 16

*United States v. Rutherford*,
    442 U.S. 544 (1979) ................................................................... 9, 10

*Walther v. Sec'y of Health & Human Servs.*,
    485 F.3d 1146 (Fed. Cir. 2007) .................................................... 7, 13

*Washington v. Reno*,
    35 F.3d 1093 (6th Cir. 1994) ........................................................... 22

*West v. Gibson*,
    527 U.S. 212 (1999) ........................................................................ 17

*White v. United States*,
    543 F.3d 1330 (Fed. Cir. 2008) ......................................................... 3

*Witco Chem. Corp. v. United States*,
    742 F.2d 615 (Fed. Cir. 1984) ......................................................... 14

*Wolfchild v. United States*,
    559 F.3d 1228 (Fed. Cir. 2009) ......................................................... 7

## FEDERAL STATUTES AND RULES

6 U.S.C.
    § 271 .............................................................................................. 16

8 U.S.C.
    § 1254a .................................................................................. *passim*
    § 1356(m) ............................................................................... *passim*

28 U.S.C.
    § 2401(a) ........................................................................................ 23
    § 2501 ............................................................................................ 23

8 C.F.R.
    § 103.7 ................................................................................. 4, 7, 16
    § 244.6 ............................................................................................ 4

Pub. L. No. 101-649, 104 Stat. 4978 (Nov. 29, 1990) .............. 6, 7, 17, 18
Pub. L. No. 102-232, 105 Stat. 1733 (Dec. 12, 1991) ........................ 6, 18
Pub. L. No. 105-119, 111 Stat. 2440 (Nov. 26, 1997) .................... *passim*
Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002) ........................... 16
Pub. L. No. 108-7, 117 Stat. 11 (Feb. 20, 2003) .................................... 21

63 Fed. Reg. 12979 (Mar. 17, 1998) ..................................... 4, 18, 19
64 Fed. Reg. 524 (Jan. 5, 1999) ............................................................ 2, 3
64 Fed. Reg. 14214-1 (Mar. 9, 2001) ...................................................... 3
72 Fed. Reg. 4888 (Feb. 1, 2007) .......................................................... 23
72 Fed. Reg. 29851 (May 30, 2007) ................................................ 16, 23
72 Fed. Reg. 41888 (Aug. 1, 2007) ........................................................ 16
72 Fed. Reg. 46649 (Aug. 21, 2007) .................................................... 4, 7

v

**FEDERAL LEGISLATIVE MATERIALS**

135 Cong. Rec. H7501-03 (Oct. 25, 1989)..........................................................7
143 Cong. Rec. H7770-02 (Sept. 24, 1997) .....................................................12
143 Cong. Rec. H7786-04 (Sept. 24, 1997) ..............................................12, 13
143 Cong. Rec. H7801-01 (Sept. 24, 1997) .....................................................12

# I.    INTRODUCTION[1]

The issue in this case is straightforward – whether Defendant may, under 8 U.S.C. § 1254a, charge more than $50 in fees as a condition of registering for Temporary Protected Status ("TPS"). Because the plain meaning and legislative history of 8 U.S.C. § 1254a(c)(1)(B) show that Defendant is *not* authorized to charge more than $50, in the form of fingerprinting or biometric services fees, as a condition of registering for TPS, Defendant violates the statute as a matter of law.

Defendant fundamentally confuses the issue.  Contrary to Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment ("Defendant's Briefs"), Plaintiffs are not arguing that Defendant lacks the authority to collect biometric information and an associated fee; rather, Plaintiffs contend that, in the context of TPS, the amount of any such biometric services fees, in conjunction with other fees charged as a condition of registering for TPS, may not exceed $50, as mandated by 8 U.S.C. § 1254a(c)(1)(B).  Defendant also erroneously casts the fingerprinting and biometric services fees as separate and distinguishable from other fees charged as a condition of registering for TPS.  Biometric services fees and other registration fees all fall within the same category – fees charged as a condition of registering for TPS that cannot exceed the total amount of $50.

Additionally, Defendant ignores the plain language of the $50 fee cap in 8 U.S.C. § 1254a(c)(1)(B), choosing instead to rely on generalized fee provisions that do not alter Congress' specific prohibition against charging more than $50 as a condition of TPS registration.  Finally, Defendant's remaining arguments as to waiver, laches, and damages lack any foundation in the law.  As such, the Court should enter judgment that Defendant has violated 8 U.S.C. § 1254a(c)(1)(B) by charging the members of the class in excess of $50 to register or re-register for TPS.

---

[1] Because of the substantial overlap of arguments in Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment, filed on October 2, 2009, in the interest of efficiency, Plaintiffs hereby file one combined Opposition and Reply brief, within the twenty-five page limit under N.D. Cal. Civil Local Rule 7-3(a).

## II.   SUMMARY JUDGMENT IS APPROPRIATE BECAUSE 8 U.S.C. § 1254a(c)(1)(B) CLEARLY CAPS TPS REGISTRATION FEES AT $50.

Defendant does not dispute the material facts set forth in Plaintiffs' Motion for Partial Summary Judgment ("PMSJ") (Dkt. 114) at 8:17-9:19 that demonstrate the Government's liability for violating 8 U.S.C. § 1254a(c)(1)(B).   *See* Def.'s Opp. at 1:22-23 (Dkt. 124).   Specifically, Defendant does not dispute that: (1) Defendant "has required all TPS applicants to submit a $50 fee for initial TPS registration where applicants do not seek and receive a fee waiver"; and (2) Defendant "imposes an additional $80 (formerly $70) fee on TPS registrants and re-registrants (except for those who obtain fee waivers or are under the age of fourteen and do not seek work authorization documentation) for the collection and use of biometric data."   PMSJ at 8:20-21, 9:1-4.   These are the key facts relevant to the summary judgment motions at issue, and they lead to one conclusion — that Defendant has violated 8 U.S.C. § 1254a(c)(1)(B) by charging more than $50 as a condition of TPS registration.   All other disputes (to the extent that there are any) involve questions of statutory interpretation that are appropriate for summary adjudication.[2]   *Forest Conservation Council v. Rosboro Lumber Co.*, 50 F.3d 781, 783 (9th Cir. 1995); *Glaxo Operations UK Ltd. v. Quigg*, 894 F.2d 392, 395 (Fed. Cir. 1990).   As demonstrated below, those issues of statutory interpretation also compel the Court to find Defendant liable for violating section 1254a(c)(1)(B).[3]

---

[2] Plaintiffs do not dispute Defendant's statement of facts in paragraphs 1-5 and 8-15 of its Cross-Motion for Summary Judgment. Def.'s Cross-Mot. at 2:14-4:8, 5:8-8:2 (Dkt. 121). With respect to paragraph 6, Plaintiffs do not dispute the existence of Public Law No. 105-119, but paragraph 6 contains legal analysis of the statute with which Plaintiffs disagree. Paragraph 7, concerning INS' transmittal of fingerprinting regulations to Congress, is not an undisputed fact because Defendant has only raised this "fact" three weeks ago, and Plaintiffs have not had the opportunity to conduct discovery on this issue. Def.'s Cross-Mot. at 5:4-7. However, Plaintiffs do not believe that Defendant's contention is material to its liability for violating section 1254a(c)(1)(B), and even taking Defendant's claim in the light most favorable to Defendant, Plaintiffs are still entitled to partial summary judgment.

[3] The minor factual quibbles Defendant sets forth in its Opposition, Def.'s Opp. at 2:7-16, misstate Plaintiffs' position, are immaterial, and do not contradict the fact that nationals who wish to participate in the TPS program must register for TPS, and must pay excess fees for fingerprinting and biometric services that Defendant imposes as a condition of TPS registration. For example, Defendant claims that Plaintiffs suggest that "defendant only required biometric data, including fingerprints, photographs and signatures underline after April 2004." Def.'s Opp. at 2:7-8 (emphasis in original). Not only do Plaintiffs *not* make that suggestion, but Plaintiffs agree that Defendant has required TPS applicants to submit fingerprinting and biometric services fees prior to April 2004. Similarly nonsensical is Defendant's argument that "plaintiffs state on page 5 of their brief that '[n]ationals from a TPS state must register for the TPS program when their country is initially designated for TPS.' No alien is required to register for TPS." Def.'s Opp. at 2:24-27. The TPS statute itself, 8 U.S.C. § 1254a(c)(1)(A)(iv), states that aliens must register for TPS. In Defendant's Federal Regulations announcing initial TPS designations for Nicaragua, Honduras, and El Salvador, Defendant also states that nationals from a TPS state must register for the TPS program. *See, e.g.*, 64 Fed. Reg. 524, 525 (Jan. 5, 1999) ("[A]pplications for TPS

PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT - CASE NO.: 3:07-CV-4192 TEH

98024-31

**A.**   **8 U.S.C. § 1254a(c)(1)(B) Mandates That Defendant Charge No More Than $50 As a Condition of Registering for TPS.**

      **1.**   **The Plain Meaning of 8 U.S.C. § 1254a(c)(1)(B) Is Unambiguous.**

As discussed in Plaintiffs' Motion for Partial Summary Judgment, the plain meaning of 8 U.S.C. § 1254a(c)(1)(B) is clear: "The Attorney General may require payment of a reasonable fee as a condition of registering [for TPS, but] . . . . [t]he amount of any such fee *shall not exceed $50*" (emphasis added). *See also* PMSJ at 10:23-14:20 (discussing the plain meaning of 8 U.S.C. § 1254a(c)(1)(B)). "If from the plain meaning of the statute congressional intent is clear, that is the end of the matter. . . .  No deference is due to the agency's interpretation unless [the court] find[s] that the plain meaning of the statute's language is ambiguous to the precise matter at issue." *Royal Foods Co. v. RJR Holdings, Inc.*, 252 F.3d 1102, 1106 (9th Cir. 2001); *see also Delverde, SRL v. United States*, 202 F.3d 1360, 1363-66 (Fed. Cir. 2000) (same).  Given Defendant's consistent pattern of charging fees in excess of this statutory cap, this Court should find Defendant liable for violating section 1254a(c)(1)(B) based on the statute's plain meaning.

      Defendant, however, argues that the phrase "condition of registering" in 8 U.S.C. § 1254a(c)(1)(B) is ambiguous and does not include the fee Defendant charges for biometric information that TPS applicants must submit when they apply to register for TPS.  There is no ambiguity here. "[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Schneider v. Chertoff*, 450 F.3d 944, 953 (9th Cir. 2006); *see also White v. United States*, 543 F.3d 1330, 1335 (Fed. Cir. 2008).  Webster's Dictionary defines "condition" as "a premise upon

_____

(continued …)

by nationals of Honduras . . . must be filed . . .");

 64 Fed. Reg. 526, 527 (Jan. 5, 1999) (same); 64 Fed. Reg. 14214-01 (Mar. 9, 2001) (same).  Of course, if an alien from a TPS country does not wish to participate in the TPS program, then logically he or she would not have to register for TPS.  Furthermore, to the extent that Defendant is simply arguing that "TPS permits eligible aliens who had a different immigration status or a pending asylum application at the time of the country's initial designation to file applications after their country of origin is initially designated," Def.'s Opp. at 2:26-28, Plaintiffs do not disagree, but this fact is immaterial to the issue at hand.  Finally, Defendant's argument as to the collateral nature of the employment authorization document ("EAD") fee, Def.'s Opp. at 3:1-12, is both off-point and delves into legal, not factual, arguments as to whether EAD fees can be considered a "condition of registration" under 8 U.S.C. § 1254a(c)(1)(B).  To the extent that Defendant simply claims that the EAD fee is not required for those TPS applicants who do not seek employment authorization, Plaintiffs do not quarrel with this assertion.

3

PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO
DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT - CASE NO.:  3:07-CV-4192 TEH
98024-31

which the fulfillment of an agreement depends" or "something essential to the appearance or occurrence

of something else."  Webster's Ninth New Collegiate Dictionary (1983).  Applying that definition here,

Congress intended that all fees that are a condition of registering, in other words, essential to

registering, for TPS are limited to $50, with the exception of employment authorization documentation

("EAD") fees.  *Schneider*, 450 F.3d at 953; *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1314-

15 (Fed. Cir. 2005) ("We begin with the words of the statute, . . . but may consult dictionaries . . . if

necessary to construe the statute.").  Submitting biometric services fees is, as Defendant has already

conceded, a condition of registering for TPS without which TPS applications will be denied.[4]  Grimes

Decl. Exh. 2 at 3:17-4:3 (Defs.' Resp. to Pls.' Req. for Admis. No. 20) (Dkt. 142).

However, Defendant argues that 8 U.S.C. § 1254a does not relate to fingerprinting or biometric

services fees.  Defendant is mistaken.  Defendant's own agency regulations cite 8 U.S.C. § 1254a as the

basis for its authority to charge for biometric services.  63 Fed. Reg. 12979, 12981-87 (Mar. 17, 1998).[5]

Although 8 U.S.C. § 1254a(c)(1)(B) does not specifically mention the word "fingerprinting fees," it

does not have to; section 1254a(c)(1)(B) already includes a provision for "fees charged as a condition of

registering," and as outlined in the PMSJ (and as conceded by Defendant), fingerprinting or biometric

services fees are a condition of registering for TPS.[6]  *See* PMSJ at 5:7-7:24, 9:1-15, 11:15-13:16;

---

[4] Of course, if TPS applicants submit a fee waiver, or are under the age of fourteen and do not request employment authorization documentation, biometric services fees are not required.  72 Fed. Reg. 46649, 46651 (Aug. 21, 2007); Second Young Decl. at ¶¶ 11, 13, 21 (Dkt. 100-2).

[5] Defendant's citation to the INS' reliance on Public Law No. 105-119 for its fingerprinting fees is unavailing.  Def.'s Cross-Mot. at 5:8-20 (citing 63 Fed. Reg. at 12980).  As noted above, that regulation also specifically cited 8 U.S.C. § 1254a, not Public Law No. 105-119, as the source of its authority to charge fingerprinting fees to *TPS* applicants.  Also unavailing is Defendant's notation that "[i]n the [] March 17, 1998 Federal Register publication, the agency amended its TPS regulation at 8 C.F.R. § 244.6, which 'continues' to cite 8 U.S.C. § 1254a as authority, to refer to the requirement to pay 'fingerprinting fees as provided in § 103.7 of this chapter' in addition to the separate TPS 'filing' fee that the 244.6 regulation continued to require."  Def.'s Cross-Mot. at 5:20-24.  The agency specifically cited 8 U.S.C. § 1254a as authority for the fingerprinting fees required of TPS applicants.  Thus, it does not matter that the agency cross-referenced another regulation pertaining to fingerprinting.

[6] Defendant makes a fundamental misrepresentation when it asserts that "plaintiffs' theory of their case – that the fingerprinting services fee had not been provided for by Congress in the 1990 IMMACT – effectively concedes that the separate fee specific to the subject of Congress's new Government fingerprinting services requirement was for 'expenses not otherwise provided for' and thus authorized specifically by Congress in Pub. L. No. 105-119."  Def.'s Cross-Mot. at 19:8-11.  Defendant appears to be saying that Plaintiffs assert that the fingerprinting services fee was not allowed by Congress in the 1990 IMMACT.  That is incorrect.  Plaintiffs are *not* challenging Defendant's authority to charge fingerprinting services fees generally; Plaintiffs only challenge Defendant's authority to charge such fees to TPS applicants to the extent that such fees, combined with other fees charged as a condition of registration, exceed the $50 fee cap set by 8 U.S.C. § 1254a(c)(1)(B).

1    Velarde Decl. at ¶¶ 5-6 (Dkt. 25); *see also* Oct. 17, 2007 Order at 6:24-25 ("DHS charges the biometrics

2    fee for forms that are required 'as a condition of registering' an alien for TPS.") (Dkt. 40).  Congress'

3    use of the expansive term "fees charged as a condition of registering" logically includes all "fees

4    charged as a condition of registering" for TPS, which would necessarily cover biometric services fees.

5    The absence of the word "fingerprinting" is irrelevant because there is no difference between

6    fingerprinting fees and other fees charged as a condition of registering for TPS; "[b]iometric services

7    fees are plainly part of the fees charged 'as a condition of registering' 'in the manner which the

8    Attorney General' has established."  *See* Feb. 4, 2008 Order at 12:5-7 (Dkt. 68).

9        Furthermore, Defendant erroneously relies on the interpretive tool *noscitur a sociis* to support its

10   argument that section 1254a's fee cap does not concern biometrics.  This doctrine, instead, bolsters the

11   conclusion that biometric services fees fall within the $50 limit for fees charged as a condition of

12   registering for TPS.  "The doctrine of *noscitur a sociis* counsels that words should be understood by the

13   company they keep."  *Microsoft Corp. v. C.I.R.*, 311 F.3d 1178, 1184 (9th Cir. 2002); *Auto-Ordnance*

14   *Corp. v. United States*, 822 F.2d 1566, 1571 (Fed. Cir. 1987).  Here, section 1254a(c)(1)(B) also

15   discusses EAD fees, which the statute includes within the category of TPS registration fees but

16   expressly excepts from the $50 cap:

> The Attorney General may require payment of a reasonable fee as a condition of
> registering an alien under subparagraph (A)(iv) (including providing an alien with an
> "employment authorized" endorsement or other appropriate work permit under this
> section).  The amount of any such fee shall not exceed $50.  In the case of aliens
> registered pursuant to a designation under this section made after July 17, 1991, the
> Attorney General may impose a separate, additional fee for providing an alien with
> documentation of work authorization.

21   8 U.S.C. § 1254a(c)(1)(B).  That express exception of EAD fees shows that the term "fees as a

22   condition of registering" for TPS should be read broadly.  Mandatory biometric services fees (because

23   they are mandatory) are certainly no less "fees as a condition of registering" for TPS than the optional

24   EAD fee.

25       Defendant attempts to skirt the plain meaning of 8 U.S.C. § 1254a(c)(1)(B) by arguing that

26   Congress' express exclusion of EAD fees from the $50 fee cap is irrelevant.  To the contrary, Congress'

27   extra effort to except EAD fees from the $50 cap indicates that it intended to interpret fees charged "as

28   a condition of registration" expansively (*expressio unius est exclusio alterius*).  *Schneider*, 450 F.3d at

5

PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO
DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT - CASE NO.:  3:07-CV-4192 TEH
98024-31

1    954 (where "Congress expressly exempted" one type of activity and "that was the *only* restriction that

2    Congress imposed," Congress unambiguously intended to make that exemption the only exemption

3    from the statute); *Delalat v. Dep't of Air Force*, 557 F.3d 1342, 1344 (Fed. Cir. 2009) (same).

4    The fact that 8 U.S.C. § 1254a(c)(1)(B) originally contained language that expressly incorporated

5    the cost of the EAD fee within the $50 cap only bolsters Plaintiffs' position. *See* Pub. L. No. 101-649

6    § 302(c)(1)(B), 104 Stat. 4978, 5033 (Nov. 29, 1990) ("REGISTRATION FEE. – The Attorney General

7    may require payment of a reasonable fee as a condition of registering an alien under subparagraph (A)(iv)

8    (including providing an alien with an 'employment authorized' endorsement or other appropriate work

9    permit under this section). The amount of any such fee shall not exceed $50."), *amended by* Pub. L. No.

10   102-232, 105 Stat. 1733, 1749 (Dec. 12, 1991). Thus, the express incorporation of the EAD fee in both

11   versions of 8 U.S.C. § 1254a(c)(1)(B) suggests that Congress always intended the term "fee charged as

12   a condition of registering" for TPS to encompass more than what would be strictly called a "registration

13   fee," and more than simply mandatory fees.[7]  As such, the $50 cap on TPS registration fees

14   encompasses fees for fingerprinting and biometric services.

15       **2.    8 U.S.C. § 1254a(c)(3)(C)'s Annual Registration Provision Does Not Authorize
            Defendant to Charge More Than $50 for TPS Registration.**
16

17   The annual registration provision, 8 U.S.C. § 1254a(c)(3)(C), does not authorize Defendant to

18   charge more than the $50 registration fees provided by section 1254a(c)(1)(B).[8]  Defendant claims that,

19   under 8 U.S.C. § 1254a's annual registration provisions, "either there is no $50 limit upon annual

20   registrations, or alternatively, annual registrations are subject to a $50 fee authority because they are

21

22   _____

     [7] Defendant's citation to INS Commissioner Gene McNary's testimony "that the regulation which
23   addressed the work authorization fee had been signed the morning that he testified" has no relevance.
     *See* Def.'s Opp. at 9:5-10. Commissioner McNary's testimony did not concern the EAD fee. Rather, it
24   addressed Congressman John Joseph Moakley's concern as to the high cost of the Salvadoran TPS
     program generally, Commissioner McNary's promise to establish a new fee structure consistent with
     Congress' desire to keep registration fees low, and Commissioner McNary's failure to deliver on that
25   promise. *See* Appendix to Def.'s Opp. at Exh. 2 at p. 2 (Dkt. 125-1). Defendant's citation to
     Commissioner McNary's testimony therefore does not change the fact that, with the exception of EAD
26   fees, all other fees charged as a condition of registering for TPS are capped at $50 under 8 U.S.C.
     § 1254a(c)(1)(B).

27   [8] Defendant assumes that the re-registration Defendant currently requires of TPS registrants and the
     "annual registration" provided by 8 U.S.C. § 1254a(c)(3)(C) are the same, but as discussed in Plaintiffs'
28   Motion for Partial Summary Judgment, they are not. *See* PMSJ at 19:13-20:5. In fact, Defendant has
     no statutory authority to conduct its eighteen-month re-registrations for TPS. *See id.* at 18:19-21:12.

1   also the subject of 1254a(c)(1)(B) authorizing the attorney general to require payment of a fee up to $50

2   as a condition of registration."[9]  Def.'s Opp. at 20:2-4.  As explained in the Plaintiffs' Motion for Partial

3   Summary Judgment, Defendant's position is belied by the statute's plain terms.  The annual registration

4   provision in 8 U.S.C. § 1254a(c)(3)(C) does not have an attendant fee authorization.  PMSJ at 19:5-6.

5   Thus, any fees charged by Defendant as a condition of registering for TPS would still be controlled by

6   the fee authorization provision in 8 U.S.C. § 1254a(c)(1)(B).  Furthermore, interpreting the annual

7   registration provision as imposing "no $50 limit upon annual registrations," Def.'s Opp. at 20:2-3, is

8   absurd.  Such an interpretation would mean that Defendant, though limited to a $50 fee cap in the initial

9   registration process, would have carte blanche to charge as much as it desires to TPS re-registrants at

10  any later time.  *Patagonia Corp. v. Bd. of Governors of Fed. Reserve Sys.*, 517 F.2d 803, 813 (9th Cir.

11  1975) ("Interpretations that nullify statutory provisions or render them superfluous are, and should be,

12  disfavored."); *see also Walther v. Sec'y of Health & Human Servs.*, 485 F.3d 1146, 1150 (Fed. Cir. 2007).

13      Defendant's baseless assertion to the contrary does nothing to detract from Plaintiffs' showing,

14  in Plaintiffs' Motion for Partial Summary Judgment, 18:19-21:12, that the plain language of 8 U.S.C.

15  § 1254a puts a lifetime per person $50 fee cap on TPS registration fees.  The legislative history also

16  shows that the $50 fee cap language was intended to mean that TPS registrants will only "be required to

17  register and pay a *one-time* registration fee of up to $50 to defray adjudication costs."  135 Cong. Rec.

18  H7501-03, H7512 (Oct. 25, 1989) (emphasis added).[10]

19      Similarly, as previously discussed in Plaintiffs' Motion for Partial Summary Judgment, 22:11-

20  23:7, Defendant itself interprets the $50 fee cap as a total cap on all registration fees regardless of the

21  number of subsequent re-registrations.  8 C.F.R. § 103.7(b)(1); 72 Fed. Reg. 46649, 46650 (Aug. 21,

---

[9] Defendant makes the totally illogical assertion that TPS registration fees were only capped for the initial registration period because after initial registration, those with TPS could "legally [] work and earn money to pay the fees required annually to continue TPS registration," Def.'s Cross-Mot. at 22:24-27. As Defendant admits, obtaining EAD is optional.  Thus, it makes no sense for Defendant to assume that all TPS applicants would pay the EAD fee, gain lawful employment, and be able to afford subsequent re-registration fees.  Defendant cites no authority to support these assumptions.

[10] Although Defendant claims that this statement is not persuasive because House Bill 45 was not enacted, the exact same fee cap language in House Bill 45 was subsumed and enacted in the 1990 IMMACT.  *Compare* 135 Cong. Rec. H7501-03, H7511 *with* Pub. L. No. 101-649 § 302(c)(1)(B), 104 Stat. 4978, 5033 (Nov. 29, 1990).  *See Wolfchild v. United States*, 559 F.3d 1228, 1252, n.10 (Fed. Cir. 2009) (relying on legislative history from an earlier bill that was not enacted because the language in the Act that ultimately passed was nearly identical); *State of Ariz. v. Atchison*, 656 F.2d 398, 404 n.6 (9th Cir. 1981) (same).

2007); Velarde Decl. at ¶ 5.  That consistent agency interpretation, which comports with the plain meaning of the statute, should be given *Chevron* deference to the extent that there is any ambiguity on this issue.  *Chevron, U.S.A., Inc. v. Natural Res. Def. Council Inc.*, 467 U.S. 837, 843 (1984) ("If the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.") (internal quotation and citation omitted).  Defendant's new, contrary interpretation of the annual registration provision is not entitled to *Chevron* deference, not only because it conflicts with section 1254a, but also because Defendant cannot decide what its interpretation of the annual registration provision is.  *See* Def.'s Opp. at 20:2-4; *INS v. Cardoza-Fonseca*, 480 U.S. 421, 447 n.30 (1987) ("An agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is entitled to considerably less deference than a consistently held agency view."); *Natural Res. Def. Council v. U.S. Envtl. Prot. Agency*, 526 F.3d 591, 605 (9th Cir. 2008) (same); *Gose v. U.S. Postal Serv.*, 451 F.3d 831, 837 (Fed. Cir. 2006) ("An 'interpretation' is [] not a position advanced by the agency for the first time [] in a court of review.  Such an 'interpretation' is then no more than a litigation position to which no deference is due.").

### 3.  The Legislative History of 8 U.S.C. § 1254a(c)(1)(B) Demonstrates Congress' Intent to Limit TPS Registration Fees to the $50 Fee Cap.

The legislative history of 8 U.S.C. § 1254a(c)(1)(B) shows that Congress did not intend to allow more than $50 to be charged for TPS registration.  *See generally* PMSJ at 14:3-17:4.  "In reviewing an agency's statutory construction, we must reject those constructions that are contrary to clear congressional intent or that frustrate the policy that congress sought to implement."  *Schneider*, 450 F.3d at 952; *Hoechst Aktiengesellschaft v. Quigg*, 917 F.2d 522, 526 (Fed. Cir. 1990).

Defendant's reliance on Congress' silence despite Defendant's imposition of additional biometric services fees contravenes the basic principle of statutory construction that "it is at best treacherous to find in congressional silence alone the adoption of a controlling rule of law."  *Boys Market, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 241 (1970) (quoting *Girouard v. United States*, 328 U.S. 61, 69 (1946)); *Schism v. United States*, 316 F.3d 1259, 1295 (Fed. Cir. 2002); *CHW W. Bay v. Thompson*, 246 F.3d 1218, 1224 (9th Cir. 2001).  Additionally, Congress is not required to act

1    each time a statute is interpreted erroneously; failure to act is not the equivalent of legislative approval.

2    *Kay v. FCC*, 443 F.2d 638, 646 (D.C. Cir. 1970).

3         Congressional silence, moreover, is not persuasive where, as here, agency regulations conflict

4    with the statutory language at issue.[11] *Brown v. Gardner*, 513 U.S. 115, 121 (1994) ("[C]ongressional

5    silence lacks persuasive significance, particularly where administrative regulations are inconsistent with

6    the controlling statute") (internal quotations and citations omitted); *Schneider*, 450 F.3d at 958.  As

7    explained above, the plain meaning of 8 U.S.C. § 1254a(c)(1)(B) conflicts with Defendant's agency

8    regulations, so Congress' "silence" in regard to those regulations is not entitled to any persuasive

9    authority.

10        Furthermore, Defendant presents no evidence that Congress was aware of the conflict between 8

11   U.S.C. § 1254a(c)(1)(B) and Defendant's regulations.[12]  The declaration of Stephen Tarragon simply

12   states that the INS transmitted interim and final rules to Congress.  Declaration of Stephen R. Tarragon

13   (Dkt. 122-2) at ¶¶ 4-6, 11-12.  It does not state that he or anyone else brought 8 U.S.C.

14   § 1254a(c)(1)(B)'s fee cap "clearly," if at all, to Congress' attention when he transmitted to Congress

15   the regulations that conflict with the fee cap.  *Id.*[13]  As such, it cannot be assumed that Congress

16

---

17   [11] *Rodriguez v. Secretary of Health & Human Services*, 856 F.2d 338 (1st Cir. 1988), cited by Defendant,
     cuts against Defendant's position.  The *Rodriguez* court noted that Congress should "know that *in the*

18   *absence of contrary legislation*, the regulation would control."  856 F.2d at 341 (emphasis added).
     Thus, *Rodriguez* repeats the basic principle that Congressional silence is entitled to no weight where the

19   agency regulations contradict the enacted legislation.  Similarly, *J.H. Rutter Rex Manufacturing Co. v.
     United States*, 706 F.2d 702 (5th Cir. 1983), simply does not support Defendant's position.  Def.'s Cross-

20   Mot. at 15:10-14; Def.'s Opp. at 15:11-15.  Rather, the case provides that "[i]n determining whether a
     particular regulation carries out the Congressional mandate in a proper manner, we look to see whether

21   the regulation harmonizes with the plain language of the statute, its origin, and its purpose."  706 F.2d at
     706.  In *Contract Management, Inc. v. Rumsfeld*, 291 F. Supp. 2d 1166 (D. Haw. 2003), there was no

22   conflict between the statute and the agency regulations.  The court, noting that there was no conflict and
     that the agency regulation was a reasonable interpretation, chose to defer to the agency interpretation.

23   Defendant's citation to *Red Lion Broadcasting Co. v. F.C.C.*, 395 U.S. 367, 381 (1969), is similarly
     inapposite because the regulations at issue fit within the plain language of the authorizing statute.  706

24   F.2d at 1173-74.  That is not the case here where the plain language of the statute, its origin, and its
     purpose all contradict Defendant's fee regulations.  Defendant's fee regulations, therefore, violate the
     express terms of 8 U.S.C. § 1254a(c)(1)(B).

25   [12] Defendant's citation to the Office of the Inspector General Inspection Report dated February 1994
     ("OIG Report") (Dkt. 122-2, Exh. 4) does not demonstrate congressional notice.  *See* Def.'s Cross-Mot.

26   at 4:17-23.  That report, which Defendant admits was not even read into the congressional record during
     the House Bill 2267 hearings, does not discuss the fees that TPS applicants pay as a condition of
     registration.  Rather, it merely lists TPS applications, along with applications for asylum and refugee

27   status, as a type of application for which the INS requires Form FD-258 fingerprint cards.  OIG Report
     at 4.

28   [13] In the cases cited by Defendant, Congress had considerably more notice of the regulations than in the
     case at hand.  In *J.H. Rutter Rex Manufacturing*, Congress specifically considered the regulation and
     sought and relied on testimony from the relevant government official on this question.  706 F.2d at 710-

1 endorsed Defendant's regulations imposing excess fees on TPS registrants because "courts are loath to

2 presume congressional endorsement unless the issue plainly has been the subject of congressional

3 attention." *See Butterbaugh v. Dep't of Justice*, 336 F.3d 1332, 1342-43 (Fed. Cir. 2003) (finding

4 insufficient congressional understanding of or acquiescence to the agency position where the commission

5 report disclosed the issue at hand, but "there [wa]s nothing in any of the legislative history demonstrating

6 that Congress, individually or collectively, knew of or was concerned with this aspect of the [] system.");

7 *Northwest Envtl. Advocates v. U.S. Envtl. Prot. Agency*, 537 F.3d 1006, 1022 (9th Cir. 2008) ("*Absent*

8 *[] overwhelming evidence of acquiescence, we are loath to replace the plain text and original*

9 *understanding of a statute with an amended agency interpretation.*") (emphasis in original).  Even if

10 Congress had some knowledge of Defendant's fee structure, "congressional cognizance . . . does not

11 militate in favor of an assumption that Congress affirmatively *intended*" to allow Defendant to charge

12 TPS registrants fingerprint or biometric services fees in excess of the $50 cap of 8 U.S.C.

13 § 1254a(c)(1)(B).  *CHW W. Bay*, 246 F.3d at 1224-25 (emphasis in original); *see also Gardner v.*

14 *Brown*, 5 F.3d 1456, 1464 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994) ("[e]ven if . . . in this case

15 Congress could be presumed to be aware of the [] regulatory interpretations of the statute," there was no

16 showing of Congressional intent to approve the regulations in question).

17      Based on Defendant's line of reasoning, all agency regulations are conclusively legal because

18 Congress is imputed with notice of all agency regulations.  That kind of perverse logic turns basic

19 *Chevron* deference on its head.  In reality, where, as here, the agency interpretation conflicts with the

20

21

---

(continued …)

22 11. Here, Congress was never made explicitly aware of the regulation Defendant uses to charge more
than $50 as a condition of TPS registration.  Similarly, in *Kay*, 443 F.2d at 638, 644-47, the

23 Congressional record showed that Congress had actually reviewed rulings made by the Commission
under the statute in question, and the Commission was questioned by the Senate on this precise issue.

24 In *United States v. Rutherford*, 442 U.S. 544 (1979), the court specifically noted that "it may not be
always be realistic to infer approval of a[n] . . . administrative interpretation from congressional silence

25 alone," 442 U.S. at 554 n.10.  *Rutherford* only held that deference to an agency construction is
appropriate where the agency construction "has been fully brought to the attention of the public and the

26 Congress."  *Id.* at 554.  There, deference was warranted because the precise issue at hand "ha[d] been a
frequent subject of political debate," and Congressional awareness of the agency's policies was evident

27 as it was discussed in Senate Subcommittee hearings on the Commissioner's ruling.  *Id.* at 554 n.10.
Finally, Defendant's citation to *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380 (1947), a case in

28 which a private party was found to have notice of federal regulations about federal crop insurance, is
inapposite.  The case did not involve a situation, as here, in which the federal agency promulgated
regulations that contradicted Congress' express statutory provisions.

1    plain meaning of the statute, *Chevron* deference is impossible. *Mobil Oil Corp. v. Higginbotham*, 436

2    U.S. 618, 625 (1978) ("There is a basic difference between filling a gap left by Congress' silence and

3    rewriting rules that Congress has affirmatively and specifically enacted."); *Schism*, 316 F.3d at 1285.

4    "Although the Secretary [of DHS] may believe that Congress made a mistake by passing the law as it

5    did, the Secretary cannot re-write the law. . . .  The Secretary must defer to the supremacy of Congress's

6    legislative enactments." *Schneider*, 450 F.3d at 958.  Thus, because in this case "(1) the plain language

7    of the statute makes Congress's intent clear; (2) a contrary conclusion would render [that] section . . .

8    mere surplusage; and (3) Congress expressly excluded" the EAD fees from the $50 cap, "Congress

9    expressed a clear intent on the issue in question" and agency deference is unwarranted. *Id.* at 953.

10   **B.**    **Public Law No. 105-119 Does Not Authorize Defendant to Charge More Than $50 in Fees As a Condition of Registering for TPS.**

11

12         Given that it cannot dispute that 8 U.S.C. § 1254a(c)(1)(B) expressly prevents it from charging

13   fees in excess of $50 as a condition of TPS registration, Defendant spends great effort trying to distract

14   the Court's attention from the statute's plain language by focusing instead on an appropriations bill

15   passed in 1997 (Pub. L. No. 105-119).  Contrary to Defendant's argument, however, the Department of

16   Commerce, Justice, and State, The Judiciary, and Related Agencies Appropriations Act of 1998, Pub. L.

17   No. 105-119, 111 Stat. 2440 1997, did not authorize Defendant to charge more than $50, in the form of

18   biometric services fees, as a condition of registering for TPS.[14]  *See* Feb. 4, 2008 Order (Dkt. 68) at

19   13:6-12, 16-17, 14:3-13; Oct. 17, 2007 Order (Dkt. 40) at 8:4-9:8.  Public Law No. 105-119 provided

20   that "for the purpose of conducting criminal background checks on applications for any benefit under

21   the Immigration and Nationality Act," the INS could no longer accept "any FD-258 fingerprint card

22   which has been prepared by or received from" private vendors.[15]  111 Stat. 2440, 2449.  Instead,

23   _____

24   [14] As the title indicates, Public Law No. 105-119 was an appropriations bill, not an amendment to 8 U.S.C. § 1254a.

25   [15] Public Law No. 105-119 appropriated money for the INS, and prohibited it from using any of the
26   funds to adjudicate a benefit application that required a background check, unless the fingerprint chart was prepared by the INS or another authorized agency.  It simply authorized gathering a fee *in general* for rolling a person's fingerprints over the FD-258 fingerprint card.  111 Stat. at 2448 ("[A]gencies may collect and retain a fee for *fingerprinting* services.") (emphasis added).  Public Law No. 105-119 does
27   not authorize Defendant to charge a fee for using, storing, or the FBI's processing of fingerprints. *See* 111 Stat. at 2448-49.  It also does not authorize the INS to charge for collecting, using, or storing signatures or photographs, all of which is part of the $80 biometric services fee.  Nor does it authorize
28   fees for the performance of background checks.  Defendant's briefs avoid a clear definition of "finger-

1   fingerprint cards could only be prepared by state and local law enforcement agencies, United States

2   consular offices, or the INS.  *Id.* at 2448.  Public Law No. 105-119 also provided that "agencies may

3   collect and retain a fee for fingerprinting services."  *Id.*  It did not authorize the INS to collect extra fees

4   for either fingerprinting or biometrics services as a condition of TPS registration, beyond the $50

5   lifetime cap.  It therefore has no bearing on Defendant's liability in this case.

### 1.   Public Law No. 105-119 Does Not Alter 8 U.S.C. § 1254a(c)(1)(B)'s $50 Cap on TPS Registration Fees, Including Biometric Services Fees.

8   Any fee authority granted by Pub. Law No. 105-119 is limited by the TPS-specific statute, 8

9   U.S.C. § 1254a(c)(1)(B), capping fees charged as a condition of registration at $50.[16]  *Morton v. Mancari*,

10  417 U.S. 535, 550-51 (1974) ("Where there is no clear intention otherwise, a specific statute will not be

11  controlled or nullified by a general one, regardless of the priority of enactment."); *N.L.R.B. v. A-Plus*

12  *Roofing, Inc.*, 39 F.3d 1410, 1415 (9th Cir. 1994); *Neptune Mut. Ass'n, Ltd. of Bermuda v. United States*,

13  862 F.2d 1546, 1552 (Fed. Cir. 1988).  Because 8 U.S.C. § 1254a(c)(1)(B) is the only statute that

14  addresses TPS registration fees, it is the specific statute controlling Defendant's fee authority with

15  respect to TPS.

16  Defendant, however, flips this principle on its head.  Defendant asserts that Public Law No. 105-

17  119 is the specific provision, 8 U.S.C. § 1254a is the general one, and because Congress did not

18  specifically exempt TPS applicants from Public Law No. 105-119, Public Law No. 105-119 allows

19  Defendant to charge fees beyond § 1254a(c)(1)(B)'s $50 fee cap.  Defendant is wrong.  It is of no

20  moment that Congress did not specifically mention or exempt TPS applicants from paying fingerprinting

21  fees.  Congress, in passing Pub. Law No. 105-119, was primarily concerned about applications for

22  *citizenship and naturalization*, not applicants for other types of immigration benefits, such as asylum

23  and TPS.[17]  Public Law No. 105-119, in addition to not specifically mentioning TPS, also does not

---

(continued …)

printing services" as used in Public Law No. 105-119 in order to obscure the law's limited purpose.

[16] TPS is unique in the INA because it is the only benefit statute that includes a fee cap.

[17] *See, e.g.*, Pub. L. No. 105-119, 111 Stat. at 2448 ("[N]one of the funds appropriated or otherwise made available to the Immigration and Naturalization Service shall be used to complete adjudication of an application for *naturalization* . . ."); 143 Cong. Rec. H7801-01, H7802 (Sept. 24, 1997) (Congressman Hal Rogers focusing on "fingerprint taking for the purpose of becoming an American

12

PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT - CASE NO.:  3:07-CV-4192 TEH

98024-31

include a specific exemption for asylees and other immigrants applying for humanitarian benefits.  That is because, like the fee cap for TPS registrants in 8 U.S.C. § 1254a, Congress specifically authorized adjudication and naturalization services free of charge to asylees and other immigrants for humanitarian reasons.  *See* 8 U.S.C. § 1356(m).  Thus, Congress' failure to mention TPS is irrelevant.

Additionally, Plaintiffs do not contend that Congress needed to exempt TPS applicants from paying fingerprinting fees altogether.  Rather, under 8 U.S.C. § 1254a(c)(1)(B), Congress authorized Defendant to charge no more than $50 in fees, including fingerprinting fees, as a condition of TPS registration.  Defendant's claim that Public Law No. 105-119 authorizes Defendant to exact additional fingerprinting fees above the $50 statutory fee cap "would render [the] statutory language [in 8 U.S.C. § 1254a(c)(1)(B)] surplusage."  Feb. 4, 2008 Order (Dkt. 68) at 15:17-18.  *See also Patagonia*, 517 F.2d at 813 ("Interpretations that nullify statutory provisions or render them superfluous are, and should be, disfavored."); *Walther*, 485 F.3d at 1150.

Thus, Public Law No. 105-119, which established the Government's "need to collect expensive [fingerprint cards,] does not make [Defendant's] strained interpretation of the statute any more reasonable, or give it license to ignore [8 U.S.C. § 1254a's] plain meaning."[18] Oct. 17, 2007 Order (Dkt. 40) at 9:1-3 (rejecting Pub. L. No. 105-119 as implicitly granting Defendant authority to charge biometric services fees as a condition of TPS registration); *see also* Feb. 4, 2008 Order (Dkt. 68) at 16-17 ("None of these statutes [including Pub. L. No. 105-119] either shows Congressional intent to allow

---

(continued …)

*citizen*");143 Cong. Rec. H7786-04, H7795 (Sept. 24, 1997) (Congressman Mark Souder citing a report by the Justice Department that "stated that because of the persistent problems in checking fingerprints of *citizen* applicants against FBI criminal history records, 'we cannot provide assurances that INS is not continuing to incorrectly *naturalize* aliens without disqualifying conditions.'") (emphasis added); 143 Cong. Rec. H7770-02, H7771 (Sept. 24, 1997) (Congressman Rogers commenting, "We provide $25 million to restore integrity to the *naturalization* process, ending the fingerprint scam that has contributed to felons receiving the most precious grant that we have, *citizenship* in the United States.") (emphasis added); *id.* H7786 (Congressman Smith commenting, "The bill [] recognizes and responds to the serious problems within INS's *naturalization* program….") (emphasis added).

[18] The "expense" Public Law No. 105-119 addresses is the cost of preparing the fingerprint chart and accounting for the money the INS received.  Defendant's motion is misleading in that it suggests that the fingerprint expense with which Congress was concerned included the INS's expenses for conducting background checks.  That is simply incorrect.  The expense of determining an alien's eligibility for a benefit is reflected in the application's filing fee, $50 for TPS, and Public Law 105-119 did not change that basic fact.  That the expense of conducting background checks is not at issue is shown by the law's specification that agencies other than the INS could complete the fingerprint card and charge a fee for the service.  Pub. L. No. 105-119, 111 Stat. at 2448.  Those same agencies could not conduct background checks for the INS.

---

13

PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT - CASE NO.:  3:07-CV-4192 TEH

98024-31

1  additional fees for TPS applicants or creates ambiguity in § 1254a(c)(1)(B).").  In other words, Public

2  Law No. 105-119's mandate that Defendant no longer accept fingerprints from private vendors did not

3  give Defendant license to ignore the plain meaning of the earlier cap of $50 for those fees charged as a

4  condition of registering for TPS.  8 U.S.C. § 1254a(c)(1)(B).

5       To the extent that Defendant argues that Public Law No. 105-119 impliedly repealed 8 U.S.C.

6  § 1254a(c)(1)(B), Plaintiffs note that implied repeals are disfavored.  *Rodriguez v. United States*, 480

7  U.S. 522, 524 (1987) ("It is well settled [] that repeals by implication are not favored . . . and will not be

8  found unless an intent to repeal is clear and manifest.") (internal quotations omitted); *Hanlin v. United*

9  *States*, 214 F.3d 1319, 1321 (Fed. Cir. 2000) (same); *Kenai Peninsula Borough v. State of Alaska*, 612

10 F.2d 1210, 1214 (9th Cir. 1980) (same).  "[T]he fact that Congress passed a law allowing the agency to

11 collect a [fingerprinting] fee without amending § 1254a(c)(1)(B) – when it *did* amend the statute to

12 allow a fee for shows, if anything, an intent to keep the $50.00 cap in place."[19]  Feb. 4, 2008 Order (Dkt.

13 68) at 14:9-13.  *Markham v. Cabell*, 326 U.S. 404, 411 (1945) ("[T]he normal assumption is that where

14 Congress amends only one section of a law, leaving another untouched, the two were designed to

15 function as parts of an integrated whole."); *Fugere v. Derwinski*, 972 F.2d 331, 336 (Fed. Cir. 1992);

16 *United States v. Hansen*, 264 F.2d 540, 543 n.3 (9th Cir. 1958) (same).

17       Moreover, Public Law 105-119 and section 1254a(c)(1)(B) may be reconciled by finding that

18 Defendant is allowed to charge fingerprinting fees, but in the context of TPS, those fees, in addition to

19 other fees charged as a condition of registration, may not exceed the $50 total fee cap.  Further, to the

20 extent those fees are insufficient to cover the full cost of administration, Congress, through 8 U.S.C.

21 § 1356(m), allows the costs to be passed along to other programs.  *See Food & Drug Admin. v. Brown*

22 *& Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("A court must [] interpret the statute 'as a

23 symmetrical and coherent regulatory scheme,' . . . and 'fit, if possible, all parts into an harmonious

24 whole . . .'"); *Freeman v. Gonzales*, 444 F.3d 1031, 1039 (9th Cir. 2006); *Witco Chem. Corp. v. United*

25

26 _____
[19] Defendant's argument that "Congress's new Pub. L. No. 105-119 fee authority would not necessarily
present any new additional cost to aliens seeking to register for TPS because they already were
responsible for providing, at their own expense, biometric identification data" also misses the mark.

27 Def.'s Opp. at 11:6-9.  How much TPS applicants have paid third parties to prepare their TPS forms is
irrelevant.  The issue here is not *whether* Defendant may charge for fingerprinting but rather *how much*

28 Defendant was authorized to charge as a condition of registering for TPS.  The answer is $50.

1   *States*, 742 F.2d 615, 623 (Fed. Cir. 1984).  Thus, regardless of Public Law No. 105-119, 8 U.S.C.

2   § 1254a(c)(1)(B) mandates that all fees, including fingerprinting fees, charged "as a condition of

3   registering" for TPS "shall not exceed $50."

4        **2.**     **The Language "For Expenses, Not Otherwise Provided for" in Public Law No. 105-**

5               **119 Does Not Relate to Defendant's Fee Authority.**

6        Defendant relies on the language "[f]or expenses, not otherwise provided for" in Public Law No.

7   105-119 to support its position that Public Law No. 105-119 gives it unbridled authority to charge

8   unlimited fingerprinting fees to applicants for TPS and other humanitarian immigration benefits.

9   However, Public Law No. 105-119 was an appropriations act, and Defendant took the phrase "[f]or

10   expenses, not otherwise provided for" completely out of context.  The statute actually reads:

11        Be it enacted by the Senate and House of Representatives . . . , That the following sums
           are appropriated, out of any money in the Treasury not otherwise appropriated, for the

12        fiscal year ending September 30, 1998, and for other purposes, namely: . . . . *For
           expenses, not otherwise provided for*, necessary for the administration and enforcement

13        of the laws relating to immigration, naturalization, and alien registration . . .

14   111 Stat. 2440, 2447 (emphasis added).  The "expenses, not otherwise provided for" language, read in

15   context, refers not to Defendant's fee authority but to the federal appropriations that would be made to

16   the INS during the 1998 fiscal year.[20]

17        Even assuming that the "expenses, not otherwise provided for" language addresses Defendant's

18   fee authority (which it does not), this language does not override Congress' specific proscription against

19   charging fees of $50 as a condition of registering for TPS.  "For expenses, not otherwise provided for" is

20   general language whereas 8 U.S.C. § 1254a(c)(1)(B)'s mandate that "the amount of any such fee [charged

21   as a condition of registering for TPS] shall not exceed $50" is specific.  Public Law No. 105-119

22   authorized the appropriation of federal funds "[f]or expenses, not otherwise provided for" to fund such

23   expenses as police-type motor vehicles, aircrafts, immigration enforcement research, and care and

24

25

---

26   [20] "It is also telling that DHS itself has never before interpreted" the language "[f]or expenses, not
     otherwise provided for" "as superceding § 1254a(c)(1)(B)."  Feb. 4, 2008 Order at 18:23-27 (Dkt. 68).

27   This unprecedented new argument is a position assumed for the purpose of litigation and not entitled to
     agency deference.  *Cardoza-Fonseca*, 480 U.S. at 447 n.30; *Gose*, 451 F.3d at 838 ("An 'interpretation'

28   is [] not a position advanced by the agency for the first time [] in a court of review.  Such an
     'interpretation' is then no more than a litigation position to which no deference is due.").

1   housing for Federal detainees.  111 Stat. at 2447-48.  In short, Public Law No. 105-119 could not be

2   more general.

3        As Defendant concedes, "general and specific provisions, in apparent contradiction, whether in

4   the same or different statutes, and without regard to the priority of enactment, may subsist together, the

5   specific qualifying and supplying exceptions to the general."  Def.'s Opp. at 6:12-14 (quoting *United*

6   *States v. Navarro*, 160 F.3d 1254, 1256-57 (9th Cir. 1998)); *see also Neptune*, 862 F.2d at 1552.  Any

7   apparent contradiction between 8 U.S.C. § 1254a(c)(1)(B) and Public Law No. 105-119 may be

8   resolved by allowing Defendant to charge fingerprinting fees as a condition of TPS registration to the

9   extent that such fees do not rise above the $50 cap set by section 1254a(c)(1)(B), and to recoup any

10  excess costs not covered by the $50 fee by passing them along to other immigration programs under 8

11  U.S.C. § 1356(m).

12      **3.   Despite Public Law No. 105-119, Biometric Services Fees Are Required by the
             "Attorney General" and Violate 8 U.S.C. § 1254a(c)(1)(B).**

13

14       Defendant argues that because Congress – not the Attorney General – authorized fingerprinting

15  fees in Public Law No. 105-119, the TPS statute, 8 U.S.C. § 1254a(c)(1)(B), which limits the fees that

16  the "Attorney General" may charge as a condition of registering for TPS, does not govern fingerprinting

17  fees.  However, Defendant's distinction between fees set by Congress and those required by the

18  Attorney General is a red herring.  8 U.S.C. § 1254a(c)(1)(B) states: "The Attorney General may require

19  payment of a reasonable fee as a condition of registering" for TPS.  Pursuant to the Homeland Security

20  Act of 2002, the Attorney General's authority and responsibilities for the TPS program were transferred

21  to the Secretary of Homeland Security.  6 U.S.C. § 271; Pub. L. No. 107-296, 116 Stat. 2135 (2002);

22  *see also* Velarde Decl. at ¶ 1 (Dkt. 25).  The Attorney General [now the Secretary of Homeland

23  Security] sets the types and amounts of fees TPS applicants must pay.  *See, e.g.*, 8 C.F.R. § 103.7(b)(1)

24  (Jan. 16, 2009); 72 Fed. Reg. 41888 (Aug. 1, 2007); 72 Fed. Reg. 29851, 29854 (May 30, 2007);

25  Grimes Decl. Exh. 2 at 3:23-25 (Def.'s Resp. to Pls.' Req. for Admis. No. 20) (Dkt. 114-2) ("[S]ince

26  April 30, 2004, the United States Citizenship and Immigration Services (USCIS) prescribed biometric

27  fees for certain immigration benefits.").  The fact that Congress, through Public Law No. 105-119,

28  authorized Defendant, as well as state and local law enforcement agencies, to charge for fingerprinting

1   does not change the fact that Defendant (not Congress) requires payment of biometric services fees as a

2   condition of registering for TPS and sets the amount required at $80.  Defendant's biometric fee

3   requirement violates the fee limits set by 8 U.S.C. § 1254a(c)(1)(B).

4       Moreover, the entire TPS program was mandated by Congress, with the authority to set fees

5   related to TPS registration delegated to the Attorney General within the confines of the $50 cap set by 8

6   U.S.C. § 1254a(c)(1)(B).  With respect to 8 U.S.C. § 1254a(c)(1)(B)'s allowance that "[t]he Attorney

7   General may require payment of a reasonable fee as a condition of registering" for TPS, there is no

8   practical difference in terms of the source of that authority between the current $50 filing fee set by the

9   Attorney General and the current $80 biometric services fee set by the Attorney General.  Defendant's

10   attempt to confuse the issue by focusing exclusively on Public Law No. 105-119 does not prevent the

11   fingerprinting fee from falling within the $50 fee cap in 8 U.S.C. § 1254a(c)(1)(B).

### 4. <u>Changed Circumstances Do Not Nullify 8 U.S.C. § 1254a(c)(1)(B)'s $50 Cap on Fees Charged As a Condition of TPS Registration.</u>

14       Defendant argues that because Public Law No. 105-119 and its attendant requirement that

15   fingerprint cards be provided only by certain governmental agencies were not in existence when 8

16   U.S.C. § 1254a(c)(1)(B) was enacted, section 1254a(c)(1)(B) could not possibly govern the biometric

17   services fees Defendant charges as a condition of TPS registration.  This argument ignores the fact that

18   statutes may govern things not in existence at the time of enactment.  *See West v. Gibson*, 527 U.S. 212,

19   218 (1999) ("Words in statutes can enlarge or contract their scope as other changes, in law or in the

20   world, require their application to new instances or make old applications anachronistic."); *State of*

21   *Idaho v. Hodel*, 814 F.2d 1288 (9th Cir. 1987) (same).

22       Congress could have easily changed 8 U.S.C. § 1254a(c)(1)(B) to allow for additional fees had it

23   intended to.  *United States v. Corey*, 232 F.3d 1166, 1192 (9th Cir. 2000) ("Congress knew how to

24   [change its legislation] when it wanted to, and its failure to do so . . . is telling."); *Butterbaugh*, 336 F.3d

25   at 1343 (same).  For instance, Congress could have, in the face of increasing costs of fingerprint

26   collection caused by Pubic Law No. 105-119, amended 8 U.S.C. § 1254a(c)(1)(B) to allow for an

27   additional fee for biometric services.  *See* Oct. 17, 2007 Order at 9:3-4 (Dkt. 40).  Congress obviously

28   knew how to amend the statute, as it expressly amended 8 U.S.C. § 1254a(c)(1)(B) to allow for an

1  additional fee for employment authorization documentation.  *See* Pub. L. No. 101-649 § 302(c)(1)(B),

2  104 Stat. 4978, 5033 (Nov. 29, 1990), *amended by* Pub. L. No. 102-232, 105 Stat. 1733, 1749 (Dec. 12,

3  1991).  Similarly, Congress adjusted for changed circumstances in the original and slightly different

4  TPS program for nationals of El Salvador in 1990 by authorizing the Attorney General to require

5  payment of a "reasonable fee" "sufficient to cover the costs of administration."  Immigration Act of

6  1990 § 303(b)(2), Pub. L. No. 101-649, 104 Stat. 4978, 5037 (Nov. 29, 1990); *see also* Oct. 17, 2007

7  Order at 9:3-6 (Dkt 40).  Congress has taken no similar action to amend the TPS statute to authorize the

8  Government to charge more than $50 in fees as a condition of TPS registration.

9       **5.**  ***Chevron* Deference for Defendant's Claim That Public Law No. 105-119 Authorizes it to Charge More Than $50 for TPS Registration Is Unwarranted.**

10

11       No *Chevron* deference is warranted for Defendant's claim that Public Law No. 105-119 allows

12  Defendant to charge more than $50, in the form of biometric services fees, as a condition of registering

13  for TPS.  Here, the operative statute is not Public Law No. 105-119 but 8 U.S.C. § 1254a(c)(1)(B).

14  Section 1254a(c)(1)(B) is the statute that authorizes Defendant to charge fees to TPS registrants and, as

15  Defendant has maintained in its public agency regulations, the source of its authority to charge fees to

16  TPS applicants.  *See* 63 Fed. Reg. 12979, 12981-87 (Mar. 17, 1998) (citing 8 U.S.C. § 1254a as the

17  authority for charging fingerprinting fees to TPS applicants).  That statute caps the total fee that can be

18  charged for TPS registration, including attendant fingerprinting or biometric services fees, at $50.

19       Defendant's new emphasis (after two years of litigation) on its "agency interpretation" that

20  Public Law No. 105-119 authorizes Defendant to charge more than $50, in the form of biometric

21  services fees, as a condition of registering for TPS is not credible because it has been adopted for the

22  purposes of litigation.  Although Defendant now claims that Public Law 105-119 is the source of its

23  authority to charge additional biometric services fees, Defendant has at other times maintained in its

24  public agency regulations that 8 U.S.C. § 1254a(c)(1)(B) is the source of its authority.  63 Fed. Reg. at

25  12981-87.[21]  In Defendant's first effort in this case to justify its excess fee charges, its Opposition to

26

27

---

28  [21] Even Defendant concedes that USCIS/DHS believes that section 1254a is the source of its authority to charge fingerprinting/biometric services fees.  Def.'s Opp. at 19:6-10; Def.'s Cross-Mot. at 5:20-24.

1  Plaintiffs' Motion for Preliminary Injunction, and Surreply in Opposition to the Motion, Public Law

2  No. 105-119 was not even cited.  Def.'s Opp. to Pls.' Mot. for Prelim. Inj., 10:24-12:23 (Dkt. 24)

3  (relying solely on 8 U.S.C. § 1254a(c)(1)(B) for its authority to charge fees as a condition of registering

4  for TPS); Def.'s Surreply in Opp. to Pls.' Mot. for Prelim. Inj., 2:7-3:13 (Dkt. 35) (Oct. 9, 2007).

5  Public Law No. 105-119 was also not cited as authority in Defendant's supporting Declaration of

6  Barbara Velarde (Dkt. 25).  Further, Public Law No. 105-119 is not cited in the regulations as the

7  statutory authority for fingerprinting fee requirements in the context of TPS.  63 Fed. Reg. at 12981-87.

8  Given that Defendant only now adopted this interpretation of Public Law No. 105-119 for the purpose

9  of litigation, it is not entitled to *Chevron* deference.  *Cardoza-Fonseca*, 480 U.S. at 447 n.30 (1987)

10  ("An agency interpretation of a relevant provision which conflicts with the agency's earlier

11  interpretation is entitled to considerably less deference than a consistently held agency view.") (internal

12  quotations omitted); *Natural Res. Def. Council*, 526 F.3d at 605 (same); *Gose*, 451 F.3d at 837.

13  **C.    8 U.S.C. § 1356(m) Does Not Authorize Defendant to Charge More Than $50 in the Form
14          of Biometric Services Fees As a Condition of Registering for TPS.**

15          Defendant claims that 8 U.S.C. § 1356(m) authorizes it to charge more than $50 as a condition

16  of registering for TPS.  As set forth in Plaintiffs' Motion for Partial Summary Judgment, 8 U.S.C.

17  § 1356(m)'s general authorization for Defendant to recoup the full costs of immigration services by

18  collecting fees is controlled and modified by the more specific provision, 8 U.S.C. § 1254a(c)(1)(B),

19  capping TPS registration fees at $50.  PMSJ at 17:7-16; *see also* Feb. 4, 2008 Order (Dkt. 68) at 14:25-

20  26 ("8 U.S.C. § 1356(m) neither evinces an intent to allow additional biometrics fees nor supersedes

21  § 1254a(c)(1)(B).").  Thus, Defendant may set fees at a level that will ensure recovery of the full costs

22  of providing all such services, including services provided without charge to "asylum applicants and

23  other immigrants" such as TPS applicants.  Plaintiffs' harmonization of the two statutes is consistent

24  with the "basic axiom that courts should construe all legislative enactments to give them some

25  meaning." *Rosado v. Wyman*, 397 U.S. 397, 415 (1970); *see also* Feb. 4, 2008 Order at 17:11-18:1.

26          Defendant relies on section 1356(m)'s phrase "[n]otwithstanding any other provisions of law" to

27  try to negate the $50 fee cap in 8 U.S.C. § 1254a(c)(1)(B).  Defendant's analysis is erroneous for

28

19

PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO
DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT - CASE NO.:  3:07-CV-4192 TEH

98024-31

1   several reasons.  First, Defendant took the phrase "notwithstanding any other provisions of law" out of

2   context.  The actual text reads:

> *Notwithstanding any other provisions of law*, all adjudication fees as are designated by the Attorney General in regulations shall be deposited as offsetting receipts into a separate account entitled "Immigration Examinations Fee Account" in the Treasury of the United States, whether collected directly by the Attorney General or through clerks of courts:  Provided, however, That all fees received by the Attorney General from applicants residing in the Virgin Islands of the United States, and in Guam, under this subsection shall be paid over to the treasury of the Virgin Islands and to the treasury of Guam:  *Provided further, That fees for providing adjudication and naturalization services may be set at a level that will ensure recovery of the full costs of providing all such services, including the costs of similar services provided without charge to asylum applicants or other immigrants*.  Such fees may also be set at a level that will recover any additional costs associated with the administration of the fees collected.

9   8 U.S.C. § 1356(m) (emphasis added).  Read in context, "[n]otwithstanding any other provisions of

10  law" refers to the requirement that all adjudication fees be deposited into an Immigration Examinations

11  Fee Account, *not* to the authorization for charging fees to ensure recovery of the full costs of providing

12  services.  *See Delalat*, 557 F.3d at 1344-45 (finding that the phrase "notwithstanding other statutes,"

13  when read in context, did not relate to directives established in a separate sentence).  The phrase

14  "[n]otwithstanding any other provisions of law" is irrelevant to the issue at hand.

15          Moreover, even assuming the phrase "notwithstanding any other law" applied to the fees

16  Defendant may set for immigration applicants (which it does not), 8 U.S.C. § 1356(m) does not give

17  Defendant carte blanche to charge whatever fees it wants to whatever immigrants it chooses.  Rather,

18  Defendant is controlled by more specific TPS provisions.  The phrase "notwithstanding any other law"

19  must be interpreted in the context of the entire statutory scheme.  *Ordlock v. C.I.R.*, 533 F.3d 1136,

20  1143 (9th Cir. 2008) ("[W]e have previously stated that the phrase 'notwithstanding any other law or

21  rule of law' should not always be read literally."); *Or. Natural Res. Council v. Thomas*, 92 F.3d 792,

22  796-97 (9th Cir. 1996).

23          Furthermore, while Defendant ignores this provision, 8 U.S.C. § 1356(m) itself contains a carve

24  out provision for those seeking humanitarian immigration status, such as "asylum applicants *and other*

25  *immigrants*." (emphasis added).  Congress made clear, and Defendant has conceded, that TPS was

26  created as a humanitarian program.  Def.'s Opp. at 13:23-24.  Therefore, TPS falls within the category

27

28

1  of humanitarian programs for which Defendant does not have authority to charge fees at will.  8 U.S.C.

2  § 1356(m); *see also* Oct. 17, 2007 Order at 16:11-27 (Dkt. 40).[22]  Thus, Congress was not required to

3  specifically name or say the magic words "TPS" in 8 U.S.C. § 1356(m) where it already created an

4  exception for applicants for humanitarian immigration programs and a specific fee limit for TPS

5  registration in 8 U.S.C. § 1254a(c)(1)(B).

6  **D.**  **Defendant's Arguments Regarding Waiver, Laches, and Damages Are Highly Unusual, Unsubstantiated, and Irrelevant.**

7

8       Defendant claims that because the American Immigration Lawyers Association ("AILA"),

9  Plaintiffs' counsel, and Plaintiffs did not object that the March 1998 Immigration Act regulations' new

10  fingerprinting fee violated 8 U.S.C. § 1254a(c)(1)(B), this somehow bars Plaintiffs from making that

11  argument here.  This argument is bizarre.  In the first place, AILA is not involved in this case in any

12  way, and its actions, or inaction, more than a decade ago are irrelevant.  Moreover, AILA is, as Defendant

13  admits, a professional organization for individuals practicing and teaching immigration law.  It is not a

14  legislative body or a government agency, and AILA's comments submitted as part of the rulemaking

15  procedure hardly constitute statutory construction entitled to deference.[23]  Additionally, there is no

16  requirement that a potential plaintiff (or her attorneys) must submit comments regarding a new proposed

17  rule during the rulemaking process prior to filing a lawsuit (and indeed, Defendant does not cite any

18  legal support for this claim).

19       Likewise, Defendant's insistence that Plaintiffs' action is barred because Plaintiffs neither

20  complained nor refused to pay the excess biometric services fees is nonsensical.  Defendant has already

21  admitted that payment of the biometric services fee is required for TPS registration.  Velarde Decl. at

22

_____

[22] Defendant claims that "Plaintiffs apparently overlook the fact that subsequently, in 2003 – well after 8 U.S.C. § 1254a was passed – Congress re-enacted provisions of 8 U.S.C. § 1356(m) mentioning asylum subsidies.  Pub. L. 108-7, § 107 117 Stat. 11, 532 (2003)."  Def.'s Opp. at 16:13-16.  Defendant's citation is irrelevant.  "It is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject," such as TPS here, "is not submerged by a later enacted statute covering a more generalized spectrum, unless the latter statute expressly contradicts the original act or unless such a construction is absolutely necessary in order that the words for the later statute shall have any meaning at all."  *Townsend v. Quasim*, 328 F.3d 511, 523-24 (9th Cir. 2003); *Neptune*, 862 F.2d at 1551 (same).

[23] The fact that only ten comments were submitted by the public (including by AILA) during the rulemaking procedure regarding the new requirement for fingerprinting fees suggests that the level of scrutiny for Defendant's new rules was relatively low, contradicting Defendant's argument as to notice and acquiescence.

21

PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT - CASE NO.:  3:07-CV-4192 TEH

98024-31

¶¶ 5-6 (Dkt. 25).  A TPS registrant who did not pay the biometric services fee would not be granted TPS, and would risk being deported.  Defendant's framework sets up an untenable Catch-22, forcing Plaintiffs to choose between forfeiting their right to sue and deportation.  Moreover, the absence of a prior complaint regarding Defendant's practice of unlawfully exacting biometric services fees, or another lawsuit raising this same cause of action, is not an excuse for Defendant violating the law; Defendant's actions are not more or less illegal based on the timing of Plaintiffs' Complaint.

Defendant's arguments regarding laches are similarly baseless.[24]  Defendant's description of the harm that will ensue in the event of a liability determination is misleading.  In the first place, Defendant here is the United States, not the USCIS, and as Defendant stated early in this action, any judgment would be "paid by the public fisc" (Mem. In Supp. of Mot. To Dismiss (Dkt. 49) 10:20-25), not by taking funds from other immigration programs.[25]  Furthermore, even if the reimbursement of illegally enacted fees from TPS registrants were to be paid by USCIS, Defendant has already conceded that, under 8 U.S.C. § 1356(m), it can recoup the costs of humanitarian programs, such as asylum, by charging greater fees to other immigration applicants.  Def.'s Cross-Mot. at 13:24-28; Def.'s Opp. at 11:2-4, 23-24.  Furthermore, DHS already includes the cost of providing services to TPS registrants in its budget calculations, and "assum[es] that it cannot rely on fee revenue from [TPS] programs."  *See* DHS USCIS

---

[24] Defendant's laches argument relies on inapposite cases.  In *Boone v. Mechanical Specialties Co.*, 609 F.2d 956 (9th Cir. 1979), the plaintiff had delayed several years in bringing his lawsuit, despite repeated offers from the EEOC to issue a right to sue letter.  By the time plaintiff filed his case, fewer than one-third of the potential witnesses were still employed by his former employer, and the general manager responsible for Plaintiff's termination had died.  *Id.* at 957-58.  By contrast, the instant case turns on a question of statutory interpretation, and does not raise concerns regarding witness availability.  *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007), deals with a specific subset of time-barred claims that involve patent ambiguity in government solicitation.  Moreover, in both *Boone* and *Blue & Gold Fleet, L.P.*, the plaintiffs had been injured only once by their respective defendants.  Here, each of the Plaintiffs has been injured numerous times by the same Defendant since 2001, most recently within the last year.  *International Telephone & Telegraph Corp. v. General Telephone & Electronics Corp.*, 518 F.2d 913 (9th Cir. 1975), is also inapposite.  First, that case was overruled by *California v. American Stores Co.*, 495 U.S. 271 (1990).  Second, *International* states that "laches should be recomputed from the time of the subsequent actual violation."  518 F.2d at 929.  Here, Defendant's recurring subsequent violations of 8 U.S.C. § 1254a(c)(1)(B) occurred both shortly before and continue after this case was filed.  Finally, the claims at issue in *Danjaq, L.L.C. v. Sony Corp.*, 263 F.3d 942 (9th Cir. 2001), involved delays of between nineteen and thirty-six years.  There has been no such delay in the instant case.

[25] Additionally, the harm to the United States, as defendant, turns on whether such an "injunction is improperly granted."  *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 284 (4th Cir. 2002).  Given a favorable decision of this case on the merits, an injunction on the Government's policy of overcharging TPS registrants "will only place the defendants in the position in which they should have been initially" and "does not harm those defendants."  *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994).  It also would serve the "public interest in having agencies abide by the federal laws that govern their existence and operations."  *Id.*

1   Adjustment of the Immigration and Naturalization Benefit Application and Petition Fee Schedule, 72

2   Fed. Reg. 4888, 4897 (Feb. 1, 2007).[26]

3         Finally, Defendant's claim that "Plaintiffs' [*sic*] have requested <u>only</u> 'declaratory relief'" and

4   therefore are not entitled to damages is confusing and misconstrues the procedural posture of this case.

5   *See* Def.'s Opp. at 22:14-23:9.  There is no question that Plaintiffs' Complaint seeks reimbursement of

6   fees charged for TPS registration in excess of 8 U.S.C. § 1254a's statutory cap.  *See* First Am. Compl.

7   (Dkt. 5) at 10:5-8; Pls.' Mot. for Class Cert. (Dkt. 98) at 2:10-15.[27]  But monetary relief is not at issue

8   on this motion.  The Court bifurcated this case into two phases – liability and damages.  *See* July 9,

9   2009 Order Granting Pls.' Mot. for Class Certification and Bifurcation (Dkt. 113) ("July 9, 2009

10  Order").  The current motions concern liability and declaratory relief.  Monetary relief owed to

11  Plaintiffs and the Class will be resolved in later proceedings.

### III.   CONCLUSION

13        Defendant cannot escape the plain meaning of 8 U.S.C. § 1254a(c)(1)(B) which states that,

14  except for fees "for providing an alien with documentation of work authorization," all "fee[s] as a

15  condition of registering" for TPS "shall not exceed $50."  Defendant's attempts to distract the court

16  with a generalized appropriations bill runs counter to the plain language and legislative history of 8

17  U.S.C. § 1254a(c)(1)(B).  As such, Plaintiffs are entitled to partial summary judgment and declaratory

18  relief on this issue of whether Defendant is liable for charging the plaintiff class more than $50 per

19  person, in the form of biometric services fees, as a condition of registering for TPS.

---

[26] In its final rule increasing the biometric fee for all programs, the USCIS explained "USCIS' new fee model enables USCIS to adjust fees in a timely manner and USCIS plans to continuously review fees. *If unforeseen costs or volumes result in fees that are not recovering full costs*, a new fee schedule may be proposed before the fee review that is required by OMB Circular A-25 and law to be undertaken in two years." 72 Fed. Reg. 29851, 29870 (May 30, 2007).

[27] It is unclear why Defendants are raising the statute of limitations for monetary relief claims here. While Plaintiffs' First Amended Complaint does not specify the liability period for Plaintiffs' monetary relief claims, Plaintiffs are only contesting Defendant's liability within the six year statute of limitations set forth in 28 U.S.C. §§ 2401(a) and 2501.  *See* July 9, 2009 Order at 19:22-24 (Dkt. 113).  Given that Plaintiffs' Complaint does not state otherwise, there is nothing for this Court to dismiss.

23

PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO
DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT - CASE NO.:  3:07-CV-4192 TEH

98024-31

1    Dated:  October 26, 2009                    Respectfully submitted,

2                                                GOLDSTEIN, DEMCHAK, BALLER, BORGEN &
                                                    DARDARIAN
3

4                                                _____/s/  Lin Yee Chan_____
                                                LINDA M. DARDARIAN, CA Bar No. 131001
5                                                RACHEL E. BRILL, CA Bar No. 233294
                                                LIN YEE CHAN, CA Bar No. 255027
6                                                300 Lakeside Drive, Suite 1000
                                                Oakland, CA  94612
7                                                (510) 763-9800
                                                (510) 835-1417 (Fax)
8

9                                                JONATHAN M. KAUFMAN, CA Bar No. 104576
                                                jonathan-kaufman@sbcglobal.net
10                                               The Law Offices of Jonathan M. Kaufman
                                                220 Montgomery Street, Suite 976
11                                               San Francisco, CA  94104
                                                (415) 956-4765
12                                               (415) 956-1664 (Fax)

13                                               ATTORNEYS FOR PLAINTIFFS

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO
DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT - CASE NO.:  3:07-CV-4192 TEH
98024-31