OF COUNSEL:
JOSEPH P. RUSSONIELLO
United States Attorney
JOANN M. SWANSON
Assistant United States Attorney
Chief, Civil Division
ILA C. DEISS, NY SBN 3052909
Assistant United States Attorney
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
(415) 436-7124; FAX: (415) 436-7169

J. MAX WEINTRAUB
Senior Litigation Counsel
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
Washington, DC 20044
(202) 305-7551; FAX: (202) 305-7000

TONY WEST
Assistant Attorney General
JEANNE E. DAVIDSON
Director
BRIAN A. MIZOGUCHI
Senior Trial Counsel
ELIZABETH A. SPECK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530
(202) 305-3319; FAX: (202) 305-7644

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

JOSE BAUTISTA-PEREZ, *et al.*,

                              Plaintiffs,

        v.

ERIC H. HOLDER, JR., Attorney General of the
  United States, and

JANET NAPOLITANO, Secretary of
  Homeland Security,
                              Defendants.

No. C 07-4192 TEH

**DEFENDANTS' REPLY TO
PLAINTIFFS' OPPOSITION TO
DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT**

Hearing Date: November 23, 2009
Time:  9:00 a.m.
Courtroom: 12

1

<u>TABLE OF CONTENTS</u>

2

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4

I.    Congress Confirmed That The Fees For Fingerprinting Or Biometric Services At Issue In
      This Case Legally Were Collected And Prospectively May Be Collected To Administer The
5     Temporary Protected Status Program "In Addition To" Any Registration Fees Described In
      8 U.S.C. § 1254a(c)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6

II.   Defendants In 1998 And Thereafter Correctly Treated The Fingerprinting/Biometric Fees As
7     Separately Authorized By Congress To Be Collected In Addition to Any Registration Fees
      Described In 8 U.S.C. § 1254a(c)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

8

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

9

10

<u>TABLE OF AUTHORITIES</u>

11

8 U.S.C. § 1254a. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

12

8 U.S.C. § 1356(m). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

13

Pub. L. No. 105-119, 104 Stat. 2440, 2447-48 (Nov. 26, 1997). . . . . . . . . . . . . . . . . . . . . . passim

14

Department of Homeland Security Appropriations Act, 2010, H.R. 2892, Pub. L. 111-83,
15  __Stat. __ (Oct. 28, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

16

17

18

19

20

21

22

23

24

25

26

27

28

i

Defendants respectfully submit this reply to plaintiffs' opposition ("Pl. Opp.")[1] to defendants' cross-motion for summary judgment ("DxMSJ").[2]

## INTRODUCTION

In November 1997, Congress passed Pub. L. 105-119, providing, within a single sentence, that the Government: (a) must perform the fingerprinting services necessary to administer any benefit under the Immigration and Nationality Act ("INA") which, then, included the Temporary Protected Status ("TPS") benefit, and (b) is authorized, "for expenses, not otherwise provided for," to collect the fees at issue in this case.  Plaintiffs took advantage of -- for many years and without complaint -- the benefit of the Government's provision to them of fingerprinting or biometric services required to administer TPS.  Plaintiffs now belatedly complain -- contrary to their prior conduct and that of all concerned -- that the Government illegally required them to pay for the services from which they benefitted.  Plaintiffs contend that 8 U.S.C. § 1254a(b)(1)(C), enacted in 1990, "puts a lifetime per person $50 cap on TPS registration fees," Pl. Opp. at 7, which effectively and improperly would nullify Congress's 1997 Pub. L. 105-119.  Contrary to plaintiffs' overreaching attempt to secure a windfall refund of the fees they elected to pay for the benefits they received, Congress clearly authorized collection of the fees at issue in this case.  Congress recently confirmed, in Pub. L. 111-83, that for 1998 and every year thereafter, the Government legally may collect the fees at issue in this case, in addition to the TPS registration fees described in 8 U.S.C. § 1254a(b)(1)(C). Accordingly, plainitffs' amended complaint fails, and judgment should be granted in defendants' favor.

---

[1]    Filed with the Court as docket ("Dkt.") no. 126.

[2]    Dkt. no. 121.

-1-

## ARGUMENT

**I.    Congress Confirmed That The Fees For Fingerprinting Or Biometric Services At Issue In This Case Legally Were Collected And Prospectively May Be Collected To Administer The Temporary Protected Status Program "In Addition To" Any Registration Fees Described In 8 U.S.C. § 1254a(c)(1)(B)**

On October 28, 2009, the President signed into law the Department of Homeland Security Appropriations Act, 2010, H.R. 2892, Pub. L. 111-83, __Stat. __ (Oct. 28, 2009).[3]  Congress, pursuant to Section 549 of the Act, confirmed that the Government legally collected the fees at issue in this case "in addition to" the registration fees described in 8 U.S.C. 1254a(c)(1)(B).  Section 549 reads:

> SEC. 549.  (a) In addition to collection of registration fees described in section 244(c)(1)(B) of the Immigration and Nationality Act (8 U.S.C. 1254a(c)(1)(B)), fees for fingerprinting services, biometric services, and other necessary services may be collected when administering the program described in section 244 of such Act.
>
> (b) Subsection (a) shall be construed to apply for fiscal year 1998 and each fiscal year thereafter.

Pub. L. No. 111-83, __Stat. __ (emphasis added).

Congress confirmed that, for fiscal year 1998 [the first year in which Pub. L. 105-119 required the Government to provide fingerprinting services and authorized the fees at issue in this case][4] and each year thereafter, the Government legally collects fees for fingerprinting or biometric services, and other necessary services, when administering the TPS program described in section 244 of the INA, "in addition to" the registration fees described in 8 U.S.C. § 1254a(c)(1)(B).  In short,

---

[3]    We filed a notice and copy of Congress's Act on October 28, 2009, the day that it became law.  See Defendants' Notice of New Law (attaching as Exhibit A a copy of Statement by the Press Secretary on H.R. 2892, and Sec. 549 of H.R. 2892).  Dkt. 127.

[4]    Plaintiffs allege that the Government "conceded" these fees are registration fees subject to 8 U.S.C. § 1254a(c)(1)(B).  See Pl. Opp. 4.  Plaintiffs are mistaken.  We do not dispute that Pub. L. 105-119 required that the fingerprinting services necessary to administer INA benefits including TPS be performed by the Government, and that, with certain age or waiver exceptions, the Government requires aliens to pay if they elect to take these services.  That is not the same thing as conceding that such fees are the registration fees subject to 8 U.S.C. § 1254a(c)(1)(B), which is a question of law that has been settled by Congress.  In any event, the Government did not and does not concede plaintiffs' argument that fingerprinting services fees are registration fees under 8 U.S.C. § 1254a(c)(1)(B).

-2-

1   Congress confirmed that its prior act codified at 8 U.S.C. § 1254a(c)(1)(B) is not applicable to the

2   fees at issue in this case and plaintiffs' amended complaint has no merit.

3       As plaintiffs conceded in their opposition filed October 26, 2009, the Court should look to

4   the plain meaning of a statute as dispositive, Pl. Opp. at 3, and Congress could "easily" enact

5   legislation to provide for additional fees if it intends to do so, Pl. Opp. at 17-18.  In fact, Congress

6   had done just that in November 1997, and on October 20, 2009 -- a week before plaintiffs'

7   opposition brief -- confirmed with its final passage of H.R. 2892 that it authorized collection of the

8   fees at issue in this case, in addition to the TPS registration fees.  Congress has done precisely what

9   the plaintiffs suggested Congress could do.  H.R. 2892 became law when the President signed it on

10  October 28, 2009.  See Defendants' Notice of New Law, Exhibit A, Dkt. 127.

11      In light of Congress's action confirming the legality of the fees at issue in this case, the Court

12  should enter judgment denying plaintiffs' motion for summary judgment and grant summary

13  judgment in defendants' favor.

14  **II.   Defendants In 1998 And Thereafter Correctly Treated The Fingerprinting/Biometric**
        **Fees As Separately Authorized By Congress To Be Collected In Addition To Any**
15      **Registration Fees Described In 8 U.S.C. § 1254a(c)(1)(B)**

16      Congress, in Pub. L. 111-83, confirmed that the Government legally collects the fees about

17  which plaintiffs complain.  With this confirmation, the parties' cross-motions for summary judgment

18  have been resolved, and judgment should be granted in defendants' favor, without further

19  expenditure of resources litigating this matter.  For the sake of a clear record, we set forth briefly the

20  following points establishing that, even if Congress had not acted recently and dispositively to

21  confirm the legality of the fees at issue in this case, plaintiffs' opposition fails to overcome

22  defendants' cross-motion for summary judgment, and for that reason as well, judgment should be

23  granted in defendants' favor.

24      Congress, in Pub. L. 105-119, precluded the Department of Justice, Immigration and

25  Naturalization Service ("INS"), from using funds to administer background check fingerprinting for

26  INA benefits, which included TPS, unless the government performed the fingerprinting services, but,

27  at the same time, authorized collection of a fee for such services.  Pub. L. 105-119, 111 Stat. 2448;

28

-3-

1  DxMSJ at 4-5.  At the time Pub. L. 105-119 was enacted, TPS was among the "benefit[s] under the

2  [INA]." DxMSJ at 2, n.2, and 4, n.7.[5]  Contrary to plaintiffs' contentions, see Pl. Opp. 15, 20,

3  Congress's Pub. L. 105-119 mandate of government-provided fingerprinting services and

4  corresponding authorization to collect a fee for such services, was enacted in a single sentence, and

5  followed the words "For expenses, not otherwise provided for, necessary for the administration . . .

6  of laws relating to immigration, naturalization, and alien registration . . . " at the start of that

7  sentence.  111 Stat. at 2448-49; DxMSJ 4-5.  Regardless of whether, prior to November 1997,

8  8 U.S.C. § 1254a(c)(1)(B), concerning registration fees, would allow the Government to collect fees

9  for the expense of fingerprinting services, Congress in Pub. L. 105-119 provided for the Government

10  legally to collect the fees at issue in this case,  "[f]or expenses, not otherwise provided for."[6]

11       Following Congress's enactment of Pub. L. 105-119, the INS transmitted to Congress, and in

12  March 1998 published in the Federal Register, regulations that explicitly: (a) cited Pub. L. 105-119

13  as authority for the fingerprinting services fees,[7] and (b) amended the TPS regulations to note that the

14  fingerprinting services fee would be charged in addition to the fee for filing a TPS application.

15  _____

16  [5]    Plaintiffs' incompletely quoted an inapposite portion of Pub. L. 105-119 in arguing that
    Congress "primarily" was "not" concerned with TPS.  Pl. Opp. 12 & n. 17.  The portion of Pub. L.
17  105-119 that plaintiffs quoted actually is a separate clause that appears after Congress's authorization
    of the fingerprinting services fees at issue in this case, and relates to Congress's concern about the
    agency not waiting until the FBI returned the results of its background checks on fingerprints taken
18  to adjudicate naturalization.  See Pub. L. 105-119, 111 Stat. 2448-49.

19  [6]    Plaintiffs mistakenly cite the Court's Feb. 4, 2008 Order (Dkt. 68) at 15:17-18 in contending
    that Pub. L. 105-119 would render 8 U.S.C. 1254a(c)(1)(B) surplusage.  Pl. Opp. at 13:9-10.  First,
20  the Court's order at 15:17-18 was not discussing Pub. L. 105-119, but, rather, was discussing
    8 U.S.C. 1356(m), which, we respectfully maintain, provides an independent source of authority for
21  the agency's fees.  DxMSJ at 16-17.  Second, Congress in Pub. L. 105-119, as confirmed by Congress
    in Pub. L. 111-83, did not need to render 8 U.S.C. 12541(c)(1)(B) surplusage to do what it did,
22  which is to authorize separately fingerprinting and biometrics fees for the administration of TPS, in
    addition to the TPS registration fees described in 8 U.S.C. 1254a(c)(1)(B).  Dkt. 127.
23
24  [7]    Plaintiffs contend that the Government relied on Pub. L. 105-119 as authority for the fees at
    issue in this case "only now" in this litigation, Pl. Opp. 19:8, contesting the Chevron deference that
25  is due the agency's March 1998 regulation specifying that such fees shall be collected in addition to
    the TPS application filing fee.  The INS informed Congress and the public in March 1998, not "only
26  now," of its regulatory determination that the Pub. L. 105-119 fee could be collected in addition to
    the TPS registration fee.  DxMSJ at 5-7. The Government's collection of these fees was accepted
27  and treated as lawful for years by all concerned  -- including the plaintiffs and their immigration
    attorney/class co-counsel.  DxMSJ 5-8.

28                                                    -4-

1    DxMSJ at 5-7.[8]  Comments were submitted by the American Immigration Lawyers Association of

2    immigration law practitioners and professors, and other advocacy groups, none of whom opined that

3    the regulation was illegal because the fingerprinting services fees would be charged in addition to the

4    TPS registration fee.  DxMSJ at 5-8.  For nearly a decade, everyone concerned -- the agency,

5    plaintiffs, their immigration lawyer/class co-counsel, and the Congress -- accepted defendants'

6    regulations, treating as legal the agency's collection of the Pub. L. 105-119 authorized fingerprinting

7    services fee, in addition to the TPS registration fee, allowing the agency to collect, retain and spend

8    the fees at issue in this case.  DxMSJ at 5-8, 14-17.

9            For as long as over six years, pre-dating the statute of limitations cut-off, plaintiffs, while

10   represented by their immigration attorney/class co-counsel, elected to take the benefit of

11   Government-provided fingerprinting services and paid the prescribed fee for the services they took --

12   in addition to the $50 TPS registration fee -- without complaining that it was illegally exacted

13   because of what they now claim was the allegedly plain and unambiguous application of

14   8 U.S.C. § 1254a(c)(1)(B) to Pub. L. 105-119.  DxMSJ at 7-8, 20.

15           Plaintiffs' long history of accepting the fingerprinting/biometric services fee collections as

16   legal is not surprising, because Congress plainly never specified in 8 U.S.C. 1254a(c)(1)(B) that it

17   limited fees for the provision of fingerprinting or biometric services.  DxMSJ at 17-22.  Nor is it

18   _____

19        [8]    Plaintiffs appear to contend that the fees at issue in this case were not authorized by Pub. L.
     105-119 separately and in addition to the registration fee described in 8 U.S.C. 1254a(c)(1)(B), and
20   suggest, incorrectly, that we maintain that the defendants' regulation relies upon 8 U.S.C.
     1254a(c)(1)(B) as authority for the fingerprinting services fees at issue.  See e,g, Pl. Opp. at 4:11-12
21   & n. 5; 18:22-28.  Plaintiffs apparently did not understand the point we made in noting that the
     March 1998 regulations expressly cited Pub. L. 105-119 as the legislative authority for the new
22   fingerprinting services fee and simultaneously amended the TPS regulation to note that the new fee
     would have to be paid, in addition to the fee for filing a TPS application.  Defendants' pre-dispute
23   actions establish that, contemporaneously with the Congress's enactment of Pub. L. 105-119, they
     determined that it authorized collection of fingerprinting services fees in addition to the TPS filing
24   fee which "continues" to be authorized by 8 U.S.C. 1254a(c)(1)(B).  See DxMSJ at 5-6, 12-16
     (emphasis added).  Because the Pub. L. 105-119 fingerprinting services fee did not exist before the
25   March 1998 regulations that first prescribed that fee, the fact that the March 1998 TPS regulation
     "continues" to cite as its authority 8 U.S.C. 1254a plainly refers only to the TPS application fee.  The
26   juxtaposition of the two types of fees in the same March 1998 regulations is significant because it
     demonstrates that, contemporaneously and prior to any dispute, Congress and all parties concerned
27   had notice that the agency interpreted the fingerprinting services fee to be authorized by Congress in
     addition to the TPS registration fee.

28                                                    -5-

plausible that Congress would have contemplated such a limit when it enacted 8 U.S.C. § 1254a in 1990, because Congress did not impose any requirement for Government-provided fingerprinting services at that time.  DxMSJ at 19-20.  Although Congress and the public had notice of the Government's $50 TPS registration fee as of November 1997, DxMSJ at 3 & n. 6, Congress never exempted TPS from Pub. L. 105-119.  Further, while Congress, like the public, had notice since March 1998 that the agency's regulations called for it to collect the fingerprinting services fee in addition to the TPS registration fee when administering the TPS program, DxMSJ 5-7, Congress never rescinded its continuing authorization and appropriation of the agency's expenditure of those fees, or otherwise acted to deem unlawful the agency's collection of both fees, corroborating the legality of the fees at issue in this case.  In light of Congress's 1997 Pub. L. 105-119 authorization of fees "for expenses, not otherwise provided for" of the government-provided fingerprinting services Congress mandated for the agency's administration of TPS; the absence of any reference in 8 U.S.C. 1254a(b)(1)(C) to Congress's fingerprinting services fees, and the contemporaneous pre-dispute conduct of all concerned -- plaintiffs and their immigration/class co-counsel included, it is beyond all reasonable dispute that Congress authorized, and the Government legally collected, the fees at issue in this case.

Alternatively, even assuming for the sake of argument only, that notwithstanding Pub. L. 105-119, Congress did not unambiguously authorize the agency to collect the fingerprinting services fees at issue in this case, we demonstrated that the INS (since reconstituted within the Department of Homeland Security) is entitled to <u>Chevron</u> deference because its determination that it could charge the fingerprinting services fee authorized by Congress, in addition to the TPS registration fee, is, for the foregoing reasons, a permissible interpretation, the correctness of which has been corroborated by the acts of all concerned.  DxMSJ at 10-16.

When the President signed H.R. 2892, Pub. L. 111-83, into law on October 28, 2009, Congress explicitly confirmed the legality of the fees at issue in this case.  Congress's act effectively ratified the points made in defendants' cross-motion for summary judgment: that the fees at issue in this case were separately authorized by the Congress in Pub. L. 105-119, and may be collected "in

-6-

1  addition to" the registration fees described in 8 U.S.C. 1254a(b)(1)(C).  Congress's recent

2  confirmation of the legality of the fees at issue in this case is dispositive.

3  **<u>CONCLUSION</u>**

4         For these reasons, and for the additional reasons set forth in our cross-motion and opposition

5  papers, all of which we respectfully maintain, the Court should grant summary judgment in

6  defendants' favor.

7                                                                    Respectfully submitted,

8                                                                    TONY WEST
   OF COUNSEL:                                                       Assistant Attorney General
9  JOSEPH P. RUSSONIELLO
   United States Attorney                                           JEANNE E. DAVIDSON
10 JOANN M. SWANSON                                                  Director
   Assistant United States Attorney
11 Chief, Civil Division                                            /s/ Brian A. Mizoguchi
   ILA C. DEISS                                                      BRIAN A. MIZOGUCHI
12 Assistant United States Attorney                                 Senior Trial Counsel
   San Francisco, CA
13                                                                   ELIZABETH A. SPECK
   J. MAX WEINTRAUB                                                  Trial Attorney
14 Senior Litigation Counsel                                        Commercial Litigation Branch
   Office of Immigration Litigation                                 Civil Division
15 Civil Division                                                   Department of Justice
   Department of Justice                                             Attn.: Classification Unit 8th Flr.
16                                                                   1100 L Street, N.W.
                                                                     Washington, D.C.  20530
17                                                                   Tel: (202) 305-3319

18 Date: November 9, 2009                                           Attorneys for Defendants

19

20

21

22

23

24

25

26

27

28
                                    -7-