IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOSE BAUTISTA-PEREZ, *et al.*,

    Plaintiffs,

v.

ERIC H. HOLDER, Jr., Attorney General of the United States, and

JANET NAPOLITANO, Secretary of Homeland Security,

    Defendants.

NO. C07-4192 TEH

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

This matter came before the Court on November 23, 2009, on Plaintiffs' Motion for Partial Summary Judgment, and Defendants' Cross-Motion for Summary Judgment. Plaintiffs are nationals of El Salvador, Honduras, and Nicaragua who allege the Department of Homeland Security ("DHS") has unlawfully charged them fees above a $50 statutory ceiling to register for Temporary Protected Status, or "TPS." Defendants Eric H. Holder, Jr., the Attorney General of the United States, and Janet Napolitano, Secretary of Homeland Security (collectively, "Defendants," the "Government" or "DHS")[1] contend that the disputed biometric services fee is permissible, having been authorized by Congress in 1997 and confirmed in legislation enacted on October 28, 2010. For the reasons set out below, Plaintiffs' motion is DENIED, and Defendants' motion is GRANTED IN PART and DENIED IN PART.

---

[1] This Court has already ruled that "the instant action against federal officials will be treated as an action against the United States because 'the judgment sought would expend itself on the public treasury [and] the effect of the judgment would be to restrain the Government from acting, or compel it to act." Order Denying Defs.' (Second) Mot. to Dismiss (Doc. 109) at 8 (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)).

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.    Temporary Protected Status**

Congress established TPS in 1990 as a temporary immigration benefit for nationals of foreign states experiencing "ongoing armed conflict," "environmental disaster," or other "extraordinary and temporary conditions." Immigration Act of 1990, Pub. L. No. 101-649, § 302, 104 Stat. 4978, 5030 (1990) (codified at 8 U.S.C. § 1254a).[2] The statute empowers the Attorney General – now the Secretary of Homeland Security[3] – to designate countries for TPS if, owing to such hardships, they are "unable, temporarily, to handle adequately the return" of their alien nationals, or their nationals could not return "in safety." 8 U.S.C. § 1254a(b)(1). TPS may be granted to aliens who have resided continuously in the United States – regardless of immigration status – since their country's designation, as long as they satisfy other requirements. *Id.* § 1254a(a)(5) & (c)(1)(A). Aliens granted TPS may receive employment authorization and remain in the United States as long as their TPS is in effect. *Id.* § 1254a(a)(1)-(2).

Once a country is designated, any nationals of that country residing in the United States must register "to the extent and in a manner which the Attorney General establishes" if they seek to qualify for TPS. 8 U.S.C. § 1254a(c)(1)(A)(iv). The initial registration period lasts no less than 180 days. *Id.* Once granted TPS, an alien must re-register annually. *Id.* § 1254a(c)(3)(C). A country's designation may be extended in increments of six, twelve, or eighteen months if the Attorney General does not find that the conditions triggering TPS have abated. *Id.* § 1254a(b)(3)(C). The Attorney General originally designated Honduras and Nicaragua for TPS in 1999. 64 Fed. Reg. 524 (Jan. 5, 1999); 64 Fed. Reg. 526 (Jan. 5,

---

[2] The Immigration Act of 1990 amended the Immigration and Nationality Act ("INA") by adding (among other provisions) section 244A, 8 U.S.C. § 1254a, which provides the statutory authority for TPS. Section 244A of the INA was renumbered as section 244 in 1996. Pub. L. No. 104-208, Div. C, Subtitle A, § 308(b)(7), 110 Stat. 3009-615 (1996).

[3] The authority to designate countries and administer the TPS program was transferred from the Attorney General to the Secretary of Homeland Security in 2003, with the formation of the Department of Homeland Security ("DHS"), which subsumed the functions of the Immigration and Naturalization Service ("INS" or "Service"). Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002).

2

1999). The designation for both countries has been extended eight times. El Salvador was designated in 2001, 66 Fed. Reg. 14,214 (Mar. 9, 2001), and extended six times.

Section 1254a permits the Attorney General to "require payment of a reasonable fee as a condition of registering an alien" for TPS, but caps that fee at $50.[4] 8 U.S.C. § 1254a(c)(1)(B). Accordingly, a "filing fee" for TPS applicants has consistently been set at $50 in the Federal Register. *See, e.g.*, 64 Fed. Reg. 524 (Jan. 5, 1999) (setting $50 filing fee for TPS applicants from Honduras); *see also* 8 C.F.R. § 103.7(b)(1) (prescribing fee "not to exceed fifty dollars" for "filing an initial application for" TPS, with the "exact amount of the fee" to "be determined at the time a foreign state is designated for" TPS). Although the registration fee originally included "providing an alien with an 'employment authorized' endorsement or other appropriate work permit under this section," 104 Stat. at 5033, a separate work authorization fee was carved out in 1991: "[i]n the case of aliens registered [for TPS] after July 17, 1991, the Attorney General may impose a separate, additional fee for providing an alien with documentation of work authorization." Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub. L. No. 102-232, § 304(b)(2), 105 Stat. 1733, 1749 (1991) (codified at 8 U.S.C. § 1254a(c)(1)(B)). No fees beyond those for registration and work authorization are specifically provided for in § 1254a.

Although regulations have required TPS applicants to provide fingerprints for criminal background checks since the program's inception, the procedures for doing so have

---

[4] Section 1254a(c)(1)(B) reads as follows in its current form:

> Registration fee. The Attorney General may require payment of a reasonable fee as a condition of registering an alien under subparagraph (A)(iv) (including providing an alien with an "employment authorized" endorsement or other appropriate work permit under this section). The amount of any such fee shall not exceed $50. In the case of aliens registered pursuant to a designation under this section made after July 17, 1991, the Attorney General may impose a separate, additional fee for providing an alien with documentation of work authorization. Notwithstanding section 3302 of title 31, United States Code, all fees collected under this subparagraph shall be credited to the appropriation to be used in carrying out this section.

3

evolved. Under the interim rule implementing the statute, applicants 14 years of age or older were required to provide "two completed fingerprint cards," 56 Fed. Reg. 619 (Jan. 7, 1991), which could be procured from private sources. In 1996, the Immigration and Naturalization Service ("INS" or "Service") – now DHS – began requiring that outside entities providing fingerprinting services to applicants for immigration benefits be certified, to "protect the integrity of the fingerprinting process, and relieve the strain on Service personnel resources." 61 Fed. Reg. 28,003 (June 4, 1996); *see also* 61 Fed. Reg. 57,583 (Nov. 7, 1996) (extending the effective date of certification program to 1997). Certified entities could charge "reasonable fees for fingerprinting services," costs borne by the TPS applicants themselves. 61 Fed. Reg. at 28,011.

In 1997, however, Congress required that fingerprinting be done by the INS or other governmental agencies. The INS was prohibited from accepting, "for the purpose of conducting criminal background checks on applications for any benefit under the Immigration and Nationality Act, any . . . fingerprint card which has been prepared by or received from any individual or entity other than an office of" the INS, a state or local law enforcement agency, or a U.S. embassy, consulate, or military office. Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act of 1998 ("1998 Appropriations Act"), Pub. L. No. 105-119, 111 Stat. 2440, 2447-2448 (1997). The same act further provided that "agencies may collect and retain a fee for fingerprinting services[.]" *Id.*

The INS issued an interim rule in March 1998, establishing a new fingerprinting protocol and setting a "service fee for fingerprinting by the Service . . . at $25 per applicant, petitioner, beneficiary, sponsor, or other individual required by Service regulations or form instructions to be fingerprinted in connection with an application or petition for immigration benefits." 63 Fed. Reg. 12,979, 12,981 (Mar. 17, 1998). The regulations cited the 1998 Appropriations Act as authorizing "the Service to charge a fee for fingerprinting in connection with the new fingerprinting program," and noted that "[c]harging a fee for fingerprinting is necessary to fund" the new program. *Id.* at 12,981, 12,982. The

4

fingerprinting fee, which applied to all immigration benefits, was codified at 8 C.F.R. § 103.7(b)(1). The regulations governing TPS at 8 C.F.R. § 244.6 were revised to require that "[e]ach application . . . be filed with the filing and fingerprinting fees, as provided in § 103.7 of this chapter." 63 Fed. Reg. at 12,987. The fee for fingerprinting services went up to $50 in 2002. 66 Fed. Reg. 65,811, 65,816 (Dec. 21, 2001). In 2004, DHS began charging a "service fee" of $70 for "capturing biometric information," which covered "electronically captur[ing] and retain[ing] necessary biometrics (photo, signature, and press-print images)." 69 Fed. Reg. 5088, 5090, 5092 (Feb. 3, 2004). DHS began using the term "biometric fee" rather than "fingerprinting fee" to "better describe the services provided under this fee." *Id.* at 5090. The fee was raised to $80 in 2007. 72 Fed. Reg. 41,888, 41,890 (Aug. 1, 2007).

An applicant for TPS is therefore charged (1) a registration fee of $50.00; (2) a "biometric services fee" of $80.00 (if the applicant is 14 years of age or older); and (3) a $340.00 fee to apply for work authorization, if desired. 8 C.F.R. §§ 103.7(b)(1), 244.6. The registration fee is charged only once, when the alien first applies for TPS. However, DHS charges the biometric services fee for every registration and re-registration, even when the biometric data is already on file and its resubmission unnecessary.

## II. Plaintiffs' Lawsuit

This class action lawsuit was filed on August 16, 2007. Plaintiffs are nationals of El Salvador, Honduras, and Nicaragua who, in applying for TPS, have paid fees for biometric services in excess of the $50 registration fee set by statute. They allege that DHS's policy of charging additional fees for biometric services violates the $50 cap on registration fees imposed by § 1254a. In their First Amended Complaint filed August 21, 2007, Plaintiffs seek declaratory and injunctive relief, including a refund of all registration and biometric fees paid in excess of the $50 cap.

Plaintiffs moved for a preliminary injunction on October 15, 2007, asking the Court to enjoin DHS from charging the $80.00 biometric services fee for TPS beneficiaries from El Salvador who were required to re-register by October 22, 2007. This Court denied the

5

1  preliminary injunction on October 17, 2007, based on Plaintiffs' failure to show a likelihood
2  of irreparable injury. Order Denying Mot. for Prelim. Injunction ("Order Denying PI") (Doc.
3  40) at 5. The Court also concluded, however, that Plaintiffs had "shown a high likelihood of
4  success on the merits." *Id.* at 10. The Court rejected DHS's argument that the biometric
5  services fee falls outside the registration fee capped at $50 by § 1254a, concluding that
6  deference to the agency's interpretation under *Chevron U.S.A., Inc. v. Natural Resources*
7  *Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984), was "not warranted." Order Denying PI
8  at 6. Observing that "the plain language of 8 U.S.C. § 1254a(c)(1)(B) unambiguously
9  prohibits fees 'as a condition of registering' for TPS of over $50.00," and that the biometrics
10 fee is charged "for forms that are required 'as a condition of registering' an alien for TPS,"
11 the Court concluded that "collecting biometric information should be considered part of the
12 registration process." *Id.* at 6-7. The Court also observed that the statute "limits the
13 registration fee to $50.00, but gives explicit permission to charge an extra fee *solely* for
14 employment authorization documents," which "strongly suggests that other fees are not
15 permitted." *Id.* at 7 (emphasis in original). That conclusion was reiterated when the Court
16 denied Defendants' first motion to dismiss, finding that "Defendants have raised no
17 arguments which should alter the Court's earlier conclusion that the language of
18 § 1254a(c)(1)(B) is unambiguous." Order Denying (First) Mot. to Dismiss ("Order Denying
19 FMTD") (Doc. 68) at 11. A second motion to dismiss, raising a jurisdictional challenge and
20 objection to venue, was denied on May 1, 2009.
21     On July 9, 2009, the Court certified a class, under Federal Rule of Civil Procedure
22 23(b)(2), of "all nationals of El Salvador, Honduras, and Nicaragua who have applied to
23 register or re-register for Temporary Protected Status ("TPS") at any time from August 16,
24 2001 to the present."[5] Order Granting Plaintiffs' Motion for Class Certification and

---

[5] Defendant, in their motion, seek to dismiss any claims regarding payments made before August 16, 2001, based on the six-year statute of limitations on suits against the United States. 28 U.S.C. §§ 2401(a) & 2501. However, Plaintiffs respond that they are only asserting liability within the six-year statute of limitations, as reflected in their class definition. Since Plaintiffs' claims do not reach outside the six-year window, the Court agrees that there is nothing to dismiss on this basis.

6

Bifurcation (Doc. 113) at 1. The Court also bifurcated questions regarding liability and declaratory and injunctive relief from the issue of restitution for registration fees paid in excess of the $50 limit. *Id.*

Plaintiffs moved for partial summary judgment on August 17, 2009, and Defendants filed a cross-motion for summary judgment on October 2, 2009. Plaintiffs ask the Court to find that Defendants' practice of assessing a biometric services fee for TPS registration and re-registration violates the $50 statutory cap set by § 1254a(c)(1)(B). Defendants seek summary judgment dismissing Plaintiffs' complaint in its entirety.[6]

## III.     Recent Congressional Action

The Department of Homeland Security Appropriations Act of 2010 ("DHS Appropriations Act") was signed into law on October 28, 2009. H.R. 2892, Pub. L. No. 111-83, 123 Stat. 2142 (2009). Section 549 expressly allows the collection of a biometric services fee in addition to the registration fee capped by § 1254a, and provides for its application as of 1998:

> Sec. 549. (a) In addition to collection of registration fees described in section 244(c)(1)(B) of the Immigration and Nationality Act (8 U.S.C. 1254a(c)(1)(B)), fees for fingerprinting services, biometric services, and other necessary services may be collected when administering the program described in section 244 of such Act.
> (b) Subsection (a) shall be construed to apply for fiscal year 1998 and each fiscal year thereafter.

Pub. L. No. 111-83, § 549, 123 Stat. 2142 (2009). Defendants argue that Congress, in passing this Act, "unequivocally confirmed that, for fiscal year 1998 and each year thereafter, the Government legally collects fees for fingerprinting and biometric services and any other necessary services when administrating" the TPS program. Defendants' Notice of New Law (Doc. 127) at 2. Plaintiffs dispute this interpretation, asserting that only biometric

---

[6] Neither summary judgment motion addressed Plaintiffs' claim that it is unreasonable for DHS to charge TPS applicants a biometric services fee even when no biometric information is collected or required. The Court therefore does not address that question in this Order.

7

fees for "non-registration services" associated with TPS are authorized by section 549. Pls.' Surreply to Defs.' Reply to Pls.' Opp'n to Defs.' Mot. for Summ. J. ("Pls.' Surreply") (Doc. 131) at 5.

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The Court may not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party. *Id.* at 255.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). However, on an issue for which its opponent will have the burden of proof at trial, the moving party can prevail merely by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party meets its initial burden, the opposing party must then "set out specific facts showing a genuine issue for trial" to defeat the motion. Fed. R. Civ. P. 56(e)(2); *Anderson*, 477 U.S. at 256. Questions of law are "suitable to disposition on summary judgment." *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 310 F.3d 1188, 1194 (9th Cir. 2002).

//
//
//

8

**DISCUSSION**

No material facts are in dispute. Plaintiffs' and Defendants' motions require the Court to resolve a single question of law: whether DHS's imposition of a biometric services fee violates § 1254a's statutory cap on registration fees. The Court has already addressed this issue in two prior orders, concluding that biometric services are part of the registration process and therefore subject to the $50 cap. *See* Order Denying PI; Order Denying FMTD.

Since then, however, Congress has spoken. Section 549 of the DHS Appropriations Act speaks directly to the meaning of § 1254a. Defendants argue that Congress's latest word on this question confirms "that for 1998 and every year thereafter, the Government legally may collect the fees at issue in this case, in addition to the TPS registration fees described in" § 1254a(c)(1)(B). Defs.' Reply to Pls.' Opp'n to Defs.' Cross-Mot. for Summ. J. ("Defs.' Reply") (Doc. 128) at 1. Plaintiffs insist that Defendants' "construction of Section 549 must be rejected," as the new statute does not alter § 1254a's plain meaning as already construed by this Court. Pls.' Surreply at 1, 3.

The Court must begin by assessing the meaning of section 549 in relation to § 1254a. If the Court concludes that section 549 permits DHS's collection of a separate fee for biometric services, the Court will then consider Plaintiffs' arguments that such an interpretation renders section 549 unconstitutional.

**I.     The Meaning of Section 549**

Section 549 provides that "[i]n addition to collection of registration fees described in" § 1254a(c)(1)(B), "fees for fingerprinting services, biometric services, and other necessary services may be collected when administering" the TPS program. Pub. L. No. 111-83, § 549, 123 Stat. 2142 (2009). Section 549 does not amend the statutory language of § 1254a, but clarifies it. By providing that fees for fingerprinting and biometric services can be collected "[i]n addition to . . . registration fees," section 549 establishes that such services do not fall within the ambit of "registration fees." Since only the "registration fee" is capped at $50 by

9

§ 1254a(c)(1)(B), section 549's plain language establishes that fingerprinting and biometric service fees are not subject to the $50 limit. Furthermore, the statute is explicit that it "shall be construed to apply for fiscal year 1998" – the year Congress first authorized a fee for fingerprinting services – "and each fiscal year thereafter." Pub. L. No. 111-83, § 549. Section 549 therefore provides that DHS's collection of a fee for fingerprinting and biometric services since 1998 has not violated § 1254a(c)(1)(B)'s cap on the registration fee.

This conclusion is contrary to this Court's previous rulings. However, the Court's goal in interpreting a congressional statute is to follow the intent of Congress. *See Hernandez v. Ashcroft*, 345 F.3d 824, 838 (9th Cir. 2003). Where, as here, an agency's interpretation of the statute is in dispute, the inquiry ends if "the intent of Congress is clear": "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). "[T]he language of a statute is controlling when the meaning is plain and unambiguous." *United States v. Maria-Gonzalez*, 268 F.3d 664, 668 (9th Cir. 2001). The Court may also consider "'the structure and purpose of a statute . . . in determining the plain meaning of its provisions.'" *Resident Councils v. Leavitt*, 500 F.3d 1025, 1031 (9th Cir. 2007) (quoting *Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1060 (9th Cir. 2003)). When the Court concludes that Congress was clear, it will "not defer to a contrary agency interpretation." *Id.* If, however, the statute is ambiguous, the Court will "defer to the agency's construction of its governing statutes, unless that construction is unreasonable." *Ass'n of Pub. Agency Customers, Inc. v. Bonneville Power Admin.*, 126 F.3d 1158, 1169 (9th Cir. 1997).

The Court previously concluded that § 1254a(c)(1)(B) unambiguously barred fees for biometric services and fingerprinting from exceeding the $50 cap. In revisiting that analysis, the Court finds it erred with respect to the statute's ambiguity. Section 1254a(c)(1)(B) allows a "reasonable fee" to be charged "as a condition of registering" for TPS, and provides that the "amount of any such fee shall not exceed $50." Although the Court held that biometric services fees are "plainly part of the fees charged 'as a condition of registering,'"

1  Order Denying FMTD at 12, that is not the only reasonable reading of the statute.[7] DHS's
2  interpretation – that § 1254a(c)(1)(B) caps only the fee to register, but does not bar a separate
3  fee for biometric services – is also reasonable.[8] As the statute is susceptible to two
4  reasonable interpretations, it is therefore ambiguous.

5        The DHS Appropriations Act settles this ambiguity by clarifying that Congress did
6  not intend to preclude an additional fee for biometric services. The Court previously
7  observed that Congress's passage of "a law allowing the agency to collect a biometric
8  services fee without amending § 1254a(c)(1)(B) – when it *did* amend the statute to allow a
9  fee for a work permit – shows, if anything, an intent to keep the $50.00 cap in place." Order
10 Denying FMTD at 14 (emphasis in original). While correct that Congress intended to
11 maintain the $50 cap on registration fees, the Court erred in concluding that this cap
12 unambiguously applied to biometric services. With section 549, Congress has clarified that
13 the biometric services fee, like the work authorization fee, is not part of the registration fee.
14 It is Congress's intent *as recently clarified by Congress* – and not this Court's earlier
15 assessment of congressional intent – that governs.

16       Plaintiffs, however, believe that the Court is bound by its prior rulings on this subject.
17 Plaintiffs argue that section 549 "neither repeals nor alters the basic $50 TPS registration fee
18 cap set by 8 U.S.C. § 1254a(c)(1)(B)," nor allows "the Government to charge biometric or

---

[7] In reaching a contrary conclusion, the Court relied heavily on the TPS statute's "structure and purpose," as permitted by *Resident Councils*, 500 F.3d at 1031. Although the plain language of § 1254a did not explicitly bar additional fees, the Court identified a congressional intent to set a $50 ceiling on TPS application fees. Since that time, however, Congress has articulated its intent more explicitly in section 549. In reconciling § 1254a with section 549, the Court recognizes that permitting a biometric services fee – while still capping the *registration* fee at $50 – is in no way inconsistent with the plain language of § 1254a(c)(1)(B).

[8] Having reconsidered Defendants' arguments, the Court concludes that the agency's interpretation of § 1254a(c)(1)(B), while contrary to this Court's original reading, is nonetheless reasonable. First, the plain language of § 1254a(c)(1)(B) caps only the registration fee, without specifying what that fee should cover. Second, DHS began charging fingerprinting and biometric fees only after Congress had required the agency to provide – and authorized a fee for – such services. Finally, charging for biometrics is consistent with the agency's pre-1998 practice of requiring TPS applicants to procure and pay for fingerprinting on their own; the only difference is that TPS applicants now pay the agency for that service, rather than an outside entity.

11

1  fingerprinting services fees as part of the TPS registration process if the total fee per person
2  would then amount to more than the $50 statutory cap." Pls.' Surreply at 1.  Plaintiffs quote
3  this Court's decisions to assert that "Section 549 does not 'give [the Government] license to
4  ignore the [TPS] statute's plain meaning.'" *Id.* at 3 (quoting Order Denying PI at 9).

5        To support their position, Plaintiffs offer an interpretation of section 549 that cannot
6  be reconciled with its plain language.  Plaintiffs construe section 549 as authorizing the
7  Government to collect biometric fees "when administering the TPS program in general,
8  *except* when such fees conflict with the more specific TPS *registration* fee cap." Pls.'
9  Surreply at 5 (emphasis in original).  Their interpretation hinges on an artificial distinction
10 between "registration" services and "non-registration" services.  The fees permitted by
11 section 549 could be charged, under Plaintiffs' theory, only for "*non-registration* services
12 that are administered as part of the TPS program" – for example, when a TPS applicant seeks
13 to waive certain grounds of inadmissibility or applies for travel authorization. *Id.* at 5-6
14 (emphasis in original).  Plaintiffs contend that the biometric services at issue in this class
15 action, as "registration" services, cannot be collected *in addition to* the registration fee as
16 they are subject to the $50 cap.

17       This reading is unsupported by the text of the statute.  Section 549 allows fees for
18 "biometric . . . and other necessary services" to "be collected when administering the
19 program described in" § 1254a – *i.e.* the TPS program.  Such a fee is "[i]n addition to" the
20 capped registration fee.  Section 549 never distinguishes between registration and non-
21 registration services, nor does it suggest that the biometric services fees it expressly
22 authorizes may be collected in some contexts but not others.  Section 549, by its own
23 language, supports Defendants' position that DHS can collect a biometric services fee
24 without violating the statutory cap on registration fees.

25       Plaintiffs attempt to justify their reading of section 549 by characterizing it as a
26 "saving interpretation" that is necessary to avoid holding the statute unconstitutional. Pls.'
27 Surreply at 6 (citing *Gray v. First Winthrop Corp.*, 989 F.2d 1564, 1568 (9th Cir. 1993)).
28 "[F]ederal statutes are to be construed so as to avoid serious doubts as to their

12

1 constitutionality, and . . . when faced with such doubts the Court will first determine whether
2 it is fairly possible to interpret the statute in a manner that renders it constitutionally valid."
3 *Commc'ns Workers of Am. v. Beck*, 487 U.S. 735, 762 (1988).  However, "statutory
4 construction may not be pressed 'to the point of disingenuous evasion,'" *id.* (quoting *United*
5 *States v. Locke*, 471 U.S. 84, 96 (1985)), "and in avoiding constitutional questions the Court
6 may not embrace a construction that 'is plainly contrary to the intent of Congress,'" *id.*
7 (quoting *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Constr. Trades*
8 *Council*, 485 U.S. 568, 575 (1988)).

9       Plaintiffs' proffered interpretation exhibits such "disingenuous evasion."  Congress's
10 intent in passing section 549 was clear.  The report of the House Committee on
11 Appropriations ("Appropriations Committee") establishes that section 549 was meant to
12 "clarif[y] that [DHS] is allowed to charge fees for services related to TPS applications."
13 H.R. Rep. No. 111-157, at 132 (2009).  The report does not acknowledge any distinction
14 between registration and non-registration services; that dichotomy is Plaintiffs' own creation.
15 The Appropriations Committee also rejected a request "to raise the $50 application charge
16 since Congress has determined in the past that this humanitarian program should be available
17 for a modest fee."  *Id.*  Plaintiffs have argued – and this Court previously concluded – that
18 allowing DHS to charge for biometric services would run contrary to Congress's intent that
19 the registration fee be limited due to the humanitarian nature of TPS.  The Appropriations
20 Committee, however, sees no inconsistency between capping the *registration* fee at $50 – for
21 humanitarian reasons – and allowing *additional* fees to be collected for services associated
22 with administering TPS.  Plaintiffs' reading of section 549 therefore cannot be justified even
23 as a "saving interpretation."

24       Given that section 549 permits only one plausible interpretation, the Court must now
25 consider Plaintiffs' arguments that the statute – so interpreted – is unconstitutional.
26 //
27 //
28 //

## II. Plaintiffs' Challenges to Congressional Action

Plaintiffs challenge Defendants' – and this Court's – reading of section 549 on a variety of fronts. They claim that such an interpretation effects an implied repeal of the $50 cap codified in § 1254a(c)(1)(B), and that the statute's retroactivity to 1998 violates the due process rights of Plaintiffs and the certified class. Plaintiffs further argue that section 549 violates the separation of powers between the legislative and judicial branches, and that DHS has circumvented the administrative process by implementing section 549 without engaging in notice-and-comment rulemaking. None of these arguments has merit.

Plaintiffs observe, correctly, that "Congress did not expressly repeal or amend the $50 TPS registration fee cap set by 8 U.S.C. § 1254a(c)(1)(B)." Pls.' Surreply at 7. They further contend that the only way to effect Defendants' interpretation would be to find that Congress impliedly repealed § 1254a(c)(1)(B), which the Court cannot do because neither of the "two well-settled categories of repeals by implication" is applicable. *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976) (allowing repeal by implication only where (1) "provisions in the two acts are in irreconcilable conflict" or (2) the later act "covers the whole subject of the earlier one and is clearly intended as a substitute"). The Court need not grapple with implied repeal, however, as the two provisions are consistent: § 1254a(c)(1)(B) caps the registration fee for TPS applicants, while section 549 establishes that "fees for fingerprinting services, biometric services, and other necessary services" are separate from, and may be collected in addition to, the capped registration fee. As such, section 549 clarifies, rather than repeals, § 1254a(c)(1)(B).[9]

Plaintiffs also argue that applying section 549 as of fiscal year 1998 is retroactive and therefore violates their due process rights. The due process test for retroactive legislation requires a "showing that the retroactive application of the legislation is itself justified by a

---

[9] Defendants' interpretation of section 549 would not, as Plaintiffs claim, effectively nullify § 1254a(c)(1)(B). DHS charges filing fees well in excess of $50 for other immigration benefits: for example, $930 to apply for permanent resident status, $300 to extend or change nonimmigrant status, and $595 to apply for naturalization. 8 C.F.R. § 103.7(b)(1). Given that the $50 registration fee cap maintains the filing fee for TPS applicants at a level far lower than what other applicants pay, the addition of a biometric services fee does not render that cap meaningless.

14

1 rational legislative purpose." *Pension Ben. Guaranty Corp. v. R. A. Gray & Co.*, 467 U.S.
2 717, 730 (1984). Given this standard, "it will be a rare circumstance where federal
3 legislation that is retroactive will be held unconstitutional under the Due Process Clause."
4 *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1342 (Fed. Cir. 2001). This is
5 not such a circumstance, as the Appropriations Committee articulated a rational purpose: to
6 "clarif[y] that [DHS] is allowed to charge fees for services related to TPS applications."
7 H.R. Rep. No. 111-157, at 132 (2009). It is rational for Congress to affirm that an agency's
8 longstanding interpretation of federal law is correct.

9 Even severely retroactive legislation will pass constitutional muster if (1) the party
10 subjected to retroactive obligations benefitted from the activity at issue and does not face
11 disproportionate liability, and (2) such liability would not "be contrary to that party's
12 reasonable expectations." *Commonwealth Edison Co.*, 271 F.3d at 1346. Plaintiffs clearly
13 benefit from TPS, which confers a temporary immigration status and entitles them to work
14 authorization. In addition, Plaintiffs offer no evidence that the biometric fee is in any way
15 disproportionate;[10] in fact, a common biometrics fee is set for all immigration benefits that
16 require such fees. *See* 8 C.F.R. § 103.7(b)(1). Finally, having to pay a biometrics fee cannot
17 be contrary to Plaintiffs' reasonable expectations in that they have already paid the fee.
18 Congress is not retroactively requiring payment from Plaintiffs, but is merely reaffirming the
19 statutory authority for fees they previously paid. Congress's actions satisfy due process.

20 The Ninth Circuit has "long recognized that clarifying legislation is not subject to any
21 presumption against retroactivity and is applied to all cases pending as of the date of its
22 enactment." *Abkco Music, Inc. v. LaVere*, 217 F.3d 684, 689 (9th Cir. 2000). In *Abkco*, the
23 Ninth Circuit had to choose whether its own precedent – or a congressional statute passed in
24 response to that precedent – governed a copyright dispute regarding songs that had been
25 released on phonorecord in 1938 and 1939. The court had held in 1995 that the distribution
26 of a phonorecord constituted a "publication" under the Copyright Act of 1909; two years

---

[10] The Court does not here consider Plaintiffs' allegation that it was unlawful for DHS to require the payment of a biometrics fee even when no biometric data was collected or required, as the parties did not address that claim on summary judgment.

15

later, Congress amended the act to provide that pre-1978 distribution was not a publication. The Ninth Circuit found the statute controlling, having concluded that "no retroactivity problem is presented" where the new statute is a "statement of what [the original statute] has meant all along." *Id.* at 691. "An amendment in the face of an ambiguous statute . . . indicates that Congress is clarifying, rather than changing, the law." *Id.*; *see also Beverly Cmty. Hosp. Ass'n v. Belshe*, 132 F.3d 1259, 1265 (9th Cir. 1997) ("It has been established law since nearly the beginning of the republic . . . that congressional legislation that . . . expresses the intent of an earlier statute must be accorded great weight."). Plaintiffs dispute the applicability of *Abkco*, arguing that § 1254a(c)(1)(B) "was and still remains unambiguous as to the meaning of 'registration fee.'" Plaintiffs' 11/25/09 letter brief (Doc. 137) at 2. However, as the Court previously noted, § 1254a(c)(1)(B) is susceptible of more than one reasonable interpretation and is, therefore, ambiguous.

As in *Abkco*, Congress clarified an otherwise ambiguous statute, and the constitutional concerns associated with retroactivity are not present here. For example, although the presumption against retroactivity "is based, in part, on a hesitancy to reverse settled expectations," *Abkco*, 217 F.3d at 691, ruling for Defendants on this issue will not disturb the settled expectations of Plaintiffs and class members. For more than a decade, DHS has interpreted the Appropriations Act of 1998 as authorizing a fee for fingerprinting and biometric services in addition to the registration fee capped by § 1254a(c)(1)(B). Congress, in passing section 549, has merely ratified that interpretation. While Plaintiffs advance a contrary interpretation – one that this Court originally credited – Congress's recent action does not reverse settled expectations; rather, Congress "resolved a problem of unsettled expectations that had arisen" from the statute's ambiguity. *Abkco*, 217 F.3d at 692.

Plaintiffs further argue that Congress's passage of section 549 violates the separation of powers between the legislative and judicial branches. *See United States v. Klein*, 80 U.S. 128, 145 (1872). The Supreme Court in *Klein* "refused to give effect to a statute that was said '[to] prescribe rules of decision to the Judicial Department of the government in cases pending before it.'" *Plaut v. Spendthrift Farm*, 514 U.S. 211, 218 (1995) (quoting *Klein*, 80

16

U.S. at 146). "Whatever the precise scope of *Klein*, however, later decisions have made clear that its prohibition does not take hold when Congress 'amend[s] applicable law.'" *Id.* (quoting *Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429, 441 (1992)). Here, Congress merely clarified a statute; it did not "compel[] . . . findings or results" in a pending case. *Robertson*, 503 U.S. at 438. The "great and controlling purpose" of section 549 is not to deny relief to Plaintiffs, but to clarify DHS's authority to charge biometric fees for TPS applicants from all countries, not simply those in the class. *See Klein*, 80 U.S. at 145. Although this Court has heeded the words of Congress in reexamining its previous interpretation of § 1254a(c)(1)(B), Congress has by no means directed the outcome.

Finally, Plaintiffs contend that Defendants are subverting the administrative process. Since the existing regulations are premised on what Plaintiffs allege is a flawed interpretation of § 1254a, they argue that those regulations can no longer be relied upon as authority for collecting the biometric services fee. The regulations cited the 1998 Appropriations Act – which expressly allowed the agency to charge for fingerprinting – as the statutory authority for the fee. Furthermore, DHS's reading of § 1254a(c)(1)(B) is not only permissible but also – in light of Congress's clarifying legislation – faithful to congressional intent. There is no need to engage in additional notice-and-comment rulemaking to implement section 549, which merely reaffirmed the statutory interpretation reflected in DHS's existing regulations.

Plaintiffs characterize Congress's actions as an "'absolute and despotic' exercise of legislative powers," and accuse Congress of engaging in self-dealing that "'shocks the conscience.'" Pls.' Surreply at 9-10 (quoting *Hurtado v. California*, 110 U.S. 516, 535 (1884), and *Porter v. Osborn*, 546 F.3d 1131, 1136-37 (9th Cir. 2008)). Such strong language is misplaced. The "shocks the conscience" standard applies to substantive due process claims premised on executive abuse of power, such as a killing by a police officer. *See Porter*, 546 F.3d at 1136-37; *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998). It is inapplicable here. Congress, in passing section 549, simply clarified that the statutory cap on the TPS registration fee was not intended to bar any other fee. "[L]egislative acts adjusting the burdens and benefits of economic life come to the Court with a

presumption of constitutionality[.]" *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976). "[T]he burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Id.* Plaintiffs have failed to sustain such a burden.

**CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion for Partial Summary Judgment is DENIED, and Defendants' Cross-Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. Plaintiffs' claim that the charging of a biometric services fee in addition to the $50 registration fee violates § 1254a(c)(1)(B) is DISMISSED.

The Court does not address the legality of DHS's practice of charging a biometric services fee when the collection of biometrics is not required, a question that the parties did not raise here. That issue therefore survives summary judgment.

IT IS FURTHER ORDERED THAT the parties shall appear for a case management conference on **Monday, May 3, 2010, at 1:30pm**. The parties shall file a joint case management statement no fewer than seven days prior to the conference.

**IT IS SO ORDERED.**

Dated: 4/6/10

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT