1

2   OF COUNSEL:
    JOSEPH P. RUSSONIELLO
3   United States Attorney
    JOANN M. SWANSON
    Assistant United States Attorney
4   Chief, Civil Division
    ILA C. DEISS, NY SBN 3052909
5   Assistant United States Attorney
    450 Golden Gate Avenue, Box 36055
6   San Francisco, California 94102
    (415) 436-7124; FAX: (415) 436-7169
7

8

9   J. MAX WEINTRAUB
    Senior Litigation Counsel
10  Office of Immigration Litigation
    U.S. Department of Justice, Civil Division
11  Washington, DC 20044
    (202) 305-7551; FAX: (202) 305-7000

TONY WEST
Assistant Attorney General
JEANNE E. DAVIDSON
Director
REGINALD T. BLADES, JR.
Assistant Director
JOHN H. ROBERSON
ELIZABETH A. SPECK
SHELLEY G. WEGER
TRIAL ATTORNEYS
Commercial Litigation Branch Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530
(202) 305-3319; FAX: (202) 305-7644

12                          Attorneys for Defendants

13                  UNITED STATES DISTRICT COURT

14                 NORTHERN DISTRICT OF CALIFORNIA

15                    SAN FRANCISCO DIVISION

16

17  _____  )   No. C 07-4192 TEH
    JOSE BAUTISTA-PEREZ, *et al.*,        )
18                                        )   **DEFENDANTS' REPLY TO**
                         Plaintiffs,      )   **PLAINTIFFS' OPPOSITION TO**
19                                        )   **DEFENDANTS' MOTION TO DISMISS**
                                          )   **PLAINTIFFS' SECOND AMENDED**
20         v.                             )   **COMPLAINT**
                                          )
21  ERIC H. HOLDER, JR., Attorney General of the  )   Hearing Date: July 19, 2010
       United States, and                )   Time:  10:00 a.m.
22                                        )   Courtroom: 12
    JANET NAPOLITANO, Secretary of        )
23     Homeland Security,                 )
                         Defendants.      )
    _____  )

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE**

DEFENDANTS' REPLY TO PLAINTIFFS'
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

   I.     Section 549 Is A Broad Authorization That Clarifies That The United States Is
        Authorized To Charge TPS Re-Registrants For A Variety Of Services . . . . . . . . . . . 2

   II.    Plaintiffs' Opposition Does Not Refute That Section 549(a) Clarifies That
        USCIS Has Broad Discretion In Charging Fees For The Services Described In
        Plaintiffs' Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A.     Plaintiffs Cannot Plausibly Argue That They Do Not Receive A "Service"
              When USCIS Recaptures Biometric Data For Purposes Of Performing
              Background Checks And Other Biometric Services . . . . . . . . . . . . . . . . . . . . . 3

        B.     The United States Is Not Restricted By Previous Definitions Of
              Biometric Services And The Term "Biometric Services" Is Not
              Limited To The Physical Capture Of Biometric Information . . . . . . . . . . . . . 5

        C.     Plaintiffs Cannot Plausibly Claim That It Is Not Necessary For
              The United States To Perform Background Checks When
              Re-Registering TPS Applicants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

   III    The Government Is Permitted To Ensure That It Fully Recovers
        The Costs Of Providing Services . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

   IV.    The United States Has Not Created A Definition Of Capture For
        Purposes Of Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

   V.     The Fact That Plaintiffs Have Pleaded The APA Does Not Preclude
        The Court From Granting Defendants' Motion To Dismiss . . . . . . . . . . . . . . . . . . . 13

   VI.    Plaintiffs Should Not Be Permitted To Amend Their Complaint Because
        It Would Be Futile To Do So . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

   VII.   Plaintiffs Have Failed To Establish That This Court Possesses Jurisdiction . . . . . . . 15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

i

# TABLE OF AUTHORITIES

## CASES

Adams v. Federal Aviation Admin.,
    1 F.3d 955 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

Auer v. Robbins,
    519 U.S. 452 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

Bassiri v. Xerox Corp.,
    463 F.3d 927 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11, 12

Bonin v. Calderon,
    59 F.3d 815 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

Bowen v. Georgetown University Hospital,
    488 U.S. 204 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

Cal. ex rel. Sacramento Metropolitan Air Quality Management District v. United States,
    215 F.3d 1005 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

Capron v. Van Noorden,
    2 Cranch 126, 2 L. Ed. 229 (1804).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

Chevron U.S.A., Inc. v. Hammond,
    726 F.2d 483 (9th Cir. 1984), cert. denied, 471 U.S. 1140 (1985). . . . . . . . . . . . . . . . . .   9

Consolidated Edison Co. of New York City, Inc.v. Department of Energy,
    247 F.3d 13678 (Fed. Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

Estate of Cowart v. Nicklos Drilling Co.,
    505 U.S. 469 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

Esden v. Bank of Boston,
    229 F.3d 154 (2d Cir.2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

Federal Crop Insurance Corp. v. Merrill,
    332 U.S. 380 (1947). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4

Foman v. Davis,
    371 U.S. 178 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

Garcia v. United States,
    469 U.S. 70 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

Grupo Dataflux v. Atlas Global Group, L.P.,
    541 U.S. 567 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

Heckler v. Chaney,
    470 U.S. 821 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13, 14

Hughes v. United States,
     701 F.2d 56 (7th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

Ingersoll-Rand Co. v. McClendon,
     498 U.S. 133 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

Luu-Le v. INS.,
     224 F.3d 911 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

McLaughlin v. Boston Harbor Cruise Lines,
     419 F.3d 47 (1st Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

Metropolitan Life Insurance Co. v. Massachusetts,
     471 U.S. 724 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

Momeni v. Chertoff,
     521 F.3d 1094 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

Nixon v. Missouri Municipal League,
     541 U.S. 125 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

Nystrom v. Trex Co.,
     424 F.3d 1136 (Fed. Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

Pilot Life Ins. Co. v. Dedeaux,
     481 U.S. 41, 46 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

Portland General Electric Co. v. Bonneville Power Admin.,
     501 F.3d 1009 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

Rodriguez v. DHS,
     No. 08-20273-CV (S.D. Fla. Aug. 20, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

TVA v. Hill,
     437 U.S. 153 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

Tehrani v. Polar Eletro., Inc., No. SA CV 05-1113,
     2007 WL. 3052717 (C.D. Ca. Oct. 4, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11, 15

United States v. American Trucking Assis., Inc.,
     310 U.S. 534 (1940)

Webster v. Doe,
     486 U.S. 592 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

iii

1

## STATUTES AND REGULATIONS

5 U.S.C. § 701(a)(2)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13, 14

8 C.F.R. § 103.2(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7, 9

8 C.F.R. § 103.7(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

8 C.F.R. §§ 244.3(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

8 C.F.R. §§ 244.4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

8 C.F.R. §§ 244.14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

8 C.F.R. § 244.17. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

8 C.F.R. § 244.17(a).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

8 C.F.R. § 244.17(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

8 U.S.C. § 1158(b)(2)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

8 U.S.C. § 1254(c)(2)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

8 U.S.C. § 1254a(c)(2)(A)(ii).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

8 U.S.C. § 1254a(c)(3)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

8 U.S.C. § 1356(m) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**passim**

28 U.S.C. § 1346(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

## FEDERAL REGISTER NOTICES

69 Fed. Reg. R 64084-02, 64085-86 (Nov. 3, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

71 Fed. Reg. 70413 (Dec. 4, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

72 Fed. Reg. 17172-01 (April 6, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

72 Fed. Reg. 4888-01, 4897 (Feb. 2, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

72 Fed. Reg. 29851, 29857 (May 30, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2, 4

72 Fed. Reg. 29851-01, 29857 (May 30, 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . .   4, 11

72 Fed. Reg. at 29857 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

72 Fed. Reg. 46649-01, 46653 (Aug. 21, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

72 Fed. Reg. 31082-01 (June 5, 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

75 Fed. Reg. 24737-01, 24739 (May 5, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

**RULES**

Fed.R.Civ.P. 12(b)(6) 13

Fed. R. Civ. P. 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**CONGRESSIONAL REPORTS**

H.R. Rep. No. 111-157, at 132 (June 16, 2009) ...............................................................2

**MISCELLANEOUS**

AAU WAC 05 190 72378, 2007 WL. 5319356 (March 26, 2007). . . . . . . . . . . . . . . . . . . . . . .  8

OF COUNSEL:
JOSEPH P. RUSSONIELLO
United States Attorney
JOANN M. SWANSON
Assistant United States Attorney
Chief, Civil Division
ILA C. DEISS, NY SBN 3052909
Assistant United States Attorney
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
(415) 436-7124; FAX: (415) 436-7169

J. MAX WEINTRAUB
Senior Litigation Counsel
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
Washington, DC 20044
(202) 305-7551; FAX: (202) 305-7000

TONY WEST
Assistant Attorney General
JEANNE E. DAVIDSON
Director
REGINALD T. BLADES, JR.
Assistant Director
JOHN H. ROBERSON
ELIZABETH A. SPECK
SHELLEY G. WEGER
TRIAL ATTORNEYS
Commercial Litigation Branch Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530
(202) 305-3319; FAX: (202) 305-7644

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

_____
JOSE BAUTISTA-PEREZ, *et al.*,

                       Plaintiffs,

      v.

ERIC H. HOLDER, JR., Attorney General of the
  United States, and

JANET NAPOLITANO, Secretary of
  Homeland Security,
                    Defendants.
_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. C 07-4192 TEH

**DEFENDANTS' REPLY TO
PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED
COMPLAINT**

Hearing Date: July 19, 2010
Time:  10:00 a.m.
Courtroom: 12

### DEFENDANTS' REPLY TO PLAINTIFFS'
### OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

      Defendants respectfully submit this reply to plaintiffs' opposition ("Pl. Opp'n") to our June

14, 2010, motion to dismiss ("Def. MTD").  Plaintiffs' complaint should be dismissed in its entirety.

1    Our motion to dismiss established that Section 549(a) clarified that United States Citizenship

2    and Immigration Services ("USCIS") is permitted to charge fees for a variety of services in

3    administering the Temporary Protected Status ("TPS") program and did not limit the manner in

4    which the agency provides the service or the amount that the agency could charge.  Our contention

5    that Section 549(a) requires the dismissal of plaintiffs' complaint is further bolstered by Section

6    549's legislative history, which demonstrates Congress's intention that the agency is permitted to

7    charge for "related" application services "such as fingerprint collection," as well as the agency's

8    contemporaneous interpretation of its fee regulation contained in its May 2007 fee rule. Def. MTD at

9    11 (citing H.R. Rep. No. 111-157, at 132 (June 16, 2009) (Report to accompany H.R. 2892)); 72

10   Fed. Reg. 29851, 29857 (May 30, 2007).  Specifically, the preamble to the 2007 fee rule explained

11   that the biometrics fee covers instances when an application requires the "collection, updating or

12   use" of biometrics.  Id. (emphasis added).  Likewise, the fact that Congress, in Section 549(a), did

13   not repeal its 8 U.S.C. § 1356(m) grant of authority to set fees to ensure the full recovery of the costs

14   of providing services, further establishes that the agency has considerable discretion in setting the

15   fees that it charges.

16   Contrary to plaintiffs' assertions, our motion to dismiss encompasses all of plaintiffs' claims.

17   If this Court agrees with our contention that Section 549(a) clarifies that USCIS is authorized to

18   charge a fee for "biometric services" and "other necessary services" when administering TPS, then

19   this Court can dismiss all of the issues identified in plaintiffs' opposition. Pl. Opp'n at 3.

20   For these reasons, we respectfully submit that plaintiffs' claims should be dismissed.

21                              **ARGUMENT**

22   **I.    Section 549 Is A Broad Authorization That Clarifies That The United States Is
         Authorized To Charge TPS Re-Registrants For A Variety Of Services**

23   Plaintiffs attempt to re-write the statutory text of Section 549(a) as well as its legislative

24   history.  But the statutory text of Section 549(a) could not be clearer.  It does not convert USCIS

25   from an entity that often provides services electronically and by mail into a mandatory in-person

26   retail servicing operation.  It does not require that services be performed in person, or suggest that

27

28                                        -2-

services can only be performed with the personal appearance of an applicant.  Nor does it prohibit USCIS from charging fees for a variety of services.  To the contrary, Section 549 clarifies that USCIS is permitted to charge "fees for fingerprinting services, biometric services, and other necessary services."  When, as in this case, the plain meaning of the statutory language is abundantly clear "only the most extraordinary showing of contrary intentions from [the legislative history] would justify a limitation on the 'plain meaning' of the statutory language." Garcia v. United States, 469 U.S. 70, 75 (1984) (quoting TVA v. Hill, 437 U.S. 153, 187, n.33 (1978) (internal citations omitted); see also Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 474 (1992).

Plaintiffs have failed to establish that there is any "extraordinary showing of contrary intention" in the legislative history and, therefore, have failed to state a claim upon which relief can be granted.

## II.  Plaintiffs' Opposition Does Not Refute That Section 549(a) Clarifies That USCIS Has Broad Discretion In Charging Fees For The Services Described In Plaintiffs' Complaint

Plaintiffs are undoubtedly cognizant that Section 549 clarified that USCIS has wide discretion in setting fees and in determining what services are necessary to administer the TPS program.  Likewise, the legislative history confirms Congress's clarification that the USCIS possesses nearly unfettered discretion in administering TPS.  Def. MTD at 11-13.  Plaintiffs, therefore, resort to making arguments about the contents of Section 549 that have no logical or legal basis.

### A.  Plaintiffs Cannot Plausibly Argue That They Do Not Receive A "Service" When USCIS Recaptures Biometric Data For Purposes Of Performing Background Checks And Other Biometric Services

Incredibly, plaintiffs argue that Section 549 authorizes the United States to charge fees only when USCIS requires the plaintiffs to "appear[] at an ASC to have their biometric information [physically] captured."  Pl. Opp'n  at 11.  Plaintiffs maintain that they have not received a service when their biometric information was re-utilized for purposes of TPS re-registrations.  Id.  Section 549, however, places no such limitation upon the word "services" and nothing in plaintiffs' brief supports imposing those restrictions upon the statutory language.  Section 549 does not mention

-3-

Application Support Centers ("ASCs"), nor does it limit the services performed to "personal" services.  To the contrary, Congress explained that USCIS may collect fees for "biometric services" or "other services necessary when administering [TPS]."  See Section 549(a); see also Def. MTD at 9 (citing Order denying plaintiffs' motion for partial summary judgment (Doc. 139) at 12).

Moreover, no discovery is required to ascertain whether plaintiffs received a service.  The fact that plaintiffs in fact received a "service" is established in the Federal Register notice promulgating the 2007 fee rule:

> In the revised fee structure, the biometric fee is not simply a fee for biometric collection or the USCIS cost of the applicant or petitioner appearing at an Application Support Center.  The biometric fee also covers costs associated with the use of the collected biometrics for FBI and other background checks.  Thus, an applicant will pay the biometric fee whenever he or she files another application that requires the collection, updating, or use of biometrics for background checks.  At that point, USCIS can verify the identity of the applicant by comparing the newly collected biometrics with those previously submitted, providing an important security enhancement.

72 Fed. Reg. 29851, 29857 (May 30, 2007) (emphasis added).  Tellingly, plaintiffs have not argued that their biometric information has not been "updated," nor have they argued that the agency did not "use" their biometrics for the purposes of conducting background checks.  Thus, plaintiffs' contention that they have not received a service is without basis.

Plaintiffs argue, "Defendant's claim Congress acquiesced in the Government's charging the full fee when it did not require applicants to come to an office and be fingerprinted is false."  Pl. Opp'n  at 13 n.7.  Plaintiffs' are incorrect.  Congress passed Section 549 in October 2009.  The Federal Register notice which fully explained that USCIS would charge immigration applicants, which includes applicants for TPS re-registration, a fee when their biometric information was re-captured from previously stored biometric information was published in May 2007 at 72 Fed. Reg. 29851-01, 29857 (May 30, 2007).  See Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384-85 (1947) ("Just as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents.") (emphasis added).  Therefore, it is fair to assume that Congress was aware of

-4-

1   USCIS's practice of charging for the re-utilization of biometric information when it enacted Section
2   549.

3       Accordingly, because plaintiffs' Second Amended Complaint addresses a practice that was
4   specifically authorized in Section 549, plaintiffs' Second Amended Complaint fails to state a claim
5   upon which relief can be granted.

6       **B.    The United States Is Not Restricted By Previous Definitions Of Biometric
           Services And The Term "Biometric Services" Is Not Limited To The Physical
7           Capture Of Biometric Information**

8       The plaintiffs also contend, without any support, that "biometric services" can have only one
9   definition:  "[T]he service of taking and recording, or collecting of, a person's individual identifying
10  information."  Pl. Opp'n  at 12.  Plaintiffs miss the point entirely.

11      The plaintiffs highlight that the Government previously defined biometric services as those
12  services related to actual fingerprint collection.  Pl. Opp'n  at 14, 15 n.8.  USCIS does not dispute
13  that until the 2007 fee rule was promulgated, the Government did not have the capability to utilize
14  previously collected biometric data on any regular basis.[1]  As we explained in our opening brief, in
15  the final 2007 fee rule, USCIS acknowledged that biometric technology had advanced so that USCIS
16  does not always need to put applicants to the time and expense of taking time off from work, driving
17  to an ASC, and physically submitting a new set of fingerprints and other biometric data with each
18  separate immigration application.  Def. MTD at 13-16.  USCIS explained in the 2007 rule that the
19  biometrics fee covered the "collection, updating or use of biometrics for background checks"
20  because the agency could utilize the material from previously collected biometric data and perform
21  other biometric services.  72 Fed. Reg. at 29857.

22      Plaintiffs' "dead hand theory" – that Congress intended the Government to provide the same
23  services in the same manner regardless of technological developments – is unsupported.  Clearly

24

25      [1]  Plaintiffs also argue that, because the costs of performing background checks was not allocated
      to the specific fee for biometrics prior to 2007 that background checks were not a biometric service.
26  Pl. Opp'n  at 8 n.3.  Plaintiffs are wrong to the extent that they imply that FBI background checks
      were not a biometrics-related service before 2007.  It is simply a fact that the fee rules before 2007
27  did not <u>allocate</u> the cost of the FBI background checks to the biometrics fee itself.

28                                         -5-

1   Congress did not proscribe USCIS from using any particular method of performing or from

2   improving its biometric services based upon updated technology.

3      **C.   Plaintiffs Cannot Plausibly Claim That It Is Not Necessary For The United States To Perform Background Checks When Re-Registering TPS Applicants**

4      Plaintiffs further incorrectly contend that providing biometric services when plaintiffs re-

5   register for TPS is not "necessary."  Pl. Opp'n  at 18.  Indeed, plaintiffs incorrectly conflate a

6   "necessary" service, with one where the applicant must "[physically] appear at an ASC."  <u>Id.</u>  As

7   explained in section II.A of this brief, merely because it is not "necessary" for a re-registrant to

8   physically appear at an ASC does not mean that USCIS is not providing a "necessary" service.

9   Plaintiffs have no basis for asserting that USCIS provides necessary services <u>only</u> when the alien has

10  human contact with an USCIS employee.

11     Plaintiffs also contend that performing background checks and other biometric services is not

12  "necessary" because, prior to 2004, USCIS did not require TPS re-registrants to submit biometric

13  information and undergo additional background checks with each subsequent TPS re-registration.

14  Pl. Opp'n  at 18.  Plaintiffs overreach by arguing that <u>they</u> should evaluate whether USCIS needs to

15  update an alien's background check when he or she re-registers for TPS.  <u>Id.</u> at 19 n.14.  The

16  selection of a particular method of performing biometric services is not a matter for the plaintiffs to

17  decide.  Rather, in accord with Congress's intent, it should be left to the discretion of USCIS.

18  USCIS does not dispute that it did not re-submit a TPS applicant's fingerprints to the FBI with each

19  subsequent re-registration prior to 2004.  Nevertheless, that does not mean that USCIS could not or

20  should not have checked background information with each subsequent re-registration before 2004

21  and cannot learn from the past.  Certainly, the events of September 11, 2001, taught the United

22  States the importance of being especially vigilant in thoroughly checking the backgrounds of foreign

23  aliens who wish to reside in the United States.  Plaintiffs cannot in good conscience argue that they

24  should be able to prevent USCIS from fulfilling its mission of "strengthening the security and

25  integrity of the immigration system" by preventing the USCIS from conducting regular background

26  checks.  <u>See</u> USCIS Homepage, http://www.uscis.gov/.

27

28                                          -6-

Plaintiffs' argument that there is no basis in the TPS statute for conducting background checks during re-registration is also without merit. Pl. Opp'n at 18 n.13. The TPS statute clearly provides that aliens are not eligible for TPS if USCIS finds either that "the alien has been convicted of any felony or two or more misdemeanors" or the alien meets the criteria listed in 8 U.S.C. § 1158(b)(2)(A). 8 U.S.C. § 1254a(c)(2)(A)(ii). It defies logic for plaintiffs to argue that the same section of the TPS statute – section 1254a(c)(3) – that requires aliens to register annually for TPS would not also permit USCIS to include with that subsequent re-registration a requirement that the alien continue to meet the criminality requirements specified in 8 U.S.C. § 1254(c)(2)(B). In addition, plaintiffs ignore the fact that the TPS statute delegates to the agency the authority to provide for registrations after the initial registration in "a form and manner specified by the Attorney General." 8 U.S.C. § 1254a(c)(3)(C). Plaintiffs' suggested construction is surely an absurd interpretation of the statutory language. Nixon v. Missouri Municipal League, 541 U.S. 125, 138 (2004) (explaining that the court will not construe a statute in a manner that leads to absurd or futile results) (citing United States v. American Trucking Assis., Inc., 310 U.S. 534, 543 (1940)).

USCIS regulations are similarly clear that a TPS beneficiary's status may be withdrawn at any time after his or her initial TPS registration if it is determined that the beneficiary has become ineligible for TPS, which includes disqualifying criminal convictions, security grounds, and other mandatory bars. See 8 C.F.R. §§ 244.4; 244.3(c); 244.14(a). Similarly, when TPS beneficiaries apply to re-register, 8 C.F.R. § 244.17 requires them to submit forms I-821 (Application for Temporary Protected Status) and I-765 (Application for Employment Authorization). The instructions to those forms are themselves incorporated into USCIS's regulations pursuant to 8 C.F.R. § 103.2(a)(1). The I-821 form instructions specifically state that applicants for re-registration who are age 14 and older must provide biometrics. See also 8 C.F.R. § 244.17(a) (explaining that USCIS "reserves the right to request additional information and/or documentation on a case-by-case basis."); Id. at § 244.17(b) ("[USCIS] may also request that an alien appear in

-7-

1   person as part of the registration process.").[2]  Thus, there is no merit for plaintiffs' contention that

2   biometrics are not "necessary" when re-registering for TPS.

3   **III     The Government Is Permitted To Ensure That It Fully Recovers The Costs Of
         Providing Services**

4           Plaintiffs also attempt to impose a strict accounting system on USCIS that is not required by

5   statute.  Pl. Opp'n  at 19-20.  As noted above, Section 549(a) permits USCIS to charge a fee for all

6   services "necessary" to administering the TPS program.  This grant of authority is broad and,

7   particularly in light of the fact that 8 U.S.C. § 1356(m) permits USCIS to set fees at a level that

8   ensures the full recovery of its costs, does not require the accounting methodology proposed by the

9   plaintiffs.

10          Plaintiffs rely upon the legislative history in arguing that Section 549(a) does not permit

11  USCIS to fully recoup the costs it incurs in providing various services.  Plaintiffs characterize

12  Congress's statement that it intended Section 549(a) "to clarify that USCIS is permitted to charge

13  TPS applicants for related application services" as indicating that Congress intended Section 549 to

14  be a narrow grant of authority.  As we explained in our opening brief, however, the legislative

15  history of TPS is equally as broad as Section 549(a)'s statutory language.  That history indicates that

16  USCIS may charge a fee for "related application services" and that one <u>example</u> of a related service

17  would be "fingerprint collection."  Def. MTD at 11-13.  There is also ample caselaw that interprets

18  the term "relates to" broadly rather than narrowly.  For example, in addressing "related to" language

19  in the context of other state and federal statutes, courts have described use of the phrase "related to"

20  to indicate a "broad scope."  <u>Metropolitan Life Ins. Co. v. Massachusetts</u>, 471 U.S. 724, 739 (1985);

21  <u>see also</u> <u>Ingersoll-Rand Co. v. McClendon</u>, 498 U.S. 133, 138 (1990) (explaining that when "related

22

23      [2] In addition, the Federal Register notices, published each time a TPS extension (or termination)
    is announced for a country, have for many years included instructions for re-registering for TPS,
24  including the biometrics requirements.  <u>See</u>, <u>e.g.</u>, 69 Fed. Reg. R 64084-02, 64085-86 (Nov. 3, 2004)
    (Honduras); 72 Fed. Reg. 46649-01, 46653 (Aug. 21, 2007) (El Salvador); 75 Fed. Reg. 24737-01,
25  24739 (May 5, 2010) (Nicaragua).  Likewise, USCIS clearly can withdraw TPS if it is discovered
    that an alien has disqualifying criminal convictions.  <u>See</u> <u>Rodriguez v. DHS</u>, No. 08-20273-CV (S.D.
26  Fla. Aug. 20, 2009) (affirming withdrawal of TPS for a re-registrant who had been found guilty of
    several criminal charges);  AAU WAC 05 190 72378, 2007 WL 5319356 (March 26, 2007)
27  (upholding denial of TPS where re-registrant was found guilty of felony kidnaping).

28                                                    -8-

to" is used it is "deliberately expansive") (citing <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41, 46 (1987)); <u>Luu-Le v. INS.</u>, 224 F.3d 911, 915 (9th Cir. 2000) (noting that "relating to" language should be given broad scope) (internal citations omitted).  Accordingly, there is nothing in the legislative history of Section 549(a) that would suggest that Congress intended the statutory language to be construed narrowly or that it intended to repeal 8 U.S.C. § 1356(m).

Plaintiffs contend that 8 U.S.C. § 1356(m) does not permit the agency to ensure the full recovery of the costs of fingerprinting fees and other services because it is not sufficiently "specific" and because it cannot be harmonized with Section 549.  Pl. Opp'n  at 20.  Plaintiffs overlook that Congress enacted Section 549 well after 8 U.S.C. § 1356(m) was enacted in 1998 and re-enacted in 2003, Pub. L. 108-7, § 107, and did not indicate that the provisions of 8 U.S.C. § 1356(m) would not apply.[3]  There is nothing in Section 549(a) that either implicitly or expressly repeals section 1356(m), which authorizes USCIS to recover the full costs of providing adjudication services "notwithstanding any other provisions of law."  Thus, at the time Congress enacted Section 549, Congress was aware of USCIS's authority to ensure the full recovery of its costs when providing services "notwithstanding any other provision of law" and clarified that USCIS can charge "fees for fingerprinting services, biometric services, and other necessary services ... when administering [TPS]."  <u>See</u> Section 549(a).  Likewise, Congress was fully aware of the TPS form instructions and Federal Register notices requiring biometrics when re-registering applicants.  8 C.F.R. § 103.2(a)(1).

In support of their claim that Section 549 supersedes 8 U.S.C. § 1356(m), the plaintiffs invoke the maxim of statutory construction that a more recent specific statute prevails over an earlier and more general statute.  Yet, this maxim applies only when there is an irreconcilable conflict between the statutes.  <u>Chevron U.S.A., Inc. v. Hammond</u>, 726 F.2d 483, 490 n.8 (9th Cir. 1984), <u>cert. denied</u>, 471 U.S. 1140 (1985).  "Where an appellate court can construe two statutes so that they conflict, or so that they can be reconciled and both can be applied, it is obliged to reconcile them."

---

[3]  Plaintiffs rely heavily upon the 2007 fee study in making several of their arguments.  However, their reliance is incorrect because the costs of biometrics for immigration benefits in the fee study included no costs for TPS at all.  72 Fed. Reg. 4888-01, 4897 (Feb. 2, 2007).

-9-

1   Momeni v. Chertoff, 521 F.3d 1094, 1097 (9th Cir. 2008); see also Cal. ex rel. Sacramento Metro.

2   Air Quality Mgmt. Dist. v. United States, 215 F.3d 1005, 1012 (9th Cir. 2000).

3          As the Court has previously recognized, 8 U.S.C. § 1356(m) authorizes USCIS to set fees at

4   a level that "will ensure the full recovery of the full costs" of providing services.  See Order denying

5   defendants' motion to dismiss (Doc. 68) at 13.  However, given the clarification provided by Section

6   549(a) – that "in addition to the registration fee imposed by 1254a" the agency can collect "fees for

7   fingerprinting services, biometric services, and other necessary services" – that clarification permits

8   USCIS to ensure the full recovery of the full costs of performing services necessary to administer the

9   TPS program.  The two laws must be read together and given effect if it all possible.  If some part of

10  the biometrics fee is a cushion to "ensure" full cost recovery or to carry out section 1356(m)'s

11  authorization of a subsidy for asylum applicants, that is certainly legal.  Congress did not state in

12  Section 549 that 8 U.S.C. § 1356(m) no longer governs how much the agency may charge, nor did it

13  address the method of performing various services.

14         Accordingly, plaintiffs' Second Amended Complaint fails to state a claim upon which relief

15  can be granted, because the agency's ability to fully re-coup the costs of providing services when

16  applicants apply to re-register for TPS is a reasonable interpretation of Section 549, and the agency

17  is not required to charge a reduced fee pursuant to 8 U.S.C. § 1356(m).

18  **IV.    The United States Has Not Created A Definition Of Capture For Purposes Of Litigation**

19         As we established in our opening brief, to the extent that the Court determines that Section

20  549 is ambiguous, USCIS's interpretation of its regulations regarding its ability to charge fees for

21  biometric services should be "controlling."  See Defendant's MTD at 13-16.  Plaintiffs' claim, that

22  the United States has "newly-minted" an interpretation of its own regulations for purposes of

23  litigation, is not supported by the facts.  Pl. Opp'n  at 16.  Plaintiffs' argument ignores that the

24  United States issued the May 2007 fee regulation – which interpreted USCIS's ability to charge a

25  biometrics fee upon re-registering TPS beneficiaries when it is able to re-capture the individual's

26  previously-submitted biometric information – fully two and one-half months before plaintiffs filed

27

28                                                    -10-

their complaint on August 16, 2007.  <u>See</u> 72 Fed. Reg. 29851, 29857 (May 30, 2007); Complaint (Doc. 1).[4]

Plaintiffs encourage the Court to adopt a dictionary definition of the word "capture" while wholly ignoring the agency's express explanation of its intent that was simultaneously promulgated in the May 2007 fee rule.  Pl. Opp'n  at 14-15.  Although courts rely upon dictionary definitions in some instances, dictionaries are certainly not the only definitive source, particularly when, as in this case, the fee rule provides context for interpreting a word or term.  <u>E.g.</u>, <u>Bassiri v. Xerox Corp.</u>, 463 F.3d 927, 931 (9th Cir. 2006) (explaining that the term "normal compensation" is not "free from doubt" and deferring to the agency's interpretation of the regulatory term); <u>Tehrani v. Polar Eletro., Inc.</u>, No. SA CV 05-1113, 2007 WL 3052717, at *5 (C.D. Ca. Oct. 4, 2007) (noting that the dictionary definition is not always dispositive in litigation) (citing <u>Nystrom v. Trex Co.</u>, 424 F.3d 1136, 1145 (Fed. Cir. 2005)).  In this case, the USCIS issued a final rule and adapted its 2007 draft fee rule to address concerns raised by aliens that it was burdensome to appear in person at an ASC to be physically fingerprinted.  USCIS was therefore reacting to developments in biometric technology that allowed it to "capture" the material from previously collected biometric data and to perform other biometric services by utilizing that previously captured information rather than physically obtaining a new set of fingerprints.  <u>Id.</u>  Consequently, the USCIS's interpretation of the fee regulation as expressed in the 2007 final fee rule is perfectly consistent with the 2007 fee regulation and, therefore, should be "controlling."  <u>See</u> Defendants' MTD at 16-18.[5]

---

[4] As for a review of 8 C.F.R. § 103.7(b), prior versions did not specifically tie biometrics "capture" to ASC services as stated in page 15, footnote 8 by the plaintiffs.  Since the start of the biometrics fee, capture was never limited to the "physical" capture of biometrics.  The language in the Federal Register from 2004 - 2010 (except for change in fee amount) has remained the same.  It states:

> For capturing biometric information (Biometric Fee).  A service fee of $80 will be charged for any individual who is required to have biometric information captured in connection with an application or petition for certain immigration and naturalization benefits (other than asylum), and whose residence is in the United States ..."

[5] Regarding plaintiffs' contention on page 15, footnote 8 that "capture" in 8 C.F.R. § 103.7(b) is tied only to ASC fingerprinting services, ASC fingerprinting services are not limited to physical fingerprinting, but also include the services provided by the ASC headquarters division that oversees

-11-

1    Plaintiffs argue that the United States' interpretation is not controlling because it was created

2    for purposes of litigation.[6]  However, that is plainly not what happened in this case.  As we

3    explained above, USCIS interpreted "capture" to encompass re-capturing the information from

4    previously-collected data in its 2007 final fee rule, which was promulgated prior to the time

5    plaintiffs filed this lawsuit.  In that fee rule, USCIS explained that it was adopting its biometric

6    practices to recent developments in the area of biometric technology and as a customer service

7    initiative.  USCIS has continued to follow that practice since May 2007.  See Auer v. Robbins, 519

8    U.S. 452, 462 (1997) (explaining that an agency's litigating position may be entitled to deference if

9    it reflects the agency's "fair and considered judgment on the matter in question") (citing Bowen, 488

10   U.S. at 212); Bassiri, 424 F.3d at 1145 (deferring to agency's interpretation of its regulation and

11   noting that the agency had issued its interpretation of the regulation well before the lawsuit was

12   filed); Esden v. Bank of Boston, 229 F.3d 154, 169 (2d Cir.2000) ("Although the IRS's guidance on

13   how the existing regulatory framework applies to cash balance plans comes in a Notice, rather than

14   _____

15   the biometrics process and maintains the necessary systems.  The centralized systems to which
     plaintiffs refer, namely, the Background Check Services ("BCS") and the Biometric Storage System
16   ("BSS"), are owned and managed by the headquarters offices that manage the ASCs.  See 72 Fed.
     Reg. 31082-01 (June 5, 2007).  Fingerprint and biometric data is stored in the Benefit Biometric
17   Support System ("BBSS"), which interfaces directly with FBI's systems.  The FBI provides
     responses to the fingerprint check electronically, and responses are stored in BCS, which is operated
18   by the ASC Management Branch.  Id.; see also 71 Fed. Reg. 70413 (Dec. 4, 2006).  The BSS is the
     centralized repository for all biometric data captured by USCIS.  Fingerprints, other biometric data
19   and biographic information as initially captured by an ASC is assembled and transferred from the
     ASCs to the BSS.  Fingerprint classification results from the FBI are also stored in the BSS.  72 Fed.
20   Reg. 17172-01 (April 6, 2007).  The BSS is accessible by USCIS field offices, service centers and
     application support centers.  Id. at 17174.
21
22   [6] All of the cases cited by the plaintiffs address instances when the agency articulated a position
     in litigation that had never been a part of the agency's administrative practice.  For example, in
23   Bowen v. Georgetown Univ. Hosp., 488 U.S. 204 (1988), the Department of Health and Human
     Services ("HHS") issued a retroactive rule establishing a cost-limit schedule for Medicare
24   reimbursements; however, the statute that authorized HHS to promulgate retroactive rules did so in
     only certain circumstances.  HHS never attempted to justify the rule pursuant to the provisions of the
25   statute that permitted retroactive rulemaking until the matter was in litigation.  See also Portland
     General Electric Co. v. Bonneville Power Admin., 501 F.3d 1009, 1027, n.15 (9th Cir. 2007)
26   (finding no deference was appropriate when an argument was raised for the first time in litigation
     and was inconsistent with agency practice); McLaughlin v. Boston Harbor Cruise Lines, 419 F.3d
27   47, 51 (1st Cir. 2005) (same).  In this case, by contrast, USCIS promulgated the 2007 fee rule
     months before the plaintiffs filed their lawsuit.

28                                          -12-

in new regulations or a revenue ruling, such a consistent and reasonable interpretation by the responsible agency is entitled to deference, regardless of its form of publication").

Accordingly, USCIS's interpretation of its fee regulation is entitled to deference and should be "controlling."

## V.   The Fact That Plaintiffs Have Pleaded The APA Does Not Preclude The Court From Granting Defendants' Motion To Dismiss

Plaintiffs also mistakenly contend that the fact that they have pled the APA precludes the Court from granting defendants' motion to dismiss.  Pl. Opp'n  at 21-22.  Plaintiffs are correct that the United States' motion to dismiss plaintiffs' claims pursuant to the APA should have been styled as a motion to dismiss due to lack of jurisdiction, rather than a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).  Regardless, a court can assess whether it possesses subject matter jurisdiction at any time.  Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 570-71 (2004) (citing Capron v. Van Noorden, 2 Cranch 126, 2 L.Ed. 229 (1804)).

Plaintiffs cite numerous cases that explain the standard for judicial review pursuant to the APA.  However, the APA judicial review provisions do not apply to agency action "committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  In Heckler v. Chaney, 470 U.S. 821 (1985), the Court explained what it means for an action to be "committed to agency discretion by law."  The Court was required to determine whether the Food and Drug Administration's decision not to undertake an enforcement proceeding against the use of certain drugs in administering the death penalty was subject to judicial review.  The Court noted that, under 5 U.S.C. § 701(a)(2), even when Congress has not affirmatively precluded judicial oversight, "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."  470 U.S. at 830.  Because the statute conferring power on the FDA to prohibit the unlawful misbranding or misuse of drugs provided no substantive standards on which a court could base its review, the Court found that enforcement actions were committed to the complete discretion of the FDA to decide when and how they should be pursued.  Id.  Accordingly, the FDA's action or lack of action was not judicially reviewable.  See also Adams v. Federal

1  Aviation Admin., 1 F.3d 955, 956 (9th Cir. 1993) (dismissing claim against the FAA because the

2  statute did not lend itself to meaningful judicial review).

3        Similarly, in Webster v. Doe, 486 U.S. 592, 600 (1988), the Court determined that an

4  agency's decision to terminate an employee was unreviewable under § 701(a)(2) when the employee

5  could be terminated whenever the director of the agency "shall deem such termination necessary or

6  advisable in the interests of the United States."  The Court determined that this standard fairly

7  exudes deference to the director and forecloses the application of any meaningful judicial standard

8  of review.  Id.

9        As  demonstrated in section I.A of this brief and in our opening brief, Section 549(a)

10  clarifies that USCIS has broad discretion in providing services to TPS applicants.  No language in

11  Section 549 limits the amount that can be charged for performing services necessary to

12  administering the TPS program or restricts the method by which USCIS performs such services or,

13  for that matter, how USCIS defines what is encompassed in fingerprinting, biometric or other

14  services necessary for administering TPS.  Therefore, there are no meaningful judicial standards to

15  apply in evaluating USCIS's substantive decisions in this case, and there is no law for this Court to

16  apply.  Accordingly, plaintiffs' claims alleging a substantive violation of the statute should be

17  dismissed as unreviewable under the APA.  See Heckler, 470 U.S. at 830.

18  **VI.    Plaintiffs Should Not Be Permitted To Amend Their Complaint Because It Would Be Futile To Do So**

19        Plaintiffs contend that the Court should permit the plaintiffs to amend their complaint yet

20  again if it believes that it is appropriate to grant defendants' motion to dismiss.  Pl. Opp'n  at 23-24.

21  Although Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend should "be

22  freely given when justice so requires," both the Supreme Court and the Ninth Circuit have

23  recognized that plaintiffs should not be permitted to amend their complaint when doing so would be

24  futile.  Foman v. Davis, 371 U.S. 178, 182 (1962) (recognizing futility as a basis for denying a

25  motion to amend); Bonin v. Calderon, 59 F.3d 815, 846 (9th Cir. 1995) ("Futility of amendment can,

26  by itself, justify the denial of a motion for leave to amend.").

27

28                                      -14-

Given the broad grant of authority contained in Section 549, there is no set of facts that would permit the plaintiffs to state a claim upon which relief could be granted.  Nor have they suggested any other facts or theories suggesting that leave to amend would not be futile.  Accordingly, the Court should not permit the plaintiffs to amend their complaint for a third time.

**VII.**   **Plaintiffs Have Failed To Establish That This Court Possesses Jurisdiction**

Although plaintiffs argue that the United States has repeatedly asked this Court to dismiss plaintiffs' claims due to lack of subject matter jurisdiction, plaintiffs have also failed to correct the errors in their complaint addressed in the United States' previous motions.  Pl. Opp'n  at 24.  Specifically, plaintiffs have repeatedly failed to name the United States as a defendant when the Little Tucker Act, 28 U.S.C. § 1346(a)(2) ("LTA"), plainly requires them to do so.  See Def. Reply to Pl. Opp'n to Its MTD (Doc. 105) at 4 n.3 (citing Hughes v. United States, 701 F.2d 56, 58 (7th Cir. 1982)).  Likewise, plaintiffs have continued to plead the APA despite the fact that their claim is really a question whether the United States unlawfully exacted fees.  Plaintiffs have failed to explain why it is necessary to pursue their claims under both the LTA and the APA when a decision pursuant to the LTA would render any prospective relief superfluous because, if the plaintiffs were to receive a monetary award, it will have a res judicata effect.  See Def. Reply to Pl. Opp'n to Its MTD (Doc. 105) at 8-10 (citing Consolidated Edison Co. of New York City, Inc.v. Dep't of Energy, 247 F.3d 13678, 1384-85 (Fed. Cir. 2001)).

We respectfully acknowledge the Court's prior decisions regarding our previous motions to dismiss, and we respectfully renew our objections to plaintiffs' failure to name the Untied States as a defendant and the plaintiffs' dual pleading of jurisdiction pursuant to the APA as well as the LTA.

## CONCLUSION

For these reasons and those set forth in our initial brief, we respectfully request that the Court grant our motion to dismiss.

1                                                   Respectfully submitted,

2                                                   TONY WEST
     OF COUNSEL:                                    Assistant Attorney General
3    JOSEPH P. RUSSONIELLO
     United States Attorney                         JEANNE E. DAVIDSON
4    JOANN M. SWANSON                               Director
     Assistant United States Attorney
5    Chief, Civil Division                          REGINALD T. BLADES, JR.
                                                    Assistant Director
6    ILA C. DEISS
     Assistant United States Attorney               /s/ John H. Roberson
7    San Francisco, CA                              JOHN H. ROBERSON
     J. MAX WEINTRAUB                               Trial Attorney
8    Senior Litigation Counsel
     Office of Immigration Litigation               ELIZABETH A. SPECK
9    Civil Division                                 SHELLEY D. WEGER
     Department of Justice                          Trial Attorneys
10                                                  Commercial Litigation Branch
                                                    Civil Division
11                                                  Department of Justice
                                                    Attn.: Classification Unit 8th Flr.
12                                                  1100 L Street, N.W.
                                                     Washington, D.C.  20530
13                                                  Tel: (202) 305-3319

14
     Date: July 6, 2010                             Attorneys for Defendants
15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    -16-

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2010, a copy of the foregoing "DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS" was filed electronically using the Court's electronic filing system.  I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

 /s/ Elizabeth A. Speck
ELIZABETH A. SPECK
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
1100 L. Street, NW
Washington, D.C. 20530
Tel: 202-353-7972

-17-