IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOSE BAUTISTA-PEREZ, *et al.*,

            Plaintiffs,

v.

ERIC H. HOLDER, Jr., Attorney General of the United States, and

JANET NAPOLITANO, Secretary of Homeland Security,

            Defendants.

NO. C07-4192 TEH

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This matter came before the Court on July 19, 2010, on the motion to dismiss filed by Defendants Eric Holder, the Attorney General of the United States, and Janet Napolitano, Secretary of Homeland Security (collectively, "Defendants"). Plaintiffs are nationals of El Salvador, Honduras, and Nicaragua who allege that United States Citizenship and Immigration Services ("USCIS" or "the Service")[1] unlawfully charged them a biometric services fee to register for Temporary Protected Status ("TPS") when no new biometric data was collected from them. Defendants ask the Court to dismiss Plaintiffs' Second Amended Complaint ("SAC") for failure to state a claim, on the grounds that the allegedly unlawful fee was in fact authorized by Congress.

For the reasons set forth below, Defendants' motion is GRANTED, and Plaintiffs' SAC is DISMISSED with leave to amend.

---

[1] USCIS's functions were performed by the Immigration and Naturalization Service ("INS") prior to 2003. *See* footnote 3, *infra.* This Order will refer to the agency as "the Service" when describing events preceding 2003, when the INS was still in existence.

# BACKGROUND

## I. The TPS Program

TPS is a temporary immigration benefit established by Congress in 1990 for nationals of foreign states experiencing "extraordinary and temporary conditions" such as armed conflict or environmental disaster. Immigration Act of 1990, Pub. L. No. 101-649, § 302, 104 Stat. 4978, 5030 (1990) (codified at 8 U.S.C. § 1254a).[2] The statute empowers the Attorney General – now the Secretary of Homeland Security[3] – to designate such countries for TPS if they are "unable, temporarily, to handle adequately the return" of their alien nationals, or if their nationals cannot return "in safety." 8 U.S.C. § 1254a(b)(1). The Attorney General designated Honduras and Nicaragua for TPS in 1999, 64 Fed. Reg. 524 (Jan. 5, 1999), 64 Fed. Reg. 526 (Jan. 5, 1999), and El Salvador in 2001, 66 Fed. Reg. 14214 (Mar. 9, 2001). The designations for all three countries have been extended repeatedly since that time, and remain in effect today. *See* 8 U.S.C. § 1254a(b)(3)(C) (allowing a country's TPS designation to be extended for 6, 12, or 18 months so long as "the Attorney General does not determine" that the country "no longer meets the conditions for designation"); *see also* 75 Fed. Reg. 24734 (May 5, 2010) (extending designation of Honduras through January 5, 2012); 75 Fed. Reg. 24737 (May 5, 2010) (extending designation of Nicaragua through January 5, 2012); 75 Fed. Reg. 39556 (July 9, 2010) (extending designation of El Salvador through March 9, 2012).

TPS is available to aliens who have resided continuously in the United States – regardless of immigration status – since their country's designation, as long as they are

---

[2] The Immigration Act of 1990 amended the Immigration and Nationality Act ("INA") by adding (among other provisions) section 244A, 8 U.S.C. § 1254a, which provides the statutory authority for TPS. Section 244A of the INA was renumbered as section 244 in 1996. Pub. L. No. 104-208, Div. C, § 308(b)(7), 110 Stat. 3009-615 (1996).

[3] The authority to designate countries and administer the TPS program was transferred from the Attorney General to the Secretary of Homeland Security in 2003, with the formation of the Department of Homeland Security ("DHS"), which subsumed the functions of the INS. Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002). USCIS is the division of DHS that oversees lawful immigration into the United States, including humanitarian programs such as TPS.

admissible as an immigrant and not otherwise disqualified. 8 U.S.C. § 1254a(a)(5), (c)(1)(A), (c)(2). Aliens are ineligible for TPS if they have been convicted of certain crimes – including any felony or two or more misdemeanors – or if they are subject to other drug and security-related bars. *Id.* § 1254a(c)(1)(A)(iii), (c)(2)(A)(iii), (c)(2)(B)(i). Once granted TPS, an individual may receive employment authorization and remain in the United States as long as his or her status remains valid. *Id.* § 1254a(a)(1)-(2).

Following a country's designation, any nationals of that country who reside in the United States and seek to qualify for TPS must register "to the extent and in a manner which the Attorney General establishes." 8 U.S.C. § 1254a(c)(1)(A)(iv). The initial registration period lasts no less than 180 days. *Id.* Once granted TPS, an alien must re-register annually "in a form and manner specified by the Attorney General," or the status will be withdrawn. *Id.* § 1254a(c)(3)(C). In practice, USCIS requires those who receive TPS to re-register every time their country is re-designated, usually every 18 months. *See, e.g.*, 75 Fed. Reg. at 24734 (setting forth "procedures necessary for nationals of Honduras . . . with TPS to reregister"); *id.* at 24737 (Nicaragua); *id.* at 39556 (El Salvador).

## II.   Fees Charged for TPS

Congress allows USCIS to charge a "reasonable fee as a condition of registering an alien" for TPS, but has capped that fee at $50. 8 U.S.C. § 1254a(c)(1)(B). Since 1998, USCIS has also charged a fee to cover fingerprinting and biometric services for TPS applicants.[4] That fee, which has increased gradually over time, has been set at $80 since 2007. 72 Fed. Reg. 41888, 41890 (Aug. 1, 2007). In 2009, Congress clarified that, "[i]n

---

[4] Prior to 1998, TPS applicants were required to submit fingerprint cards to the Service for criminal background checks, but could procure them from private sources. In an appropriations bill passed in 1997, Congress required that fingerprinting for all immigration benefits be done by the Service or other governmental agencies, and authorized agencies to "collect and retain a fee for fingerprinting services." Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act of 1998, Pub. L. No. 105-119, 111 Stat. 2440, 2447-2448 (1997). The initial fingerprinting fee, which applied to all immigration benefits, was set at $25 and codified at 8 C.F.R. § 103.7(b)(1). 63 Fed. Reg. 12979, 12985, 12986 (Mar. 17, 1998).

3

1  addition to collection of registration fees" described in § 1254a(c)(1)(B), "fees for
2  fingerprinting services, biometric services, and other necessary services may be collected
3  when administering" the TPS program.  Department of Homeland Security Appropriations
4  Act of 2010, Pub. L. No. 111-83, § 549, 123 Stat. 2142 (2009) (codified at 8 U.S.C. § 1254b)
5  ("section 549").  Section 549 was explicitly retroactive to 1998, when the Service first
6  charged TPS applicants for fingerprinting.  *Id.*   A separate work authorization fee has been
7  allowed since 1991, and is currently set at $340.  *See* Miscellaneous and Technical
8  Immigration and Naturalization Amendments of 1991, Pub. L. No. 102-232, § 304(b)(2), 105
9  Stat. 1733, 1749 (1991) (codified at 8 U.S.C. § 1254a(c)(1)(B)); 8 C.F.R. § 103.7(b)(1).

An initial applicant for TPS is therefore charged (1) a registration fee of $50.00; (2) a "biometric services fee" of $80.00 (if the applicant is 14 years of age or older); and (3) a $340.00 fee to apply for work authorization, if desired.  8 C.F.R. §§ 103.7(b)(1), 244.6.  The registration fee is charged only once, upon the initial application for TPS.  8 C.F.R. § 103.7(b)(1) (prescribing fee "not to exceed $50" for "filing an *initial* application for Temporary Protected Status" (emphasis added)).  However, USCIS charges the biometric services fee for every registration and re-registration.  *See, e.g.*, 75 Fed. Reg. at 24736 (requiring "all applicants 14 years of age or older" to "submit a biometric services fee" when registering or re-registering for TPS as a Honduran national).

### III.    Plaintiffs' Payment of Biometric Services Fees

Plaintiffs are eight nationals of El Salvador, Honduras, and Nicaragua who registered for TPS between the years 2002 and 2006 and have continued to re-register since that time.  According to the SAC filed on May 11, 2010, each Plaintiff has been required to remit a biometric services fee every time he or she has applied or reapplied for TPS.  In the second half of 2007, seven Plaintiffs received notices that, although their previously captured biometrics could be reused, the biometric services fee they had paid would not be refunded.  The notice received by Plaintiff Jose Bautista Perez, dated July 27, 2007, reads as follows:

> U.S. Citizenship and Immigration Services (USCIS) has received
> your Form I-821 (Application for Temporary Protected Status)

4

> and is currently processing your application.  This notice informs you that USCIS is able to reuse your previously captured fingerprints and other biometrics.  USCIS will run the same security checks and use your biometric data as in the past, however, it is not necessary for you to appear at a USCIS Application Support Center (ASC) for a biometrics appointment.  The biometrics fee will not be refunded.

Pls.' Request for Judicial Notice (Doc. 147-1), Exh. 1.[5]  Since that time, Plaintiffs have continued to pay the biometric services fee for their subsequent re-registrations.  It is this fee – charged when no new biometric data is collected – that Plaintiffs challenge.

When the Service first began charging a fingerprinting fee in 1998, it was set "at $25 per individual *who requires fingerprinting*." 63 Fed. Reg. 12979, 12982 (Mar. 17, 1998) (emphasis added).  An entry titled "For fingerprinting by the Service" was added to the provision of the Code of Federal Regulations governing fees for immigration services: "A service fee of $25 will be charged by the Service *for fingerprinting* each applicant, petitioner, sponsor, or other individual who is required to complete Form FD-258 [fingerprint card] in connection with an application or petition for an immigration benefit (other than asylum) and whose residence is in the United States." *Id.* at 12986 (codified at 8 C.F.R. § 103.7(b)(1)) (emphasis added).  The fee applied only to "fingerprinting by the Service," and therefore was not charged of applicants residing abroad who were fingerprinted at U.S. consular offices or military installations. *Id.* at 12981.

The fee was raised three times from 2001 through 2007, during which time the definition of the services provided for that fee evolved.  In 2002, the Service stated "that it was not recovering the full costs of the fingerprint program" with the $25 fee.  66 Fed. Reg. 41456, 41459 (Aug. 8, 2001).  After conducting a study to "determine the actual cost of fingerprinting individuals," *id.*, the Service decided to charge $50 "*for the fingerprinting of applicants* who apply for certain immigration and naturalization benefits," 66 Fed. Reg. 65811, 65815 (Dec. 21, 2001) (setting $50 fee "For Fingerprinting by the Service")

---

[5] The Court takes judicial notice of the USCIS notice because its contents were alleged in the SAC and its authenticity is not in dispute, which means it can be considered on a Rule 12(b)(6) motion to dismiss. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

5

(emphasis added). In 2004, the fingerprinting fee was renamed a "biometric fee" to "better describe the services provided under this fee," which included "electronically captur[ing] and retain[ing] necessary biometrics (photo, signature, and press-print images)." 69 Fed. Reg. 5088, 5090, 5092 (Feb. 3, 2004). The fee was raised to $70, and the regulation was amended to provide that a "service fee of $70 will be charged for any individual *who is required to have biometric information captured* in connection with an application or petition for certain immigration and naturalization benefits (other than asylum), and whose residence is in the United States." 69 Fed. Reg. 20528, 20534 (Apr. 15, 2004) (codified at 8 C.F.R. § 103.7(b)(1)) (emphasis added).

In 2007, the Service proposed raising the biometric services fee to $80 after conducting a "comprehensive fee review" and determining that the current fees did not "recover the full costs of services that should be provided." 72 Fed. Reg. 4888 (Feb. 1, 2007). In its proposed rule, the Service defined "Capture Biometrics" for the first time as "involving electronic capture of biometric (fingerprint, photograph, signature) information, *and background checks* performed by the FBI." *Id.* at 4987 (emphasis added). The fee review assigned $174 million "directly to the 'Capture Biometrics' activity" for Fiscal Year 2008-09, and broke that figure down as follows: $86.5 million to operate the Applicant Support Centers "to electronically capture applicants' fingerprints, photographs, and signatures"; $63 million "in costs paid to the FBI to conduct the appropriate background checks of fingerprints and/or applicant names (depending upon the immigration benefit)"; and the remaining costs were unexplained. *Id.* at 4906. The review acknowledged that this constituted "a change in the manner in which USCIS currently calculates the biometric fee since FBI background check costs were previously included in the immigration benefit application/petition fees." *Id.* USCIS concluded that the new approach reflected a "more accurate methodology since there is a direct relationship between the biometric workload and the costs paid to the FBI." *Id.* The fee was calculated by dividing the total cost of providing biometric services – $174 million – by the 2.196 million individuals expected to pay the fee that year, which came to $79. *Id.* at 4907.

6

The final rule explained that "the biometric fee is not simply a fee for biometric collection or the USCIS cost of the applicant or petitioner appearing at an Application Support Center," but rather "also covers costs associated with the use of the collected biometrics for FBI and other background checks." 72 Fed. Reg. 29851, 29857 (May 30, 2007). "Thus, an applicant will pay the biometric fee whenever he or she files another application that requires the collection, updating, or use of biometrics for background checks." *Id.* USCIS made this change after recognizing the inefficiency of requiring applicants to "provide biometric data more than once," a problem addressed by developing a system to "allow the re-use of fingerprints." *Id.* USCIS expected the new process to "result in some decreases in costs which may offset the costs of background checks incorporated into the biometric fee," an impact that it had "already factored . . . into the fee structure along with projected efficiency increases." *Id.* The $80 fee, which became effective July 30, 2007, was codified in the fee regulation: "A service fee of $80 will be charged for any individual who is required to have biometric information captured in connection with an application or petition for certain immigration and naturalization benefits (other than asylum), and whose residence is in the United States." 8 C.F.R. § 103.7(b)(1).

## IV.   Procedural History

Plaintiffs filed this action on August 16, 2007. On April 6, 2010, the Court granted partial summary judgment to Defendants as to Plaintiffs' claim that the charging of any biometric services fee in addition to the $50 registration fee violates the statutory fee cap set by 8 U.S.C. § 1254a(c)(1)(B). However, the Court did not address "the legality of DHS's practice of charging a biometric services fee when the collection of biometrics is not required," which was not raised on summary judgment. Summ'y J. Order (Doc. 139), at 18. Plaintiffs further developed that theory in the SAC filed on May 11, 2010, and Defendants moved to dismiss on June 14, 2010. Plaintiffs opposed the motion.

**LEGAL STANDARD**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." In ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007). Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949-50 (2009).

A Rule 12(b)(6) dismissal "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal of claims that fail to meet this standard should be with leave to amend unless it is clear that amendment could not possibly cure the complaint's deficiencies. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

**DISCUSSION**

Section 549 allows USCIS to collect "fees for fingerprinting services, biometric services, and other necessary services . . . when administering" the TPS program. 8 U.S.C. § 1254b. Plaintiffs allege that USCIS violates this provision and the Administrative Procedure Act by charging a biometric services fee when it does not collect biometric information. Defendants move to dismiss pursuant to Rule 12(b)(6).[6] They argue that

---

[6] Defendants also move to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1), reiterating jurisdictional arguments that this Court already addressed in a prior order. Order

(continued...)

8

1  Plaintiffs cannot plausibly claim that the services at issue here – the performance of
2  background checks using previously collected biometric information – are neither "biometric
3  services" nor "necessary services" authorized by section 549. Since Congress explicitly
4  permitted USCIS to assess such fees, Defendants urge this Court to dismiss the SAC for
5  failure to state a claim.

6  Resolution of this motion hinges on the meaning of section 549. "When interpreting a
7  statute, 'we look first to the plain language of the statute, construing the provisions of the
8  entire law, including its object and policy, to ascertain the intent of Congress.'" *Zuress v.*
9  *Donley*, 606 F.3d 1249, 1252-53 (9th Cir. 2010) (quoting *United States v. Mohrbacher*, 182
10 F.3d 1041, 1048 (9th Cir. 1999)). "The preeminent canon of statutory interpretation requires
11 us to 'presume that [the] legislature says in a statute what it means and means in a statute
12 what it says there.' Thus, our inquiry begins with the statutory text, and ends there as well if
13 the text is unambiguous." *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) (internal
14 citations omitted). "If the statutory language is ambiguous, we consult legislative history."
15 *Zuress*, 606 F.3d at 1253.

16 Plaintiffs challenge the fee itself and the rate at which that fee is set. First, they rely
17 on the text of section 549 to argue that *no* fee can be charged when no biometric data is
18 collected. Second, they claim that those applicants whose biometric data is already on file
19 are *overcharged*, as the $80 fee includes the cost of services they do not receive. The Court
20 begins by considering those arguments, both of which allege that the fee is charged in

---

27  [6](...continued)
    Denying Defs.' Mot. to Dismiss (May 1, 2009) (Doc. 109). As Plaintiffs do not raise new
28  arguments, the Court stands by its earlier ruling and does not address these arguments here.

violation of section 549.[7] The Court will then consider Plaintiffs' argument that the biometric services fee also violates the Administrative Procedure Act.

## I.   Section 549

Plaintiffs claim that USCIS cannot charge the biometric services fee when it conducts security and background checks using previously collected biometric information, because such checks do not constitute a "biometric service" under section 549, and "the collection of biometric information" is "not required or necessary." SAC ¶ 27. Plaintiffs' argument traces the language of section 549, which provides that "fees for fingerprinting services, biometric services, and other necessary services may be collected when administering" the TPS program. 8 U.S.C. § 1254b (emphasis added). They contend, in short, that USCIS violates section 549 "by charging for services that are [1] not provided, [2] not 'biometric services,' [3] not necessary, and [4] not related to TPS." Opp'n at 10. The Court addresses each of these assertions in turn.

### A.   USCIS can only charge for "services."

Section 549 allows USCIS to charge "fees for fingerprinting *services*, biometric *services*, and other necessary *services*." 8 U.S.C. § 1254b (emphasis added). The statute requires that USCIS perform a service in exchange for the fee. Plaintiffs argue that USCIS violates this mandate by charging a fee of applicants whose biometric data is not recollected. As appearing at an Application Support Center for a biometric collection appointment is the "core biometric service the Government provides to TPS registrants," Opp'n at 11, Plaintiffs contend the biometrics fee cannot be charged in the absence of that service.

---

[7] At hearing, Plaintiffs also argued that USCIS is improperly evading the $50 fee cap set by 8 U.S.C. § 1254a(c)(1)(B). They contend that the cost of background checks was originally included in the capped $50 registration fee, which was intended to cover all costs of adjudicating TPS applications, and that USCIS has violated that cap by moving the cost of background checks to a separate fee. However, as discussed below, section 549 explicitly allows USCIS to charge fees in addition to the capped $50 registration fee for services performed in administering the TPS program. The fee therefore does not violate § 1254a(c)(1)(B).

10

However, the fee is meant to cover more than the collection of biometrics; it "also covers costs associated with the use of the collected biometrics for FBI and other background checks." 72 Fed. Reg. 29851, 29857 (May 30, 2007). The question, then, is whether the performance of background checks constitutes a "service." A "service" is a "useful labor that does not produce a tangible commodity." Merriam-Webster's Collegiate Dictionary (11th ed. 2003) at 1137. Background checks, used to determine whether an applicant qualifies for TPS, are appropriately characterized as a service: they represent a "useful labor" without which an applicant's application could not be processed.

There is no basis for constricting the definition of "services," as Plaintiffs do, to encompass only an applicant's appearance for a biometrics appointment. Section 549 is broadly worded to allow USCIS to collect fees for a range of services, and Plaintiffs offer no reason for excluding background checks from that spectrum. Plaintiffs do not contend that USCIS fails to perform this service (or have it performed by the FBI), nor do they explicitly deny that background checks comprise a service. Plaintiffs therefore do not plausibly allege that Defendants violated section 549 by failing to provide a service.

**B.     The services must be "biometric" or "necessary."**

The Court considers Plaintiffs' next two arguments in tandem. Plaintiffs contend that the fee can only be charged for "biometric services" and for services that are "necessary." Although Plaintiffs' position appears to be that both conditions must be satisfied for the fee to be lawful – i.e. the service must be both biometric and necessary – the plain language of the statute does not support such a reading. USCIS is entitled to charge "fees for fingerprinting services, biometric services, and other necessary services." 8 U.S.C. § 1254b. A fee is authorized by the statute so long as it fits into one of those categories; it need not fit them all. The legality of the fee therefore hinges on its being "biometric" *or* "necessary."

Plaintiffs argue that the fee can only be charged for the performance of "biometric services," which they define as "the service of taking and recording, or collecting of, a person's individual identifying information (i.e., fingerprints, photographs, and signatures)."

11

Opp'n at 12. Conducting background checks using previously captured biometric information does not fall within that definition. Defendants assail Plaintiffs' definition as unsupported, and assert that the term "biometric services" also encompasses the performance of background checks.

Plaintiffs and Defendants both insist that the legislative history of section 549 supports their definition, and they spar over the significance of USCIS's fee-setting regulations. Before 2007, the fee was charged "for fingerprinting," 63 Fed. Reg. 12979, 12986 (Mar. 17, 1998), or for an individual "who is required to have biometric information captured," 69 Fed. Reg. 20528, 20534 (Apr. 15, 2004); no fee was charged for the performance of background checks alone when biometric information was not collected. In 2007, however, USCIS expanded the scope of the fee so that it "also covers costs associated with the use of the collected biometrics for FBI and other background checks." 72 Fed. Reg. 29851, 29857 (May 30, 2007) (final rule). Although the revised definition appeared in the final rule published in the Federal Register, the Code of Federal Regulations continues to provide that the $80 fee will be charged only when an individual "is required to have biometric information captured." 8 C.F.R. § 103.7(b)(1). Defendants argue that the "capture" of biometric information includes its capture from stored data, as occurs when previously captured biometrics are reused. As an agency's interpretation of its own regulation is controlling if not "plainly erroneous or inconsistent with the regulation," *Auer v. Robbins*, 519 U.S. 452, 461 (1997), Defendants contend that USCIS's reading of the regulation must govern. Plaintiffs respond that the dictionary definition of "capture" – "the act of recording in a permanent file," Opp'n at 14 – can only encompass the collection of biometrics from the applicant, at which time the biometric data is permanently recorded. Plaintiffs therefore argue that the agency's definition is not worthy of deference, and conclude that background checks are not biometric services for which fees can be charged.

Regardless of whether or not the background checks constitute a "biometric service," they are permissible so long as they are "necessary" – which they clearly are. Plaintiffs allege that USCIS unlawfully charged the $80 fee "when the *collection of biometric*

12

*information* is not necessary." Opp'n at 19. However, this argument suffers the same infirmity as their previous argument regarding "services": Plaintiffs reference only one service, the in-person collection of biometrics. Since that service was not provided to Plaintiffs, they argue, it cannot be necessary. However, the service at issue is not the collection of biometrics, but the performance of a background check. That service is necessary to determine whether any of the statute's criminal and security-related bars to TPS eligibility would require the denial of an individual's application. *See* § 1254a(c)(1)(A)(iii), (c)(2)(A)(iii), (c)(2)(B)(i). In light of that requirement, Plaintiffs cannot plausibly argue that background checks are not a "necessary service."[8]

### C.     The service must be related to the TPS program.

Section 549 only allows fees to be collected "when administering the [TPS] program." The report of the House Committee on Appropriations characterized section 549 as an effort "to clarify that USCIS is permitted to charge TPS applicants for *related* application services such as fingerprint collection." H.R. Rep. No. 111-157, at 132 (June 16, 2009) (emphasis added). Both sides agree that the fees charged to TPS applicants must be related to TPS.[9] Plaintiffs argue that USCIS violates this mandate in its calculation of the biometric services

---

[8] Plaintiffs raise, in footnotes, two arguments casting doubt on the necessity of the background checks. First, they question whether the re-registration process implemented by USCIS is necessary by pointing out differences between the "annual registration" mandated by 8 U.S.C. § 1254a(c)(3)(C) and 8 C.F.R. § 244.17(a), and the way re-registration has evolved in practice (occurring every 18 months upon USCIS's extension of a country's TPS designation). *See* Opp'n at 18-19 n.13. Second, they argue that further discovery must be performed to determine whether background checks are necessary, as § 1254a "does not include a provision requiring background checks upon TPS re-registration." Opp'n at 19 n.14. Plaintiffs contend, in essence, that it may not be necessary for an individual who has previously qualified for TPS to demonstrate continued eligibility for TPS upon re-registration. This position has no merit. The TPS statute explicitly sets forth "[e]ligibility standards" for TPS, 8 U.S.C. § 1254a(c)(2), and allows the status to be withdrawn if "the Attorney General finds that the alien was not in fact eligible for such status under this section," *id.* § 1254a(c)(3)(A). The eligibility standards include bars based on an individual's criminal history, the applicability of which can only be determined by performing background checks. Plaintiffs do not plausibly claim that the re-registration process and the background checks accompanying it are not necessary.

[9] Defendants characterize Congress's "clear intent" as having been "to clarify that USCIS is authorized to collect fees related to biometric collection." Mot. at 12.

13

1  fee, which forces TPS applicants whose biometric information is not recollected to shoulder
2  costs unrelated to their own applications. They therefore challenge not only the fact of the
3  biometrics fee, but also the amount.

4  As a preliminary matter, there can be no doubt that the fee is related to TPS: it is
5  charged only when an individual registers or re-registers for the status. Plaintiffs never claim
6  to have had to pay the biometric services fee when they were *not* applying for or renewing
7  TPS. Plaintiffs seek to dig deeper, however, insisting that the $80 fee is *calculated* in a
8  manner that defies section 549 because it requires TPS applicants to pay for biometric
9  services unrelated to the TPS program. For applicants whose biometric information is
10 already on file, Plaintiffs argue, the $80 fee is an overcharge because it reflects the cost of
11 collecting biometric data, a service they never receive. In addition, all TPS applicants are
12 overcharged because the biometric services fee is set at a level meant to recoup the cost of
13 providing such services to asylum applicants, who do not pay for the service. Since that
14 portion of the fee is unrelated to TPS, Plaintiffs argue it violates section 549.

15 USCIS explained its calculation of the biometric services fee in its proposed rule
16 increasing the fee to $80: the total cost of providing biometric services, which includes the
17 collection of biometric data and the performance of background checks, was divided by the
18 population of fee-paying applicants. *See* 72 Fed. Reg. 4888, 4906-4907 (Feb. 1, 2007).
19 According to the fee review conducted in 2007, the $174 million assigned to "the 'Capture
20 Biometrics' activity" for Fiscal Year 2008-09 was made up of $86.5 million to operate the
21 Applicant Support Centers to collect biometrics, and $63 million "in costs paid to the FBI"
22 for background checks, with the remaining costs unexplained. *Id.* at 4906. The $80 fee was
23 calculated by dividing the total cost of providing biometric services – $174 million – by the
24 2.196 million individuals expected to pay the fee that year, which comes to $79. *Id.* at 4907.
25 This means that a share of each fee pays for the general collection of biometric information,
26 even though an individual fee-payer may not have their biometrics recollected. This also
27 means that those who pay the fee bear some of the costs related to applicants for immigration
28 benefits who are not required to pay a biometric services fee, notably asylum seekers. *Id.* at

14

4888 (providing that "these fees must recover the cost of providing similar services to asylum and refugee applicants and certain other immigrants at no charge"). Plaintiffs therefore argue that they are being unlawfully charged for services unrelated to *their own* TPS applications. At hearing, Plaintiffs stated that the appropriate charge for individuals whose biometrics are already on file should be $28 – a figure presumably reached by dividing the $63 million cost for background checks by the 2.196 million fee-payers (which comes to $28.69).

The strict accounting that Plaintiffs demand for the biometric services fee is unwarranted by the statute. Section 549 does not purport to dictate how USCIS calculates the fee for this service; it merely authorizes the charging of fees for "necessary services . . . when administering" the TPS program. USCIS does not defy that authority by charging a standard fee even though some applicants require more services than others. Indeed, section 549 is not even explicit that the fee be related to TPS; the "related" language appears in the legislative history, which provides that the fee can be charged for "*related* application *services*." H.R. Rep. No. 111-157, at 132. Plaintiffs argue, in essence, that section 549 requires every component of the fee to be directly tied to the fee-payer's TPS application. The Court does not see how section 549 gives it the authority to scrutinize the calculation of USCIS's biometric services fee in such painstaking detail.

USCIS is authorized by 8 U.S.C. § 1356(m) to set "fees for providing adjudication and naturalization services . . . at a level that will ensure recovery of the full costs of providing all such services, *including the costs of similar services provided without charge to asylum applicants or other immigrants*." 8 U.S.C. § 1356(m) (emphasis added). Indeed, § 1356(m) was cited in the final rule establishing the $80 biometric services fee as the legal authority for calculating that fee. *See* 72 Fed. Reg. 29851, 29852 (May 30, 2007). In compliance with § 1356(m), the fee was set by dividing the cost of providing biometric services by the number of individuals expected to pay the biometric services fee – so the calculation ensured "recovery of the full costs" of the services.

Plaintiffs argue that USCIS cannot rely on § 1356(m) as a basis for its biometric services fee because it conflicts with section 549, and the more specific provision of section

15

549 should prevail over § 1356(m). *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) (observing that "it is a commonplace of statutory construction that the specific governs the general"). In denying an earlier motion to dismiss, this Court refused to interpret the general provisions of § 1356(m) "in a way that eviscerates the far more specific fee cap on applicants for TPS" set by 8 U.S.C. § 1254a(c)(1)(B). Feb. 4, 2008 Order Denying Defs.' Mot. to Dismiss (Doc. 68), at 16. However, the "specific" provision at issue then was not section 549, but the $50 cap on registration fees set by § 1254a(c)(1)(B). Although USCIS could not rely on the general authority of § 1356(m) to supersede a specific $50 limit on registration fees,[10] § 1356(m) is not being used to supersede section 549: the authority to charge a fee "when administering" one program is not inconsistent with the general authority to set that fee at a level that recoups the costs of those services and similar services performed for non-fee-paying applicants. "[P]rinciples of construction requiring the more recent and specific statute to prevail over the earlier and more general only apply when there is an irreconcilable conflict between statutes." *Chevron U.S.A., Inc. v. Hammond*, 726 F.2d 483, 490 n.8 (9th Cir. 1984). Section 549 authorizes USCIS to charge a fee for necessary services but does not govern *how* USCIS calculates such a fee; that is done by § 1356(m), which expressly allows USCIS to charge fees at a level that ensures the full recovery of its costs. Plaintiffs therefore do not state a plausible claim that charging the $80 fee in this context violates section 549 because applicants are paying for services that are not related to their unique applications.

## II.   The Administrative Procedure Act

None of Plaintiffs' bases for arguing that USCIS violates section 549 by charging the biometric services fee without collecting biometric data is sufficient to state a claim. However, Plaintiffs also argue that the fee violates the Administrative Procedure Act, which allows a reviewing court to "hold unlawful and set aside agency action, findings, and

---

[10] The Court later concluded, in light of the passage of section 549, that the $50 cap on registration fees does not apply to the biometric services fee. *See* Summ'y J. Order (Doc. 139) at 9-11.

16

1  conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in
2  accordance with law." 5 U.S.C. § 706(2)(A). Plaintiffs rely on the explanation of the
3  "arbitrary and capricious" standard set out by the Supreme Court in *Motor Vehicle*
4  *Manufacturers' Association v. State Farm Mutual Auto Insurance Co.*:

> Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

463 U.S. 29, 43 (1983). Plaintiffs contend that, in setting the biometric services fee, USCIS relied on impermissible factors and failed to consider the problem that TPS applicants would pay for services they were not receiving.

Plaintiffs assert that this is a "fact intensive" inquiry that requires "substantial evidence," and therefore cannot be resolved on a motion to dismiss. Opp'n at 23. The Court disagrees. The "substantial evidence" test can be applied to set aside agency action only in "certain narrow, specifically limited situations." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 414 (1971) (overruled on other grounds, *Califano v. Sanders*, 430 U.S. 99, 105 (1977)).[11] Plaintiffs' allegations, to the contrary, "can be resolved with nothing more than the statute and its legislative history." *Am. Bankers Ass'n v. NCUA*, 271 F.3d 262, 266 (D.C. Cir. 2001) (rejecting argument that district court could not resolve motion to dismiss without reliance on administrative record).

USCIS acted well within its authority under section 549 and 8 U.S.C. § 1356(m) in setting the biometric services fee at $80 and charging those whose biometrics were already on file. Plaintiffs' arguments for setting aside that fee as arbitrary and capricious have no merit. Plaintiffs claim that USCIS relied on "factors Congress did not intend it to consider,"

---

[11] "Review under the substantial-evidence test is authorized only when the agency action is taken pursuant to a rulemaking provision of the Administrative Procedure Act itself, or when the agency action is based on a public adjudicatory hearing." *Citizens to Preserve Overton Park*, 401 U.S. at 414. Although Plaintiffs appear to argue that the "substantial evidence" standard applies to claims that agency action is "arbitrary and capricious," they are in fact two distinct standards under the APA. *See* 5 U.S.C. § 706(2)(A) (arbitrary and capricious standard), (E) (substantial evidence standard).

17

1  as section 549 allows a fee to be charged only "for services actually provided." Opp'n at 22.
2  However, the Court has already refuted this argument: the fee is charged for the performance
3  of background checks, which *are* a service provided to TPS applicants. Plaintiffs also argue
4  that charging applicants for services they do not receive is "an important aspect of the
5  problem" that USCIS "entirely failed to consider." *State Farm*, 463 U.S. at 43. To the
6  contrary, USCIS acted within its congressional mandate to ensure recovery of the full costs
7  of services, including services provided to non-fee-paying asylum applicants. 8 U.S.C.
8  § 1356(m). USCIS followed that mandate by setting a single fee to be paid by anyone who
9  receives biometric services. Plaintiffs have therefore alleged no facts that would support a
10 finding that the agency action was arbitrary and capricious.

## III.  Leave to Amend

13 The Court concludes that the SAC does not state any claim for which relief can be
14 granted. Plaintiffs have requested leave to amend, which should be granted unless the Court
15 "determines that the pleading could not possibly be cured by the allegation of other facts."
16 *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (internal citations omitted). When
17 asked at hearing what additional facts they would allege in an amended complaint, they
18 raised two issues.

19 First, Plaintiffs would allege that USCIS improperly included the cost of biometric
20 services for asylum applicants in the biometric services fee paid by those applying for TPS.
21 However, the Court has already concluded that doing so is justified by 8 U.S.C. § 1356(m),
22 and is not contrary to section 549. Amending the complaint to allege such facts would
23 therefore be futile.

24 Second, Plaintiffs would allege that USCIS is "double-dipping" by charging Plaintiffs
25 twice for the provision of secure documentation. Plaintiffs contend that the biometric
26 services fee includes costs associated with providing secure documentation to TPS recipients;
27 however, the only secure documentation they receive is an employment authorization
28 document, for which they pay a separate $340 fee. *See* 8 U.S.C. § 1254a(c)(1)(B) (allowing

18

"a separate, additional fee for providing an alien with documentation of work authorization"); 8 C.F.R. § 103.7(b)(1) (setting fee for "filing an application for employment authorization" at $340). Plaintiffs would therefore allege that they are being charged twice for a single service. Section 549 grants USCIS broad authority to collect fees when administering the TPS program, and it is not clear that the facts proposed by Plaintiffs are sufficient to withstand another motion to dismiss. However, in light of the liberal rules in favor of amendment, and in an abundance of caution, the Court grants Plaintiffs leave to file an amended complaint.

**CONCLUSION**

For the reasons set forth below, Defendants' motion is GRANTED, and Plaintiffs' SAC is DISMISSED without prejudice. Plaintiffs' amended complaint, should they choose to amend, shall be filed no later than October 29, 2010.

**IT IS SO ORDERED.**

Dated: 9/15/10

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT